**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>TEVA PHARMACEUTICALS USA, Inc., a Delaware corporation,<br><br>          Defendant, | C.A. No. 02-1512 (KAJ)<br>(Consolidated) |
| TEVA PHARMACEUTICALS USA, Inc., a Delaware corporation, and TEVA PHARMACEUTICAL INDUSTRIES LTD., an Israeli corporation,<br><br>    Counterclaim Plaintiffs,<br><br>     v.<br><br>ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation,<br><br>    Counterclaim Defendants, | |
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation,<br><br>    Plaintiffs,<br><br>     v.<br><br>IMPAX LABORATORIES, INC., a Delaware corporation<br><br>    Defendant. | C.A. No. 03-120 (KAJ)<br>(Consolidated) |

| | | |
|---|---|---|
| IN RE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | C.A. No. 05-340 (KAJ) (Consolidated) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |
| IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | C.A. No. 05-360 (KAJ) (Consolidated) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |

## [PLAINTIFFS'] PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 26(c), by agreement of Abbott Laboratories, including its successors-in-interest, subsidiaries and predecessors ("Abbott"), Fournier Industrie et Santé and Laboratoires Fournier S.A, including their successors-in-interest, subsidiaries and predecessors (collectively, "Fournier"), Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries Ltd., including their successors-in-interest, subsidiaries and predecessors (collectively, "Teva"), Impax Laboratories, Inc., including its successors-in-interest, subsidiaries and predecessors ("Impax"), and all plaintiffs in the actions consolidated and/or coordinated in In re Tricor Direct Purchaser Antitrust Litig., No. 1:05-cv-00340-KAJ (D. Del) (collectively, "Direct Purchasers") and In re Tricor Indirect Purchaser Antitrust Litig., No. 1:05-cv-00360-KAJ (D. Del.) (collectively, "Indirect Purchasers") (all individually, a "party", or collectively, "parties"), the Court finds that good cause exists for entry of this Protective Order to prevent unauthorized disclosure and use of the parties' trade secrets and other confidential information during and after the course of the above-captioned litigations (collectively, the "Action").  Accordingly, IT IS HEREBY ORDERED THAT:

A.    **Definitions**

For purposes of this Protective Order, the following definitions shall apply:

1.    The term **"Designated Material"** shall include all information, documents and other materials revealed or disclosed during the proceedings of the above matter that are designated as "Confidential Material," "Highly Confidential Material" and/or "Restricted Pricing Material" in the manner set forth in Section C of this Protective Order, including without limitation any records, exhibits, reports, samples, transcripts, oral testimony, video or audio recordings, affidavits, briefs, summaries, notes, abstracts, drawings, databases, communications, correspondence, letters, emails and attachments thereto, answers to interrogatories, responses to requests for admissions, or motions, including copies or computer-stored versions of any of the foregoing.

2.    The term **"Disclosing Party"** shall mean any party or non-party who is requested to produce or produces Material through discovery in these actions.

3.    The term **"Confidential Material"** shall mean material that is, in the normal course of business, maintained as confidential, and expressly includes material previously produced to Abbott and Fournier and designated as "Confidential Information" under the Confidentiality Agreement dated September 20, 2002, between Abbott, Fournier, and Teva as well as ANDA No. 76-433 ("Teva's ANDA").

4.    The term **"Highly Confidential Material"** shall mean customer information, current (not more than three years old) financial and marketing information (including past information indicative of current practices), information relating to research, development, testing of, and plans for, a party's existing fenofibrate products (including products referenced in

any NDA or ANDA that have received tentative or final approval as of October 30, 2005),

information relating to the processes, apparatus, or analytical techniques used by a party in its

present or proposed commercial production of such products, information relating to pending or

abandoned patent applications which have not been made available to the public, personal

medical or financial information, and any other information that the disclosing party believes in

good faith could be used by a competitor to harm its business.

