# Exhibit A

Chimicles & Tikellis LLP
Attorneys At Law

***CHIMICLES & TIKELLIS LLP*** has law offices in Haverford, PA and Wilmington, DE. and concentrates in the area of complex litigation, with an emphasis on securities, antitrust, consumer, ERISA and environmental litigation. As a group, the Partners in Chimicles & Tikellis have significant substantive experience in the prosecution of class action and derivative litigation in state and federal trial and appellate courts across the country, including the United States Supreme Court and the highest courts of more than 20 states. The Firm is comprised of seven Partners, four Of Counsel and eleven Associates. The Firm also works closely with a number of experts and consultants in the financial, forensic accounting and investigative fields.    The Firm's e-mail is MAIL@CHIMICLES.COM and its website is WWW.CHIMICLES.COM

***NICHOLAS E. CHIMICLES*** is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors.    Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments.    While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law.    Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in United States v. Pfizer, Inc., (Antibiotics Antitrust Litigation), Civil Action No. 78-1155 (E.D. Pa.); Penn Galvanizing Co. v. Lukens Steel Co., Civil Action No. 71-1777 (E.D. Pa.); Wolgin v. State Mutual Investors, 265 Pa. Super. 525, 402 A.2d 669 (1979); Beta Consultants & Administrators v. Centennial Life Ins. Co., unreported opinion by Judge Newcomer (E.D. Pa. 1980); and R. & M. Musselman, Inc., et al. v. Line Lexington Lumber & Millwork, Inc., C.A. 727458-02-1 (Bucks Co. 1981).

As a name partner in his own firm since 1981, Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits.    Most recently, Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. In re Real Estate Associates Limited Partner-

ships Litigation, No. CV 98-7035 DDP, was tried in the federal district court in Los Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury, after hearing testimony from more than 25 witnesses and viewing in excess of 500 exhibits, returned an unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a), 1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10" Verdicts of 2002, as reported by the National Law Journal (verdictsearch.com), and stands as the largest jury verdict in favor of plaintiffs in a case brought under the federal securities laws since their amendment in 1995. Mr. Chimicles was assisted at trial by Partner Kimberly Donaldson. Other Firm professional staff members who provided invaluable assistance to the result in this landmark decision were Kathleen P. Chimicles, the Firm's financial specialist, who worked with and assisted plaintiffs' expert witnesses and consultants; and associates Candice L.H. Hegedus and M. Katherine Meermans. Following post-trial motions, the Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in prejudgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, approximately $90 million on Count II and $30 million on Count I. The Real Estate Associates judgment was settled by an agreement approved by the Court in November 2003, providing for the payment of a total of $83 million, of which $48 million was paid immediately and the balance of $35 million will be paid in 5 equal annual installments of $7 million per year between 2004 and 2008.

In other federal securities fraud cases, Mr. Chimicles served as a Lead Counsel in the Hercules Securities Litigation, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); Scott Paper Securities Litigation, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); Sunrise Savings & Loan Securities Litigation, MDL No. 655 (E.D. Pa.) ($15 million recovery); Storage Technology Corp. Securities Litigation, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); In re: Fiddler's Woods Bondholders Litigation, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial

development bond issue (recovery of more than $7 million for the class); and Charter Securities Litigation, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million). He served as a Lead Counsel for the shareholder class in the Continental Illinois Securities Litigation, Civil Action No. 82 C 4712 (N.D. Ill.), one aspect of which involved a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the class ultimately recovered nearly $40 million).

By virtue of the Fiddler's Woods litigation (in which Mr. Chimicles also represented the court-appointed Receiver), his representation of the Bondholders' Protection Committee for the Baptist Estates Life Care Facility (Doylestown, PA), a $15 million tax-exempt bond issue which defaulted, and his representation of bond-holders in other litigation in Atlanta, Orlando and New Jersey arising from defaulted bond issues aggregating over $135 million, Mr. Chimicles established a national reputation for representing the interests of bondholders in default situations.

In another specialized area of securities litigation, involving the recovery of losses incurred by purchasers and holders of units in public limited partnerships, Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for class members, in addition to the Real Estate Associates Limited Partnership Litigation, discussed above, Mr. Chimicles was a member of the Executive Committee in the Prudential Limited Partnerships Litigation, MDL 1005 (S.D.N.Y.), where the class recovered $130 million in settlement from Prudential and other defendants in a settlement approved by Judge Milton Pollack in November 1995. Mr. Chimicles was lead counsel in the PaineWebber Limited Partnerships Litigation, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997. Distributions to class members in the PaineWebber case were made in 1998 and supplemental distributions under the settlement were made in 2003. Final distributions to class members are expected in the future. As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Federal District Court in Delaware, Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds. Those settlements were approved by the district court in July 1998. In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provides both monetary ($6.6 million) and equitable (extension of the partnerships' lives) relief for the limited partners. In

February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships sponsored by Phoenix Leasing Incorporated and its affiliates. (In Re Phoenix Leasing Incorporated Limited Partnership Litigation, Superior Court of the State of California, County of Marin, Case No. 173739). The settlement resulted in the payment of more than $21 million in cash (part of which is to be collected from assets of the defunct insurer, Reliance Insurance Company) in settlement of breach of fiduciary duty claims.

Mr. Chimicles has represented limited partners who successfully have sought and secured the liquidation of their partnerships' assets or the reorganization of the partnership. For example, in In re the Mendik Real Estate Limited Partnership, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. The settlement was approved in late 1998 and the limited partners have received their liquidation proceeds. As co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement, approved by the Delaware Chancery Court in 2000, of a suit filed against the general partners of Aetna Real Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in numerous suits brought in courts across the country arising from proposed mergers, acquisitions and hostile takeovers. For example, in Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a Lead Counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed spin-off of Burger King, a device sought to be used by Pillsbury's board to ward off Grand Metropolitan's takeover. In numerous other cases, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in the context of a takeover or going private transaction. Randee L. Shantzer, et al. v. Charter Medical Corp., et al., Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; In Re Interstate Bakeries Corporation Shareholders Litigation, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a Lead and Co-Lead Counsel in numerous class suits. He was Co-Lead Counsel in the Travel Agency Commission Antitrust Litigation, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts. The case was settled in late 1996 for more than $80 million. Mr. Chimicles was also Co-Lead Counsel in the Insurance Antitrust Litigation, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts. The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court. In re Insurance Antitrust Litigation, 938 F.2d 919 (9th Cir. 1991); aff'd sub nom. Hartford Fire Insurance Co. v. California, _ U.S. _, 113 S.Ct. 2891 (1993).

Mr. Chimicles was also lead counsel in Crawford's Auto-Center v. Automatic Data Processing, Inc., C.A. No. 97-CV-2085 (E.D. Pa.), an antitrust class action that was settled for more than $5 million in cash and other valuable consideration. The settlement, which was approved by the court in March 1999, provides among other items of relief that an auto parts interchange license agreement (that was negotiated as part of the settlement) would be made available to class members.

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings. In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Circuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, In re Standard Metals Corp., 817 F.2d 625 (10th Cir.), rev'd in part on rehearing, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, In re the Charter Company, 876 F.2d 866 (11th Cir. 1989).

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants. He was Lead Counsel in the Philadelphia Electric Company Securities Litigation, Master File No. 85-1878 (E.D. Pa.) and a Lead Counsel in the Consumers Power Company Derivative Litigation, Master File No. 84-CV-3788 AA (E.D. Mich.). Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach

Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a PECO board of directors resolution. In re Philadelphia Electric Company Derivative Litigation, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a Co-Lead Counsel in a major environmental litigation, Ashland Oil Spill Litigation, Master File M-14670 (W.D. Pa.), involving the claims of residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm is involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as Special Counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. City of Philadelphia, et al. v. Lead Industries Ass'n, et al., Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School - Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia, and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles is the author of numerous articles including an article co-

authored with the Firm's Financial Specialist, Kathleen P. Chimicles nee Balon, published in the New York Law Journal, August 26, 1993, entitled "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform;" and The Securities Case: The Plaintiff's Perspective, published in the Practical Litigator, Vol. 6, No. 6 (Nov. 1995).

Mr. Chimicles is the past President of the National Association of Securities and Commercial Law Attorneys (1999-2001) based in Washington, D.C., the Chairman of the Public Affairs Committee of the American Hellenic Institute, also based in Washington, D.C., and is a member of the board of directors of the Opera Company of Philadelphia and Pennsylvanians for Modern Courts.    He received the prestigious Ellis Island Medal of Honor in May 2004, in recognition of his professional achievements and history of charitable contributions to educational, cultural and religious organizations.

*PAMELA S. TIKELLIS* is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as Liaison Counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as Lead Counsel in Home Shopping Network Shareholders and Securities Litigation, (Civil Action No. 93-406; Court of Chancery Consolidated Civil Action No. 12868; Delaware

District Court Civil Action No. 93-336 (MMS) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as Lead Counsel, she actively prosecuted litigation on behalf of Cyprus Amax stockholders arising out of a proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco.    (In re Cyprus Amax Shareholders Litigation, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of Lead Counsel representing a class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co.  The litigation resulted in Wells Fargo's acquisition of First Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (First Interstate Bancorp Shareholders Litigation, Consolidated Civil Action No. 14623).

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies and their stockholders. Sanders v. Wang, No. 16640 (Delaware Court of Chancery), was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001).

In the limited partnership arena, Ms. Tikellis along with partner Mr. Chimicles has actively and successfully prosecuted several cases including ML Lee Acquisition Fund L.P. and ML-Lee Acquisition Fund II L.P. and ML-Lee Acquisition Fund (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724). The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with Mr. Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P.    This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (Aetna Real Estate Associates, L.P., Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the year of 2002 and 2003, Ms. Tikellis argued successfully three appeals in the Delaware Supreme Court. She argued *en banc* to the Delaware Supreme Court in <u>Saito v. McKesson Corporation</u>, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by Plaintiff. Importantly, the documents ultimately received in the books and records *Saito* case have resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors and discovery is ongoing in that derivative suit. <u>Saito v. McCall</u> pending in the Court of Chancery, Civil Action No. 17132. The derivative suit was recently settled and the settlement won approval by the Court of Chancery. The settlements provide for a $30 million payment to the Company by the insurance carriers for the directors and the implementation of important corporate governance reforms.

Most recently, in a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. <u>Krasner v. Moffett</u>, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. A settlement providing for a $17.5 million fund for the class was approved by the Court of Chancery on April 20, 2006.

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware. In addition, Ms. Tikellis is President of the Delaware chapter of the International Network of Boutique Law Firms.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practicing Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics.    She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the OPAL Conference regarding the various tools available in Delaware to protect shareholder rights.

**JAMES R. MALONE, JR.** is a partner in the law firm of Chimicles & Tikellis. Mr. Malone is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of the United States, the United States Courts of Appeal for the First, Third, Fifth, Seventh, Ninth and D.C. Circuits and the United States District Courts for the Eastern District of Pennsylvania and the Northern District of California. Mr. Malone is a 1984 *cum laude* graduate of the Villanova University School of Law where he was a staff member on the Villanova Law Review and was elected to the Order of the Coif. Upon graduation from law school, Mr. Malone was associated with a major Philadelphia law firm where he concentrated in bankruptcy and commercial litigation.

Mr. Malone has substantial experience in the securities field. With his former partner, Oliver Burt, he served as co-lead counsel in Hoexter v. Simmons, Civ. No. 89-1069-PHX-RCB (D. Ariz.) in which a $10.8 million settlement was achieved. In Serabian v. Amoskeag Bank, 24 F.3d 357 (1st Cir. 1994), Mr. Malone successfully argued for the reversal of a district court order dismissing a securities complaint in a case involving deceptive financial reporting by a New Hampshire bank holding company.    Mr. Malone served as co-lead counsel in Winsor v. Holgerson, No. 89-2507 (PBS) (D. Mass.), a case involving the accounting practices of a failed savings bank, in which a $12.5 million settlement was reached. Mr. Malone has been active in cases involving public offerings of limited partnerships; he served as lead counsel in In re Jiffy Lube Insured Income Partners Securities Litigation. Civil Action No. 10828 (Del. Ch.).   The settlement resulted in limited partnership investors receiving the full amount of their initial investment. He has also been active in transactional cases, such as limited partnership roll-ups, and in shareholder derivative actions. Currently, he is active in DeBenedictis v. Merrill Lynch & Co., Inc., No. 04-404 (JLL)(D.N.J.), a class action challenging the sufficiency of Merrill Lynch's prospectus disclosures for Class B shares in its proprietary mutual funds.

