# TAB 1

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

FILED

/-10-05

JAN 1 0 2005

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

| | | |
|---|---|---|
| ROSEMARIE RYAN HOUSE, et al., on behalf of themselves and all other persons and entities similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>GLAXOSMITHKLINE PLC and SMITHKLINE BEECHAM CORPORATION,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Docket No. 2:02cv442 |
| THIS DOCUMENT RELATES TO: All Actions Except the Following:<br><br>*Central States, et al.,*<br>Civil Action No. 2:02 cv 442/2:04 cv 261;<br><br>*Lek Pharmaceuticals, et al.,*<br>Civil Action No. 2:03 cv 909;<br><br>*SAJ Distributors, Inc., et al.,*<br>Civil Action No. 2:04 cv 23;<br><br>*The City of New York, et al.,*<br>Civil Action No. 2:04 cv 312 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

### FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS TO THE NAMED PLAINTIFFS

This action having come before the Court for a Fairness Hearing on October 28, 2004, pursuant to the Court's July 28, 2004 Order preliminarily approving the proposed Settlement between the End-Payor Plaintiffs ("Plaintiffs") and Defendants GlaxoSmithKline plc and SmithKline Beecham Corporation (the "Preliminary Approval Order"), to consider and determine the matters set forth in the Preliminary Approval Order; and due notice of said hearing having been published and given; and all members of the Settlement Class having been provided the opportunity to file timely objections to the proposed Settlement Agreement between the parties, and described in the Notice of Proposed Settlement and Summary Notice; and the Court having considered the matter and all of the submissions filed in connection therewith, and the oral presentations of counsel at said hearing; and good cause appearing therefor,

### IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.     This Court has jurisdiction over this End-Payor Purchaser action and each of the parties to the Settlement Agreement.

2.     Terms used in this Final Order and Judgment that are defined in the Settlement Agreement are, unless otherwise defined herein, used in this Final Order and Judgment as defined in the Settlement Agreement.

3.     As required by this Court in its Preliminary Approval Order:  (a) Notices of the proposed settlements were mailed by first-class mail to all Class Members whose addresses could be obtained with reasonable diligence, and to all potential Class Members who requested a copy; and (b) a Summary Notice of the proposed Settlement was published in numerous

2

magazines and newspapers and posted continuously on the Internet at the website
www.augmentinlitigation.com. Such notice to members of the Class is hereby determined to be
fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to
be the best notice practicable under the circumstances and to constitute due and sufficient notice
to all persons and entities entitled thereto.

4.     Due and adequate notice of the proceedings having been given to the Class and a
full opportunity having been offered to the Class to participate in the fairness hearing, it is
hereby determined that all Class Members, except those who timely requested exclusion as
listed in Attachment A hereto, are bound by this Final Order and Judgment.

5.     The settlement of this End-Payor Purchaser action was not the product of
collusion between Plaintiffs and Defendants or their respective counsel, but rather was the result
of *bona fide* and arm's-length negotiations conducted in good faith between End-Payor Class
Counsel and Defendants.

6.     The Court held a hearing to consider the fairness, reasonableness and adequacy of
the proposed settlement and considered all objections to the settlement. Except as provided in
paragraph 8 below, the Court overrules all objections to the settlement.

7.     The Settlement Agreement is hereby approved and found to be, in all respects,
fair, reasonable, adequate and in the best interests of the Class as a whole and in satisfaction of
Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

8.     The Court approves the Plan of Allocation of Settlement Proceeds as proposed by
Class Counsel, summarized in the Notice and modified at the Fairness Hearing. Accordingly,
the proceeds of the Settlement Fund shall be distributed as described in the Notice and in
accordance with Paragraph 9 of the Settlement Agreement, but modified as follows: If consumer

3

Class Members claim less than ten percent of the Net Settlement Fund, additional steps shall be taken to ensure that consumer Class Members and/or one or more *cy pres* recipients receive in the aggregate ten percent of the Net Settlement Fund. In no event, shall third-party payor Class Members receive more than ninety percent of the Net Settlement Fund. The Court makes no determination at this time, before the percentage of the Net Settlement Fund claimed by consumer Class Members is known, whether any of the Net Settlement Fund shall be distributed to a *cy pres* recipient, and no amount of the Net Settlement Fund is designated at this time for distribution to a *cy pres* recipient. The Net Settlement Fund may be distributed to Class Members and/or a *cy* pres recipient only with Court approval upon motion of Class Counsel.

9.    All claims in the captioned action are hereby dismissed with prejudice, and without costs, with such dismissal subject only to compliance by the parties with the terms and conditions of the Settlements Agreement and this Final Order and Judgment.

10.    (a)    As used throughout this paragraph 10, references to the "Settlement Class," "members of the Settlement Class" or "Settlement Class members" refer to members of the End Payor Settlement Class and include any of their past, present or future officers, directors, stockholders, attorneys, employees, legal representatives, trustees, parents, subsidiaries, partners, heirs, executors, administrators, predecessors, successors and assigns, acting in their capacity as such, but exclude all those who timely requested exclusion.

(b)    Upon this Settlement Agreement becoming final in accord with paragraph 5 of the Settlement Agreement, Defendants and their present and former parents, subsidiaries, divisions, officers, directors, attorneys and any of their legal representatives and the predecessors, heirs, executors, administrators, successors and assigns of each of the foregoing (the "Released Parties") shall be released and forever discharged from all manner of claims,

4

demands, actions, suits, causes of action, damages whenever incurred, liabilities of any nature

whatsoever, including costs, expenses, penalties and attorneys' fees known or unknown,

suspected or unsuspected, in law or equity, that Plaintiffs or any member or members of the

Settlement Class who have not timely excluded themselves from the Settlement Class, whether

or not they object to the settlement and whether or not they make a claim upon or participate in

the Settlement Fund, ever had, now has, or hereafter can, shall or may have, directly

representatively, derivatively or in any other capacity, arising out of any conduct, events or

transactions, prior to the date hereof, alleged or which could have been alleged in the case

relating to the marketing, sale, manufacture, pricing or purchase of, or the enforcement of

intellectual property related to, the drug Augmentin or any form of pharmaceutical product

containing a combined dose of amoxicillin and clavulanic acid or a salt thereof (the "Released

Claims"). Each member of the Settlement Class is hereby deemed to have covenanted and

agreed that it shall not, hereafter, seek to establish liability against any Released Party based, in

whole or in part, on any of the Released Claims. Notwithstanding the foregoing, claims of any

government entity included in the Settlement Class by virtue of purchases made in connection

with the provision of health care benefits to its employees shall be released only to the extent of

those purchases.

       (c)    Each settlement Class member is hereby deemed expressly to have waived

and released, upon the Settlement Agreement becoming final, any and all provisions, rights,

benefits conferred by §1542 of the California Civil Code, which reads:

> Section 1542. General Release: extent. A general release does not
> extend to claims which the creditor does not know or suspect to exist
> in his favor at the time of executing the release, which if known by
> him must have materially affected his settlement with the debtor;

5

or by a law of any state or territory of the United States or principle of common law, which is similar, comparable or equivalent to §1542 of the California Civil Code. Each Settlement Class member may hereafter discover facts other than or different from those which he, she or it knows or believes to be true with respect to the claims which are the subject matter of this paragraph, but each Settlement Class member is deemed to have expressly waived and fully, finally and forever settled and released, upon the Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the subject matter of the provisions of this paragraph whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Settlement Class member also hereby deemed to have expressly waived and fully, finally and forever settled and released any and all claims it may have against Defendants under §17200, et seq., of the California Business and Professions Code, which claims are expressly incorporated into this paragraph.

