# Exhibit B



SALLY FRANKLIN ZWEIG, ATTORNEY AT LAW
DIRECT LINE: (317)464-2626 • EMAIL: SZWEIG@KATZKORIN.COM

KATZ & KORIN PC   THE EMELIE BUILDING • 334 NORTH SENATE AVENUE • INDIANAPOLIS, INDIANA 46204
ATTORNEYS AT LAW   TELE: (317) 464-1100 • FAX: (317) 464-1111

June 22, 2006

**VIA E-MAIL (cjpeterman@pbwt.com) &**
**VIA FACSIMILE (212-336-2222)**

Chad J. Peterman
Patterson Belknap Webb & Tyler, LLP
1133 Avenue of the Americas
New York, NY  10036-6710

    RE:    *Subpoena to "Anthem, Inc." - In re: TriCor Antitrust Litigation*
            *05-360-KAJ (D. Del)*

Dear Mr. Peterman:

This letter constitutes our objection to the Subpoena in a Civil Case, which you served June 9, 2006, upon "Anthem, Inc., and any of its predecessors, subsidiaries, divisions, affiliates, officers, directors, employees, past or present trustees, fiduciaries, representatives, agents, assigns, attorneys, accountants and all other persons or entities acting or purporting to act on its behalf or under its control" [sic], hereinafter "Anthem," on behalf of Defendant Abbott Laboratories. We object to this Subpoena in its entirety, pursuant to Rules 26 and 45. Our deadline to file a Motion to Quash this Subpoena has not yet arrived, but we request that you immediately withdraw this Subpoena so that further action is not necessary.

The Seventh Circuit holds that absent class members may not be required to submit to discovery unless a trial court has made a potential determination that certain circumstances exist, as specified in case law such as *Brennan v. Midwestern United Life Insurance Company*, 450 F.2d 999 (7th Circuit 1971) and *Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Circuit 1973), *cert. den.*, 95 S. Ct. 657. Abbott Laboratories wholly failed to comply with this requirement, and the Subpoena is unenforceable.

In addition, we have again reviewed the language in the Subpoena and our notes from the conversation with you, Offer Korin and Ronald G. Sentman on June 9, 2006, in which you paraphrased the document requests and deposition topics that are included in the Subpoena but did not substantially reduce or modify their scope, even in light of Anthem's very extreme challenges.

Anthem presently holds the Blue Cross and Blue Shield license in fourteen states and operates nationwide, serving 34 million medical members through the individual, small group, large group, national accounts, senior and state-sponsored customer segments, and processes at least 345 million pharmaceutical claims alone per year.



Chad J. Peterman
June 22, 2006
Page 2 of 3

Further, its history of multiple mergers and acquisitions over the eight year period covered in the scope of the requests means that even the initial logistics of simply finding records is complicated. Many of the people who might have the necessary institutional memory to begin such a search would have to be located (and in some cases hired) since the accretion of companies by Anthem has included many staffing changes and reductions. It has also meant that each of those divisions has its own varied practices and systems covering creation, storage, and retention of records.

Even if relevant records can be generally located, the second step of searching many different data platforms and formats – now likely obsolete and otherwise no longer technically accessible – would require hiring forensic experts to retrieve and potentially restore data to a useable format. The cost of even those two steps in work hours and fees to experts who would further have to comply with the very specific privacy restrictions that apply to health insurance records would very quickly approach hundreds of thousands of dollars. This would be in addition to the hundreds of man hours it would take for Anthem associates to search for potentially relevant or responsive material. Such costs do not even reach the third step of actual document review for responsiveness, the fourth step of review for privilege or other protection, and the fifth step of indexing or otherwise organizing the material in some coherent fashion. Attorney time and travel (and the cost thereof) that would be required throughout would accumulate rapidly as well. The cost of compliance alone is burdensome beyond reason. To our knowledge your client has not made any provision to protect Anthem from these costs.

In addition, the time constraints set forth in the Subpoena are quite simply impossible. The scope of what you ask would take months to even initiate, let alone to begin to accomplish. Twenty-one days is unreasonable.

After further considering these matters, it is also apparent to us that the Subpoena should be quashed in its entirety even if it had been issued properly (which it was not), because it:

    a.    "[F]ails to allow reasonable time for compliance" within the meaning of Rule 45(c)(3)(A)(i).

    b.    Is violative of the 100-mile travel restrictions of Rule 45(c)(3)(A)(ii).

    c.    "[R]equires disclosure of privileged or other protected matter," within the meaning of Rule 45 (c)(3)(A)(iii) and does not allow Anthem a reasonable period of time to prepare a description of privileged matters as specified by Rule 45(d).



**KATZ & KORIN** pc
ATTORNEYS AT LAW

Chad J. Peterman
June 22, 2006
Page 3 of 3

    d.    Is unduly burdensome and expensive, as discussed in Rules 26(c) and 45(c)(3)(A)(iv).

    e.    "[R]equires disclosure of a trade secret or other confidential research, development, or commercial information," within the meaning of Rule 45(c)(3)(B)(i).

If you wish to discuss the matter further, please call Offer Korin or me immediately. If we do not hear from you by 4:00 p.m. EDT on June 23, 2006, we will consider our obligations to conduct a discovery conference to be fully satisfied and feel free to pursue whatever relief is available in the appropriate court. In sending this letter, we do not limit or waive any other objections and/or rights that our client may have in law or equity.

Very truly yours,

KATZ & KORIN, P.C.

Sally Franklin Zweig

RGS/SFZ/hlm