---

# Exhibit C

Westlaw.

Not Reported in F.Supp.                                                    Page 1
Not Reported in F.Supp., 1996 WL 122717 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Ernest P. KLINE, et al.
v.
FIRST WESTERN GOVERNMENT SECURITIES,
INC., et al.
**No. CIV.A. 83-1076.**

March 11, 1996.

Joseph D. Mancano, Teresa N. Cavenagh, Ronald F. Kidd, Michael M. Mustokoff, Wendy R. Hughes, Christine J. Saverda, Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, PA, for plaintiffs.
Arthur Newbold, Dechert, Price & Rhoads, John Rogers Carroll, Carroll & Carroll, Philadelphia, PA, Robert E. Leberman, Richard J. Sideman, San Francisco, CA, Alan M. Klinger, Stroock & Stroock & Lavan, New York City, James A. Backstrom, Vaira, Backstrom, Riley & Smith, Philadelphia, PA, Randi Lane Maidman, Stroock, Stroock and Lavan, Marvin G. Pickholz, Stroock, Stroock and Lavan, New York City, for First Western Government Securities, Inc., Sidney P. Samuels, Samuels, Kramer and Co.
First Western Government Securities, Inc., San Fransico, CA, pro se.
Sidney P. Samuels, San Fransico, CA, pro se.
Samuels, Kramer and Co. San Fransico, CA, pro se.
John E. McKeever, Nicole Reimann, Schnader, Harrison, Segal & Lewis, Irving R. Segal, George P. Williams, Arden J. Olson, Philadelphia, PA, for Avery, Hodes, Costello and Burman.

*MEMORANDUM*
VANARTSDALEN, Senior District Judge.
*1 This is a class action securities fraud claim brought on behalf of investors who purchased forward contracts in government securities through the First Western Securities, Inc. (First Western) government securities trading program from January 1, 1978 through March 3, 1983. The plaintiffs maintain, among other things, that written materials issued by First Western, as well as opinion letters issued by the law firm of Arvey, Hodes, Costello & Burman (Arvey, Hodes) contained material misrepresentations and omitted material facts in their description of the First Western investment program.

As the docket number indicates, the complaint in this action was originally filed in 1983. Long periods of delay ensued because I placed this action in the suspense docket for a number of years while a related case worked its way through the U.S. Tax Court, *see Freytag v. Commissioner, 89 T.C. 849, aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991),* and because my May 6, 1992 decision denying in part and granting in part a summary judgment motion filed by defendant Arvey, Hodes was appealed to the United States Court of Appeals for the Third Circuit, and the United States Supreme Court (which denied *certiorari*). Not until December 20, 1995 did I certify a class in this action.[FN1]

Arvey, Hodes now seeks leave to serve discovery (interrogatories and requests for documents) on the absent class members, following an "opt-out" period. Filed Doc. #119. After consideration of that motion, and the plaintiffs' response thereto, Filed Doc. #124, for the reasons discussed below, I will deny that motion.

Arvey, Hodes states in the memorandum in support of its motion that "the interrogatories and document requests seek to discover information relevant to the following questions: (1) whether the class members relied on Arvey, Hodes opinion letters, and (2) whether the class members had a reasonable expectation of economic gain when the class member entered into the First Western transactions." The interrogatories and document requests seek a variety of items. Some examples are: "State all advice, information, and/or documents received, reviewed, or relied on by you prior to your decision to enter into any transaction with First Western Government Securities, Inc;" "Did you expect to make a profit at the time you entered into your transaction with First Western Government Securities, Inc.? If so, state the basis for your expectation;" "Did the Internal Revenue Service disallow any loss related to any transaction you entered into with First Western Government Securities, Inc.? If so, state the date the Internal Revenue Service first notified you of its decision to disallow the loss, and the amount of the loss actually disallowed." Filed Doc. #119, Ex. A. As far as documents, Arvey, Hodes seeks "all federal tax returns filed by you [the absent class member] for the years 1975 through 1983; "all documents ... received from any employee or representative of ... First

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 122717 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Western Government Securities, Inc., Samuels, Kramer & Co., Sidney P. Samuels and Robert Kramer." Filed Doc. #119, Ex. B. Arvey, Hodes intends to serve this discovery on all absent class members. Although the record is not altogether clear, it appears that there are at least 2400 class members.

*2 While the Federal Rules of Civil Procedure do not specifically allow for discovery of absent class members, they also do not forbid it. However, upon survey of the cases, it is safe to state that discovery of absent class members is disfavored. As Wright & Miller declare: "[i]f discovery from absent members of the class is permissible at all, it should be sharply limited and allowed only on strong showing of justification." 8 Charles A. Wright, et al., Federal Practice and Procedure § 2171 (2d ed. 1994) (quoted in Federal Judicial Center, Manual for Complex Litigation § 30.232 n.730). Cases in which requests for discovery of absent class members have been denied include: In re Worlds of Wonder Secs. Litig., 87-5491, 1992 WL 330411 (N.D. Cal. July 9, 1992); Enterprise Wall Paper Mfg. Co. v. Bodman, 85 F.R.D. 325, 327 (S.D.N.Y. 1980); Town of New Castle v. Yonkers Contracting Co., 88-2952, 1991 WL 159848, (S.D.N.Y. Aug. 13, 1991) (denying discovery on damages but allowing certain discovery on antitrust claim); Renovitch v. Stewardship Concepts, Inc., 1987 WL 14688, at *2 (N.D. Ill. 1987); Bisegeier v. Fotomat Corp., 62 F.R.D. 118 (N.D. Ill. 1973) (rejecting discovery on individual purchases of shares).

There are several reasons why discovery of absent class members is limited. Some courts have accepted the argument that absent class members are not "parties" and are therefore not subject to at least some forms of discovery (i.e. interrogatories). See Wainright v. Kraftco Corp., 54 F.R.D. 532, 534 (N.D. Ga. 1972); Fischer v. Wolfinbarger, 55 F.R.D. 129, 132 (W.D. Ky. 1971). This does not appear to be a majority position, however, and I do not agree with it.

Another reason for denying discovery of absent class members is that class action defendants could use burdensome discovery requests as a method of unfairly reducing the number of class members. In some of the cases where discovery of absent class members was permitted, when absent class members failed to comply with discovery requests, the defendants filed motions to have those class members dismissed from the case under Federal Rule of Civil Procedure 37. This strategy is essentially a "back door" way to create an "opt in" scheme, where class members are required to take some affirmative step in order to remain in the class. This is inconsistent with the "opt out" provision of Rule 23.

