# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Mary B. Graham
302.351.9199
mgraham@mnat.com

July 10, 2006

The Honorable Kent A. Jordan                    **VIA ELECTRONIC FILING**
United States District Court
844 King Street
Wilmington, DE 19801

       Re:    *In re TriCor® Antitrust Litigation (Indirect Purchasers)*
              C.A. No. 05-360 (KAJ)

Dear Judge Jordan:

       I write on behalf of defendants Abbott and Fournier in opposition to the Indirect Purchaser Plaintiffs' motion to quash (C.A. No. 05-360, D.I. 179).

       Plaintiffs claim to represent a disparate class of indirect purchasers, whose largest stakeholders are sophisticated health insurance companies ("Insurers"). There are thousands of Insurers within the putative class. Yet, of the 15 remaining class representatives, only one is an Insurer. And plaintiffs seek to quash discovery from any others.

       Abbott subpoenaed eight large Insurers, who are members of the putative indirect purchaser class, to seek information relevant to our defenses. These Insurers are some of the biggest and most sophisticated corporations in the business. They all have counsel and experience in responding to subpoenas and testifying at corporate depositions.

       Abbott and Fournier have a right to good faith discovery from a representative number of Insurers on issues relating to plaintiffs' claims. Discovery of absent class members is allowable in a situation like the present one where sophisticated companies are being subpoenaed, as opposed to individuals. *See Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, No. 97 Civ. 4550, 97 Civ. 4676, 1998 WL 241279, at *3 (S.D.N.Y. May 12, 1998) (courts are "less concern[ed] that some controlled discovery will be unduly burdensome or imperil the maintenance of the class" when discovery is sought from sophisticated entities). A "majority of courts" grant good faith discovery from absent class members, where, as here, the information is relevant to common questions, is not available from the class representatives, and is not unduly burdensome. *Transamerican Refining Corp. v. Dravo*, 139 F.R.D. 619, 621 (S.D. Tex. 1991).[1]

---

[1]     *Accord, Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, No. 97 Civ. 4550, 97 Civ. 4676,

The Honorable Kent A. Jordan
July 10, 2006
Page 2

The Requested Discovery Relates to Common Questions

The discovery relates to a variety of common questions, such as: (i) whether class certification is proper, (ii) whether the various versions of TriCor represented improvements, and (iii) what is the relevant market.

With respect to class certification, Abbott and Fournier are pursuing a number of theories that will establish, *inter alia*, that the proposed class does not satisfy the commonality and predominance requirements of Rule 23. Part of this argument is expected to be based on differences among the class members with respect to their ability or inability to influence demand for TriCor (*e.g.*, by exercising control over drug formularies to remove TriCor or making it disadvantaged in comparison to other drugs). The subpoenas seek information regarding the Insurers' formularies, contracts with pharmacy benefit managers, discussions with fenofibrate manufacturers and communications regarding fenofibrate. These topics all go to issues relating to formulary control, the ability to influence demand, and, ultimately, legally meaningful differences between the members of the putative class of end-payors.

The theory of the end-payors' case is that the absence of an AB-rated generic alternative for TriCor compels purchases of TriCor by fenofibrate users. Abbott's and Fournier's alleged conduct has a common impact on all end payors only if the absence of an AB-rated generic alternative to TriCor stymied all end-payors and none of the end-payors had the power to drive purchasers away from TriCor and towards fenofibrate alternatives (such as Teva's generic fenofibrate capsule) or non-fenofibrate alternatives. Discovery concerning the Insurers' creation and enforcement of their formularies will demonstrate that those members of the putative class could drive purchasers to alternatives and that they did not suffer the impact allegedly suffered by other members of the putative class from the absence of an AB-rated generic alternative. In fact, a number of Insurers, including Coventry Health Care, Inc. (one of the Insurers we subpoenaed), have removed TriCor from their formularies. Some other Insurers have disadvantaged TriCor on their formularies in favor of Teva's fenofibrate product.[2]

Our theories of lack of commonality and predominance also extend to damages. Class certification should be denied if there is no adequate damages methodology.[3] We seek some limited damages-related discovery from the Insurers concerning payments and rebates for fenofibrate products. That information may challenge plaintiffs' assertion in their expert reports submitted in connection with class certification that they can easily construct a damages model.