5.      The term **"Restricted Pricing Material"** shall mean materials or information that

contain contract terms or pricing, sales, or profit information concerning one or more individual

customers or suppliers identified specifically by name or reference in the document.

6.      The term **"Competitive Fenofibrate Activities"** means (i) competitive decision

making activities (e.g., advising on decisions concerning marketing, pricing and design) relating

to any fenofibrate product and (ii) any involvement in the prosecution of patent applications

relating to fenofibrate.  "Competitive decision making" activities also include competitive

decision making related to the preparation of any (a) NDA or ANDA or "paper" NDA (21 U.S.C

§ 355(b)(2)) relating to fenofibrate or (b) Paragraph III or IV certification letters referencing any

Abbott NDA relating to fenofibrate.

B.      **Applicability of this Protective Order**

        Except as specifically authorized by this Court, Designated Material shall not be

disclosed or revealed to anyone not authorized by this Protective Order to receive such material.

*Further, Designated Material shall be used only for the purpose of this Action and not for any*

*other purpose or function, including without limitation any other litigation not part of this Action*

*or any Competitive Fenofibrate Activity or business, patent prosecution, competitive or*

*governmental purpose or function.*  The terms of this Protective Order shall apply to all manner

and means of discovery. All persons to whom Designated Material is disclosed shall be informed of and shown a copy of this Protective Order.

C.    **Designating Material**

If, in the course of this Action, a Disclosing Party discloses material that the Disclosing Party contends is Confidential or Highly Confidential or Restricted Pricing, that Disclosing Party may so designate such material by applying to that material the appropriate confidentiality marking.

1.    **Designating "Confidential Material"**:  Any document produced by a party in this litigation may be designated as Confidential Material by marking it "CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER" or a similar label on the face of the document at or prior to the time of production.

2.    **Designating "Highly Confidential Material"**:  Any document produced by a party in this litigation may be designated as Highly Confidential Material by marking it "HIGHLY CONFIDENTIAL: SUBJECT TO PROTECTIVE ORDER" or a similar label on the face of the document at or prior to the time of production.

3.    **Designating "Restricted Pricing Material"**: Any document produced by a party in this litigation may be designated as Restricted Pricing Material by marking it "RESTRICTED PRICING MATERIAL: SUBJECT TO PROTECTIVE ORDER" or a similar label on the face of the document at or prior to the time of production.

4.    **Designating Material that Cannot Easily Be Marked**:  If any Confidential or Highly Confidential or Restricted Pricing Material cannot easily be labeled with the appropriate Confidentiality marking, it shall be placed in a sealed envelope or other suitable container that is

in turn marked with the appropriate Confidentiality marking, or otherwise designated in a manner agreed upon by the parties.

5.    **Designating Depositions**:  Any person giving deposition testimony in this litigation as a representative of a party may designate any or all of the testimony as Confidential Material or Highly Confidential or Restricted Pricing Material.  The person desiring to designate any portion of a deposition as Confidential Material or Highly Confidential or Restricted Pricing Material may do so on the record while the deposition is being taken, either personally or through counsel.  Alternatively, the transcript of the deposition (or of any other testimony) may be designated as containing Confidential Material or Highly Confidential or Restricted Pricing Material by notifying the opposing party in writing, within ten (10) business days of receipt of the transcript that it contains Confidential Material or Highly Confidential or Restricted Pricing Material.  Notwithstanding the foregoing, any deposition transcript shall be subject to a safe-harbor wherein the transcript will be treated as Highly Confidential Material for a period not to exceed ten (10) business days after the official transcript is received.  Any portion of any deposition testimony that is not designated as Confidential Material or Highly Confidential or Restricted Pricing Material in accordance with Section C herein, within that ten (10) business day safe-harbor period, shall not be entitled to the protections afforded under this Protective Order.