In the area of consumer litigation, Mr. Malone was a member of the Executive Committee in In re Advanta Credit Card Terms Litigation, MDL Docket No. 1233, a consumer case brought on behalf of credit card holders. The case resulted in a settlement of $ 7.25 million dollars that also provided for substantial reductions in rates for credit card holders. Along with his partner, Michael Gottsch, Mr. Malone was active in Flannick v. First Union Home Equity Bank, N.A., No. 98-6080, an action brought under the National Bank Act against a home equity lender, which resulted in a substantial recovery.

In the field of ERISA litigation, Mr. Malone served as co-lead counsel in In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir.), in which he successfully argued for the reversal of a district court order granting summary judgment in an ERISA class action arising out of the failure of the Executive Life Insurance Company. The case was the first appellate decision addressing Section 404(c) of ERISA and the liability of fiduciaries in certain individual account plans. Mr. Malone served as counsel in Corcoran v. Bell Atlantic Corporation, 97-cv-510 (E.D. Pa.) an ERISA class action challenging the conversion of a defined benefit pension plan into a cash balance plan. The case involved issues relating to the calculation of accrued benefits under ERISA's vesting standards and the elimination of early retirement benefits. He is currently active in In re Lucent Death Benefits Litigation, No. 2:03-5017(WGB)(D.N.J.), which challenges Lucent's elimination of spousal death benefits for retirees that were funded as part of a defined benefit pension plan.

Mr. Malone has been involved in a variety of different antitrust actions in both state and federal court. He was active in indirect purchaser actions arising out of price-fixing in the market for sorbates pending in Tennessee and Wisconsin; the resolution of these cases resulted in substantial recoveries by indirect purchasers. Mr. Malone was also active in In re Microsoft Antitrust Litig., MDL No. 1332, and in In re Buspirone Antitrust Litigation, MDL No. 1413, where he served in a variety of roles.

Mr. Malone served as co-lead counsel in Gersenson v. Pennsylvania Life & Health Insurance Guaranty Association, April Term 1994, No. 3468, an insurance insolvency class action brought under the Pennsylvania Life & Health Insurance Guaranty Association Act. In June 1998, the Philadelphia Court of Common Pleas granted summary judgment in favor of the plaintiff class in the amount of $16.5 million dollars. Mr. Malone successfully argued the resulting appeal and successfully opposed the defendant's petition for allocatur before the Supreme Court of Pennsylvania.

Mr. Malone is a member of The Philadelphia Bar Association, and is active on its cy pres committee, which works to assure that unclaimed class settlement funds are put to appropriate charitable uses.

***MICHAEL D. GOTTSCH***, is a partner in the Firm's Haverford office. Mr. Gottsch is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Courts of Appeals for the Third and Ninth Circuits. He is a graduate of Temple University School of Law (J.D. 1983) and Marquette University (B.S. 1977). From 1986 to 1987 he served as a Law Clerk to the Honorable Joseph H. Rodriguez, Judge of the United States District Court for the District of New Jersey.

***ROBERT J. KRINER, JR.*** is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of The Delaware Journal of Corporate Law. From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

***STEVEN A. SCHWARTZ***, a Partner in the Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Courts for the Eastern and Western Districts of Pennsylvania and the Eastern District of Michigan, and the United States Court of Appeals for the Third Circuit. He is a graduate of the Duke University School of Law (J.D. 1987) where he served as a senior editor of Law & Contemporary Problems. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader, Harrison, Segal & Lewis, LLP, a major Philadelphia firm, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. Most recently, he served as Co-Lead Counsel for a certified national class of employees of Siemens Medical Solutions whose 1998 Incentive Compensation was retroactively reduced by 30% by Siemens. The Philadelphia

Court of Common Pleas granted Plaintiffs' motion for summary judgment as to liability, and a few days before trial was scheduled to begin, Siemens agreed to pay class members a net recovery of the full amount that their incentive compensation was reduced (approximately $10.1 million), and pay all counsel fees and expenses in addition to the class members' recovery.

Similarly, in connection with the withdrawal by Bayer of its anti-cholesterol drug Baycol, Mr. Schwartz represents various Health and Welfare Funds (including the Pennsylvania Employees Benefit Trust Fund, the Philadelphia Firefighters Union, and the American Federation of State, County and Municipal Workers District Council 47) and a certified national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members/insureds and to pay for the costs of switching their members/insureds from Baycol to an another cholesterol-lowering drug. The Philadelphia Court of Common Pleas granted plaintiffs' motion for summary judgment as to liability; this is the first and only judgment that has been entered against Bayer anywhere in the United States in connection with the withdrawal of Baycol. The Court subsequently certified a national class, and the parties recently reached a settlement in which Bayer agreed to pay class members a net recovery that approximates the maximum damages (including pre-judgment interest) suffered by class members.

In the securities litigation field, as lead or co-lead counsel, Mr. Schwartz has obtained significant recoveries for defrauded investors. In In Re Coin Fund Litigation, (Superior Court of the State of California for the County of Los Angeles), Mr. Schwartz served as plaintiffs' co-lead counsel and successfully obtained a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as Plaintiffs Co-Lead Counsel in In re Veritas Software Corp. Derivative Litigation (Superior Court of the State of California for the County of Santa Clara). In early 2005, the Court approved a settlement in which Veritas agreed to extensive corporate governance changes, including requiring that 75% of the members of Veritas' Board of Directors would be independent directors, and that all reporting 16b officers and directors of the Company would be prohibited from engaging in any sales of Veritas' stock except pursuant to a newly-enacted 10b5-1 Trading Plan. Mr. Schwartz currently serves as Plaintiffs' Co-Lead Counsel in the Pennexx Securities Litigation, (E.D. Pa.) and Liaison Counsel in In Re DVI Securities Litigation, (E.D. Pa.).

In the consumer protection field, Mr. Schwartz served as plaintiffs' co-lead counsel in Wolens, et al. v. American Airlines, Inc. In that class action,

plaintiffs alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer miles travel awards. In a landmark decision, the United States Supreme Court held that plaintiffs' claims were not preempted by the Federal Aviation Act. 513 U.S. 219 (1995). The parties ultimately reached a settlement in which American agreed to provide class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages, which the Court valued at between $ 95.6 million to $ 141.6 million. Mr. Schwartz also represented a national class of owners of wood clad doors and windows manufactured by Marvin Windows that prematurely rotted due to a defective wood preservative. (Minn. 4th Judicial Dist.). Even though the windows were between 12 and 16 years old, the parties reached a national settlement providing class members with the opportunity to obtain replacement windows with minimum net discounts of between 45 % and 58 %.

In the environmental field, Mr. Schwartz played a significant role as part of a large team of plaintiffs' counsel who prosecuted the claims of fisherman, property owners, and Native Americans who were injured as a result of the Exxon Valdez oil spill. The trial of that case resulted in a jury verdict in excess of $5.3 billion. Appellate proceedings in the 9th Circuit Court of Appeals are still ongoing.

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/physical medicine services provided to its insureds. Nationwide agreed to pay class members approximately 130% of their bills. Mr. Schwartz is currently representing certified classes of medical providers seeking interest for overdue bills for treatment provided to insureds of SEPTA and Progressive Insurance Company.

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee for medical monitoring claims in In re Pennsylvania Diet Drugs Litigation, (Phila. C.C.P.). To settle that case, American Home Products agreed to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfluramine, the "fen" of the "fen phen" diet drug combination.

**KIMBERLY M. DONALDSON**, a Partner in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, and the United States

District Courts for the Eastern District of Pennsylvania and District of New Jersey. Ms. Donaldson is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau, Consumer Protection Division.    Ms. Donaldson's practice includes the representation of investors (shareholders and limited partners) and consumers in major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Ms. Donaldson was the principal trial assistant to Mr. Chimicles during the trial of the <u>Real Estate Associates Limited Partnership Litigation</u>, which resulted in a jury verdict totaling $185 million in November 2002, following a six week trial. (For more details see Mr. Chimicles' biography at page 1-2).

**MORRIS M. SHUSTER**, Of Counsel, is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of Pennsylvania, and all other Pennsylvania Appellate and trial courts.

Mr. Shuster is a graduate of the Wharton School, University of Pennsylvania (B.S. in Economics, 1951), and of the University of Pennsylvania Law School (J.D., 1954).

Prior to joining the Firm, Mr. Shuster was an active civil litigator as an associate and partner in a major Philadelphia litigation firm, as a named-partner in his own firm, and as special litigation counsel to a large Philadelphia, full-service firm. Over the last 20 years, he has concentrated his practice in consumer class actions against banks and insurance companies. He has been successful in obtaining multi-million dollar recoveries in these cases.

Mr. Shuster is currently a faculty member at the University of Pennsylvania Law School where he teaches Trial Advocacy. In 1981, he was a full-time faculty member at the University of Pennsylvania Law School and taught a course in The Lawyering Process. He also has been a guest lecturer on various legal subjects at the University of Pennsylvania Law School, Medical School, and Dental School, and at Drexel University. He is a member of the Advisory Committee for the Public Service Program at the University of Pennsylvania Law School where he developed the mentor/student pro bono project.

Mr. Shuster is a past president of The Philadelphia Trial Lawyers' Association. He was appointed by the Third Circuit Court of Appeals as Chairperson

of the Bankruptcy Judge Search Committee. He was appointed by the District Court for the Eastern District of Pennsylvania as Chairperson of a Panel to consider reappointment of a U.S. Magistrate.

In the Philadelphia Bar Association, Mr. Shuster has served as a member of the Board of Governors, Chairperson of the Judicial Commission, Committee on Judicial Selection and Reform, Committee on Civil Legislation/Legislative Liaison, and Committee on Civil Judicial Procedure (state courts). He is listed in Who's Who in American Law.

*DENISE DAVIS SCHWARTZMAN*, Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of The Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in Taxation from the Villanova University Law School. Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in In re Charter Company, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in Ashland Oil Spill Litigation, Master file M-14670 (W.D. Pa), In re Sunrise Securities Litigation, MDL No. 685 (E.D.Pa.) and represented our firm on the Litigation Committee in Prudential Securities Incorporated Limited Partnership Litigation, MDL 1005 (S.D.N.Y.). Ms. Schwartzman represented the firm on the plaintiffs' Co-Lead Counsel Committee in Spitzer v. Abdelhak, No. 98-CV-6475 (E.D.Pa.), a civil RICO action which recovered damages  on behalf of the physicians and research scientists of the now defunct Allegheny Health Education and Research Foundation (AHERF), a major health care provider in the Delaware Valley and is a senior member of the trial team for the Firm in In re Mutual Funds Investment Litigation, MDL 1586, a complex coordinated derivative action alleging violations of the Investment Company Act and the Investment Advisers Act by the investment advisers to eighteen mutual fund families. Prior to relocating in Philadelphia, she was associated with a major law firm in San Antonio, Texas.

***ANTHONY ALLEN GEYELIN***, Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the Villanova Law Review, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From 1997 until joining the firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.

***CANDICE L.H. HEGEDUS***, Of Counsel, is admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit. She is a graduate of Villanova University School of Law (J.D. 1979) and Muhlenberg College *cum laude* (B.A. 1974). Prior to joining the Firm, she practiced with major Philadelphia litigation firms. The focus of her practice is complex litigation, including securities fraud and limited partnership cases behalf of shareholders and antitrust matters. Ms. Hegedus was a member of the team who litigated In Re Real Estate Associates Limited Partnership Litigation, No. CV-98-7035 (Federal District Court, Los Angeles), a case brought for violation of federal securities laws. Following a six-week trial in November 2002, the jury returned a $185 million plaintiffs' verdict, the first verdict awarding substantial monetary damages since the passage of the Private Securities Litigation Act of 1995.