(d)     Notwithstanding the above, the Settlement Class members are hereby deemed to have settled with and released only the Released Parties that such Settlement Class members have released pursuant to this paragraph, and neither the Settlement Agreement, any part thereof, nor any other aspect of the settlement or release, shall be deemed to release or otherwise affect in any way any rights a Settlement Class member has or may have against any other party or entity whatsoever other than the Released Parties with respect to the Released Claims pursuant to this paragraph 10. In addition, the releases set forth in this paragraph shall not release any claims between Settlement Class members and the Released Parties concerning product liability, breach of contract, breach of warranty, or personal injury. Furthermore, the releases set forth in this paragraph shall not act as a release of any claim Settlement Class

6

members have or may have as a class member in the putative class action captioned *In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL No. 1456, pending in the United States District Court for the District of Massachusetts; provided, however, that in such litigation GSK preserves its right to assert that any recovery by the Settlement Class member in such litigation related to the drug Augmentin should be set-off by their pro rata share of the Settlement Fund. Moreover, the releases set forth in this paragraph shall only apply to a governmental entity's purchases of, or reimbursement for, Augmentin made by the governmental entity as part of a health benefit plan for its employees and the releases in this paragraph shall not act as a release of any claim the governmental entity has or may have with respect to any other purchases of, or reimbursement for, Augmentin by the governmental entity, including claims arising from the marketing, sale, manufacture, pricing, or enforcement of intellectual property related to the governmental entity's other purchases of, or reimbursement for, Augmentin.

11.    Class Counsel requested an award of attorneys' fees in the amount of $7,250,000.00 of the Settlement Fund. The Court finds this to be fair and reasonable and awards Class Counsel their requested fees (with interest earned), to be allocated among Class Counsel as reasonably determined by Co-Lead Counsel. Counsel for the Blue Cross Plans requested an award of attorneys' fees in the amount of $59,806.02. The Court finds that the contribution of the Blue Cross Plans, as objectors to the settlement, was not material. The Court denies their petition for fees. The Court awards $255,698.61 as reimbursement to Class Counsel of their reasonable, disbursements and expenses, with interest from the date of the deposit of the funds at the same rate earned by the funds, and $43,000.00 in total incentive awards to the Named Plaintiffs for their service in discovery and their role in bringing about the recovery on behalf of

7

the Class. All of the foregoing amounts are to be paid exclusively out of the Settlement Funds to Co-Lead Counsel without additional contribution or payment by Defendants. Any appeal from this paragraph shall not affect the finality of the remainder of this Final Order and Judgment, including but not limited to the date on which the Settlement will be deemed final under the terms of the Settlement Agreement.

12.     Neither this Final Order and Judgment, the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall constitute evidence or an admission by any Defendant, that any acts of wrongdoing have been committed, and they shall not be deemed to create any inference that there is any liability therefor. Neither this Final Order and Judgment, the Settlement Agreement, nor any of the terms or the negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other matter or proceeding in any court, administrative agency, arbitration or other tribunal, other than as expressly set forth in the Settlement Agreement.

13.     Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and therefore directs entry of this Final Order and Judgment as a final judgment that is immediately appealable.

14.     Without in any way affecting the finality of this Final Order and Judgment, the Court hereby retains exclusive jurisdiction over this End-Payor Purchaser action until the Settlement Agreement has been consummated and each and every act agreed to be performed by the Parties thereto shall have been performed, and thereafter for all other purposes necessary to effectuate the terms of the Settlement Agreement.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

January 10, 2005

9

ATTACHMENT A

**OPT-OUTS**

Aetna, Inc

Albertson's, Inc.

Blue Cross of California

Blue Cross Blue Shield of Georgia, Inc.

Blue Cross Blue Shield Healthcare Plan of Georgia, Inc.

Blue Cross Blue Shield of North Carolina

Blue Cross Life and Health Insurance Company

Blue Cross Blue Shield of Missouri

BlueCross BlueShield of Nebraska

California Physicians' Service d/b/a Blue Shield of California
     Blue Shield of California Life & Health Insurance Co.
     CareAmerica Life Insurance Co.

Connecticut General Life Insurance Company

Coventry Health Care, Inc.

Eckerd Corporation

Golden Rule Insurance Company

Government Employees Hospital Association

Great West Life & Annuity Insurance Co.

Group Health Cooperative

Guardian Life Insurance Company of America

Health Net

Healthy Alliance Life Insurance

HMO Missouri, Inc.

Humana, Inc.

Hy-Vee, Inc.

**ATTACHMENT A**

Insured Business of Wisconsin Based Companies:
    Blue Cross Blue Shield of Wisconsin
    Compcare Health Services Insurance Corporation
    Unity Health Plans Insurance Corporation
    Valley Health Plan, Inc.

IWCO Direct

Kroger Co.

Marko Jurgan

Medical Mutual of Ohio

Mid-Atlantic Medical Services, LLC

Nancy Lund

Noridian Mutual Insurance Co.

Oxford Health Plans

PacifiCare Health Systems

Priority Health

Regence BlueShield of Idaho

Regence BlueShield

Regence BlueCross BlueShield of Utah

Regence BlueCross BlueShield of Oregon

RightCHOICE Insurance Company

Safeway, Inc.

2

**ATTACHMENT A**

Self-Funded Business of Wisconsin Based Companies (to the extent the following plans were administered by Wisconsin Based Companies during the relevant time period and claims for Augmentin were paid on their behalf):

    Cobalt (including BCBSWI, Cobalt Retirees UGS, UGS Retiree plans)
    Towne Realty
    Zilber Ltd.
    Sheboygan School District
    Badger Mutual Insurance Company
    Jones Dairy Farm
    Johnson Outdoors, Inc.
    Cygnus Business Media
    Coleman Products Co.
    State of Wisconsin
    Wisconsin Bankers Association Insurance Trust

The Railroad Employees National Health and Welfare Plan

The National Railway Carriers and United Transportation Union Health and Welfare Plan

The Railroad Employees National Early Retirement Major Medical Benefit Plan

Unicare Health Insurance Company of the Midwest

Unicare Health Plans

Unicare Health Plans of Texas, Inc.

Unicare Health Insurance Company of Texas, Inc.

Unicare Health Plans of the Midwest, Inc.

Unicare Life & Health Insurance Co.

United HealthCare Services, Inc.

Walgreen Co.

Blue Cross Blue Shield of Alabama

# TAB 2

14119/00

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



FILED
NOV 18 2003
S. D. OF N. Y.

In re Buspirone Antitrust Litigation )
)
This Document Relates To: )
)
01-CV-2943; 01-CV-7941; ) o/ MDL Docket No. 1413 (JGK)
01-CV-7943; 01-CV-7944; )
01-CV-7946; 01-CV-7949; )    ORDER No. 46
01-CV-7950; 01-CV-7952; )
01-CV-7953; 01-CV-7954; )
01-CV-7955; 01-CV-7956; )
01-CV-7957; 01-CV-7959; )
01-CV-7960; 01-CV-9356; )
01-CV-9358; 01-CV-9359; )
01-CV-9360; 01-CV-9361; )
01-CV-9362; 01-CV-8888 )
)
)
)
)

## [PROPOSED] FINAL ORDER AND JUDGMENT APPROVING SETTLEMENT AND AWARDING ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS TO THE NAMED PLAINTIFFS

This action having come before the Court for a Fairness Hearing on November 6, 2003,

pursuant to the Court's April 2, 2003 Order preliminarily approving the proposed Settlement

between the End-Payor Plaintiffs ("Plaintiffs") and Defendants Bristol-Myers Squibb Company,

Watson Pharmaceuticals, Inc., Watson Pharma, Inc., and Danbury Pharmacal, Inc.

(the "Preliminary Approval Order"), to consider and determine the matters set forth in the

Preliminary Approval Order; and due notice of said hearing having been published and given;

and all members of the Settlement Class having been provided the opportunity to file timely

objections to the proposed Settlement Agreement between the parties, as amended on March

2003 and described in the Notice of Proposed Settlement and Summary Notice; and

having considered the matter and all of the submissions filed in connection therewith, and the oral presentations of counsel at said hearing; and good cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.      This Court has jurisdiction over this End-Payor Purchaser action and each of the parties to the Settlement Agreement.