Commenting on the problems raised by discovery of absent class members, Newberg on Class Actions states:
"One objective of Rule 23 is the avoidance of a multiplicity of actions. The satisfaction of this goal is hindered by encouraging exclusion when absent class members are forced to participate in the discovery process ... If a class member is intimidated to the point [of exclusion], another goal of Rule 23, the resolution of common claims, will be defeated.

In a similar vein, the Federal Judicial Center's Manual on Complex Litigation points out, "[o]ne of the principal advantages of class actions over massive joinder or consolidation would be lost if class members were routinely subjected to discovery." See § 30.232.

*3 With these reasons in mind, courts have fashioned a fairly stringent standard a class action defendant must meet before being permitted to serve discovery on absent class members. Two leading cases on this issue derive from the U.S. Court of Appeals for the Seventh Circuit. In Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999 (7th Cir. 1971), cert. denied, 405 U.S. 921 (1972), the court stated that "if discovery from absent class members is necessary or helpful to the proper presentation and correct adjudication of the principal suit, [there is] no reason why it should not be allowed, so long as adequate precautionary measures are taken to insure that the absent class members are not misled or confused." Brennan, 450 F.2d at 105. As the plaintiffs' point out, the Brennan court's rather lenient approach has been criticized, and the majority of later decisions adopt a more exacting criteria. Indeed, the Seventh Circuit itself, in Clark v. Universal Builders, Inc., 501 F.2d 324, 340-41 (7th Cir.), cert. denied, 419 U.S. 1070 (1974), stated that "class wide discovery was not appropriate unless the district court concluded that: (1) the discovery was not designed as a tactic to take undue advantage of the class or as a stratagem to reduce the number of claimants; (2) the discovery was necessary; (3) the discovery did not require the assistance of technical and legal advice in understanding the questions and formulating responses; and (4) that the discovery did not seek information on matters already known to the defendants."

I do note that the more difficult standard in the Clark

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 122717 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Page 3

case was applied to a request for depositions, not interrogatories or documents, and the court noted the fact that otherwise passive litigants might be subject to harsh questioning during depositions. However, a *Clark*-like standard has been applied to interrogatory and document requests in many other cases. *See, e.g., Dellums v. Powell*, 566 F.2d 167 (D.C. Cir. 1977), cert. denied, 438 U.S. 916 (1978); *McMahon Books, Inc. v. Willow Grove Associates*, 84-3861, (E.D. Pa. June 26, 1986); *United States v. Trucking Employers, Inc.*, 72 F.R.D. 101 (D.D.C. 1976).

As one court noted, this approach now appears to be well-accepted:
"The majority of courts considering the scope of discovery against absent class members granted discovery by interrogatories or document requests (1) where the information requested is relevant to the decision of *common* questions, (2) when the discovery requests are tendered in good faith and are not unduly burdensome and (3) when the information is not available from the class representative.

*Transamerican Refining Corp. v. Dravo Corp.*, 139 F.R.D. 619, 621 (S.D. Tx. 1991) (emphasis added).

Applying these standards to the instant case, leads me to conclude that it would not be appropriate to grant Arvey, Hodes' discovery request.

Almost all of the information Arvey, Hodes seeks in its discovery requests deals with individual questions, not common questions. For example, the determination of exactly what each class member relied on in making the decision to invest with First Western is an individual question, more properly adjudicated after the common questions[FN2] have been determined. *See McMahon Books, Inc. v. Willow Grove Associates*, 84-3861, (June 26, 1986 E.D. Pa.); *Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 547 (E.D. Pa. 1976), cited with approval in *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d. Cir. 1985).

*4 I also note that with regard to the plaintiffs' omission claim, there is a presumption of reliance. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972). Certainly, that presumption is rebuttable, but again, that would seem to be a secondary, individual issue, to be tried upon completion of the first stage of this litigation.

Some of the requests focus on the issue of damages. For example, Interrogatory 5 asks: "(a) how much, in total, did you actually send to First Western Government Securities, Inc. whether in cash, check, or any other form of payment? (b) Did you receive any money back from First Western Government Securities, Inc.? If so, state the amount you received back." Filed Doc. # 119, Ex. A. The amount of damages to each investor (if any) is certainly an individual question, that -- if necessary -- should be dealt with after the common questions are resolved. *See Robertson v. National Basketball Assoc.*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975) (discovery of individual class members' damages not allowed).

With regard to discovery requests on the issue of whether a class member had an expectation of profit when he or she invested with First Western, I have serious doubts about whether the plaintiffs must necessarily establish they had such a profit motive in order to recover.

The *Freytag* Tax Court litigation determined that the investors in First Western who were therein litigating their tax liabilities did not have a reasonable expectation of profit, but instead entered into the investments with the specific purpose of generating tax losses. *Freytag v. Commissioner*, 89 T.C. 849 (1987), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd 501 U.S. 868 (1991). Obviously, if an investor sought to create tax losses, then those intended losses suffered in the transactions would probably not be recoverable. Likewise, increased tax liabilities caused by disallowance of such claimed losses on tax returns would appear not to be recoverable, unless the defendants made representations to the investors that such losses would be allowed. Even if investors relied on the defendants' statements that the transactions were not shams, but investors had no reasonable expectation of profit, the losses would appear to have been incurred regardless of misrepresentations and/or omissions.

However, as I noted in the memorandum accompanying my order of December 20, 1995, if it is ultimately determined that the defendants misrepresented or omitted material facts regarding an ongoing IRS investigation of First Western, the plaintiffs may be able to prove that had that information, or other misrepresented or omitted information, been properly provided to them, they would not have invested with First Western. Under those circumstances any resultant loss (investment or tax) may be recoverable. *Kline, et al. v. First Western Gov't Secs., Inc.* 83-1076, (E.D. Pa. Dec. 20, 1995). In any event, the issue of a class members' expectation of profit would be an individual -- not a common -- question.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 122717 (E.D.Pa.)
(Cite as: Not Reported in F.Supp.)

Page 4

*5 In addition, I note that these interrogatories and document requests are sufficiently complicated that it is very likely that absent class members will need to consult an accountant and/or attorney before responding. I am also concerned that the size of the class will make these discovery requests impractical. These considerations further tip the balance in favor of protecting the interests of absent class members.