---

1998 WL 241279, at *2 (S.D.N.Y. May 12, 1998); *Easton & Co. v. Mutual Benefit Life Ins. Co.*, Civ. Nos. 91-4012, 92-2095, 1994 WL 248172, at *3 (D.N.J. May 18, 1994).

[2]    In addition to being relevant to our defense against the indirect purchasers' claims, the requested discovery is relevant to our defense against Teva's and Impax's claims. For example, they allege that defendants' actions excluded them from the market. The discovery from the Insurers will show the contrary. Teva had formulary access for its fenofibrate product and enjoyed an advantaged position over TriCor in some instances.

[3]    *See* Dry *Cleaning & Laundry Inst. of Detroit v. Flom's Corp.*, No. 91-CV-76072-DT, 1993 WL 527928, at *1 (E.D. Mich. Oct. 19, 1993).

With respect to improvements, a central point of plaintiffs' allegations is that there was no improvement among the various versions of TriCor. The subpoenas request information regarding any comparisons relating to TriCor and other fenofibrate products that the Insurers possess. This is directly relevant to plaintiffs' claims.

Another fundamental issue is market definition. Communications by and to the Insurers concerning fenofibrate (including comparison with other drugs) is relevant to market definition issues. The communications would be probative as to how the Insurers view the cholesterol market and competition therein.

The Subpoenas Were Tendered in Good Faith and Seek Information Not Available Elsewhere

There can be no legitimate dispute that the subpoenas were tendered in good faith, as it is evident that the Insurers have information relevant to our defenses. Subpoenas were issued on only eight out of the thousands of Insurers and they are tailored to the parties' claims and defenses. Defendants will work with the subpoenaed entities to address any concerns that they may have.[4] The information cannot be obtained through other sources. Plaintiffs admit in their motion that we are seeking information "particular to each insurer."

The Subpoenas Are Not Unduly Burdensome

Abbott and Fourier do not intend to impose an undue burden on any person subpoenaed and issued subpoenas intended to be narrow in scope. Certain burden concerns have been raised by the Insurers and we will work with them to address particular concerns.[5]

Plaintiffs' final argument that the deposition subpoenas impose "needless burden on End-payor Plaintiffs' counsel" should carry no weight. Counsel chose to file this massive class action against Abbott and Fournier, and defendants have a significant economic stake in the outcome of this litigation. It is to be expected that discovery commensurate with the nature and size of the litigation will need to be pursued.

\* \* \*

For all of these reasons, we ask that the Court: deny plaintiffs' motion to quash; grant Abbott and Fournier leave to serve up to a total of 20 subpoenas on Insurers should the need arise during discovery; and allow all discovery from subpoenaed entities to be treated in accordance with Del. L. R. 26.2.

---

[4] If the Court allows these eight subpoenas, we request that the Court grant us leave to serve up to a total of 20 subpoenas on Insurers, should the need arise during the course of discovery.

[5] Also, any issues with respect to the confidentiality of information can be dealt with through the protective order. Should the Court rule in our favor with respect to these eight subpoenas, Abbott and Fournier respectfully request a ruling that would allow the discovery from the subpoenaed entities to be treated as "Outside Attorney's Eyes Only" in accordance with Del. L. R. 26.2.

The Honorable Kent A. Jordan
July 10, 2006
Page 4

                                        Respectfully,

                                        */s/ Mary B. Graham*

                                        Mary B. Graham (#2256)

MBG/dam
cc:    Clerk of the Court (via hand delivery and electronic filing)
        All Counsel of Record (via e-mail)

527918