6.    **Designating Deposition Exhibits**:  An exhibit to a deposition that has been produced (i.e., has a bates number) shall be treated in accordance with the confidentiality designation already given to it.  If the exhibit has not been previously produced and has no preexisting designation ("New Exhibit"), then the exhibit shall be treated in accordance with the confidentiality designation given to it on the record at the time of the deposition and that

confidentiality designation shall be noted on the first page of the exhibit.  If no confidentiality

designation is made for a New Exhibit at the deposition, it shall be treated as Highly Confidential

Material for a period not to exceed ten (10) business days after the New Exhibit's initial

disclosure.  Any New Exhibit that is not designated as Confidential or Highly Confidential or

Restricted Pricing Material in accordance with Section C herein, within that ten (10) business

day safe-harbor period, shall not be entitled to the protections afforded under this Protective

Order.

       7.    **Non-Party Designations**:  A non-party to this action that produces materials to

any party in connection with this Action, whether pursuant to a subpoena or otherwise, may avail

itself of the protections afforded by this Protective Order, by placing the appropriate

Confidentiality marking on such materials.

       8.    **Safe-Harbor for Inadvertent Failure to Designate**:  If a party or non-party

inadvertently fails to designate material as Confidential or Highly Confidential or Restricted

Pricing such failure shall not constitute a waiver of the Disclosing Party's right to so designate

such material, provided the Disclosing Party so notifies, in writing, the parties known to have

received the material in question and provide same with an appropriately marked substitute copy

of the affected material.  Upon receiving notification of an inadvertent failure to designate, all

parties in receipt of the affected material must (i) destroy all copies of the incorrectly marked

material, and (ii) retrieve all copies of the incorrectly marked material from all persons to whom

that material was disclosed and destroy all such copies.  In addition, the affected parties must

inform the Disclosing Party, in writing, of the identity of any person not authorized under

Section D to whom such affected material was disclosed and whether such party has returned

that material.  Such identifications shall not waive any attorney work product or attorney-client privileges.

D.    **Persons Authorized to Access Confidential or Highly Confidential or Restricted Pricing Material and the Authorized Use of Such Material**

    1.    **Persons Authorized to Access Confidential Material Shall Be Limited to**:

        (a)    Outside counsel of record, who have been admitted in the United States District Court for the District of Delaware either directly or *pro hac vice* for this Action, for the respective parties to this litigation ("Outside Counsel") and attorneys and regular employees **within the same law firm** of said Outside Counsel, who are assisting in the prosecution or defense of this litigation ("Outside Counsel Employees").  Outside Counsel shall have the duty of informing Outside Counsel Employees in the same law firm who receive Designated Material of the applicable provisions of this Protective Order and ensuring compliance with its terms. For the purpose of clarification, Designated Material may not be disclosed by the receiving party to any attorney or employee at a law firm, law office, professional corporation or similar entity that does not employ at least one attorney who has been admitted *pro hac vice* to this Action;

        (b)    Up to three in-house counsel or directors of legal affairs for Abbott, Fournier, Teva and Impax and up to one in-house counsel for each other named party provided that the identified counsel or directors of legal affairs are not engaged in Competitive Fenofibrate Activities, and support and clerical staff supporting said counsel.  The in-house counsel or directors of legal affairs shall be identified in accordance with Section D.4 below.  The parties may substitute an inside counsel for one identified in accordance with Section D.4 by notifying the other parties of the withdrawal and identifying the new inside counsel in accordance with

Section D.4. The withdrawing inside counsel remains subject to all terms and conditions of this Protective Order;

      (c)    No more than two employees per Abbott, Fournier, Teva and Impax, who are not involved in Competitive Fenofibrate Activities and who are identified by the proposing party in the matter outlined below in Section D.5;

      (d)    Outside experts and consultants (and their employees or clerical assistants) who are employed, retained or otherwise consulted by outside counsel of record to assist in any way in the preparation and trial of this litigation. Outside experts and consultants may not be engaged in Competitive Fenofibrate Activities on behalf of any entity during the pendency of this litigation. For purposes of this Protective Order, the phrase "outside experts and consultants" shall not include any officer, director or employee of any party;

      (e)    The Court, its staff, and other authorized Court personnel;

      (f)    Qualified persons taking testimony involving Confidential or Highly Confidential or Restricted Pricing Material and necessary stenographic, videographic, and clerical personnel thereof;

      (g)    Duplicating services, and auxiliary services of a like nature, routinely engaged by counsel;

      (h)    The Federal Trade Commission in connection with its investigation identified as Abbott Laboratories File 005-0124;

      (i)    Authors and recipients of the particular Material; and

      (j)    employees, officers or experts of a producing party.