***TIMOTHY P. BRIGGS***, an associate in the Haverford office, is admitted to practice before the Supreme Court of Pennsylvania. He is a graduate of the Temple University Beasley School of Law (J.D. 2005) and received his undergraduate degree in Political Science from West Chester University (B.A.,

1992). Prior to joining the firm, Mr. Briggs enjoyed a long and distinguished career in the political arena. Mr. Briggs had served in senior positions with U.S. Congressmen Joseph Hoeffel (PA) and Bill Pascrell (NJ) as well as Pennsylvania State Senator Connie Williams.

**DANIEL J. BROWN**, an associate in the Wilmington Office, is admitted to practice before the Supreme Court of Delaware and the U.S. District Court for the District of Delaware. Mr. Brown received his J.D., *magna cum laude,* in 2005 from Widener University School of Law, where he served as an Articles Editor for the *Delaware Journal of Corporate Law*. While in law school, Mr. Brown was a recipient of the prestigious Wolcott Fellowship, in which he served as a law clerk for the Honorable Myron T. Steele, Chief Justice, of the Delaware Supreme Court. Mr. Brown received his B.A. in psychology from Villanova University in 2001.

**FATEMA E.F. BURKEY,** an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She graduated from Washington University School of Law (J.D. 2003) and received her undergraduate degree in French and English from Georgetown University (B.S. 1998 *cum laude*). While in law school, Ms. Burkey served as Associate Editor of the Washington University Law Quarterly and authored, *Prosecutor v. Aleksovski: A Critical Analysis of the ICTY Appeals Chamber's Abandonment of Witness Protection Measures*, 82 Wash. U. L.Q. 297-318 (2004).

**ROBERT R. DAVIS,** an associate in the Wilmington office, is admitted to practice before the Supreme Court of Delaware and the Supreme Court of Pennsylvania. He is a 2003 graduate of William and Mary, where he received his J.D. and Master's in Public Policy. Mr. Davis received his undergraduate degree from Appalachian State University in 1999. Prior to joining the firm, Mr. Davis served as a law clerk for the Honorable Joseph J. Farnan, Jr. of the United States District Court for the District of Delaware.

**BENJAMIN F. JOHNS**, an associate in the Haverford office, is admitted to practice before the United States Court of Appeals for the Third Circuit, the District Court for the Eastern District of Pennsylvania, the District Court for the District of New Jersey, as well as the Supreme Courts of Pennsylvania and New Jersey. He is a graduate of the Penn State Dickinson School of Law (J.D. 2005), the Penn State Harrisburg School of Business Administration (M.B.A. 2004, Beta Gamma Sigma), and Washington and Lee University (B.S. 2002, *cum laude*). While attending law school, Mr. Johns was a

member of the Woolsack Honor Society and Irving R. Kaufman Securities Moot Court Team. He is a member of the Philadelphia Bar Association and the Association of Trial Lawyers of America.

**KIMBERLY M. LITMAN**, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She is a graduate of the Temple University Beasley School of Law (J.D. 2003) and received her undergraduate degree in Psychology from the University of Maryland at College Park (B.A. 2000). While in law school, she served as Executive Editor of the Temple Political & Civil Rights Law Review and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida. Ms. Litman's pro bono activities include serving as a volunteer attorney with the Philadelphia Volunteers for the Indigent Program, a non-profit organization that provides legal services to low-income clients who reside in Philadelphia or have legal problems in Philadelphia.

**TIMOTHY N. MATHEWS**, an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. *magna cum laude* 2003) and Rutgers University-Camden (B.A. *summa cum laude* 2000). While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the Rutgers Journal of Law & Religion and one of the top 10 oralists in the 2003 Judge John R. Brown Admiralty Moot Court competition. Mr. Mathews' practice includes the representation of investors in complex antitrust, securities, and shareholder derivative litigation. He is an active member of the Firm's litigation team in In re Mutual Funds Investment Litigation (MDL 04-1586), a multidistrict litigation alleging claims related to late trading and market timing of mutual funds in eighteen mutual fund families and involving hundreds of parties. Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and the United States District Court for the Eastern District of Pennsylvania.

**MARY KATHERINE MEERMANS**, an associate in the Haverford office, graduated *cum laude* from the Law School of University of Pennsylvania in 1982. She served as a law clerk to the Honorable Paul M. Chalfin, Philadelphia Court of Common Pleas, from September 1982 to January 1984, and to the Honorable Phyllis W. Beck from January 1984 to October 1984. She is a member of the Pennsylvania Bar.

*A. ZACHARY NAYLOR*, an associate in the Wilmington office, is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*), the University of Delaware (B.A. in Economics and Political Science, 2000) and Salesianum School.   While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware.   He was also a Managing Editor of the *Delaware Journal of Corporate Law*, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication.   Mr. Naylor is admitted to practice before the Supreme Court of the State of Delaware, the United States Court of Appeals for the Third Circuit and United States District Court for the District of Delaware.

*JOSEPH G. SAUDER,* an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania and the District of New Jersey.   Mr. Sauder received his B.S., *magna cum laude* in Finance from Temple University in 1995 and his J.D. from Temple University School of Law in 1998, where he was a member of *Temple Law Review*.   Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation.   From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies.   His pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

*DANIEL B. SCOTT*, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit and the United States District Courts for the District of New Jersey, Eastern District of Pennsylvania and Eastern District of Michigan.   He is a graduate of Emory University School of Law (J.D. 2001, Atlanta Law Fellow, Order of Barristers, Order of Emory Advocates) and Pennsylvania State University (B.S. Economics 1991, *with Distinction*, University Scholar).   His practice includes the representation of companies, investors and consumers in complex antitrust, securities and consumer protection litigation. In In re Pennsylvania Baycol Third Party Payor Litigation, a class action in Philadelphia Court of Common Pleas for which Chimicles & Tikellis serves as co-lead counsel, Mr. Scott was instrumental in helping obtain partial summary judgment on liability in favor of one of the firm's clients.   This is the first and only judgment to be entered against Bayer in the United States in connection with the withdrawal of

Baycol.   Mr. Scott also materially assisted in briefing a motion for class certification in that case, resulting in the certification of one of the few national class actions involving third party payors to be certified in a state court.   Shortly before trial, the firm reached a settlement with Bayer in which Bayer agreed to pay class members a net recovery that approximates their maximum damages.   His *pro bono* activities include the representation of a political asylum applicant in the Third Circuit.

***KATHLEEN P. CHIMICLES, ASA***, the Firm's Financial Specialist between 1992 and 2005, and currently a consultant to the Firm, is a graduate of Drexel University (B.S. Finance 1983) and Villanova University (Master of Taxation 1992).   Ms. Chimicles is a Senior Member of the American Society of Appraisers. Before leaving the Firm to pursue other business interests, Ms. Chimicles played a significant role in some of the Firm's landmark cases, including Real Estate Associates Limited Partnerships Litigation, PaineWebber Limited Partnerships Litigation and Prudential Limited Partnerships Litigation.   In each of these cases, Ms. Chimicles coordinated the efforts of plaintiffs' experts' witnesses including assisting in the preparation of expert reports in connection with depositions and trial.   Prior to joining the Firm, Ms. Chimicles was a Vice President of the investment bank, Howard, Lawson & Co., where she had responsibility for a broad range of corporate finance assignments.   Ms. Chimicles nee Balon has co-authored several articles, including "Giving the Company Away (While Keeping the Benefits)," Lawyer's Digest, March 1987, "Leveraged ESOPs - Buyers of Companies," Lawyer's Digest, May 1988, and together with Mr. Chimicles, "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform," the New York Law Journal, August 26, 1993.   Ms. Chimicles has also served as a panelist at various seminars and conventions regarding financing and valuation issues.

# Exhibit B

# MILLER FAUCHER and CAFFERTY LLP

**www.millerfaucher.com**

Founded in 1992, Miller Faucher combines the talents of attorneys with a wide range of experience in complex civil litigation. The firm has offices in Chicago, Illinois, Philadelphia, Pennsylvania and Ann Arbor, Michigan. Miller Faucher's primary expertise is in the area of federal and state securities, commodities, employee benefits and antitrust litigation. The skill and experience of attorneys now practicing with Miller Faucher has been recognized on repeated occasions by courts which have appointed these attorneys to major positions in complex multi-district or consolidated litigation. As shown below, attorneys from Miller Faucher have taken a leading role in numerous important actions on behalf of defrauded investors, employees, consumers, companies, and others. Miller Faucher attorneys have been responsible for a number of outstanding recoveries and important decisions.[1]

## I. Antitrust

*Federal and state antitrust laws protect the public interest by ensuring market competition. Business practices which restrain trade or destroy competition—such as competitors fixing prices—are generally prohibited. In order to supplement governmental enforcement of the antitrust laws, federal and state law provide for private causes of action to persons injured in their business or property by reason of antitrust violations. Some of the significant antitrust cases in which Miller Faucher attorneys have been prominently involved include:*

❏ *Nichols v. SmithKline Beecham Corp.,* No. 00-CV -442 (E.D. Pa.). Plaintiffs allege that SmithKline, which makes the brand-name antidepressant Paxil, misled the United States

Patent Office into issuing patents to protect Paxil from competition from generic substitutes. On April 22, 2005, Judge John R. Padova granted final approval to a $65 million class action settlement for the benefit of consumers and third-party payors who paid for Paxil. *Nichols v. SmithKline Beecham Corp.,* 2005-1 Trade Cas. (CCH) ¶74,762 (E.D. Pa. April 22, 2005). *See also Nichols v. SmithKline Beecham Corp.,* 2003 WL 302352 2003-1 Trade Cas. (CCH) ¶ 73,974 (E.D. Pa. Jan. 29, 2003) (denying defendant's motion to strike expert testimony). *See* www.paxilclaims.com.

❏ *In re Relafen Antitrust Litig.* 01-12239 (D. Mass.). On September 28, 2005, Judge William G. Young of the United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen. In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates. *See In re Relafen Antitrust Litig.,* 221 F.R.D. 260, 273 (D. Mass. 2004). In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.,* experienced, competent, and vigorous] in every way." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85 (D. Mass. 2005); *see also id.* at 80 ("The Court has consistently noted the exceptional efforts of class counsel."). The litigation has produced many significant decisions including: 286 F Supp. 2d 56 (D. Mass. 2003) (denying motion to dismiss); 346 F. Supp. 2d 349 (D. Mass. 2004) (denying defendant's motion for summary judgment). *See* www.relafensettlement.com.

❏ *In re Warfarin Sodium Antitrust Litig.,* MDL 98-1232 (D. Del.). Multidistrict class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company.

---

1. The cases addressed herein have been completely or partially resolved. Miller Faucher attorneys are currently involved as counsel in a number of pending class actions.

Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. On August 30, 2002, the Court granted final approval to a $44.5 million settlement. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002). On December 8, 2004, the United States Court of Appeals for the Third Circuit upheld approval of the settlement. 391 F.3d 516 (3d Cir. 2004).

*See* www.coumadinsettlement.com.

❐ *In re Cardizem CD Antitrust Litig.*, MDL No. 1278 (E.D. Mich.). Multidistrict class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic competition. On October 1, 2003, Judge Nancy Edmunds granted final approval to an $80 million settlement for the benefit of third-party payors and consumers. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *app. dismissed*, 391 F.3d 812 (6th Cir. 2004). The litigation resulted in several significant decisions, including: 105 F. Supp. 618 (E.D. Mich. 2000) (denying motions to dismiss); 105 F. Supp. 2d 682 (E.D. Mich. 2000) (granting plaintiffs' motions for partial summary judgment and holding agreement *per se* illegal under federal and state antitrust law); 200 F.R.D. 326 (E.D. Mich. 2001) (certifying exemplar end-payor class); 332 F.3d 896 (6th Cir. 2003) (upholding denial of motion to dismiss and grant of partial summary judgment), *cert. denied*, 125 S.Ct. 307 (2004).