2.      As required by this Court in its Preliminary Approval Order: (a) Notices of the proposed settlements were mailed by first-class mail to all Class Members whose addresses could be obtained with reasonable diligence, and to all potential Class Members who requested a copy; and (b) a Summary Notice of the proposed Settlement was published in the April 28, 2003 and May 5, 2003 issues of *The National Underwriter: Life & Health/Financial Services Edition*, the April/May 2003 issue of *HR Solutions*, and the June 2003 issue of *HR Magazine* and posted continuously on the Internet. Such notice to members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.

3.      Due and adequate notice of the proceedings having been given to the Class and a full opportunity having been offered to the Class to participate in the fairness hearing, it is hereby determined that all Class Members, except those who timely requested exclusion, are bound by this Final Order and Judgment.

4.      The settlement of this End-Payor Purchaser action was not the product of collusion between Plaintiffs and Defendants or their respective counsel, but rather was the result of *bona fide* and arm's-length negotiations conducted in good faith between End-Payor Class Counsel and Defendants.

5.    The Court held a hearing to consider the fairness, reasonableness and adequacy of the proposed settlement and was advised that there are no objections to the settlement, *except to the extent that the single objection addressed at the hearing is an objection to the*

6.    The Settlement Agreement is hereby approved and found to be, in all respects, *settlement and that*

fair, reasonable, adequate and in the best interests of the Class as a whole and in satisfaction of *objection was overruled.*

Rule 23 of the Federal Rules of Civil Procedure and due process requirements.

7.    As set forth in the Settlement Agreement, Defendants collectively agreed to pay a total of $90 million to settle this End-Payor Purchaser action.

8.    The Court approves the Plan of Distribution of Third-Party Payor Settlement Proceeds as proposed by Class Counsel and summarized in the Notice. The proceeds of the Settlement Fund shall be distributed as described therein and in accordance with Paragraph 16(b) of the Settlement Agreement.

9.    All claims in the captioned action are hereby dismissed with prejudice, and without costs, with such dismissal subject only to compliance by the parties with the terms and conditions of the Settlements Agreement and this Final Order and Judgment.

10.    Terms used in this Final Order and Judgment that are defined in the Settlement Agreement are, unless otherwise defined herein, used in this Final Order and Judgment as defined in the Settlement Agreement.

11.    The Releases, as defined in the Settlement Agreement, shall be released and forever discharged from all manner of claims, demands, actions, suits, causes of action, damages whensoever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, which Releasors, as defined in the Settlement Agreement, whether or not they make a claim upon or participate in the End-Payor Plaintiffs Settlement Fund, ever had, now have, or hereafter can, shall or may

have, relating in any way to any conduct, act or failure to act, prior to the date of the Settlement

Agreement, concerning the purchase, sale, or pricing of BuSpar® or generic buspirone, or

relating to any conduct, act or failure to act, alleged in the End-Payor Class Actions, including,

without limitation, any such claims that have been asserted or could have been asserted based on

the facts alleged in the operative complaint in the End-Payor Class Actions against the Releasees

or any of them.

      12.     All Class Members shall be forever enjoined and barred from asserting any of the

matters, claims or causes of action released by the Settlement Agreement, and all such Class

Members shall be deemed to have forever released any and all such matters, claims and causes of

action as provided for in the Settlement Agreement.

      13.     Each settling Class Member is hereby deemed expressly to have waived and

released, with respect to the Released Claims, any and all provisions, rights and benefits

conferred by § 1542 of the California Civil Code, which reads:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor.

(ii) § 17200, *et seq.*, of the California Business and Professional Code; and (iii) any similar state,

federal or other laws, rules or regulations or principles of common law.  Each Settling Class

Member may hereafter discover facts other than or different from those that it knows or believes

to be true with respect to the subject matter of the Released Claims, but each Settling Class

Member shall hereby be deemed to have expressly waived and fully, finally and forever settled

and released any known or unknown, suspected or unsuspected, asserted or unasserted,

contingent or non-contingent claim with respect to the Released Claims, whether or not

concealed or hidden, without regard to the subsequent discovery or existence of such

different facts.

14.    The requested award of attorneys' fees is found to be fair and reasonable. The Court awards Class Counsel attorneys' fees in the amount of $17,717,172.34, which is equal to 25 percent of the Consumer Settlement Fund (with interest earned) plus 25 percent of the difference between the Third-Party Payor Settlement Fund (with interest earned) and the Reversion Amounts, plus 10 percent of the Reversion Amounts (as set forth in the Settlement Agreement and Plaintiffs' Memorandum of Law in Support of Class Counsel's Joint Petition for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards to the Named Plaintiffs), to be allocated among Class Counsel as reasonably determined by Co-Lead Counsel. The Court further awards $1,390,999.12 in costs, disbursements and expenses, with interest from the date of the deposit of the funds at the same rate earned by the funds, and $52,500.00 in total incentive awards to the Named Plaintiffs for their service in discovery and their role in bringing about the recovery on behalf of the Class. All of the foregoing amounts are to be paid exclusively out of the Consumer and Third-Party Payor Settlement Funds to Co-Lead Counsel without additional contribution or payment by Defendants. Any appeal from this paragraph shall not affect the finality of the remainder of this Final Order and Judgment, including but not limited to the date on which the Settlement will be deemed final under the terms of the Settlement Agreement.

15.    Neither this Final Order and Judgment, the Settlement Agreement, nor any of its terms or the negotiations or papers related thereto shall constitute evidence or an admission by any Releasee, that any acts of wrongdoing have been committed, and they shall not be deemed to create any inference that there is any liability therefor. Neither this Final Order and Judgment, the Settlement Agreement, nor any of the terms or the negotiations or papers related thereto shall be offered or received in evidence or used for any purpose whatsoever, in this or any other

or proceeding in any court, administrative agency, arbitration or other tribunal, other than as expressly set forth in the Settlement Agreement.

16.    Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court finds that there is no just reason for delay and therefore directs entry of this Final Order and Judgment as a final judgment that is immediately appealable.

17.    Without in any way affecting the finality of this Final Order and Judgment, the Court hereby retains exclusive jurisdiction over this End-Payor Purchaser action until the Settlement Agreement has been consummated and each and every act agreed to be performed by the Parties thereto shall have been performed, and thereafter for all other purposes necessary to effectuate the terms of the Settlement Agreement.

SO ORDERED this the 14th day of November, 2003.

Hon. John G. Koeltl
United States District Judge

**COPIES MAILED**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON ____

# TAB 3



Not Reported in F.Supp.                                                                                                          Page 1
Not Reported in F.Supp., 1993 WL 593999 (S.D.Fla.), 1993-2 Trade Cases P 70,480,  RICO Bus.Disp.Guide 8464
(Cite as: Not Reported in F.Supp.)

▷
Briefs and Other Related Documents

United States District Court, S.D. Florida.
Linda DAVIS, et al.
v.
SOUTHERN BELL TELEPHONE & TELEGRAPH
CO.
No. 89-2839-CIV-NESBITT.

Dec. 23, 1993.

ORDER

NESBITT, District Judge:
*1 This cause comes before the Court upon Plaintiffs'
Motion For Class Certification.

*Background*

Plaintiffs, customers of Defendant Southern Bell
Telephone & Telegraph Company ("Southern Bell"),
initiated this action seeking monetary damages and
injunctive relief for violations of the antitrust laws,
Florida Civil Remedies for Criminal Practice Act
("Florida RICO"), restitution, breach of duty of good
faith and fair dealing, and other statutory violations
under Florida law.    The only federal claims presented
are for monopolization and attempted monopolization
in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.
The Court has supplemental jurisdiction over the
remaining claims.

This suit arises out of the terms upon which Southern
Bell furnished inside wire maintenance service
("IWMS") to its residential and simple business
customers in the State of Florida since 1983.   IWMS
covers the telephone wire within a customer's home or
office which connects the telephone jack to the
telephone company's outside plant.   It also covers the
telephone jacks, but not the customer's telephone
equipment.