Finally, I note that some of Arvey, Hodes' requests are unnecessarily overbroad. For example, Arvey, Hodes seeks complete tax returns from each absent class member for the years 1975-1983. I can not understand why Arvey, Hodes must have complete tax returns from each absent class member for all of those years, particularly since the commencing date of the class is 1978. Also, as the plaintiffs point out, Arvey, Hodes makes no effort to narrow its request to a "sample" of some portion of the class members, as has been done in other cases. *See Transamerican Refining Corp. v. Dravo Corp.,* 139 F.R.D. 619, 622 (S.D. Tex. 1991); *Robertson,* 67 F.R.D. at 700. While I do not conclude from this that these discovery requests were made in bad faith, or solely for the purpose of annoying the absent class members, this does raise some question in my mind on that point.

All of the above-mentioned factors lead me to deny Arvey, Hodes' motion. An appropriate order follows.

### ORDER

For the reasons stated in the accompanying memorandum, it is ORDERED that defendant Arvey, Hodes, Costello & Burman's "Motion for Leave to Serve Discovery Pursuant to Rules 33 and 34 on Absentee Class Members" is DENIED.

FN1. Because my previous opinions, *Kline v. First Western Gov't Secs.,* 83-1076, (E.D. Pa. Dec. 20, 1995) (certifying a class) and *Kline v. First Western Gov't Secs.,* 794 F. Supp. 542 (E.D. Pa. 1992) (granting in part and denying in part Arvey, Hodes motion for summary judgment), as well as that of the U.S. Court of Appeals for the Third Circuit, *Kline v. First Western Gov't Secs.,* 24 F.3d 480 (3d Cir. 1994), contain full descriptions of the facts in this case, I will not repeat them here.

FN2. The common questions in this case would include, *inter alia,* whether the First

Western materials and the Arvey, Hodes opinion letters included material misrepresentations and/or omitted material facts.

E.D.Pa.,1996.
Kline v. First Western Government
Not Reported in F.Supp., 1996 WL 122717 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:83cv01076 (Docket) (Mar. 03, 1983)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit D

Westlaw.

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 32815233 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
In re LUCENT TECHNOLOGIES, INC.
SECURITIES LITIGATION
**No. 2:00-CV-621.**

July 16, 2002.

David J. Bershad, Milberg Weiss Bershad Hynes &
Lerach LLP, New York, NY, Max W. Berger,
Bernstein Litowitz Berger & Grossmann LLP, New
York, NY, for Lead Plaintiffs.
John H. Schmidt, Jr., John F. Goemaat, Lindabury,
McCormick & Estabrook, P.A., Westfield, NJ, Paul
C. Saunders, Daniel Slifkin, Cravath, Swaine, &
Moore, New York, NY, for Defendants Lucent
Technologies Inc., Richard A. McGinn, Donald K.
Peterson, and Deborah C. Hopkins.

OPINION
PISANO, J.
*1 Defendants Lucent Technologies Inc., Richard A.
McGinn, Donald K. Peterson, and Deborah C.
Hopkins (collectively "Lucent") have filed this
appeal from Magistrate Judge Chesler's Letter
Opinion and Order dated May 7, 2002 ("May 7, 2002
Order") denying Lucent's request for document
discovery from all named plaintiffs who filed
complaints in this consolidated action. Specifically,
Lucent seeks discovery from the forty-one named,
non-lead plaintiffs in response to its Third Request
for Production of Documents and Things ("Third
Request"). In its May 7, 2002 Order, the magistrate
court declined to compel this group of plaintiffs to
respond to Lucent's Third Request, agreeing with
Lead Plaintiffs that the requested discovery would
not "shed any light on the overall issue of liability, in
particular on whether the entire class acted in reliance
on the market price of Lucent stock." (Letter Op. &
Order of May 7, 2002.) This Court has jurisdiction to
review the magistrate court's determination, 28
U.S.C. § 636(c)(4); see Fed.R.Civ.P. 72(a); L. Civ.
R. 72.1(c), and now affirms.

I. Background

On January 9, 2002, Lucent served on Lead Plaintiffs

its Third Request for discovery, seeking a response
from all plaintiffs including "the additional plaintiffs
named in Schedule B of the plaintiffs' Fifth
Consolidated and Amended Class Action Complaint,
and all other named plaintiffs in the Consolidated
Actions." (Ex. A, Decl. of Michael A. Paskin.) The
Third Request, a twelve paragraph discovery
demand, essentially seeks information relevant to
Plaintiffs' allegations within the lawsuit, the
Plaintiffs' investment history and practices with
Lucent, and the Plaintiffs' securities litigation history.
(Ex. A. Decl. of Michael A. Paskin.) On February 8,
2002, Plaintiffs served their response to the Third
Request. (Ex. B, Decl. of Michael A. Paskin.) Noting
their "General Objections" within their response,
Lead Plaintiffs objected to the definition of
"plaintiffs" "to the extent that it refers to any
plaintiffs except Lead Plaintiffs Teamsters Locals
175 & 505 D & P Pension Trust Fund and the
Parnassus Fund and Parnassus Income Trust/Equity
Income Fund, because it is overly broad, unduly
burdensome and not reasonably calculated to lead to
the discovery of admissible evidence." (Ex. B, Decl.
of Michael A. Paskin.) At all times, Lead Plaintiffs
have maintained the position that documents and
other information obtainable from the non-lead
plaintiffs is not discoverable. (Ex. C, Decl. of
Michael A. Paskin.)

Lucent then filed with Magistrate Judge Chesler a
motion to compel Co-Lead Plaintiffs to produce
documents from all named plaintiffs in response to
Lucent's Third Request. (Ex. D, Decl. of Michael A.
Paskin.) In his May 7, 2002 Order, Judge Chesler
denied Lucent's motion to compel. (Ex. F, Decl. of
Michael A. Paskin.)

II. Standard of Review

A court shall affirm a magistrate judge's discretionary
ruling unless it finds that the judge abused his
discretion. *Cooper Hosp./Univ. Med. Ctr. v. Sullivan,*
183 F.R.D. 119, 127 (D.N.J.1998) (citations omitted).
Largely deferential, the abuse of discretion standard
is " 'especially appropriate where the Magistrate
Judge has managed this case from the outset and
developed a thorough knowledge of the
proceedings." ' *Id.* (quoting *Public Interest Res.
Group v. Hercules, Inc.,* 830 F.Supp. 1525, 1547
(D.N.J.1993), *aff'd on other grounds and rev'd on*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32815233 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

*other grounds*, 50 F.3d 1239 (3d Cir.1995).) Civil discovery issues, for example, require a magistrate judge to exercise his sound discretion in making a ruling. *See Kresefky v. Panasonic Communications. & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J.1996) ("Where, as here, the magistrate has ruled on a non-dispositive matter such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion.") Mindful then of the significant deference afforded Magistrate Judge Chesler's determination, this Court considers this discovery dispute between the parties, and must affirm absent a finding that the Judge abused his discretion. *Cooper Hosp./Univ. Med. Ctr.*, 183 F.R.D. at 127 (quotation omitted).