2.     **Persons Authorized to Access Highly Confidential Material**:  shall be limited to the persons identified in (a)-(b) and (d)-(j) in Section D.1. above.  Persons identified in (c) of Section D.1 above ARE NOT AUTHORIZED to access Highly Confidential Information.

3.     **Persons Authorized to Access Restricted Pricing Material:** shall be limited to the persons identified in (a) and (d)-(j) in Section D.1 above, and the following additional persons: one in-house counsel at each of Abbott, Fournier, Teva, and Impax, who (i) has no role in marketing or formulating marketing strategies concerning any drug products, except that the in-house counsel may render Marketing Legal Advice (as defined below); (ii) has no role in pricing, or formulating pricing strategies, or drafting or negotiating contracts concerning any drug products, (iii) has no role in drafting, negotiating, or otherwise communicating with customers or suppliers concerning pricing or contracts for the sale of any drug products, except that the in-house counsel may render legal advice concerning breach or potential breach of contracts (for Abbott and Fournier, such advice is limited to non-generic products),  and  (iv) agrees to be bound by Order of this Court that s/he shall undertake no activities  prohibited in subsections (i), (ii), and (iii) of this provision for a period of  two (2) years  after entry of a final judgment from which no appeal can be taken in this action.  Such persons shall be identified in accordance with Section D.4 below.  If any of Abbott, Fournier, Teva, or Impax does not have an in-house counsel who satisfies the requirements of this provision, that party (or those parties) shall be limited to disclosing Restricted Pricing Material to the persons identified in (a) and (d)-(j) in Section D.1 above.  Persons identified in (b) and (c) of Section D.1 above ARE NOT AUTHORIZED to access Restricted Pricing Material, except that an in-house counsel for Abbott, Fournier, Teva, or Impax designated in (b) of Section D.1 may also be designated hereunder to access Restricted Pricing Material provided that the in-house counsel independently

satisfies the requirements of both (b) and this provision. "Marketing Legal Advice" shall mean the provision of legal opinions, analysis or advice on marketing plans and strategies (for Abbott and Fournier, this advice is limited to non-generic products) on issues concerning regulatory and statutory compliance, fraud, false advertising and litigations relating to the marketing plans and strategies.

4.    **Certain Authorized Persons Must First Agree to Be Bound to the Terms of This Protective Order Before Gaining Access to Confidential or Highly Confidential or Restricted Pricing Materials**: Confidential or Highly Confidential Material shall not be disclosed to any authorized person identified in (b) or (d) in Section D.1. above and Restricted Pricing Materials shall not be disclosed to any authorized person identified in (d) in Section D.1 or in Section D.3 above, unless and until such person has agreed in writing to be bound by the terms of this Protective Order. The requirement of obtaining such written agreement shall be satisfied by obtaining the signature of each such person on the Confidentiality Agreement attached hereto as Exhibit A. In addition to the foregoing, before disclosing Confidential or Highly Confidential Material to any authorized person identified in (b) in Section D.1. above or Restricted Pricing Material to any authorized person identified in Section D.3, the party seeking to make such disclosure shall first give five (5) business days prior written notice to counsel for the producing party of the name, job title and job description of the in-house attorney or director of legal affairs to whom disclosure is to be made and an executed copy of the Confidentiality Agreement attached as Exhibit A. If the producing party reasonably believes it would be harmed by the disclosure of any Highly Confidential or Restricted Pricing Material any person proposed above, it may object in writing to such disclosure within five (5) business days after receipt of the notice. In the event of an objection, the parties shall promptly confer to attempt to resolve

the concerns giving rise to the objection.  If the parties are unable to reach agreement regarding

such disclosure, the party objecting to disclosure may, prior to the time of the intended

disclosure, request this Court to issue an order prohibiting the disclosure.  No disclosure shall be

made pending the ruling of the Court.  The Court may impose additional restrictions on such

disclosure as a condition of issuing such order.