*See* www.cardizemsettlement.com.

❐ *House v. GlaxoSmithKline PLC*, No. 2:02cv442 (E.D. Va.). Plaintiffs allege that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. On January 10, 2005, the court entered and order approving a $29 million settlement for the benefit of consumers and third-party payors.

*See* http://www.augmentinlitigation.com.

❐ *In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill). This multidistrict action arises out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. On August 4, 2000, the court granted final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999). On August 31, 2001, approval of the settlement was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

❐ *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL 1290 (D.D.C.). This multidistict class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlements on behalf of consumers, state attorneys general and third party payors in the aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

❐ *In re Lithotripsy Antitrust Litig.*, No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area. The parties have entered a settlement agreement and are in the process of seeking court approval. In granting class certification, Judge George Lindberg stated that "Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo v. Rubenstien*, 188 F.R.D. 310, 317 (N.D. Ill. 1999). On June 12, 2000, the court approved a $1.4 million settlement. *In re Lithotripsy Antitrust Litig.*, 2000 WL 765086 (N.D. Ill. June 12, 2000)

-2-

❒ **Brand-Name Prescription Drug Indirect Purchaser Actions.** Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multistate settlement in the amount of $64.3 million, which was allocated among the actions. In approving state-specific settlements, the courts were highly complementary of the performance of counsel. In approving the Wisconsin Settlement, for example, Judge Moria G. Krueger commented that "this Court, in particular, has been helped along every step of the way by some outstanding lawyering and I believe that applies to both sides. ... You can hardly say that there's been anything but five star attorneys involved in this case". *Scholfield v. Abbott Laboratories*, No. 96 CV 0460, Transcript of Hearing at 31 & 33 (Cir. Ct., Dane Co., Wisc., Oct. 5, 1998). *See also McLaughlin v. Abbott Laboratories*, No. CV 95-0628, Transcript of Proceedings at 28 (Super. Ct., Yavapai County, Oct. 28, 1998) ("I think the quality of counsel is excellent."). Reported decisions include: *Goda v Abbott Labs,* 1997-1 Trade Cas. (CCH) ¶71,730 (Superior Court D.C., Feb 3, 1997) (granting class certification); *In re Brand Name Prescription Drugs Antitrust Litig. (Holdren, Yasbin, Meyers),* 1998-1 Trade Cas. (CCH) ¶72,140 (N.D. Ill., Feb. 26, 1998) (remanding three actions to state courts).

❒ **In Re Cellular Phone Cases**, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.) Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. On February 20, 1998, the court granted final approval to a settlement that provides $35 million in in-kind benefits to the Class and a release of debt in the amount of $35 million.

❒ **Garabedian v. LASMSA Limited Partnership**, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. By order of January 27, 1998, the court granted final approval to two settlements that provide $165 million in in-kind benefits.

❒ **Lobatz v. AirTouch Cellular**, 94-1311 BTM (AJB) (S.D. Cal.) Class action alleging price-fixing of cellular telephone service in San Diego County, California. On June 11, 1997, the court approved a partial settlement in the amount of $4 million. On October 28, 1998, the Court approved another settlement that entailed $4 million worth of in-kind benefits. In an order entered May 13, 1999, Judge Moskowitz stated that "[t]hrough the course of this complex and four-year long litigation, Class Counsel [including Miller Faucher] demonstrated in their legal briefs and arguments before this Court their considerable skill and experience in litigating anti-trust class actions..."

❒ **In re Airline Ticket Commission Antitrust Litig.**, MDL No. 1058 (D. Minn.) Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

## II. Employee Benefits

*In 1974, Congress adopted the Employee Retirement Income Security Act (ERISA), which is designed to protect the interests of participants and beneficiaries in employer-sponsored pension and welfare benefits plans. Miller Faucher attorneys have been involved in numerous ERISA cases, including:*

❒ **Polk v. Hecht**, No. 92-1340 (D.N.J.). Class action brought under the Employee Retirement Income Act of 1974 on behalf of all participants or beneficiaries under the Mutual Benefit Life Savings and Investment Plan for Employees on July 16, 1991, when Mutual Benefit Life Insurance Corporation was placed in rehabilitation. On April 12, 1995, Judge Harold A. Ackerman approved a $4.55 million settlement,

-3-

noting that "[c]ounsel did a darn good job, and the record should be clear on that point, that that is the opinion, for what it's worth, of this Court."

❏ *In Re Unisys Retiree Medical Benefits ERISA Litig.*, MDL No. 969 (E.D. Pa). Class action on behalf of over 25,000 retirees of Unisys Corporation concerning entitlement to retiree medical benefits. After trial, in November 1994, Chief Judge Cahn approved a partial settlement in the amount of $72.9 million. *See* 57 F.3d 1255 (3d Cir. 1995).

### III. Securities and Commodities
*In response to the stock market crash in 1929, Congress passed the Securities Act of 1933 and the Securities Exchange Act of 1934 to protect investors from deceptive and manipulative practices and to ensure that the United States' securities markets operate freely and efficiently. These statutes, as well as other state and federal legislation, provide private causes of action to defrauded investors. Similarly, the Commodities Exchange Act of 1974 provides causes of action to investors injured by fraud or unlawful manipulation in commodities markets. Some of the significant securities and commodities cases in which Miller Faucher attorneys have been prominently involved include:*

❏ *Danis v. USN Communications, Inc.,* No. 98 C 7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and eventual bankruptcy of USN Communications, Inc. On May 7, 2001, the court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000).

❏ *In re Bank One Shareholders Class Actions*, No. 00 C 880 (N.D. Ill.). Securities fraud class action against Bank One and certain officers. On June 1, 2001, Judge Milton I. Shadur granted final approval to a $45 million settlement. In his March 16, 2001 testimony about the case before the Task Force on Selection of Class Counsel, Judge Shadur characterized Miller Faucher as a "high quality Chicago law firm."

❏ *In re Sumitomo Copper Litig.*, 96 Civ. 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act". 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998).

❏ *In re Exide Corporation Sec. Litig.*, No. 98-CV-60061 (E.D. Mich.). Securities fraud class action arising out of sales and financial practices of leading battery manufacturer. On September 2, 1999, Judge George Caram Steeh approved a settlement in the amount of $10,250,00.

❏ *In re Caremark International Inc. Sec. Litig.*, No. 94 C 4751 (N.D. Ill.). Securities fraud class action arising out of Caremark's allegedly improper financial arrangements with physicians. On December 15, 1997, the court approved a $25 million settlement.

❏ *In re Nuveen Fund Litig.*, No. 94 C 360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds. On June 3, 1997, the court approved a $24 million settlement. Magistrate Judge Edward A. Bobrick commented that "there's no question that the attorneys for the plaintiffs and the attorneys for the defendants represent the best this city [Chicago] has to offer ... this case had the best lawyers I've seen in a long time, and it is without question that I am committed to a view that their integrity is beyond reproach." (6/3/97 Tr. at 5-6.)

❏ *In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.). Securities fraud class action arising out of the Archer-Daniels-Midland price-fixing scandal. On April 4, 1997, the court approved a $30 million settlement.

❏ *In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill.). A commodities manipulation class

action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989. In December, 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995).

❐ *In re Prudential Securities Incorporated Limited Partnerships Litig.*, MDL 1005

(S.D.N.Y.). A massive multidistrict class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. On November 20, 1995, the court approved a partial settlement, which established a $110 million settlement fund. *See* 912 F. Supp. 97 (S.D.N.Y. 1996). On August 1, 1997, the court approved a partial settlement with another defendant in the amount of $22.5 million.

❐ *Feldman v. Motorola, Inc.*, No. 90 C 5887 (N.D. Ill.) Securities fraud class action against Motorola, Inc. and its high ranking officers and directors. In June 1995, the court approved a $15,000,000 settlement. *See* [1993 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶97,806 (N.D. Ill. Oct. 14, 1993).

❐ *In re Salton/Maxim Sec. Litig.*, No. 91 C 7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman approved a $2.4 million settlement, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

❐ *Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.). A $3.5 million settlement was approved on May 6, 1994 in this securities fraud class action arising out of a broker's marketing of a speculative Australian security. The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement." 855 F. Supp. 825, 831 (E.D.N.C. 1994).

❐ *In re Baldwin-United Corporation Sec. Litig.*, MDL-581, (S.D.N.Y.). The litigation involved the sale by the brokerage industry of approximately $3.5 billion of Single Premium Deferred Annuities. A $180 million settlement was obtained and is one of the largest securities class action settlements on record. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller and J. Dennis Faucher as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

❐ *In re VMS Sec. Litig.*, 89 C 9448 (N.D. Ill.). Securities fraud class action and derivative suit relative to publicly traded real estate investments. The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991). On November 19, 1991, the court approved a class and derivative settlement worth $98 million.

❐ *In re International Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.) Class action alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class. Approximately $7 million was recovered on the judgment.

❐ *In re Telesphere Sec. Litig.*, 89 C 1875 (N.D. Ill.) Securities fraud class action settled for $1.5 million. In a November 28, 1990 opinion, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." 753 F.Supp. 716, 719 (N.D. Ill. 1990). Judge Shadur also noted that Patrick E. Cafferty's credentials are "impeccable." *Id.*

❏ ***Hoxworth v. Blinder Robinson & Co.,*** 88-0285 (E.D. Pa.). Securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks." *See* 903 F.2d 186 (3rd Cir. 1990). Judgment in excess of $70 million was obtained in February, 1992. The judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992). *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

❏ *In re Public Service Company of New Mexico Class and Derivative Litig.*, Master File No. 91-0536-M (S.D. Cal.). Consolidated class and derivative action involving allegations of waste and mismanagement at the Public Service Company of New Mexico. In May, 1992, the court approved a settlement of $33 million. *See* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,988 (S.D. Cal. 1992).

❏ *In re First Commodity Corporation of Boston Customer Account Litig.*, MDL-713 (D. Mass). Class actions alleging violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

❏ *O'Brien v. National Property Analysts, Inc.*, No. 88 CIV 4153 (PKL) (S.D.N.Y.) Securities fraud class action arising out of the marketing of real estate limited partnership interests. This case was partially settled for $5,000,000 and the invalidation of wrap around mortgages worth as much as $250 million.

❏ *Spring/Rothschild v. Continental Illinois National Bank & Trust Company,* 84 C 4648 and 84 C 8596 (consolidated) (N.D. Ill.) Shareholder class action for violations of the Securities Exchange Act. The court approved a settlement in the amount of $17.5 million for the class.

❏ *Smith v. Groover*, 77 C 2297 (N.D.Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. The case was affirmed, *sub nom*, by the United States Supreme Court in *Merrill Lynch Pierce Fenner & Smith v. Curran*, 451 U. S. 906 (1982).

### *IV. Shareholder Derivative Suits*

*When the management of a corporation acts to the detriment of the interests of the company and its shareholders, an individual shareholder, upon satisfying stringent procedural requirements, can assert the right of the corporation in a derivative action. Miller Faucher attorneys have been involved in several important derivative actions including:*

❏ ***Benfield v. Steindler***, No. C-1-92-729 (S.D. Ohio). Shareholder derivative suit on behalf of General Electric Corporation shareholders arising out of the sale of military aircraft engines to the government of Israel in violation of U.S. law. On December 10, 1993, the Court approved a settlement in the amount of $19.5 million. In a January 13, 1994 Report to the Court Concerning Attorney Fees, the Special Master characterized Miller Faucher as a "leading litigation" firm, and stated that the "representation given plaintiff was first rate".

❏ *In re Structural Dynamics Research Corporation Derivative Litig.*, No. C-1-94-650 (S.D. Ohio). Shareholder derivative action arising out of Structural Dynamics's inaccurate reporting of its financial performance. In approving a $5 million settlement on July 19, 1996, Judge Herman J. Weber stated that "in my mind the highest professional service a lawyer can give to his or her client is to terminate the litigation as early as possible and at the most economical cost to your clients. The Court finds that the lawyers in this case have done just that..."