Plaintiffs's [*sic* ] filed their original Complaint on
December 21, 1989, and followed with their First
Amended Complaint on February 2, 1990.   The First
Amended Complaint alleges the following facts.   Prior
to 1983, Southern Bell maintained all the inside wiring
for residential and simple business customers.   IWMS

was part of, or was "bundled with," basic telephone
provided by Southern Bell pursuant to a monopoly
franchise from the State of Florida and regulated by the
Florida Public Service Commission ("PSC").   In 1982,
the PSC ordered that IWMS be separated, or
"unbundled," from basic telephone service in order to
promote competition in the IWMS market.

In June of 1983, Southern Bell offered IWMS to its
customers as a separate service for the first time.
Southern Bell made the offer through a "negative
option" contract announced in a billing insert.
Plaintiffs allege that the insert contained untrue,
deceptive, or misleading statements and omissions;
specifically, that it failed to inform customers that it
was a contract offer and implied that repairing inside
wire was a difficult task that could not be undertaken
by the customer.   Pursuant to the terms of the negative
option contract, customers were to continue to receive
IWMS from Southern Bell unless they affirmatively
requested otherwise, and were charged $.55 per month
for the service.   The new $.55 charge for the IWMS
was included in the charge for local telephone service.

From February to June of 1987, Southern Bell sent two
or more billing inserts to its customers, including a
ballot check-off which provided that Southern Bell
would continue to provide IWMS if the customer so
requested.   These inserts allegedly contained the same
types of misrepresentations and omissions as the 1983
insert.

In March 1988, Southern Bell sent its customers
another billing insert containing a second negative
option contract for IWMS which increased the cost of
service from $.55 per month to $1.00 per month.
Customers would accept the new "offer" if they did not
act.    The billing insert contained defects similar to
those contained in prior inserts.     Another negative
option contract mailed to customers in the late Spring
of 1989 raised the charge for IWMS to $1.50 per
month.

*2 Plaintiffs allege that by this conduct, Southern Bell
willfully acquired or maintained, or attempted to
acquire or maintain, monopoly power in the IWMS
markets, which enables it to realize unlawful monopoly
profits.   The First Amended Complaint alleges that
Plaintiffs represent a class consisting of all residential
and simple business consumers in the State of Florida
who paid for Southern Bell's optional IWMS between

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the time service became optional and the date of class certification.

On February 16, 1990, Southern Bell filed a Motion To Dismiss, Or In The Alternative, Motion For Summary Judgment. In an Order dated February 4, 1991, the Court granted the motion in part and deferred ruling on other aspects of the motion. The Order immunized Southern Bell from all antitrust liability through December 31, 1986 pursuant to the state action doctrine.

Plaintiffs filed the instant motion for class certification on March 22, 1990. The motion requests certification of a class consisting of all *current* residential and simple business consumers in the State of Florida who have paid for Southern Bell's IWMS between the time service became optional and the date of class certification.

### Standards Governing Class Certification

Prior to examining Plaintiffs' motion for class certification, it is necessary to review the principles governing disposition of a class certification motion. When reviewing such a motion, a district court is obliged to concentrate on the facts at the core of the dispute to determine whether the dispute involves issues common to the class as a whole. *Sollenbarger v. Mountain States Tel. & Tel. Co.* [1988-2 TRADE CASES ¶ 68,301], 121 F.R.D. 417 (D.N.M.1988). The court, however, is prohibited from ruling on the merits of the dispute. *Eisen v. Carlisle & Jacquelin* [1974-1 TRADE CASES ¶ 75,082], 94 S.Ct. 2140, 2152 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule ..."). Rather, the court must defer to the allegations of the plaintiff's complaint and determine whether those allegations warrant the adjudication of the plaintiff's claims on a class wide basis. *Gen. Tel. Co. of the Southwest v. Falcon,* 102 S.Ct. 2364, 2372 (1982). The decision whether to order class certification falls within the court's discretion. *Sollenbarger,* 121 F.R.D. at 422.

In order to obtain class certification, Plaintiffs must demonstrate that the action satisfies the requirements set out in Rule 23(a). The rule provides that:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*3 Plaintiffs must also demonstrate that the action satisfies the requirements of *either* Rule 23(b)(1), Rule 23(b)(2), or Rule 23(b)(3). Plaintiffs assert that the action satisfies Rule 23(b)(2) and 23(b)(3). Those rules provide that:An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The Court will analyze the propriety of class certification with respect to each of Plaintiffs' causes of action.

### Antitrust Causes of Action

The First Amended Complaint asserts the following four causes of action pursuant to the antitrust laws: (1) monopolization and leveraging of monopoly power in violation of § 2 of the Sherman Act, 15 U.S.C. § 2 (Count I); (2) attempt to monopolize in violation of § 2 of the Sherman Act, 15 U.S.C. § 2 (Count II); (3) monopolization and leveraging of monopoly power in violation of the Florida Antitrust Act of 1980, Fla.Stat.Ann. § 542.19 (Count III); and (4) attempt to monopolize in violation of the Florida Antitrust Act of 1980, Fla.Stat.Ann. § 542.19 (Count IV). Both the Florida Legislature and the Florida courts have made clear that the Florida Antitrust Act was modelled on the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1993 WL 593999 (S.D.Fla.), 1993-2 Trade Cases P 70,480, RICO Bus.Disp.Guide 8464
(Cite as: Not Reported in F.Supp.)

Sherman Act and is to be interpreted with the precedents construing the Sherman Act. See Fla.Stat.Ann. § 542.32 (1987) ( "It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to the comparable antitrust statutes ..."); see also, *Day v. Le-Jo Enterprises, Inc.* [1988-1 TRADE CASES ¶ 67,888], 521 So.2d 175 (Fla. 3rd Dist.Ct.App.1988).

Southern Bell raises the following objections to class certification with respect to these claims: (1) Plaintiffs' lack antitrust standing; (2) the claims of the named Plaintiffs are not typical of those of the alleged class as a whole under Rule 23(a)(3); (3) the named Plaintiffs do not qualify as adequate class representatives under Rule 23(a)(4); (4) Southern Bell did not act on grounds generally applicable to the class within the meaning of Rule 23(b)(2); (5) individual questions predominate over questions common to the class under Rule 23(b)(3); and (6) a class action is not superior to other [*sic* ]available for the fair and adjudication of the controversy because of the need for certification of numerous subclasses and because of the many manageability problems associated with individual proof of injury and damages. The Court considers each of these objections separately.

### (1) *Antitrust Standing*

*4 In its Order of February 4, 1991 disposing of Southern Bell's motion to dismiss or, alternatively, for summary judgment, the Court considered the issue whether Plaintiffs possess antitrust standing. See *Davis,* 755 F.Supp. at 1534-1537. The Court explained that, for purposes of that motion, it was limited to a review of the allegations of the Complaint. *Id.* at 1534. As the Court is not permitted to assess the merits of Plaintiffs' causes of action in connection with the instant motion, the Court is similarly limited here.

In its February 4, 1991 Order, the Court held that the allegations of the Complaint were sufficient to withstand the motion to dismiss, but that Southern Bell would not be precluded from renewing its objection in a subsequent motion for summary judgment. The Court adopts that holding for purposes of the instant motion, and will revisit the issue of standing in connection with Southern Bell's Motion For Summary Judgment.

### (2) *Typicality/Adequacy*

Rule 23(a)(3) and 23(a)(4) set out the typicality and adequacy standards applicable to federal class actions. Under Rule 23(a)(3), the claims of the class representatives must be typical of the claims of the class, while, under Rule 23(a)(4), the class representatives must be in a position to fairly and adequately represent the class. A number of courts have noted that the two standards tend to merge because the class representatives' claims must be typical of those if the representatives are to be adequate. See, e.g., *Gen. Tel. Co. of Southwest v. Falcon,* 102 S.Ct. 2364, 2370 n. 13 (1982); *Sollenbarger,* 121 F.R.D. at 423. The Court, however, will analyze the two requirements separately.