### III. The Magistrate's Ruling

*2 On its motion before Magistrate Judge Chesler, Lucent argued that discovery from all named plaintiffs is necessary to rebut the presumption of reliance in fraud-on-the-market, securities case. (Exs. D & F, Decl. of Michael A. Paskin.) Lucent further argued that this discovery is relevant to class certification issues. (Exs. D & F, Decl. of Michael A. Paskin.) Co-Lead Plaintiffs opposed, contending that the non-lead plaintiffs are not class representatives and that any discovery from this group of plaintiffs will not reveal any proof of the liability issues involved. (Exs. E & F, Decl. of Michael A. Paskin.) Magistrate Judge Chesler held in favor of the Lead Plaintiffs, reasoning that the discovery sought from the named, non-lead plaintiffs will not establish proof of liability: "discovery as to the investment behavior of the 41 named, non-lead plaintiffs is not probative of the question of class-wide reliance on the market. Conclusions drawn from the experience of a class of hundreds of thousands of individuals of which the putative class is comprised." (Ex. F at 2, Decl. of Michael A. Paskin.)

This Court agrees. After reviewing the record and the magistrate judge's determination based on that record, *see* L. Civ. R. 72.1(c), this Court finds that the magistrate court did not abuse its discretion in denying Lucent's motion to compel. In so denying, the Court reached the conclusion that the forty-one non-lead, non-representative plaintiffs should be treated as passive class members and thus not subject to discovery. Other courts have similarly concluded. *See, e.g., Guenther v. Sedco, Inc.*, No. 93-Civ-4143, 1998 WL 898349, at * 7 (S.D.N.Y. Dec. 22, 1998) (footnote omitted) (observing that absent class members are not parties for discovery purposes); *In*

*re Carbon Dioxide Ind. Antitrust Litig.*, 155 F.R.D. 209, 211-12 (M.D.Fla.1993) (recognizing that non-representative plaintiffs in class action "remain as passive class members, on equal footing with all other non-representative class members. The efficiencies of a class action would be thwarted if routine discovery of absent class members is permitted, particularly on the issue of liability."); *cf. Kline v. First Western Gov't Sec.*, No. Civ-A-83-1076, 1996 WL 122717 at *1 (E.D.Pa. Mar. 11, 1996) (determining after "survey[ing]" cases that "it is safe to state that discovery of absent class members is disfavored.")

In ruling, the magistrate court also distinguished this case from *Easton & Co. v. Mutual Benefit Life Ins.*, No. 91-4012, 92-2095, 1994 WL 248172, at * 4-5 (D.N.J. May 18, 1994), where defendants were allowed to discover absent class members' investment history and background to rebut the fraud-on-the-market presumption. Magistrate Judge Chesler contrasted the drastically different class sizes involved in the two cases, concluding that discovery from the forty-one non-representative, named plaintiffs included within a class of thousands would not meaningfully aid the Defendant here. As the magistrate court construed it, *Easton'* s small class totaling 160 members "undoubtedly influenced the *Easton'* s finding that such discovery would be relevant to the issue of class-wide reliance ." (Ex. F at 2, Decl. of Michael A. Paskin.) This Court agrees with this interpretation.

### IV. Conclusion

*3 For the foregoing reasons, this Court affirms Magistrate Judge Chesler's May 7, 2002. An appropriate order accompanies this opinion.

### ORDER

Before the Court is Defendants Lucent Technologies Inc., Richard A. McGinn, Donald K. Peterson, and Deborah C. Hopkins' (collectively "Lucent") appeal from Magistrate Judge Chesler's Letter Opinion and Order dated May 7, 2002 denying Lucent's request in its Third Request for Production of Documents and Things for discovery from all named plaintiffs who filed complaints in this consolidated action. Lead Plaintiffs Teamsters Locals 175 & 505 Pension Trust Fund and The Parnassus Fund and Parnassus Income Trust/Equity Income Fund filed opposition to Lucent's appeal. Having considered the parties'

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 32815233 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

written submissions, and for the reasons expressed in the accompanying opinion, it is
On this 15th day of July, 2002,
ORDERED that Lucent's appeal is denied; and it is further
ORDERED that Magistrate Judge Chesler's Letter Opinion and Order dated May 7, 2002 is affirmed.


D.N.J.,2002.
In re Lucent Technologies Inc. Securities Litigation
Not Reported in F.Supp.2d, 2002 WL 32815233 (D.N.J.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3805874 (Trial Motion, Memorandum and Affidavit) Affidavit-Motion (Jan. 26, 2005)
• 2005 WL 3781752 (Trial Motion, Memorandum and Affidavit) Lead Plaintiffs' Memorandum of Law in Response to Motions for Acceptance of Untimely Claims (Jan. 25, 2005)
• 2004 WL 3704072 (Trial Motion, Memorandum and Affidavit) Trial Motion, Memorandum and Affidavit (Dec. 13, 2004)
• 2004 WL 3704074 (Trial Motion, Memorandum and Affidavit) Trial Motion, Memorandum and Affidavit (Feb. 18, 2004)
• 2004 WL 3704073 (Trial Motion, Memorandum and Affidavit) Trial Motion, Memorandum and Affidavit (Feb. 10, 2004)
• 2003 WL 24270069 (Trial Motion, Memorandum and Affidavit) Objection to Class Action Settlement and Attorney's Fee Request of Edward Gordon (Nov. 24, 2003) Original Image of this Document (PDF)
• 2003 WL 24270067 (Trial Motion, Memorandum and Affidavit) Compendium of Declarations and Affidavit of Lead Counsel, Lead Plaintiffs, and Experts in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and plan of Allocation, and Lead Counsel's Motion for an Award of Attorneys' Fe es and Reimbursement of Expenses (Nov. 18, 2003) Original Image of this Document (PDF)
• 2003 WL 24270068 (Trial Motion, Memorandum and Affidavit) Joint Declaration of Lead Plaintiffs in Support of Their Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Application of Lead Counsel for an Award of Attorneys' Fees and Reimbursement of Expenses (Nov. 17, 2003)
• 2003 WL 24266767 () Declaration of Frank C. Torchio (Nov. 14, 2003) Original Image of this Document (PDF)
• 2002 WL 32984059 (Trial Motion, Memorandum