     5.     **Employee Access To Confidential Information Is Limited to Two Persons**

**Identified by the Proposing Party**:

          Confidential Material shall not be disclosed to any authorized person identified in

(c) in Section D.1. above, unless and until such person has agreed in writing to be bound by the

terms of this Protective Order.  The requirement of obtaining such written agreement shall be

satisfied by obtaining the signature of each such person on the Confidentiality Agreement

attached hereto as Exhibit A.  In addition to the foregoing, before disclosing Confidential

Material to any authorized person identified in (c) in Section D.1. above, the party seeking to

make such disclosure to any person not previously identified to the parties shall first give five (5)

business days prior written notice to counsel for the producing party of the name and address of

the person to whom disclosure is to be made, including a current resume disclosing such person's

prior or present relationship, if any, with the parties and an executed copy of the Confidentiality

Agreement attached as Exhibit A.  If the producing party reasonably believes it would be harmed

by the disclosure of any Confidential Material to the proposed person, it may object in writing to

such disclosure within five (5) business days after receipt of the notice.  In the event of an

objection, the parties shall promptly confer to attempt to resolve the concerns giving rise to the

objection.  If the parties are unable to reach agreement regarding such disclosure, the party

objecting to disclosure may, prior to the time of the intended disclosure, request this Court to

issue an order prohibiting the disclosure. No disclosure shall be made pending the ruling of the

Court. The Court may impose additional restrictions on such disclosure as a condition of issuing

such order.

      6.    **Persons Accessing Confidential or Highly Confidential Information Pursuant**

**to Section D.1. (b) and (c) above Shall Not Engage in Competitive Fenofibrate Activities for**

**a period of Two (2) Years After Termination of this Action.**

      7.    **Use Limited to this Action**: Designated Material may only be used in the course

of any hearings or trial of this Action. Counsel will address in the Pretrial Order how they

propose to handle the use and disclosure at trial of Designated Material.

E.    **Filing Under Seal**

      1.    **Procedure**: Designated Material may be used or submitted to the Court in

connection with any filing or proceeding in this Action, but the party using such material shall

cause an original and one copy to be filed separately under seal with the Clerk of the Court. All

papers that contain Confidential Material which are submitted to or filed with the Court shall be

submitted or filed in a sealed envelope bearing the following legend clearly written on the face of

the envelope under the relevant case caption for this Action:

> **CONFIDENTIAL – FILED UNDER SEAL**
> **PURSUANT TO COURT ORDER**

All papers that contain Highly Confidential Material which are submitted to or filed with the

Court shall be submitted or filed in a sealed envelope bearing the following legend clearly

written on the face of the envelope under the relevant case caption for this Action:

> **HIGHLY CONFIDENTIAL – FILED UNDER SEAL**
> **PURSUANT TO COURT ORDER**

All papers that contain Restricted Pricing Material which are submitted to or filed with the Court shall be submitted or filed in a sealed envelope bearing the following legend clearly written on the face of the envelope under the relevant case caption for this Action:

> **RESTRICTED PRICING MATERIAL/HIGHLY**
> **CONFIDENTIAL – FILED UNDER SEAL**
> **PURSUANT TO COURT ORDER**

2.      **Public Versions of Documents Filed Under Seal**:  A party submitting or filing papers under seal with the Court shall also submit or file a public version of such papers.  Such public version shall redact any Designated Material.  Prior to submitting or filing a public version of documents filed under seal, the party making such filing shall give the Disclosing Party an opportunity to review the proposed public version to ensure that all Designated Material has been properly redacted.