### *V. Miscellaneous*
❏ *PrimeCo Personal Communications, L.P. v. Illinois Commerce Commission*, No. 98 CH 5500

(Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infrastructure maintenance fee imposed by municipalities on telephone and other telecommunications customers in the State of Illinois. On August 1, 2002, the court granted final approval to a settlement of wireless telephone and pager customers' claims against the City of Chicago worth over $31 million. The case continues as to landline telephone customers' claims against the City of Chicago, and both wireless and landline claims against other municipalities.

❐ *Gersenson v. Pennsylvania Life and Health Insurance Guaranty Assoc.*, No. 3468 (Pa. Common Pleas). Class action against state insurance guaranty association brought on behalf of Pennsylvania resident insureds of Executive Life Insurance Co. for violating due process, and failing to pay required benefits and other monies. Plaintiff's motion for summary judgment was granted and the court awarded plaintiff and the Class more than $18 million. The judgment was upheld on appeal.

❐ *Supnick v. Amazon.Com, Inc., and Alexa Internet*, No. 00-CV-221 (W.D. Wash.). Class action against internet browsing service provider and its parent for violating user privacy by secretly collecting user personally identifying information without informed consent. On July 27, 2001, the court granted final approval to a settlement that included programmatic and monetary relief. The FTC endorsed the settlement and elected to not prosecute defendants based, in part, on the relief achieved in the settlement with plaintiffs.

❐ *Curley v. Cumberland Farms Dairy, Inc.*, No. 86-5057 (D.N.J.). Class action arising out of convenience store chain's treatment of employees to prevent losses. In September 1993 the court approved a settlement in the amount of $5.5 million. In a November 12, 1993 opinion awarding attorneys fees, Judge Stanley S. Brotman noted that "petitioners [including Mr. Faucher and Ms. Meriwether] demonstrated in this case great skill and determination in

representing their clients through the many stages of this lengthy and complex litigation."

❐ *In re Chubb Corporation Drought Insurance Litig.*, MDL-782 (S.D. Ohio). A breach of contract action arising out of the termination of an agricultural drought insurance program in the midst of the drought of 1988. The action settled for more than $70 million.

### VI.  Defendants

In addition to the above, Miller Faucher attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware). The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

### VII.  Individual Biographies

### PARTNERS

❑ *MARVIN A. MILLER* (Chicago) is a 1970 graduate of Illinois Institute of Technology-Chicago-Kent College of Law, where he was a member of the Editorial Board of the *Chicago-Kent Law Review.* Mr. Miller received his undergraduate degree from Hofstra University in Hempstead, New York in 1967. He is admitted to the state bars of Illinois and New York, the United States Court of Appeals for the Third, Fourth Seventh, and Eleventh Circuits, the United States District Courts for the Northern District of Illinois (including the Federal Trial Bar), Southern District of New York, Eastern District of Michigan, District of Arizona and Northern District of California.

❑ *J. DENNIS FAUCHER* (Philadelphia) was a partner in the Philadelphia law firm of Saul, Ewing, Remick & Saul ("Saul Ewing") from 1974 through 1991. Mr. Faucher received his law

-7-

degree from the University of Idaho Law School, *summa cum laude*, in 1962. He received his undergraduate degree from the University of Idaho in 1959. His practice includes civil trial and appellate practice before federal and state courts, banking litigation, securities litigation, and all aspects of business bankruptcy law. He is a member of the Philadelphia Trial Lawyers Association (Commercial Litigation Committee) and American Bar Association (Commercial Litigation Committee of Litigation Section). He also is a former Assistant Professor of Law, University of Idaho, and a former attorney for the Trustees of the Penn. Central Railroad Reorganization. Mr. Faucher is licensed to practice in all state and appellate and trial courts of Pennsylvania and Idaho, and is also a member of bars of the Supreme Court of the United States, Courts of Appeals for the Second, Third, and Ninth Circuits, Tax Court of the U.S., and the United States District Court for the Eastern District of Pennsylvania and the District of Idaho.

❑ *PATRICK E. CAFFERTY* (Ann Arbor) graduated from the University of Michigan, with distinction, in 1980 and obtained his J.D., *cum laude*, from Michigan State University – College of Law in 1983. In law school, he received the American Jurisprudence Award for study of commercial transactions law. From 1983 to 1985, he served as a prehearing attorney at the Michigan Court of Appeals and as a Clerk to Judge Glenn S. Allen, Jr. of that Court. Mr. Cafferty is admitted to the state bars of Michigan and Illinois, the Supreme Court of the United States, the United States Courts of Appeals for the Third, Fourth, Sixth and Seventh Circuits, and the United States District Courts for the Eastern District of Michigan, Western District of Michigan, District of Arizona and Northern District of Illinois. Mr. Cafferty is a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of cases, including *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995).

❑ *ELLEN MERIWETHER* (Philadelphia) received her law degree from George Washington University, *magna cum laude*, in 1985. She was a member of the *George Washington Law Review* and was elected to the Order of the Coif. Ms. Meriwether received a B.A. degree, *with highest honors*, from LaSalle University in 1981. She was an adjunct professor at LaSalle University teaching a course in the University's honors program from 1988-1993. Ms. Meriwether is a member of the Bar of the Commonwealth of Pennsylvania and is admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Third Circuit, the Tenth Circuit and the Eleventh Circuit, and the United States District Court for the Eastern District of Pennsylvania. She is also a member of the Federal Courts Committee and the Cy Pres Committee of the Philadelphia Bar Association, and is a member of the Pennsylvania and American Bar Associations. Prior to joining Miller Faucher, Ms. Meriwether was associated with Saul Ewing from 1987 through 1992, where she handled a variety of litigation matters in both state and federal court.

❑ *BRYAN L. CLOBES* (Philadelphia) is a 1988 graduate of the Villanova University School of Law and received his undergraduate degree from the University of Maryland. While in law school, Mr. Clobes clerked for Judge Arlin M. Adams of the United States Court of Appeals for the Third Circuit and Judge Mitchell H. Cohen of the United States District Court for the District of New Jersey. In 1988, after graduating from law school, Mr. Clobes served as a law clerk to Judge Joseph Kaplan of the Maryland Circuit Court in Baltimore. From 1989 through June, 1992, Mr. Clobes served as Trial Counsel to the Commodity Futures Trading Commission in Washington, D.C. Mr. Clobes authored *In the Wake of Varity Corp. v. Howe: An Affirmative Duty to Disclose Under ERISA,* 9 DePaul Bus. L.J. 221 (1997). Mr. Clobes is also a member of the Amicus Committee of the National Association of Securities and Commercial Law Attorneys and he has authored briefs filed with the Supreme Court in a number of recent ERISA cases, including *Varity Corp. v. Howe* and *Schoonejongen v.*

*Curtiss-Wright Corp.* Mr. Clobes has been admitted to the bar in New Jersey and Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania.

❏ *JENNIFER WINTER SPRENGEL* (Chicago) is a 1990 graduate of DePaul University College of Law, where she was a member of the *DePaul University Law Review.* She received her undergraduate degree from Purdue University in 1987. Ms. Sprengel has handled a variety of commercial litigation matters in both state and federal court. Ms. Sprengel is admitted to practice law in Illinois, the United States District Court for the Northern District of Illinois and the United States Court of Appeals for the Third and Seventh Circuits.

❏ *MICHAEL J. WILLNER* (Philadelphia) graduated from the University of Pennsylvania in 1984 and received his J.D., *cum laude*, from the Temple University School of Law in 1988. In law school, he received the American Jurisprudence Award for Secured Transactions and was a member of the Temple Law Review. After law school, Mr. Willner served as a law clerk to Senior Judge John B. Hannum of the United States District Court for the Eastern District of Pennsylvania. He then was associated with Duane Morris & Heckscher, where his practice included civil trial and appellate litigation in a variety of matters. Beginning in 1997, he was a principal of Kane, Willner & Holman, a boutique commercial litigation firm in Philadelphia. Mr. Willner has been admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania. Mr. Willner joined Miller Faucher in September 2001.

❏ *WILLIAM R. KANE* (Philadelphia) is a graduate of the Temple University School of Law, where he received his law degree, *cum laude*, in 1990 and an LL.M. in Trial Advocacy in 1994. He received his undergraduate degree, magna cum laude, from Temple University in

1983. Prior to his legal career, he was an Assistant Vice President for First Pennsylvania Bank and Corporation in the Public and Investor Relations Department, where he received the Chairman's Excellence Award for outstanding service. Mr. Kane began his law career with Duane Morris & Heckscher in 1990, where his practice focused on commercial litigation matters. Beginning in 1997, he became a principal in Kane, Willner & Holman, a boutique commercial litigation firm based in Philadelphia. In 1998, Mr. Kane was appointed to serve as a Chapter 7 panel trustee for the Office of the United States Trustee. In that role, he facilitated the administration of cases pending in the United States Bankruptcy Court for the Eastern District of Pennsylvania. He has been admitted to the bar in Pennsylvania and New Jersey. He also has been admitted to practice before the United States Court of Appeals for the Third Circuit, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the District of New Jersey and the Southern District of New York. Mr. Kane joined Miller Faucher in September 2001.

## *ASSOCIATES*

❏ *MELODY FORRESTER* (Philadelphia), an associate with the firm since 1999, is a 1993 graduate of Columbia University School of Law. Ms. Forrester received her B.A., *cum laude*, from the University of Virginia in 1985. As counsel to the firm from 1995 through 1998, Ms. Forrester focused on complex securities and antitrust class actions. From 1989 through 1995, she served as a litigation support consultant to Rogers & Wells in New York. Ms. Forrester is admitted to practice in the states of Pennsylvania and New York and the United States District Court for the Eastern District of New York. She is also a member of the New York State and American Bar Associations.

❏ *LORI A. FANNING* (Chicago) received her undergraduate degree from the University of Nebraska at Omaha in 1986, a Masters Degree from Central Michigan University (Master in Science Administration) in 1993 and her law

-9-

degree, with honors, from Illinois Institute of Technology Chicago-Kent College of Law in 2000, with a Certificate in Litigation and Alternative Dispute Resolution. Ms. Fanning is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois. She is also a member of the American, Illinois State and Chicago Bar Associations.

❏ *CHRISTOPHER B. SANCHEZ* (Chicago) is a 2000 graduate of the DePaul University College of Law, where he wrote for the *Journal of Art and Entertainment Law* and was the school's student representative for the Hispanic National Bar Association. He received his undergraduate degree, *cum laude*, from the University of New Mexico in 1996. Mr. Sanchez is currently a member of the Hispanic National Bar Association.

❏ *ANTHONY FATA* (Chicago) joined the firm in in 2003. Prior to his joining the firm, he was an associate in the trial practice of a major national law firm based in Chicago, where he spent three and a half years defending corporations, officers and directors in securities fraud and consumer fraud class actions, SEC investigations and enforcement actions, as well as product liability and ERISA cases. Mr. Fata also spent a significant amount of time handling general commercial litigation matters on behalf of corporate clients. Mr. Fata is the author of "Class Actions: Attaining Settlement Class Certification Under Amchem and Ortiz," 19 *Product Liability Law & Strategy* 1 (May 2001) and was a contributing author of *IICLE Securities Law*, Chapter 15 — Civil Liabilities And Remedies (2003). Mr. Fata is licensed to practice in Illinois and before the U.S. District Court for the Northern District of Illinois. Mr. Fata received his law degree, with honors, from The Ohio State University in 1999, where he was elected to the Order of the Coif, and his bachelor's degree from Miami University in 1995.

❏ *NYRAN ROSE PEARSON* (Chicago) received her undergraduate degree *cum laude* from Illinois Wesleyan University in 1995, and earned her law degree from the University of Oregon School of Law in 1999. Following law school, Ms. Pearson served as a clerk to the Honorable George A. Van Hoomissen of the Oregon Supreme Court. She is the author of *Protecting Agricultural Lands: An Assessment of the Exclusive Farm Use Zone System*, 77 Oregon Law Review 993 (1998). Ms. Pearson is admitted to practice in the state courts of Oregon and Illinois, as well as the United States District Courts for the Northern District of Illinois and the Southern District of Illinois. She is also a member of the American and Chicago Bar Associations.