In order to satisfy's Rule 23(a)(3)'s typicality requirement, the party seeking class certification must demonstrate that the interests of the class representatives do not conflict with those of the class and that the claims of the class representatives are based on the same "legal or remedial" theory as those of the class as a whole. *Gonzales v. Cassidy,* 474 F.2d 67, 71 n. 7 (5th Cir.1973); *Pottinger v. City of Miami,* 720 F.Supp. 955, 959 (S.D.Fla.1989). Moreover, when the party seeking certification alleges that the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims. Herbert Newberg, 1 Newberg On Class Actions § 3.13 (1992) ("Newberg").

Southern Bell appears to concede that the claims of class representatives are based on the same legal theories as those of the class as a whole, but contends that, because the class representatives commenced and terminated their subscriptions to IWMS over different periods, their interests conflict both with one another and with those of the absent class members. In particular, Southern Bell contends that short-term purchasers may be satisfied with minimal recovery or a class-wide settlement arrangement which would dissatisfy long-term purchasers. In the nearly four years over which this litigation has proceeded, the Court has received no evidence of any such conflict between the class representatives and thus has no reason to believe that such a conflict will materialize in the future. Moreover, the Court retains two tools with which to cure any conflict that does arise. First, the Court can subdivide the class in order to eliminate the conflict. Second, the Court can scrutinize any settlement to ensure that the settlement adequately protects the interests of all class members.

*5 Southern Bell also objects to the adequacy of the

named Plaintiffs as class representatives.   It is well established that two factors govern whether a named plaintiff must satisfy two criteria in order to adequately represent a class: (1) the plaintiff's interests must not be in conflict with those of the other class members; and (2) the plaintiff must be able to ensure vigorous representation of the class. See, e.g., *Falcon,* 457 U.S. at 157 n. 13; Newberg at § 3.22.

Southern Bell raises two objections to the adequacy of the named Plaintiffs as class representatives.   First, Southern Bell contends that the individual named Plaintiffs differ markedly from the absent class members because all of the named Plaintiffs concede that they never read the allegedly deceptive billing inserts and therefore could not have been deceived by them. Second, Southern Bell contends that depositions of the named Plaintiffs reveal that they lack adequate knowledge of the facts underlying the litigation and the costs associated with the litigation.

Southern Bell's first objection is really a typicality objection.   See Newberg at § 3.22 at 127 ("[T]he typicality test examines the relationship of facts and issues between the representative and the class."). According to a leading authority on class actions:
Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.   In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.

Newberg at § 3.13 at 76.   Thus, where a class representative's claims are based on injuries caused by conduct affecting the class as whole, the class representative's claim satisfies Rule 23's typicality requirement.

In the present case, Plaintiffs contend that Southern Bell's 1987, 1988, and 1989 solicitations for IWMS misled customers into believing that they needed IWMS and that Southern Bell was the only company capable of providing the service.   As a result, Plaintiffs contend that any potential competitor must engage in "corrective advertising"-advertising designed to overcome the effect of Southern Bell's misleading solicitations and to inform customers that other companies can provide the service.   The need for corrective advertising deters potential competitors from entering the market for IWMS for three reasons.   First, corrective advertising is expensive.     Second, a company that engages in corrective advertising cannot

ensure that it will capture all of the business diverted away from Southern Bell by the advertising.   Rather, *other* competitors will capture much of that business. Finally, those competitors offering repair on a case by case basis, rather than through a service plan, cannot recoup the costs of corrective advertising within an acceptable period of time due to the low rate at which inside wires fail.   The need for corrective advertising thus acts as a market entry barrier that prevents potential competitors from entering the market for IWMS.   As a consequence, Southern Bell is able to charge monopoly prices for the service.

*6 It is undisputed that *all* of the class representatives purchased IWMS from Southern Bell prior to the present date.   Thus, *all* of the class representatives paid monopolistic prices for IWMS at some time and therefore suffered exactly the same type of injury as the absent class members.        The fact that class representatives never read those solicitations is irrelevant.   See *Kennedy v. Tallant,* 710 F.2d 711, 717 (11th Cir.1983) (investor served as adequate class representative in securities fraud case investor admitted never reading fraudulent prospectuses).

Southern Bell's second objection to the adequacy of the named Plaintiffs as class representatives also lacks merit.        Southern Bell contends that the named Plaintiffs lack sufficient knowledge of the facts underlying the case and of the costs associated with the case to serve as adequate class representatives.   This objection is meritless.   The depositions of the named Plaintiffs reveal that they are well aware of facts underlying this action and have at least some understanding of the applicable law.     See, e.g., Deposition of Linda Martens at pp. 31-33, 43-44, Exhibit H to Plaintiffs Reply.   Moreover, at least one of the Plaintiffs has indicated that she is aware of the costs associated with the action.   *Id.* at 45.   The Court has no reason to believe that the other named Plaintiffs are not similarly informed.   Finally, the vigor with which Plaintiffs have prosecuted this action is unquestionable.      The voluminous court file is a testament to this vigor.   The Court concludes that the named Plaintiffs are adequate to serve as class representatives.

### (4) [*sic* ] *Certification Under Rule 23(b)(2)*

Rule 23(b)(2) governs certification of classes in cases involving requests for declaratory or injunctive relief. The rule imposes two requirements on certification of such classes: (1) the party opposing the class must have acted or refused to act on grounds generally

applicable to the class and (2) final injunctive or declaratory relief must be appropriate as to the class as a whole. Fed.R.Civ.Pro. 23(b)(2). According to Southern Bell, the class alleged by Plaintiffs fails to satisfy either of these requirements.

Southern Bell contends that the class fails to satisfy the first requirement on the ground that Southern Bell altered the provision and billing of IWMS on an individual, not a class basis. Southern Bell concludes that it has not acted on grounds generally applicable to the class. This contention lacks merit. Southern Bell ignores the fact that it charged *all* of the class members the same, allegedly monopolistic prices and thus injured all of the class members in the same way. Moreover, Southern Bell acquired the ability to charge monopoly prices by directing its 1987, 1988, and 1989 solicitations at *all* of its residential and simple business customers in each of those years. Thus, the conduct at the heart of the case, and which any injunction would address, was directed at the class as a whole.

*7 Southern Bell nevertheless contends that final injunctive relief is not appropriate because the essential relief requested is monetary, not injunctive. Nothing in the language of Rule 23 precludes certification of both an injunctive class and a damages class in the same action. In fact, where injunctive relief and damages are both important components of the relief requested, court[s] have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action. See, e.g., *Waldrip v. Motorola, Inc.*, 85 F.R.D. 349 (N.D.Ga.1980); *Marshall v. Elec. Hose & Rubber Co.*, 68 F.R.D. 287 (D.Del.1975); see also, Newberg at § 4.14 at 51. As noted, Plaintiffs allege that Southern Bell employed deceptive marketing practices to create a barrier to entry into the IWMS market and that Plaintiffs therefore paid monopolistic prices for the service. If these allegations are correct, Plaintiffs are entitled to damages for the excessive prices they paid and injunction preventing Southern Bell from using the same techniques to acquire a future monopoly. Both aspects of the relief requested are therefore important. The fact that Plaintiffs have requested both damages and injunctive relief does not prevent certification of a class under Rule 23(b)(2).

### (5) [*sic* ]*Certification Under Rule 23(b)(3)*

Plaintiffs also seek certification under Rule 23(b)(3). As noted above, that rule authorizes class certification when the party seeking certification can demonstrate that the action in question satisfies all of the requirements of Rule 23(a) and that: (1) questions of law or fact common to the class predominate over any questions affecting individual class members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the action. Fed.R.Civ.Pro. 23(b)(3). Southern Bell contends that the instant case fails to meet either of these two criteria.

With regard to the first criterion, Southern Bell notes that Plaintiffs must prove three elements in order to prevail on their antitrust claims: (1) the existence of a violation of the antitrust laws; (2) direct injury to each individual Plaintiff caused by the violation; and (3) individual damages associated with the injury. See *State of Ala. v. Blue Bird Body Co.* [1978-1 TRADE CASES ¶ 62,041], 573 F.2d 309, 317 (5th Cir.1978). Southern Bell concedes that whether it violated the antitrust laws is an issue common to the class as a whole, but contends that the issues of injury and damages require individual proof. Southern Bell concludes that individual issues predominate.