and Affidavit) Declaration of J. Erik Sandstedt in Support of Lead Plaintiffs for the Certification of the Action as A Class Action and for Appointment of Class Representatives (Aug. 23, 2002)
• 2002 WL 32984060 (Trial Motion, Memorandum and Affidavit) Declaration of Michael A. Paskin in Support of Defendants' Motion for Summary Judgment on Their Statute of Limitations Defense (Aug. 19, 2002)
• 2002 WL 32984061 (Trial Motion, Memorandum and Affidavit) Declaration of Michael A. Paskin in Support of Defendants' Appeal from Magistrate Judge Chesler's May 7, 2002 Order (May 28, 2002)
• 2002 WL 32984063 (Trial Motion, Memorandum and Affidavit) Trial Motion, Memorandum and Affidavit (Apr. 30, 2002)
• 2002 WL 32984062 (Trial Motion, Memorandum and Affidavit) Trial Motion, Memorandum and Affidavit (Apr. 19, 2002)
• 2001 WL 34883550 (Trial Motion, Memorandum and Affidavit) Declaration of Michael A. Paskin in Further Support of Defendants' Motion to Dismiss the Fifth Consolidated and Amended Class Action Complaint (Aug. 24, 2001)
• 2001 WL 34883716 (Trial Pleading) Fifth Consolidated and amended Class Action Complaint (Aug. 10, 2001)
• 2001 WL 34883715 (Trial Pleading) Answer (Jan. 22, 2001)
• 2000 WL 34601550 (Trial Pleading) Third Consolidated Amended and Supplemental Class Action Complaint (Dec. 1, 2000)
• 2000 WL 34601549 (Trial Pleading) Second Consolidated Amended and Supplemental Class Action Complaint (Nov. 22, 2000)
• 2000 WL 34601548 (Trial Pleading) Consolidated and Amended Class Action Complaint (Nov. 3, 2000)
• 2000 WL 34601547 (Trial Pleading) Complaint for Violation of the Federal Securities Law (Feb. 9, 2000)
• 2:00cv00621 (Docket) (Feb. 09, 2000)
• 2000 WL 34601551 (Trial Pleading) Fourth Consolidated Amended and Supplemental Class Action Complaint (Jan. 4, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E

Westlaw.

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. Georgia, Brunswick
Division.
Samuel COOPER, Albert Ferguson, and Herbert H.
Miller, Jr., on behalf of themselves and all others
similarly situated, Plaintiffs,
v.
PACIFIC LIFE INSURANCE COMPANY and
Pacific Select Distributors, Inc., Defendants.
**No. CV203-131.**

Aug. 5, 2005.

Brian C. Kerr, Janine L. Pollack, Michael Champlin
Spencer, Lee A. Weiss, Milberg, Weiss, Bershad,
Schulman, Hynes & Lerach, LLP, New York, NY;
and John B. Long, Thomas W. Tucker, Tucker,
Everitt, Long, Brewton & Lanier, PC, Augusta, GA,
for Plaintiffs.
James R. Carroll, Kurt Wm. Hemr, Skadden, Arps,
Slate, Meagher, Flom, LLP, Boston, MA; and
Wallace E. Harrell, Gilbert, Harrell, Gilbert,
Sumerford & Martin, PC, Brunswick, GA, for
Defendants.

*ORDER*
ALAIMO, J.
*1 On May 9, 2005, the Court granted Plaintiffs'
motion for class certification (the "Certification
Order"), on behalf of all persons or entities who
purchased an individual deferred variable annuity
contract, or who received a certificate to a group
variable deferred annuity contract, issued by Pacific
Life Insurance Company, or who made an additional
investment in a separate account investment option
under such a contract, where the annuity was used to
fund a contributory retirement plan or arrangement
qualified for favorable income tax treatment pursuant
to § § 401, 403, 408A, or 457 of the Internal
Revenue Code, on or after August 19, 1998, through
April 30, 2002 (the "Class").[FN1]

> FN1. The Class definition excluded
> Defendants, any officer or director of
> Defendants or entity in which Defendants
> had a controlling interest at any relevant
> time, any member of those persons'

immediate families and legal affiliates,
heirs, controlling persons, agents, successors
and predecessors in interest or assigns of
any such excluded person or entity.

Presently before the Court are the parties' proposed
Notices to Class Members. With minor
modifications, Plaintiffs' proposed Notice will be
ADOPTED. Pacific Life's request to send a
questionnaire to Class Members will be DENIED.

*DISCUSSION*

I. *The Class Definition Is Not Unfairly Expansive*

As an initial matter, Pacific Life contends that the
class definition was expanded unfairly by the
inclusion of investors who purchased variable
annuities before the class period began, but made
additional investments during the class period. The
Court rejects this argument. Investors were not
obligated to make additional investments into their
Pacific Life variable annuities. Each new investment
was voluntary, and independent of previous
commitments to buy securities. *Radiation Dynamics,
Inc. v. Goldmuntz,* 464 F.2d 876, 891 (2d Cir.1972).
Any securities fraud that occurred during the later
transactions is independently actionable. *See
Goodman v. Epstein,* 582 F.2d 388, 410-14 (7th
Cir.1978)(capital contributions by limited partners
not a "one-shot deal," but rather constituted separate
purchases of securities); *Deutschman v. Beneficial
Corp.,* 761 F.Supp. 1080, 1087 (D.Del.1991)("it
would be illogical to hold that a monthly exchange of
value in terms of dollars for ... shares at market price
could be anything other than purchases of
securities.").

II. *Defendants' Questionnaire is Improper*

Pacific Life also argues that it should be permitted to
send a questionnaire to the Class Members along
with the Class Notice. Plaintiffs submit that
Defendants' proposed discovery is, at best, premature,
because the trial in this matter could proceed in two
stages. During the first stage, common questions
could be resolved and, if the Class prevailed, a
second stage could follow, where matters relating to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

individual questions could be determined.

Defendants assert that it is proper for them to inquire into individual matters, like reliance, because bifurcating the trial of this matter would violate their Seventh Amendment rights. Pacific Life maintains that the individual questions of reliance are inextricably intertwined with the common questions, which raises the possibility that a second jury could reexamine the findings of fact made by the first jury. The Court need not now decide whether it would be helpful, or feasible, to bifurcate the trial in this case. Regardless of how the trial of the case proceeds, Defendants' proposed discovery is improper, particularly at this relatively early stage in the litigation.