3.      **No Summaries**:  Designated materials shall not be disclosed or summarized, either in writing or orally, to anyone other than persons permitted to have access to such information under this Protective Order.  Notwithstanding the foregoing, nothing in this Protective Order prohibits outside counsel for any party from advising their respective clients of the presence or absence of evidence supporting or refuting the claims or defenses in this Action.

F.      **Challenging Designations**

1.      **Designation Not Conclusive**:  Nothing in this Protective Order shall be construed as a finding that any Designated Material actually constitutes or contains proprietary or

confidential information or trade secrets. For purposes of this order, proprietary or confidential information or trade secrets shall not include information or material that:

(a)    was, is or becomes public knowledge in a manner other than by violation of this Order;

(b)    is acquired by the non-designating party from a third-party, except if the non-designating party knows that the third-party does not have a right to disclose such information or material;

(c)    was possessed by the non-designating party prior to the entry of this Order by the Court, except if the non-designating party knows that it possessed the information or material unlawfully. For the purpose of clarification, any materials produced by Abbott, Fournier, Teva or Impax pursuant to earlier protective orders in C.A. Nos. 02-1512 (KAJ) or 03-120 (KAJ) shall be entitled to continued protection under both the prior applicable protective order and this Protective Order; or

(d)    was developed by the non-designating party independent of the information produced under the protective order.

2.    **Challenge Need Not Be Contemporaneous With Designation**: There shall be no obligation to challenge a Confidential or Highly Confidential or Restricted Pricing designation when made and failure to do so shall not preclude a subsequent challenge. If a party objects to the designation of any material as Confidential or Highly Confidential Material or Restricted Pricing, it may apply to this Court for a ruling that the information or material shall not be so designated. The burden shall be on the party arguing that the information should be treated as Confidential or Highly Confidential or Restricted Material to establish, based upon a showing of good cause, that the material constitutes or contains proprietary or confidential

information or trade secrets.  Until the Court rules upon the designation, the affected material

shall continue to be treated in the manner the pre-challenge designation would ordinarily require.

G.    **Non-Party or Governmental Requests on Non-Disclosing Parties to Produce**

**Material Designated as Confidential or Highly Confidential**

In the event any of the parties is (i) subpoenaed in another action, or (ii) served with a

demand in another action to which it is a party, or (iii) served with any other legal process and is

requested to produce or otherwise disclose information that was designated as Designated

Material by the producing party in this action, the party subpoenaed or otherwise served as

referred to in this paragraph shall object to production of the material and shall give prompt

written notice to the producing party to this litigation with sufficient time to afford the producing

party to this litigation an opportunity to intervene.  The notice shall include a copy of any such

subpoena, demand, or other process.  Should the person seeking access to the Designated

Material take action against the party covered by this Protective Order to enforce such a

subpoena, demand or other legal process, it shall respond by setting forth the existence of this

Protective Order.  Notwithstanding the foregoing, any document produced in this Litigation is

subject to review by the Federal Trade Commission in connection with its investigation

identified as Abbott Laboratories File 005-0124.

H.    **Confidentiality Interests of Third-Parties**

1.    **Limitations on the Right to Refuse Production of Third-Party Materials**:  A

party may temporarily withhold production of otherwise discoverable information (whether by

subpoena, deposition question, or discovery request), if the party is under an obligation to a

third-party not to disclose such information.  In such an event, such party shall:

(a)    Promptly provide to the third-party whose confidentiality interests are implicated (i) notice of the party's obligation to disclose the information in question, and (ii) a copy of this Protective Order; and

(b)    Within thirty (30) business days, produce the requested information in question in compliance with this Order, unless that third-party, within that time, moves for or obtains from this Court a protective order precluding such disclosure.