❏ *TIMOTHY M. FRASER* (Philadelphia) joined the firm in 2005. His practice currently focuses on antitrust and consumer fraud class action litigation and private investor securities arbitrations. He is currently involved in actions against insurance brokers and casket manufacturers. Before joining the firm, his practice focused on municipal liability defense, with an emphasis in civil rights and employment discrimination defense. Mr. Fraser earned his undergraduate degree in Political Science and Economics from Villanova University in 2000. He graduated from Villanova University School of Law in 2003. He is licensed to practice law in Pennsylvania, New Jersey and Florida.

## OF COUNSEL

❏ *DOM J. RIZZI* (Chicago) received his B.S. degree from DePaul University in 1957 and his J.D. from DePaul University School of Law in 1961, where he was a member of the *DePaul University Law Review*. From 1961 through 1977, Judge Rizzi practiced law, tried at least 39 cases, and briefed and argued more that 100 appeals. On August 1, 1977, Judge Rizzi was appointed to the Circuit Court of Cook County by the Illinois Supreme Court. After serving as circuit court

judge for approximately one year, Judge Rizzi was elevated to the Appellate Court of Illinois, First District, where he served from 1978 to 1996. Judge Rizzi also teaches at both the undergraduate and graduate level: since 1980, he has been a part-time faculty member of the Loyola University School of Law and, since 1992, he has been a part-time faculty member at the University of Illinois-Chicago. Judge Rizzi became counsel to the firm in October, 1996.

❑ *MATTHEW E. VAN TINE* (Chicago) received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983, where he served as an Executive Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island. Thereafter, he worked as an associate at Schiff Hardin & Waite in Chicago, as an Assistant Corporation Counsel for the City of Chicago Law Department, and was a partner at Saunders & Monroe in Chicago. Mr. Van Tine is admitted to the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts. He is a member of the Chicago and American Bar Associations, and is the President of the Abraham Lincoln Marovitz American Inn of Court.

❑ *MICHAEL S. TARRINGER* (Philadelphia) is a 1993 graduate of the Villanova University School of Law. Mr. Tarringer received his undergraduate degree, *summa cum laude,* from Philadelphia University in 1987. Before joining the firm, Mr. Tarringer served as a law clerk to Judge Robert F. Kelly of the United States District Court for the Eastern District of Pennsylvania. Mr. Tarringer also worked at Levin, Fishbein, Sedran & Berman as a contract attorney for the Plaintiffs' Legal Committee in the *Orthopedic Bone Screw Products Liability Litigation*, MDL 1014, as well as the Plaintiffs' Management Committee in the *Diet Drugs Products Liability Litigation*, MDL 1203. Mr. Tarringer is admitted to the bar in Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States District Court for the Eastern District of Pennsylvania.

-11-

Exhibit C

## RESUME OF

## LABATON SUCHAROW & RUDOFF LLP

Labaton Sucharow & Rudoff LLP ("Labaton Sucharow") is a firm consisting of more than 50 attorneys located in New York City and Florida. Formed in 1963, the firm is now in its forty-first year of practice. Labaton Sucharow is and has been engaged in major complex antitrust, securities, consumer, products liability, and RICO class action litigation throughout the country. Labaton Sucharow has successfully prosecuted representative actions (principally class actions in the antitrust and securities areas) – frequently as lead counsel or Executive Committee member – representing the State of Connecticut, the Connecticut Retirement Plans and Trust Funds, the Amalgamated Bank of New York, certain New York City Pension Funds, the Florida State Board of Administration, the County of Suffolk, California Pubic Employees' Retirement System (CalPERS), the Genesee County Employees' Retirement System, Teamsters Local 237 Welfare Fund and Teamsters Local 237 Retirees' Benefit Fund, New York State United Teachers, and United Federation of Teachers Welfare Fund.

In 2004, Labaton Sucharow's Antitrust Litigation team, as co-lead class counsel, obtained final approval of a $90 million settlement with defendants on behalf of end-payor plaintiffs in *In re: Buspirone Antitrust Litigation,* (MDL-1413) (S.D.N.Y.). The settlement allocates funds to consumers in certain states and third-party payors nationwide and settles actions alleging anti-competitive conduct by improperly extending the monopoly in the market for buspirone hydrochloride, an anti-anxiety drug sold under the brand name BuSpar.®

In August 2002, Labaton Sucharow, again as co-lead class counsel, obtained final approval of a settlement with DuPont Pharmaceuticals Company in the amount of $44.5 million on behalf of consumers and third-party payors. The plaintiffs included both union health and welfare

funds and private insurers who purchased or paid for Coumadin,® a blood thinning drug. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

In August 2001, Labaton Sucharow, as co-lead class counsel, litigated claims against Pfizer, Inc. and others, alleging that the defendants had colluded on price and market share. Labaton Sucharow ultimately obtained approval of settlements of approximately $18.5 million on behalf of businesses that purchased the food additives Maltol in the cases entitled *In re: Maltol Antitrust Litigation*, Civil Action Nos. 99-CV-5931(TPG) 99-CV-9237(TPG) (D. Del), and Sodium Erythorbate in the cases entitled *Fleurchem Inc. v. Pfizer Inc.*, Civil Action No. 99-CV-5934(TPG), and *Continental Seasoning, Inc. v. Pfizer Inc., et al.*, Civil Action No. 99-CV-12055(TPG) (S.D.N.Y.).

Labaton Sucharow, as co-lead counsel, represented consumers and third-party payors in litigation against Mylan Laboratories, Inc. and others regarding alleged price increases for generic versions of certain prescription drugs. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16. 2003). These actions were jointly litigated with the Federal Trade Commission and various state Attorneys General. The third-party payor actions resulted in a $35.4 million class action settlement. The consumer actions were settled for $100 million in conjunction with the Federal Trade Commission and state Attorneys General actions.

In 2000, co-lead class counsel in a class action brought against Sumitomo Corporation, and others, on behalf of business purchasers of copper products around the country, Labaton Sucharow obtained settlements on behalf of purchasers of pure and scrap copper in excess of $80 million.

Labaton Sucharow is currently actively engaged in the prosecution of major antitrust class actions pending throughout the United States. It is presently co-lead counsel in the following

- 2 -

class actions: *In re Parcel Tanker Shipping Services Antitrust Litigation* (D. Conn.); *In re Oxycontin Antitrust Litigation* (S.D.N.Y.); *In re Norvir Antitrust Litigation* (N.D. Ca.); *In re Foundry Resins Antitrust Litigation,* (MDL No. 1638) (S.D. Ohio); *In re Stock Exchanges Options Antitrust Litigation* (S.D.N.Y.); *In re Ciprofloxacin Antitrust Litigation* (MDL 1383) (E.D.N.Y.); *In re Tamoxifen Citrate Litigation* (E.D.N.Y.); and *In re Medical Waste Services Antitrust Litigation* (D. Utah). The firm is or was also actively involved on behalf of plaintiffs in other significant antitrust litigation including: *In re Polychloroprene Antitrust Litigation*, (D. Conn.); *In re Hydrogen Peroxide Antitrust Litigation*, (E.D. Pa.); *In re Plumbing And Bathroom Fixtures Antitrust Litigation*, (E.D. Pa.); *In re High Fructose Corn Syrup Antitrust Litigation* (Master File No. 95-1477) (C.D. Ill.); *In re Publication Paper Antitrust Litigation*, (D. Conn.); *Visa Debit Card Antitrust Litigation* (E.D.N.Y.); *In re Microcrystalline Cellulose Antitrust Litigation* (E.D. Pa.); *In re Cardizem CD Antitrust Litigation* (E.D. Mich.); *In re Visa Debit Card Antitrust Litigation* (E.D.N.Y); *In re Microsoft Antitrust Litigation* (D.D.C.); *In re Relafen Antitrust Litigation* (D. Ma.); *In re Parcel Tanker Shipping Services Antitrust Litigation* (D. Conn.); *In re New Motor Vehicles Canadian Export Antitrust Litigation* (D. Me.); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation* (D. Conn.); *In re Pressure Sensitive Labelstock Antitrust Litigation* (M.D. Pa.); *County of Suffolk et al. v. Smithkline Beecham Corporation* (E.D. Pa.); and *Commercial Tissue Paper Products Antitrust Litigation* (S.D. Fla.).

Numerous courts have had occasion to comment upon the skill of the firm. In connection with the final approval of the $90 million settlement in *In re: Buspirone Antitrust Litigation*, United States District Judge John Koeltl commented that the lawyering in this case was "stupendous." In another case, Labaton Sucharow was designated lead class counsel in class actions on behalf of consumers who purchased brand-name drugs at retail. The cases were brought against

- 3 -

brand name prescription drug manufacturers in the States of Michigan, Minnesota, Wisconsin, Maine, New York, Arizona, Tennessee, Kansas, Florida, North Carolina and in the District of Columbia. In granting final approval of the almost $65 million multi-state cash settlements in these consumer antitrust class actions, various courts commented favorably upon the expertise and experience of the firm's Antitrust Litigation Group. For example, Judge Myron Greenberg, in approving the Minnesota portion of the settlement, noted: "I think the lawyering in this case is most commendable... [Counsel] have accorded themselves in a manner that allows us to be proud of the profession." Similarly, Judge Moria Krueger, in approving Wisconsin's portion of the settlement, complimented the firm and noted: "This Court has been helped along every step of the way by some outstanding lawyering... [Y]ou can hardly say that there has been anything but five star attorneys involved in this case."

Labaton Sucharow has successfully employed its expertise and experience in other practice areas as well. Labaton Sucharow was co-lead counsel for a class of investors in a limited partnership in *In re Real Estate Associates Limited Partnerships Litigation*, Case No. 98-7035 DDP (AJWx) (C.D. Cal.). In November 2002, after a six-week long jury trial, Labaton Sucharow obtained a precedent-setting award of $92 million in compensatory damages under various legal theories, including violations of Section 14(a) of the Securities Exchange Act of 1934, and an additional $92 million for punitive damages on a breach of fiduciary duty claim (an amount substantially reduced by the judge in accordance with state policy as to the permitted magnitude of punitive damages awards). After the defendants appealed the award, Labaton Sucharow obtained a settlement from them in the amount of $83 million, a sum that will fully compensate each class member for the losses each incurred as a result of the acts complained of.

On behalf of the Lead Plaintiff Connecticut Retirement Plans and Trust Funds, Labaton Sucharow achieved an extraordinary settlement in *In re Waste Management, Inc. Securities Litigation* (MDL 1422) (S.D. Tx.), providing for $457 million in cash and substantial relief concerning Waste Management's corporate governance. It is the third-largest securities class action settlement ever achieved and the largest in any case within the Fifth Circuit. The Court approved the Settlement on May 1, 2002.

Labaton Sucharow was co-lead counsel for plaintiffs in *In re Revlon Pension Plan Litigation*, 91 Civ. 4996 (JES), an action before Judge Sprizzo in the United States District Court for the Southern District of New York. Following the presentation by the firm's senior partner, Edward Labaton, in support of final approval of the settlement of the action, Judge Sprizzo, at page 6 of the transcript of July 8, 1994, complimented the work of Mr. Labaton and Labaton Sucharow, stating:

> The recovery is all they could have gotten if they had been successful. I have probably never seen a better result for the class than you have gotten here.  * * *  The case has been competently handled by both lawyers whom I know personally and I know their reputation in these cases. I have had no unnecessary proliferation of expenses. It has been a very well handled case from the beginning, with a minimum of judicial interference because the parties did not see fit to waste my time with such.