Southern Bell's argument misconceives the nature of this case, the issues of antitrust violation, injury, and damages all turn on class-wide proof. In particular, if Plaintiffs demonstrate that Southern Bell's use of marketing techniques enabled it to charge monopolistic prices for IWMS, then Plaintiffs will have demonstrated that Southern Bell violated the antitrust laws *and* that anyone who purchased IWMS from Southern Bell during the period over which Southern Bell charged such prices was injured. If Plaintiffs make such a proof, then an individual plaintiff need only prove that he or she purchased IWMS during some portion of the period of the violation in order to show injury.

*8 Calculation of damages then becomes mechanical. See *Smith v. MCI Telecommunications Corp.*, 124 F.R.D. 665, 678 (D.Kan.1989). At any given time during the period at issue, Southern Bell charged all residential and simple business consumers the same rate for IWMS. Thus, once the fact-finder determines the amount of the overcharge per line per month for each month during this period-a factual issue requiring class wide proof-the fact-finder can then calculate an individual plaintiff's damages by computing the sum of the overcharges for each month in which the plaintiff proves that he or she purchased service. Thus, the only issues requiring individual proof concern whether, and over what time period, each individual plaintiff purchased service.

The complexity of these issues pales in comparison with the complexity of the issues related to proof of

antitrust violation.   As noted, Plaintiffs assert claims
for monopolization, monopoly leveraging, and
attempted monopolization.    In order to prove that
Southern Bell monopolized that market, Plaintiffs must
prove that:   (1) Southern Bell possessed monopoly
power in the relevant market;  and (2) Southern Bell did
not acquire that power simply through superior product,
business acumen, or accident, but rather through willful
and improper conduct.   *United States v. Grinell* [1966
TRADE CASES ¶  71,789], 384 U.S. 563, 570-71
(1966).

Proof of the first prong requires definition and proof of
the relevant market and proof of monopoly power.  *Id.*
Both of these issues require presentation of substantial
economic evidence.      Proof of the second prong
requires proof that the monopolizer undertook a course
of action the consequences of which were to destroy
competition in the relevant market.  *Id.*  In the present
case, Plaintiffs contend that Southern Bell's use of
misleading marketing techniques constitute the
improper conduct.   Plaintiffs will have to prove that
those techniques mislead IWMS consumers, that the
misunderstanding created the need for corrective
advertising, and that corrective advertising operated as
a market entry barrier that excluded, and continues to
exclude, potential competitors from the IWMS market.
Proof each of these links will require presentation of
substantial and complex evidence.

Proof of attempted monopolization will be similarly
complex.   To prove attempt, Plaintiffs must prove that
Southern Bell possessed a specific intent to monopolize
the relevant market and had a dangerous probability of
success.  *Palmer v. BRG of Ga., Inc.* [1981-1 TRADE
CASES ¶  68,612], 874 F.2d 1417, 1439 n. 33 (11th
Cir.1989).   Proof of the relevant market will be the
same  for  attempted  monopolization  as  for
monopolization.     Proof of specific intent can be
inferred from Southern Bell's anticompetitive conduct.
*Id.*  Thus, Plaintiff's proof will undoubtedly focus on
Southern Bell's marketing techniques and their effect
and will likely be substantially similar to their proof of
willful and improper conduct under the monopolization
counts.

*9 Finally, in order to prove "dangerous probability of
success", Plaintiffs must prove that:  (1) Southern Bell
has sufficient power to create a reasonable likelihood
that it could achieve a monopoly;  and (2) an overt act
in furtherance of the attempt.  *McGahee v. Northern
Propane Gas Co.* [1988-2 TRADE CASES ¶  68,296],
858 F.2d 1487, 1505 (11th Cir.1988).   Their proof on
these issues will focus on the causal link between
Southern Bell's marketing techniques and the need for

corrective advertising and on the effect of the need for
corrective advertising on the market for IWMS.
Again, this proof will require presentation of substantial
and complex evidence.

The foregoing indicates that the issues common to the
class predominate in both number and complexity over
the issues requiring individual proof.   Southern Bell
also contends, however, that a class action is not the
best available vehicle for resolution of the instant
controversy for the following reasons:   (1) proper
certification requires certification of numerous sub-
classes;    (2) class action treatment will require
numerous minitrials on the issues of injury and
damages;    and (3) it not possible to accurately
determine the membership of the class, making
effective notice to the class impossible.  None of these
contentions warrants denial of class certification.

According to Southern Bell, the Court must certify
numerous separate sub-classes that will render
management of the action extraordinarily difficult.  For
instance, Southern Bell asserts that the Court must
certify separate sub-classes corresponding to the sets of
IWMS purchasers who received Southern Bell's various
solicitations.    Thus, one subclass would include all
those current subscribers who received the 1987, 1988,
and 1989 solicitations, while another subclass would
contain only those who received the 1988 and 1989
solicitations.  Southern Bell also asserts that must [*sic*
]certify separate language-based sub-classes-one
consisting of Spanish speakers, the other consisting of
English speakers.

The need for these sub-classes arises from the conflicts
alleged to exist between them.  As noted above, for
example, Southern Bell contends that short term
subscribers may be satisfied with a judgment smaller
than one that would satisfy longer term subscribers.
The Court, however, must approve any settlement and
can reject any settlement that fails to adequately protect
the interests of all class members.    Moreover, if
irreconcilable conflicts between sub-groups within the
class materialize before settlement or trial, the Court
can then subdivide the class.   In the absence of any
evidence of an *actual* conflict between subgroups, the
Court need not subdivide the class.   Purely speculative
conflicts are not sufficient to preclude certification
under Rule 23(b)(3).

The Court has already addressed Southern Bell's
prediction of numerous, time consuming minitrials on
the issues of injury and damages.    The Court is
confident that it can overcome any manageability
problems attendant to individual proof on the issues.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

As noted, the Court might, for instance, appoint a special master to devise guidelines designed to reduce the number of contested individual claims.

**\*10** Southern Bell's notice argument is also insufficient to preclude class certification. The class alleged by Plaintiffs includes all *current* subscribers to IWMS. As Southern Bell bills each of these customers for the service each month, the company must have some mechanism for identifying these customers. The same mechanism can be used to generate a list of class members to whom notice of the instant action must be sent.

Finally, Southern Bell has failed to demonstrate that a feasible alternative to a class action exists. Every individual plaintiff who filed an antitrust claim in a separate action would have to prove antitrust violation, in addition to individual injury and damages. The use of the class action vehicle simply permits aggregate proof of antitrust violation and those class-wide issues related injury and damages. Use of the vehicle will thus conserve judicial resources and will eliminate the risk of inconsistent adjudications on the issues common to the class. The class action vehicle will thus simplify, not complicate, resolution of the instant controversy.

### Florida RICO Claims

In Counts V through VIII of the First Amended Complaint, Plaintiffs allege four separate violations of Florida's Civil Remedies for Criminal Practices Act ("Florida RICO"), Fla.Stat.Ann. § § 772.101-772.104. According to Plaintiffs, the violations are based on underlying violations of Florida's misleading advertising laws. Plaintiffs contend that Southern Bell violated those laws by disseminating the bill inserts at issue.

Southern Bell asserts the following four objections to class certification with respect to Plaintiffs' Florida RICO claims: (1) Plaintiffs could not obtain class certification in a Florida court with respect to these claims; (2) Plaintiffs fail to satisfy the adequacy and typicality requirements of Rule 23(a)(3) and 23(a)(4); (3) certification under Rule 23(b)(2) is not appropriate because Plaintiffs' preferred relief is monetary, not injunctive; (4) certification under Rule 23(b)(3) is not appropriate because individual questions predominate over questions common to the class.