*2 The modern class action is not a joinder device. As the Supreme Court has explained, generally, "an absent class-action plaintiff is not required to do anything." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 810, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).[FN2] Unlike the class representative, absent class members do not initiate the action, and are not active participants in it.

> FN2. Consistent with that sentiment, and the Eleventh Circuit's discussion of class members' obligations in *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1555 (1986), the Court has included in the Class Notice a modified version of Defendants' proposed paragraph eighteen, discussing Class Members' possible discovery obligations, to explain that some of those obligations may arise even if Class Members decide to opt out of the litigation.

One of the goals of Rule 23, avoidance of a multiplicity of actions, would be frustrated by saddling class members with discovery obligations. Federal Judicial Center, Manual for Complex Litigation § 21.41 (4th ed.2004). Consequently, class action defendants are not permitted to seek discovery from absent class members as a matter of course. Indeed, some courts have decided that absent class members are not "parties" for the purposes of Rules 33 and 34 of the Federal Rules of Civil Procedure. *See Wainwright v. Kraftco Corp.*, 54 F.R.D. 532, 534 (N.D.Ga.1972); *Fischer v. Wolfinbarger*, 55 F.R.D. 129, 132 (W.D.Ky.1971). In cases allowing such discovery, two closely-related tests have emerged to judge the propriety of discovery requests. In one formulation, courts require that the discovery (1) is

not directed toward winnowing the size of the class, (2) is necessary, (3) would not require the assistance of a lawyer or other expert to answer, and (4) seeks information not known to movant. *Clark v. Universal Builders*, 501 F.2d 324, 340-41 & n. 24 (7th Cir.1974). Other courts have required that the discovery (1) be sought in good faith and not be overly burdensome, (2) be relevant to common questions, and (3) be unavailable from the representative parties. *Dellums v. Powell*, 566 F.2d 167, 187 (D.C.Cir.1977); *see generally* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § § 16.1-16.3 (4th ed.2002).

Defendants have moved for permission to propound a lengthy questionnaire to absent Class Members. The proposed questionnaire focuses exclusively on matters relating to individual Class Members' claims. Pacific Life envisions responses to the questionnaire as being voluntary-"in the first instance." Sending a list of thirty-nine questions, counting sub-parts, to Class Members with the Class Notice may have the unwelcome effect of confusing recipients into believing that they must answer the questions to remain in the lawsuit. In any event, it could deter claimants with small damages from participating in the suit.

"The party moving to include the questionnaire has the burden of proving necessity." *Schwartz v. Celestial Seasonings*, 185 F.R.D. 313, 316 (D.Colo.1999); *Enter. Wallpaper Mfg., Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y.1980) (requiring a strong showing). Pacific Life has not met this standard. Assuming, for the sake of argument, that discovery into individual matters would otherwise be proper,[FN3] Pacific Life has not shown that the proposed discovery is necessary. In the Certification Order, the Court noted that Defendants may "overcome the presumption of reliance at trial as to any particular class member[,]" with documents and evidence from NASD-registered representatives, such as was submitted by Pacific Life from Joseph Jacques, Robert Szuch, and CUE.

> FN3. *But see, e.g., Bisgeier v. Fotomat Corp.*, 62 F.R.D. 118, 120-21 (N.D.Ill.1973) (finding that interrogatories were irrelevant because of the *Affiliated Ute* presumption of reliance); *In re Lucent Techs, Inc. Sec. Litig.*, Civ. A. No. 00-621(JAP), 2002 U.S. Dist. LEXIS 8799 *3-*6 (D.N.J. May 7, 2002) (rejecting questionnaire related to reliance by individual class members); *In re*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                     Page 3
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

*Worlds of Wonder Sec. Litig.,* No. C-87-5491 SC (FSL), Fed. Sec. L. Rep. (CCH) P97,018, 1992 U.S. Dist. LEXIS 10503 at *13-*15 (N.D. Cal July 9, 1992) (same).

*3 One place for Defendants to look for evidence to support its defenses in the instant matter, then, are those very sources: the registered representatives who sold their variable annuity products directly to the Class Members, and the broker-dealers for whom they worked. To the extent such individuals and entities are forthcoming, Pacific Life might obtain documents, like disclosure forms, from these sources in much the same way as it obtained documents from Jacques and CUE.

Defendants might also consider deposing registered representatives pursuant to Federal Rule of Civil Procedure 30, or seeking documents from such third-party witnesses by subpoena duces tecum pursuant to Federal Rule of Civil Procedure 45. These avenues could provide much information, and not have the adverse effect of discouraging Class Members' participation in the lawsuit.

In sum, Pacific Life has not demonstrated that it is entitled to conduct discovery of absent Class Members.

## CONCLUSION

For the reasons explained above, Pacific Life's request to send its proposed questionnaire to Class members is DENIED. Plaintiffs' proposed Class Notice is ADOPTED, with minor changes.

THE COURT HEREBY ORDERS that:

(a) Within ten (10) days of the date of this Order, Defendants shall provide Class Counsel with a list of names and addresses of all those persons who are part of the Class. Such listing shall be made available in computer-accessible form so as to facilitate prompt mailing at reasonable cost;

(b) Class Counsel shall: (i) within fourteen (14) calendar days of the date it receives from Defendants the names and addresses of all members of the above-defined class, in accordance with the Court's Certification Order, cause the Class Notice, substantially in the form annexed hereto as Exhibit A, to be sent by regular mail, postage prepaid, to those persons identified pursuant to paragraph (a) above; and (ii) within twenty-one (21) calendar days of the

date it receives from Defendants the names and addresses of all members of the Class, cause the Summary Class Notice, substantially in the form annexed hereto as Exhibit B, to be published one time in the national edition of *The Wall Street Journal* and *USA Today;*

(c) By the date of mailing the Class Notice, Class Counsel shall post on their website a copy of the Certification Order, accessible through the website's "Search" function using the phrase "Cooper v. Pacific Life," for the benefit of Class Members, as described in the Class Notice;

(d) Within a reasonable time after the publication of the Summary Class Notice, Class Counsel shall cause an affidavit or affidavits to be filed with the Clerk of Court and served upon all parties to evidence the fact that the Class Notice was mailed and the Summary Class Notice was published; and

(e) The deadline for requests for exclusions and entries of appearances pursuant to Fed.R.Civ.P. 23(c)(2) as set forth in the Class Notice shall be ninety (90) calendar days from the date of the initial mailing of the Class Notice. Within a reasonable time after the deadline for requests for exclusions, Class Counsel shall cause an affidavit to be filed with the Clerk of Court and served by hand on all parties which shall provide a list of all persons or entities from whom exclusion requests have been received, identified by name and address.