I.    **Limitations of this Protective Order**

1.    **Advice of Counsel**:  Nothing in this Protective Order shall bar or otherwise restrict any attorney for the parties from rendering advice to his or her client with respect to this litigation.  In the course of doing so, said attorney may generally refer to or rely upon his or her examination of Designated Material, but shall not disclose the specific contents of Designated Material to persons not authorized to receive such Designated Material pursuant to this Protective Order.

2.    **No Waiver of Rights**:  Nothing in this Order shall be deemed a waiver of any right any party otherwise might have under the Federal Rules or the doctrines of attorney-client, attorney work product, or any other applicable privileges, including without limitation (i) the right of a party or non-party to object to any discovery request on any ground; (ii) the right of a party to seek an order compelling discovery with respect to any discovery request; (iii) the right of a party to object to the admission of evidence on any ground; (iv) the right of a party or non-party to use its own materials within its own discretion; (v) the right of a party or non-party to seek additional protection for certain materials or information.  With respect to a request for additional protection, the entity seeking such protection shall first confer with the parties to reach agreement with respect to such additional protection.  If the parties are unable to reach

agreement, the entity seeking such additional protection may, within 10 business days of receipt

of a request for such information, file a motion with this Court for an additional protective order.

J.    **Inadvertent Disclosure of Designated Materials**

Should any material designated as Confidential or Highly Confidential or Restricted

Pricing be disclosed, through inadvertence or otherwise, in violation of this order, then the party

responsible for such disclosure shall use its best efforts to retrieve from such persons all copies

of the affected material and bind those receiving the disclosure to the terms of this Protective

Order, by (i) promptly informing such persons of the provisions of this Protective Order and (ii)

requesting that such persons sign the Confidentiality Agreement attached as Exhibit A.  In

addition, the affected parties must inform the Disclosing Party, in writing, of (i) the identity of

any person not authorized under Section D to whom such affected material was disclosed, (ii) the

identity of the material disclosed to that person, and (iii) whether such party has returned that

material.  Such identifications shall not waive any attorney work product or attorney-client

privileges.

K.    **Inadvertent Disclosure of Privileged Documents**

1.    **No Waiver**:  The production or disclosure of any discovery material made in

connection with this Action which a producing party claims was inadvertent and should not have

been produced or disclosed because of a privilege will not be deemed to be a waiver of any

privilege to which the producing party would have been entitled had the affected material not

inadvertently been disclosed.  In the event of such claimed inadvertent disclosure, the following

procedures shall be followed:

(a)    The producing party may request, in writing, the return of any such

discovery material by specifically identifying the affected material; and

(b)      If a producing party requests the return, pursuant to this paragraph, of any such discovery material from another party, the party to whom the request is made shall return immediately to the producing party all copies of the affected material within its possession, custody, or control—including all copies in the possession of experts, consultants, or others to whom the affected material was provided.  Notwithstanding the foregoing, if a receiving party wishes to challenge the recall of a document on the grounds that it does not contain or reflect privileged material, it may keep one copy of the challenged document for a period not exceeding ten (10) business days after receiving a return request pursuant to Section K(1)(a), to submit to the Court for *in camera* review.  If the challenged document is not submitted to the Court prior to the end of the ten (10) business day period, then the document must immediately be returned to the disclosing party.  In the event that only portions of the discovery material contain privileged subject matter, the producing party shall substitute a redacted version of the discovery material at the time of making the request for the return of the requested discovery material.  Until such materials are returned, such materials and the information contained therein shall be treated as Highly Confidential Material.

L.      **Destruction or Return of Designated Materials at Conclusion of Action**

1.      **Destruction or Return by Parties and Other Authorized Persons**:  Upon the final conclusion of this Action, all persons to whom Designated Material has been disclosed shall, without demand, either (a) destroy, or (b) return to the party that originally produced it, all Designated Material (and all copies of such material) and all other documents containing information taken from the Designated Material, except that each party's outside counsel may retain one copy of (i) materials created during the course of the Action; (ii) work product of non-testifying consultants/experts; (iii) materials made part of the Court record; (iv) all deposition

and Court transcripts, including exhibits; and (v) deposition summaries. Such file copy must be maintained subject to the terms of this Protective Order. All recipients of Designated Material shall certify in writing within sixty (60) days of the entry of settlement or final judgment that they have complied with the provisions of this paragraph.