Labaton Sucharow has also served as a member of the Executive Committee and Chair of the Litigation Committee in *In re Prudential Securities Limited Partnerships Litigation*, MDL 1005, a complex RICO class action in which plaintiffs sued the brokers and sponsors of more than 700 limited partnerships. In granting preliminary approval to a settlement of $110 million, Hon. Milton Pollack commented:

> In litigating this case with the massive number of documents involved, plaintiffs' counsel have expended a large quantity of their own funds on one of the most innovative and sophisticated "high-tech" document management/litigation support systems available. Further, during the conduct of the litigation in this case, the Court has

- 5 -

> observed first-hand the caliber of plaintiffs' counsel and is able to
> judge their adequacy in representing the Class.

*In re Prudential Securities Inc. Limited Partnerships Litig.*, [Current] Fed. Sec. L. Rptr. (CCH),

¶ 98,915 (S.D.N.Y. Aug. 30, 1995), at 93,415-93,416. Judge Pollack went on to state that the

settlement reached in *Prudential* "appears on the surface as extremely beneficial to the Class. The

financial recovery is among the largest securities class action settlement ever achieved." *Id.* at

93,416.

In his Findings and Conclusions on Award of Attorney's Fees and Expenses, entered

May 18, 1994 (pp. 12-14) in *In re Prudential-Bache Energy Income Partnerships Securities Litigation*,

MDL No. 888, an action in which Labaton Sucharow served on the Executive Committee of Plaintiffs'

counsel, Judge Marcel Livaudais, Jr. of the United States District Court for the Eastern District of

Louisiana observed that

> Counsel were all experienced, possessed high professional
> reputations and were known for their abilities. Their cooperative
> effort in efficiently bringing this litigation to a successful conclusion
> is the best indicator of their experience and ability . . . .
>
> The Executive Committee is comprised of law firms with national
> reputations in the prosecution of securities class action and derivative
> litigation. The biographical summaries submitted by each member of
> the Executive Committee attest to the accumulated experience and
> record of success these firms have compiled.
>
>          \* \* \*
>
> Moreover . . . all counsel have prosecuted the case in an efficient,
> cooperative and diligent manner, bringing the litigation to a swift and
> successful conclusion for the benefit of all members of the proposed
> class.

In *Park Lane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979), a class action, Labaton

Sucharow succeeded in obtaining the landmark Supreme Court decision relating to the offensive use

of the collateral estoppel. Labaton Sucharow obtained another landmark decision in the area of class

- 6 -

actions in *Boeing Company v. Van Gemert*, 444 U.S. 472 (1980). Labaton Sucharow acted as lead counsel in the *General Motors Diesel Litigation*, 81 Civ. 1252(HB) (E.D.N.Y.), which was prosecuted on behalf of owners of certain diesel automobiles manufactured by General Motors Corporation. That action resulted in a settlement of more than $18 million, at the time one of the largest settlements ever obtained in a consumer class action. As co-lead counsel in the class actions involving *Petro Lewis Corp.*, 84 Civ. 326 (D. Colo.), Labaton Sucharow succeeded in obtaining a settlement valued by the court at $113.5 million. Labaton Sucharow also served as co-lead counsel in a class action brought on behalf of purchasers of the common stock of *PepsiCo, Inc.*, 82 Civ. 8403(ADS) (S.D.N.Y.). The class recovered $21.5 million as a result of the vigorous prosecution of that action. In *Weckstein v. Breitbart*, Index No. 19639/83, Labaton Sucharow tried an action in the Supreme Court of the State of New York, County of New York, on behalf of limited partners alleging gross breaches of fiduciary duty by the general partner. After the trial, the court rendered a verdict removing the general partner, appointing a receiver and awarding damages of more than $7.5 million. Labaton Sucharow chaired the Executive Committee of Plaintiffs' Counsel which prosecuted the *In re Todd Shipyards Securities Litigation*, Master File No. 88-2580(DRD) (D.N.J.), to a $12.6 million settlement on behalf of the class.

In four recently settled actions, Labaton Sucharow undertook a lead role in obtaining benefits for class members of $200 million (*In re PaineWebber Incorporated Limited Partnerships Litigation*, 94 Civ. 8547(SHS) (S.D.N.Y.) – member of six-lawyer executive committee); $110 million partial settlement (*In re Prudential Securities Incorporated Limited Partnerships Litigation*, MDL-1005(MP) (S.D.N.Y.) – chairman of eight-lawyer executive committee); $91 million (*In re Prudential Bache Energy Income Partnerships Securities Litigation*,

MDL-888(ML) (D. La.) – member six-lawyer executive committee); and $92 million (*Shea v. New York Life Insurance Company*, Civ. 96-0746 (S.D. Fla.) – Co-lead counsel).

Labaton Sucharow has discharged its responsibilities as lead and co-lead counsel in complex cases in an efficient, effective and cooperative manner. In *In re Energy Systems Equipment Leasing Securities Litigation*, MDL-637(LDW) (E.D.N.Y.), a multi-faceted, multi-district litigation in which Labaton Sucharow acted as co-lead counsel for the plaintiffs, Judge Wexler of the Eastern District of New York, complimented the firm for the efficient manner in which the complex litigation proceeded and cited the cooperation and efficiency of plaintiffs' counsel as an example to be emulated by counsel in other actions.

The attorneys at Labaton Sucharow who will have principal responsibility for litigating this class action include:

**Lawrence A. Sucharow** graduated *cum laude* from the City College of New York in 1971, and *cum laude* from Brooklyn Law School in 1975 and has specialized in complex securities, antitrust and other class action litigation since that date. At Labaton Sucharow, Mr. Sucharow, in addition to prosecuting actions for which he has principal responsibility, oversees and coordinates the work of the approximately 33 professionals who comprise the firm's contingent litigation department.

Mr. Sucharow is admitted to practice in the States of New York and New Jersey, the United States District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, the District of Arizona, the United States Court of Appeals for the Second Circuit, and the Supreme Court of the United states. Mr. Sucharow has prosecuted and is currently prosecuting numerous class actions in the securities, limited partnership, antitrust, consumer, and products liability fields both as sole lead counsel and as a member or co-chair of executive committees of

- 8 -

plaintiffs' counsel. Mr. Sucharow has successfully prosecuted actions, recovering hundreds of millions of dollars, on behalf of shareholders of public companies such as PepsiCo, American Express, Ames Department Stores, Gambro AB, Dun & Bradstreet Corporation, Medco Containment, Time Warner, Xerox, Emersons Ltd., Maxtor Corp., Todd Shipyards, and others; on behalf of bondholders of the New York City Housing Development Corp.; on behalf of victims of violations of the antitrust laws; and on behalf of purchasers of limited partnership interests from Prudential Securities, Inc., New York Life Insurance Company, and PaineWebber, Inc. He is currently a leader in the prosecution of options purchasers' claims against the NYSE, AMEX and other exchanges; business consumer claims for inflated copper prices against Sumitomo Corporation, and other matters.

Mr. Sucharow was successful trial counsel in the important business law case of *Data Probe v. Datatab*, (N.Y. Sup. Ct.), and one of the principal trial counsel in *In re Real estate Associates Limited Partnership* litigation which resulted in a plaintiffs' jury verdict of $184 million.

In five recently settled actions, Mr. Sucharow undertook a lead role in obtaining benefits for class members of $43.5 million for the inflated price of copper against Sumitomo Corporation – co-lead counsel; $200 million (*In re PaineWebber Incorporated Limited Partnerships Litigation*, 94 Civ. 8547 (SHS) (S.D.N.Y.) – member of six-lawyer executive committee); $135 million partial settlements (*In re Prudential Securities Incorporated Limited Partnerships Litigation*, MDL-1005 (MP) (S.D.N.Y.) – Chairman of eight-lawyer executive committee); $91 million (*In re Prudential Bache Energy Income Partnerships Securities Litigation*, MDL-888(ML) (D. LA.) – member of six-lawyer executive committee); and more than $92 million (*Shea v. New York Life Insurance Company*, Civ. 96-0746 (S.D. Fla.) – Co-lead counsel). In approving the *Prudential* settlement, Judge Milton Pollack, citing the "Herculean" effort of plaintiffs' counsel,

stated: "But this case represents a unique recovery – a recovery that does honor to every one of the lawyers on your side of the case."

Mr. Sucharow was the founding chairman of the Class Action Committee of the Commercial and Federal Litigation Section of the New York State Bar Association from 1988-1994; is the former President of the National Association of Shareholder and Consumer Attorneys (NASCAT) ; is an active member of the Federal Bar Council's Committee on Second Circuit Courts, and the Federal Courts Committee of the New York County Lawyers Association; and is a member of the Securities Law Committee of the New Jersey State Bar Association. Mr. Sucharow lectures on class actions, complex civil litigation, and related topics in continuing legal education programs and has earned an "AV" rating from Martindale-Hubbell Law Directory.

***Bernard Persky***, the head of the firm's Antitrust Practice Group, is a Phi Beta Kappa graduate of City College of New York (1965) and an honors graduate of Harvard Law School (1968). He is a member of the Bars of the State of New York, United States Supreme Court, Second, Third and Fifth Circuit Courts of Appeals and the District Courts of the Southern, Eastern and Northern Districts of New York. Since 1969, his practice has involved complex business litigation and class action suits, primarily including antitrust, securities fraud, civil RICO, and trade regulation disputes. He also has extensive experience in accountants' and officers' and directors' liability insurance matters, federal and state administrative proceedings and bankruptcy litigation.

Mr. Persky has had major responsibility and substantial experience in successfully litigating numerous antitrust, securities and other class actions. In *County of Suffolk v. Long Island Lighting Company*, 685 F. Supp. 38 (E.D.N.Y. 1988); 907 F.2d 1295, 1327 (2d Cir. 1990), Mr. Persky was co-lead trial counsel for plaintiff in this RICO class action in which a jury verdict was obtained for plaintiff, County of Suffolk, after a two-month trial which led to a $400 million class

- 10 -

settlement. The Second Circuit, in awarding attorneys' fees to plaintiff, quoted the trial judge, Honorable Jack B. Weinstein, as stating "counsel [has] done a superb job [and] tried this case as well as I have ever seen any case tried."

Mr. Persky is or was co-lead class counsel in major antitrust class actions, including *In re Warfarin Sodium Antitrust Litigation*, (MDL No. 1232) (D. Del.), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ($44.5 million settlement); *In re Buspirone Antitrust Litigation*, (MDL No. 1410) (S.D.N.Y.) ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation*, (MDL-1290) (D.D.C.) ($135 million settlement); *In re Stock Exchanges Options Antitrust Litigation*, (MDL-1283) (S.D.N.Y.) ($47 million settlement); *In re Maltol Antitrust Litigation*, (99 Civ. 5931) (S.D.N.Y.) ($11.15 million settlement); *Continental Seasoning, Inc. v. Pfizer, Inc. et al.*, (99 Civ. 12055) (S.D.N.Y.) ($7.3 million settlement); *In re Foundry Resins Antitrust Litigation*, (MDL No. 1638) (S.D. Ohio); *In re Tamoxifen Citrate Antitrust Litigation* (E.D.N.Y.); and *In re Ciprofloxacin Hydrochloride Antitrust Litigation*, (MDL No. 1383) (E.D.N.Y.), and is or was actively involved on behalf of plaintiffs in many other significant antitrust class actions, including *In re Polychloroprene Antitrust Litigation*, (D. Conn.); *In re Hydrogen Peroxide Antitrust Litigation*, (E.D. Pa.); *In re Plumbing And Bathroom Fixtures Antitrust Litigation*, (E.D. Pa.); *In re CardizemCD Antitrust Litigation* (MDL-1278) (E.D. Mich.); *In re High Fructose Corn Syrup Antitrust Litigation* (Master File No. 95-1477) (C.D. Ill.); *In re Publication Paper Antitrust Litigation*, (D. Conn.); *In re Microcrystalline Cellulose Antitrust Litigation*, (E.D. Pa.); and *Visa Debit Card Antitrust Litigation* (E.D.N.Y.). He has also represented, along with co-counsel, thousands of retail drugstores in the antitrust price fixing and price discrimination suit entitled *In re Brand Name Prescription Drugs Antitrust Litigation* (MDL No. 997) (N.D. Ill.). In addition, Mr. Persky was lead class counsel in state consumer antitrust class actions against brand-name prescription drug manufacturers in the

States of Arizona, Florida, Kansas, Maine, Michigan, Minnesota, New York, North Carolina, Tennessee, Wisconsin and the District of Columbia.