Southern Bell's first argument is completely meritless. Whether Florida procedural law would prohibit certification of a class with respect to Plaintiffs' Florida RICO claims is irrelevant. This Court, like all other federal district courts, applies federal procedural law. See *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938).

Southern Bell's second and third arguments are nearly identical to the arguments made in connection with Plaintiffs' antitrust claims. On the basis of the reasons set out in the section dealing with those claims, the Court finds that the named Plaintiffs are adequate class representatives within the meaning of Rule 23(a)(3), that their claims are typical of those of the class within the meaning of Rule 23(a)(4), and that the fact that Plaintiffs seek both injunctive and monetary relief does not preclude certification under Rule 23(b)(2).

**\*11** Southern Bell's final argument requires more extended analysis. As noted, Plaintiffs's Florida RICO claims are based upon claims that Florida's misleading advertising laws, specifically sections 817.06, 817.40, and 817.41 of the Florida Statutes. Southern Bell contends that, in order to sustain a claim for misleading advertising in Florida, a plaintiff must satisfy all of the elements of common law fraud. Those elements include: (1) a false statement of material fact; (2) known by the defendant to be false at the time it was made; (3) made for the purpose of inducing the plaintiff to act in reliance thereon; (4) which actually induced the plaintiff to undertake some act in detrimental reliance thereon; and (5) which caused damage to the plaintiff as a result of that reliance. *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So.2d 1367 (Fla. 4th Dist.Ct.App.1981). Southern Bell concedes that the first three elements are common to the class and can be proved on a class-wide basis, but contends that the final two elements-reliance and damages-must be proven individually. Given the vast number of individuals included in the class, Southern Bell concludes that these individual issues would predominate over those issues common to the class.

Plaintiffs assert two basic responses. First, Plaintiffs contend that reliance and damages are not part of the elements of a criminal violation of Florida's misleading advertising laws. Since Florida RICO was designed to provide a civil remedy for *criminal* violations, Plaintiffs conclude that they need not establish reliance and damages in order to sustain a claim under that statute. Second, Plaintiffs contend that, even if they must establish those elements, the questions common to the class predominate.

The Court need not address Plaintiffs's first contention. Even if Plaintiffs must prove reliance and damages, questions common to the class predominate over

individual questions. Proof of reliance should be a simple matter in most cases since, as Plaintiffs note, reliance is presumed where the misrepresentation at issue arises from material omissions. See, e.g., *Shores v. Sklar,* 647 F.2d 462 (5th Cir.1981). Moreover, in order to prove reliance, a plaintiff need only prove that he or she was exposed to the misrepresentation at issue and undertook some action to his or her detriment on the basis of that misrepresentation. Regular payment for IWMS satisfies the latter condition.

The issues common to the class are more numerous and require more extensive proof. In order to sustain a claim under section 772.103(1), for instance, a plaintiff must demonstrate that the defendant: (1) received proceeds derived directly or indirectly; (2) with criminal intent; (3) pursuant to a pattern of criminal activity; (4) to use or invest in establishing or operating a RICO "enterprise". Fla.Stat.Ann. § 772.103(1). Proof on each of these issues will require extensive presentation of evidence.

**\*12** In order to prove a pattern of criminal activity, for example, Plaintiffs must prove that Southern Bell engaged in at least two incidents of criminal activity that had the same or similar intents, results, accomplices, victims or methods of commission. See Fla.Stat.Ann. § 772.102(4). The latest incident must fall within no more than five years of at least one other incident. *Id.* Plaintiffs allege that Southern Bell's various sales solicitations of IWMS constitute these incidents. In order to prove that these solicitations were *criminal,* Southern Bell must prove that they violated Florida's misleading advertising statutes. Thus, as to at least two of these solicitations, Plaintiffs must prove at a minimum that: (1) the solicitation in question contained misrepresentations concerning IWMS; (2) Southern Bell made the misrepresentations knowingly; and (3) Southern Bell made the misrepresentations in order to induce customers to initiate or continue IWMS. Plaintiffs also assert claims under sections 772.102(2) and (3). Proof of these claims will necessitate presentation of evidence on a number of complex issues, including, for example, whether Southern Bell engaged in a "conspiracy" prohibited by Florida RICO.

All of the issues concerning Southern Bell's conduct are common to the class. Given the number and complexity of these issues, and the comparative simplicity of the reliance and damages issues, the Court concludes that questions common to the class predominate over questions requiring individual proof. See *Eisenberg v. Gognon,* 766 F.2d 770, 786 (3rd Cir.1985) ("The presence of individual questions as to

the reliance of each investor does not mean that the common questions of fact do not predominate ... as required by Rule 23(b)(3) ..."). Moreover, the only alternative to a class action is a multiplicity of individual suits. In each of these suits, an individual plaintiff would have to present evidence on all of the common *and* individual questions. A class action will at least permit collective proof on the common questions. As the common questions are substantial, the gains to be had from collective proof on these issues far outweigh any manageability problems related to the need for individual proof of reliance and damages. Certification under Rule 23(b)(3) is therefore appropriate.

*Solicitation*

In Count IX of the First Amended Complaint, Plaintiffs assert that the materials Southern Bell used to market IWMS violated sections 817.061(1) of the Florida Statutes. That section provides that:

It is unlawful for any person, company, corporation, agency, association, partnership, institution, or charitable entity to solicit payment of money by means of a statement or invoice, or any writing that would reasonably be interpreted as a statement or invoice, for goods not yet ordered or services not yet performed and not yet ordered, unless there appears on the face of the statement or invoice or writing in 30 point boldface type the following warning:

**\*13** This is a solicitation for the order of goods or services, and you are under no obligation to make payment unless you accept the offer contained herein.

Fla.Stat.Ann. § 817.061(2). Section 817.061(2) creates a right of action for any person damaged by noncompliance with its terms. *Id.* at § 817.061(2). The injured party may recover three times the sum improperly solicited. *Id.*

Southern Bell asserts the following three objections to class certification with respect to this claim: (1) the named Plaintiffs are not adequate class representatives and their claims are not typical of the class; (2) certification is not appropriate under Rule 23(b)(2) because the essential relief requested is monetary, not injunctive; and (3) certification is not appropriate under Rule 23(b)(3) because individual questions concerning injury and damages predominate over questions common to the class. The Court has already addressed Southern Bell's first and second objections and declines to deny class certification on the basis of those objections for the reasons stated above.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 593999 (S.D.Fla.), 1993-2 Trade Cases P 70,480, RICO Bus.Disp.Guide 8464
(Cite as: Not Reported in F.Supp.)

Southern Bell's third objection is also familiar. Once again, the Court finds that the common issues predominate over those requiring individual proof. Southern Bell concedes that the issue whether its solicitations complied with section 817.061 is common to the class as a whole. The company contends, however, that the issues of injury and damages, which require individual proof, predominate.

The measure of damages specified in section 817.061 is quite simple. A prevailing plaintiff is entitled to an amount equal to three times the sum solicited. Fla.Stat.Ann. § 817.061(2). Individual damage calculations can thus be performed mechanically once the fact finder has determined the amounts solicited in each of Southern Bell's solicitations.

Proof of injury should also be simple. In order to prove injury, a plaintiff need only prove receipt of the solicitation and detrimental reliance on it. Section 817.061 penalizes omission of the required warning from a written solicitation. As noted above, reliance is generally presumed where required information is omitted. See, e.g., *Sklar,* 647 F.2d at 476.

As proof of injury and damages involves so little, the need for individual proof on these issues will create few manageability problems. The benefit afforded by class certification-collective adjudication on the issue of noncompliance-outweighs the burden that these manageability problems will create. The Court therefore finds that class certification is appropriate under Rule 23(b)(3).