*4 SO ORDERED, this 4th day of August, 2005.

## EXHIBIT A

*COURT-ORDERED NOTICE TO CERTAIN CURRENT AND FORMER PACIFIC LIFE ANNUITY OWNERS THAT A CLASS ACTION IS PENDING*

This Notice is being sent to you, and many other persons who purchased variable annuities issued by Pacific Life Insurance Company, in order to provide information about this class action lawsuit, which is pending in this Court and which may affect your rights. Please read it carefully.

1. The lawsuit was brought on behalf of a group of persons, defined as all who:
  purchased an individual variable deferred annuity contract, or who received a certificate to a group

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

variable deferred annuity contract, issued by Pacific Life Insurance Company, or who made an additional investment in a separate account investment option under such a contract,

between August 19, 1998, and April 30, 2002,

and the contract was used to fund a contributory retirement plan or arrangement qualified for favorable income tax treatment pursuant to § § 401, 403, 408A, or 457 of the Internal Revenue Code.

2. In other words, if, between August 19, 1998, and April 30, 2002, you purchased or made an additional investment in a variable annuity issued by Pacific Life, and the annuity was placed or held in a tax-deferred retirement plan (Individual Retirement Account, 401(k), 403(b), etc.), then you are a "Class Member."

3. You are receiving this Notice because Pacific Life's records indicate that you are a Class Member. If you do not fall within the Class, this Notice does not apply to you and you may disregard it.

4. The rest of this Notice provides information about this lawsuit and about the courses of action you may take. The lawsuit is still being contested. Depending on the outcome, Class Members may or may not receive money damages or other relief. This Notice does not suggest how the lawsuit will be resolved.

5. This Notice is being provided pursuant to Rule 23 of the Federal Rules of Civil Procedure and by Order of the Court, dated May 9, 2005, which decided that the lawsuit could proceed as a class action on behalf of the Class Members as defined above.

*What Is This Lawsuit About?*

6. Plaintiffs' Complaint alleges that between August 19, 1998, and April 30, 2002, the two Pacific Life defendants ("Pacific Life") committed securities fraud because they did not disclose, when marketing and selling variable deferred annuities to Class Members, that a main economic value of such annuities-tax deferral of earnings-is unnecessary for persons investing through qualified retirement plans.

7. Plaintiffs allege that Pacific Life was motivated by pecuniary gain to sell the annuities to Class Members, who were all retirement plan investors, without disclosing that the tax shelter was of no value to them.

8. Plaintiffs contend that Pacific Life did this in order to collect higher fees and surrender penalties from the Class Members, which add up to substantial profits for Pacific Life, in excess of what could be gained by selling mutual funds. According to the Complaint, the additional "mark-up" was used for profit and to pay commissions to sales agents, or registered representatives, that are two to ten times higher than the commissions paid on sales of mutual funds.

*5 9. Plaintiffs also allege that Pacific Life failed to implement proper procedures to confirm whether an annuity was a suitable product for qualified retirement plan investors, regardless of whether a suitability analysis was performed at the time of purchase by the registered representative involved in the sale of the variable annuity(ies).

10. The Complaint seeks money damages, a declaration that the annuity contracts are voidable at the election of buyers, restitution, and/or the right to terminate the annuity contracts without penalty.

11. Pacific Life denies Plaintiffs' allegations. Pacific Life contends that its actions were proper under the federal securities laws, and it asserts that it is not liable to Plaintiffs or other Class Members.

12. Defendants assert that qualified plan investors already knew, or should have known, that all of the tax advantages of the variable deferred annuity were unnecessary. Defendants also contend that the product has features other than tax deferral that make it attractive to buyers funding qualified retirement plans.

13. The Court has not reached any conclusion and does not express any opinion as to whether Plaintiffs or Defendants are correct or will prevail in this lawsuit. The Court has sustained the legal sufficiency of the securities fraud claims in the Complaint, but has not otherwise made any determination of the merits of the claims. There is no assurance that a judgment in favor of the Class will be granted.

14. On November 25, 2003, the Court issued an Order appointing Samuel Cooper as Lead Plaintiff; Milberg Weiss Bershad & Schulman LLP [FN4] as lead counsel; and Tucker, Everitt, Long, Brewton, & Lanier as liaison counsel for Plaintiffs and the Class.

FN4. Previously, this law firm was named Milberg Weiss Bershad Hynes & Lerach LLP.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

15. On May 9, 2003, the Court issued an Order certifying this lawsuit as a class action on behalf of the Class, and appointing Samuel Cooper, Albert Ferguson, and Herbert H. Miller, Jr., as Class Representatives.

16. This Notice is intended to advise you that this lawsuit is pending and to describe your rights, including the right to remain a Class Member, or to exclude yourself from the Class.

*Rights If You Remain A Class Member*

17. If you wish to remain a Class Member, you are not required to do anything at this time. If you remain a Class Member, you will be bound by any judgment in this lawsuit, whether it is favorable or unfavorable. If there is a recovery, and you show that you are a Class Member and that no valid defenses apply to you, you will be entitled to share in any monetary damages or other benefits recovered by the Class, less such costs, expenses, and attorneys' fees as the Court may approve. If you remain a Class Member and Defendants prevail in this case, you will not recover any damages and you will not be able to pursue a lawsuit on your own with regard to any of the issues raised or decided in this lawsuit.

18. Regardless of whether you remain a Class Member, you may have certain obligations during the pendency of this case. Specifically, you could be called to testify, under oath, at a deposition or at trial. If you decide to remain a Class Member, you may have additional obligations, which could include providing sworn, written answers to written questions posed by the attorneys in this lawsuit. Also, you could be required to provide documents in your personal possession to the attorneys in this lawsuit. If you wish to remain a Class Member, you should be aware that your responses to any of these obligations could keep you from sharing in any recovery, even if other Class Members recover money damages.

*If You Wish To Be Excluded From The Class*

*6 19. If you wish to exclude yourself from the Class, you must make a request in writing on or before _____, 2005. In order to be valid, each such request for exclusion must set forth the name and address of the person requesting exclusion, must state that you request exclusion from the Class in *Cooper v. Pacific Life Insurance Company,* CV203-131, must

identify the contract number(s) of your variable deferred annuity(ies) issued by Pacific Life, and must be signed. If you are requesting exclusion, you must mail your Request for Exclusion postmarked no later than _____ to the Notice Administrator at the following address:
Cooper v. Pacific Life Insurance Co.
P.O. Box 9000, # 6325
Merrick, N.Y. 11566-9000

Do *not* request exclusion if you wish to participate in this lawsuit as a Class Member.