2.    **Return by the Court**: Upon the final conclusion of this litigation:

(a)    any Designated Material produced hereunder that has been submitted for identification or in evidence at any hearing or trial in this Action may be withdrawn by counsel for the person who so offered or originally produced such Designated Material; and

(b)    the courtroom clerk and other Court staff are authorized to deliver said Designated Material to said counsel.

M.    **<u>Modification, Relief, and Post-Termination Effect of This Protective Order</u>**

This Protective Order shall survive the final termination of this Action (whether by settlement or by final judgment) and continue in full force and effect, unless modified by an order of the Court or by written stipulation by the parties filed with the Court. The parties reserve all rights to apply to the Court at any time, before or after termination of this Action, for an order (i) modifying this Protective Order, or (ii) seeking further protection against discovery of use of Designated Material or other information. Without limiting the foregoing, this Court shall retain jurisdiction to enforce the terms of this Protective Order after the final termination of this Action.

SO ORDERED this ___ day of _____, 2006.

_____
U.S.D.J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation, )<br><br>Plaintiffs, )<br><br>v. )<br>TEVA PHARMACEUTICALS USA, Inc., )<br>a Delaware corporation, )<br><br>Defendant, ) | C.A. No. 02-1512 (KAJ)<br>(Consolidated) |
| TEVA PHARMACEUTICALS USA, Inc., )<br>a Delaware corporation, and TEVA<br>PHARMACEUTICAL INDUSTRIES )<br>LTD., an Israeli corporation, )<br><br>Counterclaim Plaintiffs, )<br><br>v. )<br>ABBOTT LABORATORIES, an Illinois )<br>corporation, FOURNIER INDUSTRIE )<br>ET SANTÉ, a French corporation, and )<br>LABORATOIRES FOURNIER S.A., a )<br>French corporation, )<br><br>Counterclaim Defendants, ) | |
| ABBOTT LABORATORIES, an Illinois corporation, FOURNIER INDUSTRIE ET SANTÉ, a French corporation, and LABORATOIRES FOURNIER S.A., a French corporation, )<br><br>Plaintiffs, )<br><br>v. )<br>IMPAX LABORATORIES, INC., a )<br>Delaware corporation )<br><br>Defendant. ) | C.A. No. 03-120 (KAJ)<br>(Consolidated) |

| | | |
|---|---|---|
| IN RE TRICOR DIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | C.A. No. 05-340 (KAJ) (Consolidated) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |
| IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION | ) ) ) | C.A. No. 05-360 (KAJ) (Consolidated) |
| THIS DOCUMENT RELATES TO ALL ACTIONS | ) ) ) ) | |

## CONFIDENTIALITY AGREEMENT

The undersigned hereby acknowledges that (s)he has read the Protective Order entered on

_____, in the above-captioned action, and understands the terms thereof, and agrees, upon

threat of penalty of contempt, to be bound by such terms of each paragraph of the Protective

Order. **In particular, the undersigned understands that the terms of said Protective Order**

**obligate him/her to use Confidential or Highly Confidential or Restricted Pricing Material**

**solely for the purposes of this Litigation and to not disclose any such Confidential or Highly**

**Confidential or Restricted Pricing Material to any other person, firm or entity**, except that

there will be no restriction on documents that are used as exhibits in Court, unless such exhibits

were filed under seal, and there will be no restriction on information disclosed in open Court,

unless the Courtroom is sealed at the time of such disclosure.   Further, for the purpose of

enforcing this Confidentiality Agreement the undersigned hereby subjects himself/herself to the

jurisdiction of this Court.


_____
Date
LIBA/1674717.1

_____
Signature