In approving portions of a $65 million multi-state consumer class settlement with brand-name prescription drug manufacturers, courts have praised the performance of Mr. Persky, as lead class counsel: "I'll join my learned colleagues from this and other jurisdiction[s] in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity" (*Karofsky v. Abbott Laboratories, et al.*, Case No. CV-95-1009, Transcript of Hearing at 17, Superior Court Cumberland County, Maine, December 2, 1998); "This Court . . . has been helped along every step of the way by some outstanding lawyering . . . . You can hardly say that there's been anything but five-star attorneys involved in this case" (*Scholfield v. Abbott Laboratories, et al.*, Case No. 96 CV 460; Transcript of Hearing at 31, 33; Cir. Ct., Dane County, Wisc., October 5, 1998); "I think the quality of counsel is excellent" (*McLaughlan v. Abbott Laboratories, et al.*, Case No. CV 95-0628; Transcript of Hearing at 28, Super. Ct., Yavapai County, Ariz., October 28, 1998); "[S]ubstantial expertise was required to prosecute this litigation" (*Holden v. Abbott Laboratories, et al.*, Case No. 96 C 15994, Transcript of Hearing at 79; Dist. Ct., Johnson County, Kansas, November 19, 1998).

Mr. Persky had also been counsel for plaintiffs in a RICO class action brought on behalf of jockeys, trainers and others whose businesses and employment were located at Roosevelt Raceway in Westbury, Long Island for alleged fraud in connection with the purchase and closing of the Raceway. *Standardbred Owners Association v. Roosevelt Raceway Associates, L.P.*, 985 F.2d 102 (2d Cir. 1993) (upholding plaintiffs' standing to assert claims for damages under RICO). In addition, Mr. Persky has had substantial responsibility litigating the following class actions:

(a)     *Federated Department Stores, Inc. v. Moitie*, No., C-77-0576, 0571 (N.D. Cal.) (represented defendant Saks & Co. in this price fixing antitrust class action; district court's dismissal of antitrust class action affirmed by the United States Supreme Court in an opinion reported at 452 U.S. 394 (1981));

(b)     *Brewer v. Miller Brewing Company*, 93-CV-I 600(FJS) (N.D.N.Y.) (lead counsel for class of African-Americans alleging claims for federal and state law civil rights violations; case settled favorably for more than $3 million and other relief); and

(c)     *River Arts Apartments, Inc. v. Le Tam Realty Corp.*, Index No. 18099/84 (Sup. Ct. N.Y. Co.) (represented a class of apartment purchasing shareholders in this state securities and common law fraud suit which was favorably settled on behalf of plaintiff class for approximately $2 million).

From 1975 to 1978, Mr. Persky was Counsel to the New York State Commission On Judicial Conduct and successfully tried cases involving allegations of judicial misconduct. *See, e.g., In re Mertens*, 56 A.D. 2d 456 (1st Dep't 1977). He has also had major responsibility in representing the New York State Society of CPAs as *amicus curiae* in *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536 (1985) (leading case in New York establishing criteria for non-contractual parties to sue accountants for malpractice).

He is currently a member of the Advisory Board of the American Antitrust Institute and of the Executive Committee of the Antitrust Section of the N.Y.S. Bar Association and is co-author of an article entitled *Antitrust Protections Expanded in New York*, N.Y.L.J., June 22, 1999. Mr. Persky has also lectured on antitrust topics before bar associations and other interested groups.

***Barbara J. Hart*** graduated from Fordham University School of Law in 1992 where she was a member of the Law Review and on the Dean's List.

Ms. Hart was one of the principal litigators at the firm responsible for a $65 million settlement with certain brand name prescription drug manufacturers. The settlement benefited consumers in numerous states, including for instance, Kansas, where in approving the settlement, Judge Steve Leben noted that "a substantial expertise was required to prosecute this litigation." *Holdren v. Abbott Laboratories, et al.*, (Dist. Ct. Johnson County, Kans., Nov. 19, 1998). In Arizona, where Ms. Hart appeared before Judge Robert M. Brutinel several times, the Judge commented in approving the settlement, "I think the quality of counsel is excellent." *McLaughlin v. Abbott Laboratories, et al.*, (Yavapai County, Ariz., Oct. 28, 1998).

In Maine, Judge Bradford similarly approved, stating, "I'll join my learned colleagues from this and other jurisdiction[s] in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity, and especially the cost effective way in which this settlement is proposed to be distributed." *Karofsky v. Abbott Laboratories, et al.*, (Cumberland County, Maine, Dec. 2, 1998).

Ms. Hart is counsel to, among others, the New York State United Teachers, the United Federation of Teachers Welfare Fund, Teamsters Local 237 Welfare Fund, Teamsters Local 237 Retirees' Benefit Fund, and to the Office of the Treasurer of the State of Connecticut, representing the Connecticut Retirement Plans and Trust Funds. Ms. Hart represented the Connecticut Funds in the *In re Waste Management Securities Litigation* where the Connecticut Funds were Lead Plaintiff and Labaton Sucharow was Lead Counsel. That case has been settled for $457 million, the third largest securities litigation settlement in history. Currently, Ms. Hart also advises several other public funds and union funds on securities litigation under the Private Securities Litigation Reform Act, and actively participates in the Council of Institutional Investors,

- 14 -

the Public Funds Forum, the National Association of State Treasurers, and the National Association of State Auditors, Comptrollers and Treasurers.

Additionally, Ms. Hart has argued before the Second Circuit in several cases, including an action involving currency exchange rates. She has also co-authored an article entitled "Antitrust Protections Expanded in New York," N.Y.L.J., June 22, 1999, and has been a featured speaker on the topic of combating anti-competitive strategies in the prescription drug industry.

Ms. Hart is admitted to practice in New York and Connecticut, the United States District Courts for the Southern and Eastern Districts of New York, and the Second and Third Circuit Courts of Appeals. Ms. Hart graduated from Vanderbilt University and received a Master's Degree in Communications from the University of North Carolina, Chapel Hill.

*Hollis L. Salzman* graduated from Boston University with a B.A. in Economics in 1987 and from Nova University School of Law with a J.D. in 1992 where she was on the Dean's List. Ms. Salzman is a member of the Bars of the States of Florida, New York, and New Jersey, the United States Court of Appeals for the Eleventh Circuit, and the District Courts for the Eastern and Southern Districts of New York and the Middle and Southern Districts of Florida.

Ms. Salzman is currently, or recently has been actively involved in, representing plaintiffs and plaintiff classes in major pending antitrust class actions, including *In re New Motor Vehicles Canadian Export Antitrust Litigation*, (D. Me.) (executive committee); *Nichols, et al. v. SmithKline Beecham Corporation*, (E.D. Pa.) (third-party payor allocation counsel); and *In re Tamoxifen Antitrust Litigation*, (E.D.N.Y.) (co-lead counsel); *Service Employees International Union Health and Welfare Fund*, (N.D. Ca.) (co-lead counsel); *In re: Fresh Pineapple Antitrust Litigation*, (S.D.N.Y.) (executive committee); *Ferrell v. Wyeth-Ayerst Laboratories Inc., et al.*, (S.D.

Oh.) (third-party payor allocation counsel); *J&R Venturs v. Rhone-Poulenc S.A., et al.* (Wisc. Cir. Ct.) (lead counsel).

She also served as co-lead counsel in several antitrust class actions which resulted in extraordinary settlements for consumers and third-party payors. *In re Buspirone Antitrust Litigation*, (MDL 1413) (S.D.N.Y.) ($135 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation*, (MDL 1290) (D.D.C.) ($35.4 million on behalf of third-party payors, and $100 million on behalf of consumers in conjunction with the Federal Trade Commission and State Attorneys General's actions); also *In re Maltol Antitrust Litigation*, (99 Civ 5931) (S.D.N.Y.), and *Continental Seasonings Inc. v. Pfizer, Inc., et al.*, (99 Civ. 12055) (S.D.N.Y. ($18.45 million on behalf of direct purchasers of chemical food additives). Additionally, she was principally responsible for administering a $65 million settlement with certain brand-name prescription drug manufacturers where their conduct allegedly caused retail pharmacy customers to overpay for their prescription drugs. She was also involved in tobacco-related litigation against cigarette manufacturers.

Ms. Salzman is a committee member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee and is co-author of an article entitled "The State of State Antitrust Enforcement," NYSBA *NYLitigator*, Winter 2003, Vol. 8, No. 1. She is also a member of the New York County Lawyers' Association Trade Regulation Committee. Ms. Salzman also provides *pro bono* representation to indigent and working-poor women in matrimonial and family law matters.

***Christopher J. McDonald*** is Of Counsel to Labaton Sucharow and part of the firm's Antitrust Practice Group. Mr. McDonald also spends a significant portion of his practice representing institutional investors in securities fraud cases.

- 16 -

Immediately prior to joining Labaton Sucharow, Mr. McDonald was in-house counsel for a telecommunications company, where he advocated for the enactment and implementation of pro-competitive regulations based on the legal, economic and public goals of the Telecommunications act of 1996. Before that, Mr. McDonald was a commercial litigator with Patterson Belknap Webb & Tyler LLP.

Mr. McDonald received his undergraduate degree *cum laude* from Manhattan College in 1985 and his J.D. from Fordham University School of Law in 1992, where he was on the *Law Review*. Mr. McDonald is admitted to practice in the State of New York and in the Southern and Eastern Districts of New York.

***Craig L. Briskin*** joined Labaton Sucharow Rudoff & Sucharow as an associate in the fall of 2001. His practice focuses primarily on antitrust litigation.

Mr. Briskin received his J.D. from Harvard Law School in 1998. He was a student attorney and board member of the Harvard Legal Aid Bureau and the Battered Women's Advocacy Project, providing civil legal services to indigent clients. Mr. Briskin was also an editor of the *Harvard Civil Rights-Civil Liberties Law Review*. He co-authored an article, "The Waging of Welfare: All Work and No Pay?" (33 Harvard Civil Rights-Civil Liberties Law Review 559 (1998)). after graduating from law school, Mr. Briskin served as Law Clerk to Justice Alexander O. Bryner of the Alaska State Supreme Court.

Prior to joining Labaton Sucharow, Mr. Briskin worked at the New York Legal Assistance Group, representing indigent clients in direct services in the areas of welfare, disability and immigration law. His work was funded by a fellowship from the National Association of Public Interest Law.

- 17 -

Mr. Briskin has worked on several class actions, including *In re Buspirone antitrust Litigation*, in which the firm obtained a $90 million settlement on behalf of end-payor plaintiffs who were overcharged for the drug BuSpar®. Mr. Briskin is also actively involved in litigating *In re Natural Gas Commodity Litigation* and *In re Medical Waste Services Antitrust Litigation*.

*Kellie C. Safar* obtained a B.A. in history from Rutgers University in 1999, where she graduated Phi Beta Kappa and with honors. She received her Juris Doctorate from Rutgers Law School in 2003. While at Rutgers Law, she served as Managing Editor of the Rutgers Computer and Technology Law Journal, as well as Board Member of the Moot Court Board. Ms. Safar also worked as a Legal Aide in the Antitrust Bureau of the New York Attorney General's Office during law school.

Ms. Safar joined Labaton Sucharow's New York office in 2003 as a member of the firm's Antitrust Practice Group. She has worked on several prominent class actions in the pharmaceutical industry including the *In re Buspirone Antitrust Litigation*, in which the firm obtained a $90 million dollar settlement on behalf of end-payor plaintiffs who overpaid for the drug BuSpar®. She has also worked on other class actions, such as the *In re Vitamins Antitrust Litigation*, for which the firm obtained a $187 million dollar multi-state antitrust settlement. Ms. Safar is admitted in the State of New Jersey and her New York Bar admission is pending.

- 18 -