### Money Had and Received

In Count X of the First Amended Complaint, Plaintiffs assert a claim for "money had and received". Under this cause of action, a plaintiff may obtain the restitution of monies held by the defendant where "equity and good conscience" compel such restitution. See *Moore Handley, Inc. v. Major Realty Corp.,* 340 So.2d 1238, 1239 (Fla. 4th Dist.Ct.App.1976). Plaintiffs contend that Southern Bell's sales contracts contained misrepresentations that mislead customers into believing that, unless they subscribed to IWMS, the company would cancel the remainder of their phone service. Plaintiffs conclude that Southern Bell derived its revenue from IWMS unfairly and that equity demands restitution of the funds to the members of the class.

*14 Southern Bell raises the following two objections to certification of a class with respect to this claim: (1)

the named Plaintiffs are not adequate class representatives and their claims are not typical of the class; and (2) certification under Rule 23(b)(3) is not appropriate because individual issues concerning the voluntariness of the purchases and the damages suffered predominate over questions common to the class. For the reasons set forth above, the Court rejects both of the these arguments. The Court finds that a class action is the best vehicle available to resolve this controversy and that certification is appropriate under Rule 23(b)(3).

### Void and Voidable Contracts

In Count XI of the First Amended Complaint, Plaintiffs assert a cause of action for restitution of monies paid under void or voidable contracts. Southern Bell raises the following three objections to certification with respect to this count: (1) the named Plaintiffs are not adequate class representatives and their claims are not typical of the class; (2) certification is not appropriate under Rule 23(b)(2) because the essential relief sought is monetary, not injunctive; and (3) certification is not appropriate under Rule 23(b)(3) because questions concerning whether individual customers reached a "meeting of the minds" with Southern Bell and the amount of individual damages suffered predominate over questions common to the class. The Court rejects each of these objections for the reasons set forth in the preceding sections.

### Breach of Implied Duty of Good Faith and Fair Dealing

In Count XII of the First Amended Complaint, Plaintiffs assert that the manner in which Southern Bell marketed IWMS violated Florida's implied good faith and fair dealing. Southern Bell responds that Florida does not provide that such a duty can override express contract terms and that Count XII fails to state a claim upon which relief can be granted.

Southern Bell's objection clearly goes to the merits of Plaintiffs' claim, not to its suitability for class treatment. The Court will address Southern Bell's objections to the merits of the claim in a separate order.

Based on the foregoing, it is hereby

Ordered and Adjudged that Plaintiffs' motion for class certification is Granted. The Court hereby certifies classes pursuant to Rule 23(b)(2) and Rule 23(b)(3), respectively. The Rule 23(b)(2) class shall consist of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

all residential and simple business consumers in the State of Florida who: (1) paid for Southern Bell's IWMS between December 31, 1986 and the entry date of this Order; (2) currently subscribe to Southern Bell's IWMS; and (3) seek injunctive relief based on the claims asserted Counts I through IX in the First Amended Complaint.  The Rule 23(b)(3) class shall consist of all residential and simple business consumers in the State of Florida who: (1) paid for Southern Bell's IWMS between December 31, 1986 and the entry date of this Order; (2) currently subscribe to Southern Bell's IWMS; and (3) seek monetary damages based on the claims asserted in all twelve counts in the First Amended Complaint.

**\*15** Southern Bell shall promptly mail a notice of the action in a form to be approved by the Court to each potential class member.  Each notice shall comply in all respects with the requirements of Rule 23(c)(2) and shall at a minimum: (1) specify the nature of this action; (2) list the counts included in the First Amended Complaint; (3) specify that the Court will exclude the member from the class if the member so requests by a date not less than ten days after the date upon which the notice was received; (4) specify that the judgment rendered in this action, whether favorable or not, will bind all members who do not request exclusion; and (5) specify that any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

In addition, Plaintiffs shall publish notice in a form to be approved by the Court complying with the preceding requirements in a newspaper of general circulation in this district each day for a period of seven (7) days. Publication shall commence no later than January 17, 1994.  The parties shall submit to the Court a proposed form of notice by January 10, 1994 for both the mailing and publication notices.

Initially, Southern Bell shall bear the costs of mailing notices to potential class members and Plaintiffs shall bear the costs of notice by publication.     At the conclusion of this litigation, the Court will determine the proper assessment and allocation of the costs incurred by the parties in mailing and publishing the notices.

> FN1. Plaintiffs seek treble damages for violations of § 2 of the Sherman Act and Florida Antitrust Act of 1980, Fla.Stat. § 542.19 (1987), treble damages for violations of the Florida RICO laws, and treble damages for violations of Fla.Stat. § 817.061.

FN2. IWMS is used in both interstate and intrastate communication and is regulated concurrently by both the State and the federal government.

FN3. The fact that some of the class members received oral, rather than written solicitations, creates no impediment to class certification. In *Kirkpatrick v. J.C. Bradford and Co.,* 827 F.2d 718, 724 (11th Cir.1987), the Eleventh Circuit held that the fact that some class members in a securities fraud case received fraudulent       information       via       oral misrepresentations, while others received the information via written misrepresentations was irrelevant, absent some evidence of material variance between the oral and written representations.     The Court finds no such evidence here.

FN4. Southern Bell objects to the adequacy of named   Plaintiff   Genevieve   Williams ("Williams") on the ground that telephone service at her residence is in her husband's name and that she is therefore not a Southern Bell customer.  Her deposition makes it clear, however, that she resides with her husband, uses the phone serviced through Southern Bell in his name, and, most importantly, pays the telephone bills out of her own checking account.  Deposition of Genevieve Williams at 7-8, 34, Exhibit J to Plaintiffs' Reply. Because Williams pays for the telephone service in her husband's name, she, not her husband, suffered any injury associated with Southern Bell's alleged monopoly of IWMS. She therefore qualifies as an adequate class representative.

FN5. Resolution of these issues need not burden the Court's docket.   Once the fact finder has determined that Southern Bell charged IWMS consumers monopolistic prices and has computed the overcharge per month per line, the Court could, for example, appoint a special master to devise guidelines to reduce the number of contested individual claims.

FN6. Plaintiffs also contend that Southern Bell violated section 2 of the Sherman Act and section 542.19 of the Florida Statutes through "monopoly leveraging".  Monopoly leveraging is the use of monopoly power in

Not Reported in F.Supp.
Not Reported in F.Supp., 1993 WL 593999 (S.D.Fla.), 1993-2 Trade Cases P 70,480,  RICO Bus.Disp.Guide 8464
**(Cite as: Not Reported in F.Supp.)**

one market to acquire monopoly power in another market. See *Times-Picayune Pub. Co. v. United States* [1953 TRADE CASES ¶ 67,494], 345 U.S. 594, 611 (1953). In this case, Plaintiffs contend that Southern Bell used its monopoly over the provision of basic telephone services, and unique access to consumers of those services, to monopolize the market for IWMS. Proof of monopoly leveraging will turn on, among other things, Plaintiffs ability to prove that Southern Bell's billing inserts mislead consumers and will thus be quite similar to proof of monopolization. The Court therefore chooses not to analyze monopoly leveraging and reaches the same conclusion regarding certification of both the monopoly leveraging and monopolization claims.

FN7. The Court notes that, in *Sollenbarger,* the United States District Court of New Mexico certified a class nearly identical to the one in the present case on substantially similar facts. 121 F.R.D. at 417. The noted that it retained the power to either de-certify or subdivide the class in the event that intra-class conflicts warranted such action. *Id.* The court never exercised either option.

FN8. The fact that the class alleged in the Complaint and in Plaintiffs' motion for class certification in no way precludes certification of the latter class. See, e.g., 1 Newberg at 2.03; see also, Fed.R.Civ.Pro. 23(c)(1), 23(c)(4).

FN9. Plaintiffs contend, among other things, that Southern Bell's bill inserts were misleading because they failed to make clear that purchase of IWMS was optional.

S.D.Fla.,1993.
Davis v. Southern Bell Tel. & Tel. Co.
Not Reported in F.Supp., 1993 WL 593999 (S.D.Fla.), 1993-2 Trade Cases P 70,480,  RICO Bus.Disp.Guide 8464

Briefs and Other Related Documents (Back to top)

• 1:89CV02839 (Docket) (Dec. 21, 1989)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.