20. If you exclude yourself from the Class, you will not be bound by any judgment in this lawsuit and you will not be entitled to share in any recovery in this lawsuit. You may seek to pursue any legal rights you may have against any Defendant on your own. You should consult an attorney of your choice if you plan to sue individually, because, among other reasons, you will need to know about any deadlines for filing such an individual claim.

*Further Proceedings*

21. If you remain a Class Member, you will be represented by the Lead Counsel for the Class as appointed by the Court, which is the law firm of Milberg Weiss Bershad & Schulman LLP. If you wish, you may also enter an appearance in this lawsuit personally or through your own counsel at your own expense.

22. Class Members are not personally responsible for any attorneys' fees or expenses. Any fees or expenses ultimately awarded by the Court to Plaintiffs' counsel will be payable only out of the recovery in the lawsuit, if any.

23. It is anticipated that this lawsuit will now go forward until one side prevails or it is settled.

*Availability Of Court Papers*

24. This Notice does not fully describe all of the claims and contentions of the parties. The pleadings and other papers filed in this lawsuit are available for inspection, during business hours, at the Office of the Clerk of Court, United States District Court for the Southern District of Georgia, 801 Gloucester Street, Suite 222, Brunswick, Georgia 31520. Class Members may view a copy of the Court's Order of May 9, 2005, certifying the case as a class action, at

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 6
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiffs' Lead Counsel's website, <*www.milbergweiss.com* >. The Order provides a detailed description of the factual and legal issues involved in this litigation. To view it, type "Cooper v. Pacific Life" into the "Search" function on the law firm's website, and select the document from the search results listed. Class Members also may obtain a copy of the operative Complaint by contacting Plaintiffs' Lead Counsel.

25. If you have any questions about this Notice, you may consult an attorney of your own choosing at your own expense, or you may contact Plaintiffs' Lead Counsel. Please do not address any questions to the Court, the Clerk, or the Judge. Plaintiffs' Lead Counsel is:
*7 Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, N.Y. 10119
Toll-Free Number: (800) 320-5081

BY ORDER.

### EXHIBIT B

*SUMMARY NOTICE OF PENDENCY OF CLASS ACTION*

TO ALL PERSONS WHO:
 purchased an individual variable deferred annuity contract, or who received a certificate to a group variable deferred annuity contract, issued by Pacific Life Insurance Company, or who made an additional investment in a separate account investment option under such a contract,
 between August 19, 1998, and April 30, 2002,
 and the contract was used to fund a contributory retirement plan or arrangement qualified for favorable income tax treatment pursuant to § § 401, 403, 408A, or 457 of the Internal Revenue Code.

This Summary Notice is to advise you that the above action has been certified to proceed as a class action on behalf of the above owners, or former owners, of Pacific Life Insurance Company variable annuities. The action asserts claims against Pacific Life Insurance Company and Pacific Select Distributors for violations of certain provisions of the federal securities laws. Defendants have denied all allegations of wrongdoing asserted against them and have asserted affirmative defenses.

If you are, or may be, a member of the Class and have not received a copy of a detailed printed Notice of Pendency of Class Action (the "Notice"), you may obtain a copy of the Notice by contacting the Notice Administrator at:
Cooper v. Pacific Life Insurance Co.
P.O. Box 9000, # 6325
Merrick, N.Y. 11566-9000

Unless you request an exclusion from the Class on or before _____, 2005, pursuant to the procedures set forth in the Notice referred to above, you will be bound by all orders and judgments in this action, and will not be able to file, participate in, or continue any other action or proceeding based on, or relating to, the claims, causes of action, facts, or circumstances of this action.

This Notice does not indicate any expression of opinion by the Court concerning the merits of any of the claims or defenses asserted in the action. This Summary Notice is merely to advise you of the pendency of the action, and the availability of the detailed Notice.

S.D.Ga.,2005.
Cooper v. Pacific Life Ins. Co.
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1438679 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Partial Reconsideration of the April 4, 2006 Order (Apr. 13, 2006) Original Image of this Document (PDF)
• 2005 WL 2839508 (Trial Motion, Memorandum and Affidavit) Pacific Life's Memorandum Regarding Pre-Trial Scheduling (Sep. 19, 2005) Original Image of this Document (PDF)
• 2005 WL 2247620 (Trial Motion, Memorandum and Affidavit) Pacific Life's Reply in Further Support of Its Motion for Propoundment of Questionnaire to Class Members (Jul. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 2247616 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendants' Motions to Defer Class Notice and to Send a Questionnaire to All Class Members, and Plaintiffs' Objections to Defendants' Proposed Alterations to Class Notice (Jul. 5, 2005) Original Image of this Document with Appendix (PDF)
• 2004 WL 2158475 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1866166 (S.D.Ga.)
(Cite as: Not Reported in F.Supp.2d)

Plaintiffs' Motion for Class Certification (Aug. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 2158471 (Trial Pleading) Pacific Life's Answer and Affirmative Defenses (Jul. 26, 2004) Original Image of this Document (PDF)
• 2004 WL 2158466 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Notice of Additional Authorities and Response to Pacific Life's Notice of Additional Authority (May 27, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2158460 (Trial Motion, Memorandum and Affidavit) Pacific Life's Notice of Additional Authority (May 21, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 2158455 (Trial Motion, Memorandum and Affidavit) Pacific Life's Reply Memorandum in Further Support of its Motion to Dismiss Plaintiffs' Amended Complaint (May 11, 2004) Original Image of this Document (PDF)
• 2004 WL 2158444 (Trial Motion, Memorandum and Affidavit) Pacific Life's Memorandum in Support of its Motion to Dismiss Plaintiffs' Amended Complaint (Mar. 12, 2004) Original Image of this Document (PDF)
• 2004 WL 2158440 (Trial Pleading) Amended Class Action Complaint (Jan. 27, 2004) Original Image of this Document (PDF)
• 2004 WL 2158449 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss (2004) Original Image of this Document (PDF)
• 2003 WL 23792864 (Trial Pleading) Class Action Complaint (Aug. 18, 2003) Original Image of this Document with Appendix (PDF)
• 2:03cv00131 (Docket) (Aug. 18, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.