**COMPENDIUM OF UNREPORTED CASES**
**CITED IN REPLY MEMORANDUM IN SUPPORT OF**
**END PAYOR PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

# TAB L

IN THE FIFTH CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

FILED

2002 DEC 20 PM 4: 28

RICHARD R. ROOKER, CLERK

D.C.

DANIEL SHERWOOD, ET AL, )
　　　　　　　　　　　　　　　　）
　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　）
vs.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
MICROSOFT CORPORATION, ET AL, )
　　　　　　　　　　　　　　　　）
　　Defendants.　　　　　　　　　)

NO. 99C-3562
(CLASS ACTION)

REC'D DEC 2 7 2002

## MEMORANDUM AND ORDER

This case is before the Court for the second time on plaintiffs' motion for class certification. More specifically, the plaintiffs have moved this Court for an order allowing this case to proceed as a class action pursuant to T.R.C.P. 23.01 and 23.02(3) on behalf of the following class:

> All persons or entities in the State of Tennessee who purchased for purposes other than resale or distribution during the last four years, Intel comparable PC operating systems licenced by Microsoft. The class excludes defendants and their coconspirators, their subsidiaries, affiliates, officers and employees, and governmental entities.

The plaintiffs contend that the class is sufficiently numerous to make joinder impractical, there are questions of law and fact common to the class, the claims and defenses of plaintiffs are typical of the class and plaintiffs will fairly and adequately represent the class. T.R.C.P. 23.01. The plaintiffs also assert that the proposed class is maintainable because questions of law and fact common to the class predominate over any issues affecting

EXB 12

individual class members.   T.R.C.P.  23.02(3).   Opposing class
certification, the defendant, Microsoft, asserts that because of
the number of different Microsoft operating systems distributed
through varying distribution channels, and the fact that price
increases, even if they exist, often are not passed on to the
ultimate customer, it is impossible to prove a detrimental impact
to the class, or measure of damage to the individual consumer.
According to Microsoft, the plaintiffs have failed to show this
Court that common questions predominate over individual ones and
therefore this Court cannot find that a class action is superior to
other available methods for the fair and efficient adjudication of
this controversy.   T.R.C.P. 23.02(3).

The complaint in this case alleges illegal monopolization of
the computer systems market and unfair and anti competitive conduct
in violation of the Tennessee Trade Practices Act (TTPA), T.C.A. §
47-25-101 et seq. and the Tennessee Consumer Protection Act (TCPA),
T.C.A. § 47-18-101 et seq.   While this case alleges only state
causes of action it is one of a number of cases which may be said
to ride piggy back on United States v. Microsoft Corporation and
where, the plaintiffs remind this Court, Judge Jackson found
Microsoft's conduct had "harmed consumers in ways that were
immediate and discernible."   84 F.Supp.2d 1, 111 (D.C. 2000).
Affirmed in part, reversed in part 253 F.3d 34 (D.C. Cir. 2001).

2

By prior order this Court has concluded that these state causes of action can only be asserted by indirect purchasers. (See Order of July 5, 2000 - presently on appeal). Tennessee is among the thirty seven (37) states which apply its trade practices act to indirect purchasers. See Blake v. Abbott Laboratories, Inc., 1996 WL 134947 (Tenn. App. March 27, 1996). See also Comes v. Microsoft Corporation, 646 N.W.2d 440 (Iowa, 2002)(Iowa law allows for suit by indirect purchasers) and Bunker's Glass Company v. Pilkington, 47 P.3d 1119 (Ariz. App. 2002)(complexity no bar to indirect purchaser action).

The motion for class certification was first argued before this Court in September 2000. However, subsequent to the first hearing and before the Court ruled on the motion, the Court ordered the case stayed. See Order of October 23, 2000. The stay was ultimately lifted by Order of September 11, 2002 and the motion for class certification was set for reargument on December 6, 2002. The parties have filed additional briefs which include reference to a number of cases decided since September 2000 in which courts have granted or denied class certification in state antitrust cases. The plaintiff has further filed the testimony of one of its expert witnesses given in similar cases in Florida and New Mexico.

To be properly certified the class must meet all four of the requirements of Rule 23.01: numerosity, commonality, typicality and adequacy. Microsoft asserts no challenge to these four. In

3

addition, the class must meet one of the sub parts of Rule 23.03. Because indirect purchaser actions are for damages, they are brought under Rule 23.02(3), which requires that questions common to the class predominate over individual questions, and that a class action is superior to other methods of resolving the dispute. The question of whether the common issues predominate over individual issues is critical in indirect purchaser cases.

The parties have filed numerous affidavits and other materials supporting their respective positions. Extensive briefs with a myriad of supporting cases have been filed and oral argument was held before the Court both in September 2000 and again in December 2002.

At the December 2002 hearing the parties pointed out to the Court that a number of courts have now ruled on the class certification issue which now confronts this Court. The plaintiffs cite nine (9) cases in which trial courts have certified an indirect purchaser class against Microsoft. The allegations against Microsoft in all those cases are very similar to the plaintiffs' allegations in this case. Plaintiffs highlight that six (6) of the nine (9) cases base their certification decisions on the testimony of Dr. Keith Leffler, the same expert that plaintiffs have proffered here in support of class certification.[1] See In re

---

[1] In California, Arizona, and Wisconsin plaintiff's relied on a different expert, Dr. Jeffery Mackie-Mason.

4

Florida Microsoft Antitrust Litigation, No. 99-27340 (Fla. Cir., August 26, 2002); In re New Mexico Indirect Purchasers Microsoft Antitrust Litigation, No. D-0101-CV-2000-1697 (N.M. Dist. Ct., September 30, 2002)[2]; Bellinder v. Microsoft Corp., 2001 WL 1397995 (Kans. Dist. Ct., September 7, 2001); Gordon v. Microsoft Corp., 2001 WL 366432 (Minn. Dist. Ct., March 30, 2001); In re South Dakota Microsoft Antitrust Litigation, No. 00-235 (S.D. Cir. Ct., October 3, 2001); Howe v. Microsoft Corp., 2002 WL 199130 (N.D. Dist., January 16, 2002); Capp v. Microsoft Corp., No. 00-CV-0637 (Wis. Cir., July 25, 2001); Friedman v. Microsoft Corp., NO. CV2000-000722 (Ariz. Sup. Ct., November 15, 2000); Microsoft I-V Cases, J.C.C.P. No. 4106 (Calif. Sup. Ct., August 29, 2000).

Microsoft, on the other hand, points to several cases in which courts have refused to certify the class, including the only appellate decision to address the issue.

Microsoft places emphasis on A & M Supply Co. v. Microsoft Corp., 2002 WL 1974137 (Mich. Ct. App. August 27, 2002) in which the court reversed the trial court which had granted class certification. The Michigan Court of Appeals found that the case "involve[d] no less than six [operating system] products sold over a number of years through numerous retailers," and that "this proliferation of factors expands the possibility that the over-

---

[2]The testimony in the Florida and New Mexico class certification hearing were filed with this court.

5

charge for each product varied over time, varied at a different rate from the other products, and was passed-on at different rates to indirect purchasers." A & M Supply Co., Id. at *23. Having concluded that plaintiffs' expert, Professor Leffler, failed to "bridge the gap between economic theory and the reality of economic damages" the court reversed the grant of class certification. Id. The court held that plaintiffs' pass-through contentions could not address the "substantial variation across Michigan retailers in the prices quoted for the same computer model on any given date" and that the "overcharge for each product ... was passed-on at different rates to indirect purchasers." Id, at *23.

A trial court in Maine also denied class certification in an analogous case against Microsoft. See Melnick v. Microsoft Corp., 2001 WL 1012261 (Me. Super., August 24, 2001). The Maine court found that Professor Leffler's theories were insufficient to satisfy plaintiffs' burden of proof, because they were no more than "general, untried economic theory" that had not been shown to be "workable with real world facts" from the PC and software markets. Id. at *16.

Plaintiffs counter by arguing that the Michigan and Maine cases are inapposite because those states, unlike Tennessee, require individualized damage determination for each class member and the establishment of damages with absolute precision. The plaintiffs also maintain that the expert affidavits provided to the

6

Michigan and Maine courts were substantially less detailed and thorough than the factual information now available in support of this motion.

The Court obviously cannot add up the cases on each side and go with the weight of numbers. Nor can the Court decide this matter based upon an appellate court's decision in another state. The Court has read the cited cases with interest and has especially considered the opposing, but well reasoned, decisions from Michigan and Florida. The Court, however, while not ignoring the decisions in other cases, has set out to decide this case giving exclusive consideration to the requirements of Tennessee law and this judge's view of the law.

Ultimately, this Court must determine whether this case is appropriate for class certification under Tennessee law. This determination turns on whether the plaintiffs can show harm to all members of the class by generalized rather than individualized proof. Courts must conduct "rigorous analysis" to determine if the requirements for certification are satisfied. See <u>General Telephone Company v. Falcon</u>, 457 U.S. 147, 102 S.Ct. 2364, 2372 (1982). The Court cannot make this decision based solely on the plaintiffs' allegations, but must determine if the plaintiffs have a rational methodology to prove impact[3] and damages in order to

---

[3]Proof of a detrimental impact on the consumer is a necessary ingredient of a private antitrust claim. See <u>Elder-Beerman Stores Corp. v. Federated Dept. Stores</u>, 459 F.2d 138, 148 (6th Cir.

7

carry its burden under Rule 23.02(3).    This often includes consideration of expert testimony.  The courts have often struggled with walking a fine line between determining whether the plaintiffs have a rational methodology to show class injury and the inappropriate delving into an assessment of the merits of the case.  See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S.Ct. 2140, 2152-53 (1974), In re Polypropylene Carpet Anti-Trust Litigation, 998 F.Supp. 18, 26 (N.D. Ga. 1997) and Transamerican Ref. Corporation v. Dravco Corporation, 130 F.R.D. 70, 74-76 (S.D. Tex. 1990).  If the plaintiffs are unable to show a rational method of proving impact to the class caused by Microsoft's alleged illegal actions and of demonstrating that the amount of damages is susceptible to class wide proof, then the motion must be denied.

No extended discussion is necessary to recognize that proof of impact and damages is difficult in an antitrust case brought by an indirect purchaser.  See Page, The Limits of State Indirect Purchaser Suits: Class Certification, 67 Antitrust L.J. 1 (1999).  The decision in Illinois Brick v. Illinois, 431 U.S. 720, 97 S.Ct. 2061 (1977) limiting federal antitrust actions to direct purchaser

_____

1972) ("The private litigant must not only show the violation of the antitrust laws, but show also the impact of the violations upon him and damages to him resulting from violations of the antitrust laws").  There is a difference between impact and actual damages. "Fact of damage pertains to the existence of injury, as a predicate to liability, actual damages involve the quantum of injury, and relate to the appropriate measure of individual relief." B.W.I. Custom Kitchen v. Owens-Illinois, 191 Cal.App.3d 1341, 1350 n7 (1987).

was, in part, based on the practical difficulty of proving damages by an indirect purchaser. Woven throughout that decision are comments of "uncertainties and difficulties" in the "real economic world." (Id. at 2067); "whole new dimensions of complexity" (Id. at 2070) and "massive evidence and complicated theories" (Id. at 2072). The dissent, authored by Justice Brennan, acknowledged the difficulty, but instead focused on the trend in court decisions "to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery for a proven invasion of the plaintiff's rights." 97 S.Ct. at 2080 citing Bigelow v. RKO Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 580 (1946).

Justice Brennan further observed:

> Admittedly, there will be many cases in which plaintiff will be unable to prove that the overcharge was passed on. In others, the portion of the overcharge passed on may be only approximately determinable. But again, this problem hardly distinguishes this case from other antitrust cases. Reasoned estimation is required in all antitrust cases, but "while damages [in such cases] may not be determined by mere speculation or guess, it will be enough if the evidence shows the extend of the damages as a matter of just and reasonable inference, although the result by only approximate."

Illinois Brick, 97 S.Ct. 2081-82 citing Story Parchment Co. v. Paterson, 282 U.S. 555, 51 S.Ct. 248, 250 (1931). In allowing indirect purchaser lawsuits for damages to enforce the Iowa Competition Law, the Iowa Supreme Court commented that "we should not defeat the ends of justice because the litigation may be

9

complicated" and "we note there is an absence of cases in which the court was faced with the impossible task of apportioning damages." Comes, supra 646 N.W.2d at 451.

Several principles, perhaps unique to Tennessee, command recognition. Assuming that the plaintiffs can prove a violation of the state antitrust law, the court must keep in mind that the intractability of proving damages must be measured against the principle of ubi jus, ibi remedium (wherever there is a right, there is a remedy for a violation of that right). See Inman, Gibson's Suits in Chancery, §11 (7th ed 1988). Secondly, Tennessee does recognize an action by indirect purchasers. See Blake v. Abbott Laboratories, Inc., supra. Therefore, Tennessee has rejected the rationale of the majority in Illinois Brick. Implicit in the rejection of Illinois Brick is the recognition that the problems recognized in Illinois Brick do not bar recovery. Furthermore, to the extent it is discussed, proof of damages - or problems in ascertaining damages - do not inhibit class certification. See Meighan v. U.S. Sprint Communications, 924 S.W.2d 632, 637 (Tenn. 1996). If common issues of law and fact predominate on the issue of liability then "while separate factual issues of individual damages remains" class certification is still appropriate. Id. Further, "certification serves to provide access to courts to individual claimants whose small claims would not otherwise justify their seeking relief." Id. at 638. In addition,

Tennessee recognizes the rule that while the fact of damages must be proved with certainty, the amount of damages is not governed by certainty, but by a rule of reasonableness. See, e.g., Overstreet v. Shoney's Inc., 4 S.W.3d 694, 703 (Tenn. App. 1999).

This Court recognizes that proof of damages remain separate from liability and proof of impact is a necessary part of liability, albeit overlapping with proof of damages to individual indirect purchasers. At least one court has found, however, that the alleged actions of Microsoft in this lawsuit have "harmed consumers in ways that were immediate and discernible." United States v. Microsoft Corporation, 84 F.Supp.2d at 111.

Microsoft argues that antitrust injury (impact) and/or damages cannot be determined on a class wide basis. Proof of damages in an indirect purchaser case is not easy. First the plaintiff must prove an overcharge to the direct purchaser. Then, and this is often difficult, it must prove that the overcharge, or some portion of it, was passed through the chain of distribution to the indirect purchaser (often called the "pass-on" requirement). The affidavits filed by Microsoft of Professor Jerry Hausman of MIT and Professor Malcolm Getz of Vanderbilt contend that the variables in pricing, method of distribution, number of systems, giving free web browser, the time span and the fact that Microsoft only supplies a small component to the assembled P.C. cause an almost infinite variation in impact on any individual indirect purchaser and this would

11

include the probably of benefit in purchase price to some consumers. Microsoft terms this as a "dizzying array of circumstances" making proof of impact and/or damages of a product that has "traveled through the hands of so many intermediaries" impossible. Microsoft cites the Page article cited above:

> The more heterogeneous the product, the more difficult it will be to establish impact by general proof .... In addition, it is more difficult to show harm by common proof if the product was resold by more than one level of intermediate sellers .... The consistency of markups also varies to the extent the product is altered in the chain of distribution. Virtually all of the cases decided so far have involved resales of virtually unaltered products .... Even resales without packaging involve some addition of value by advertising and other services in the chain of distribution. These additional services make showing generalized harm difficult. Still more problematic are cases, like prescription drugs, thermal fax paper, and chlorine, in which the product is repackaged in different sizes in the chain of distribution. In such cases, the changes in packaging may add significant value and individual characteristics to the final product, thus multiplying the factors that affect the final price.
>
> Most difficult of all are cases which the monopolized product is used as an input in another product. In such cases, the overcharge on the price-fixed product may be a trivial part of the price of the end product, and easily lost in various other factors affecting the price of the product.

Page, supra at 29-31. Microsoft contends that "this case exemplifies, on an unprecedented scale, every one of the impediments to class certification identified by Professor Page."

Plaintiffs counter with their own experts. They file affidavits of Associate Professor Keith Leffler of the University of Washington and Professor Reuben Kyle of Middle Tennessee State

12

University. Plaintiffs have also filed the recent testimony of Professor Leffler given in other cases.

Leffler contends that standard economic theory provides numerous methodologies that will prove on a class wide basis that all members were injured by Microsoft's monopolistic conduct. Leffler listed three different yard stick methods that could be used to calculate overcharge on a class wide basis: (1) Compare Microsoft's operating system prices to the prices of software products in a competitive market, where the products in question have revenue opportunities comparable to operating system products; (2) compare Microsoft's operating system profits to the profits earned by software products in competitive markets; and (3) derive competitive prices from the prices that Microsoft charges for its operating system during the period in which Microsoft competed in the operating system market with digital research. Dr. Leffler gives little weight to the assertion that the giving of a free web browser has actually benefitted consumers. He questions Microsoft's assertions as "speculative" and says this has to be measured against a market already inflated by Microsoft's activities. He does concede that a separate analysis may be required for different distribution channels, but that no significant difficulties arise from the multiplicity of the distribution alternatives

13

and that overcharges can be estimated for each appropriate distribution channel.[4]

What of the pass-on requirement?  One defense attorney described the pass-on requirement to be the "heart" of the matter. The Court agrees.  The Court is of the opinion after reading the Leffler affidavits, and especially considering his testimony in the Florida and New Mexico hearings, that Dr. Leffler has presented methods which a reasonable fact finder could accept for estimating the amount of overcharge that was passed on to indirect purchasers.[5]  He suggests that this can be done by a regression analysis.  As Dr. Leffler explained "I simply mean a methodology that allows one to estimate the relationship between variables, and that analysis includes a host of particular and specific techniques. But generally what those techniques have in common is that they are attempting to and do estimate the relationship between one variable or many more than one variable and another variable."  Dr. Leffler conceded that obtaining the data was sometimes problematic, but he believed that by the time of the trial this analysis would be available.  By using regression analysis, he believed that he

---

[4]Even the Michigan Court of Appeals which denied class certification conceded that Dr. Leffler's methodology of proving overcharge was "sufficiently probative" to carry the burden on this issue.  A & M Supply Company, supra at *21.

[5]Dr. Leffler's testimony in New Mexico is the most recent.  He testified on two (2) days, July 1-2, 2002, and his testimony takes 268 transcript pages.  He was followed on the stand by Professor Hausman.  Leffler gave a short rebuttal testimony (17 pages).

could show how much of a price increase on the direct purchaser would be passed on to the indirect purchaser. When asked whether regression analysis had been used for the purposes of measuring a pass-on he stated:

> Economists have done for years analysis of pass-on, not in the litigation sense of trying to figure out how an overcharge effects end users, but something that has been of interest to economists for decades, many decades, is how various government taxes effect prices, so that economists have dealt in detail with the issue of what happens to prices to consumers when producers pay higher prices and those higher prices can be in the form of excise taxes in some cases, sales taxes in other cases, so there is a long and rich history of the use of regression analysis in analyzing what is really a pass-on issue in far more complex settings than at issue in this case.

When asked about the complexity of the distribution system and whether that would effect his analysis, Dr. Leffler was of the opinion that economic rules governing competition would apply to eliminate the complexity in the distribution system from interfering with his ability to reasonably estimate the over charge to the class. As to the availability of data, he opined that the data could be recovered from manufacturers such as Gateway, IBM, and Dell, and that there was national retailer data available. In concluding his testimony in the New Mexico hearing, Dr. Leffler stated "I believe as I presume my testimony made clear, that a formulaic method or methods exist to estimate the Microsoft over charges; that a formulaic method exists to estimate how much that

over charge is then passed on to end users; and that, in fact, the data does exist to implement these methodologies."

In his New Mexico testimony, Dr. Leffler was probed on cross examination about elasticities of supply and demand, feed back, brand name power, pricing decisions, the unavailability of the needed data for the regression analysis and a number of other elements in determining the sales price of computers. He continued to acknowledge the difficulty in the process, but not the impossibility.

The affidavit of Dr. Ruben Kyle is entirely rebuttal in nature. He contends that the Court should give Professor Getz's affidavit little weight as it is based upon insufficient information and inadequate sampling techniques.

Microsoft filed a reply affidavit of Dr. Getz and a response affidavit of Dr. Hausman. Dr. Getz defends in detail his prior conclusions related to the complexity of the distribution system in his reply affidavit. Dr. Hausman also explained in considerable detail why Dr. Leffler's assumptions and conclusions are overly simplistic and incorrect. He also explains why Dr. Leffler's proposed methods of determining damages "make no economic sense" and are "highly speculative" and "unreliable." His testimony in Florida and New Mexico is consistent with his affidavits. There is no doubt that Dr. Hausman has a different view and he explains why it is doubtful that Microsoft's illegal actions caused any price

16

increase, and even if it did, it would not be possible to determine the pass-on to the indirect purchasers. As he did in his affidavits, he again questioned Dr. Leffler's methodology and opined that Dr. Leffler would "end up with biased and inconsistent results." For Dr. Hausman, the problems of proving damages are so intractable that he was of the opinion that it was practically impossible to prove damages for any individual consumer, no less a class of consumers.

This Court is of the opinion that there is support for Dr. Leffler's methodology in the economic community sufficient to give his testimony the credibility necessary to sustain the plaintiffs' burden for class certification. The discussion of this authority is set out in detail in the Florida Microsoft case and the Court adopts the economic authority cited therein. See In re Florida Microsoft Antitrust Litigation, supra at *18-20.

Microsoft argues that there is no authority in Tennessee to aggregate damages in a class action case. Microsoft correctly points out that in order for an individual to recover under the Consumer Protection Act, the plaintiff must prove "an ascertainable loss of money or property." See T.C.A. § 47-18-109(a)(1). To recover under the Trade Practices Act, the plaintiff must show that he was "injured or damaged" by the anti-competitive activity. See T.C.A. § 47-25-106. Microsoft then asserts that the aggregation of damages is inappropriate since the statutes require specificity.

17

The plaintiffs counter this argument with a citation to Meighan v. U.S. Sprint Communications Co., 924 S.W.2d 632 (Tenn. 1996). Meighan involved an inverse condemnation case where U.S. Sprint ran fiber optic cable over hundreds of miles without obtaining the property owner's consent. In holding the action to be an appropriate class action, but in recognizing that the claims of each individual class member might be small, the court stated:

> While we recognize that the issue of compensatory damages may require some individual consideration, we disagree with plaintiffs position that each owner will be entitled to present detailed damages evidence.
>
> In a class action, courts are not required to conduct separate damage inquiries for each class member. Instead, the court may determine an aggregate damage amount for the class as a whole. Newberg, supra § 4.26 at 321. The trial court may simply choose to divide the award among members or may allow each plaintiff to recover by proving his or her claim against the entire judgment . See Boeing Company v. VanGemert, 444 U.S. 472, 100 S.Ct. 745. This case is particularly amenable to the aggregate damage approach.

Id. at 638. The plaintiffs place great stock in this quote and contend that this shows that Tennessee allows "aggregate" damages in a class action.

The Court is of the opinion that the plaintiffs' approach is the correct one and that aggregate damages are allowed. Class actions to enforce antitrust laws have always faced the difficulty of the complexity of proof of damages. If the Court adopts the defendant's argument, class actions would be precluded in all but the simplest cases, and the ability of indirect purchasers to

18

recover damages would for all practical purposes be nonexistent. The Court returns to where it started and agrees with Justice Brennan's dissent in Illinois Brick that almost all antitrust cases are characterized by "long and complicated proceedings involving massive evidence and complicated theories." Id., 97 S.Ct. at 2081.

> Non-uniformity of the prices at which plaintiffs pur-
> chased their goods is not fatal to certification. As
> long as the existence of a conspiracy is the overriding
> question, then the class has met its predominance
> requirement .... To prove injury, plaintiffs need only
> demonstrate they have suffered some damage from the
> unlawful conspiracy .... Such a showing may be made on
> a class basis if the evidence demonstrates that the
> conspiracy succeeded in increasing prices above the
> competitive level.

> 'Common proof of impact is possible even though prices
> are individually negotiated .... Proof of impact typi-
> cally follows proof of a price-fixing conspiracy where
> the defendants are shown to have sufficient market
> power'.... Although damage amounts may vary among
> plaintiffs, this fact alone, particularly in antitrust
> actions, will not defeat certification.... Individual
> questions of damages are often a problem encountered in
> an antitrust action and are rarely a barrier to
> certification. [emphasis added].

See In re Workers Compensation, 130 F.R.D. 99, 108-110 (D. Minn. 1990):

> Defendants argue that the damages or fact of damage issue
> is too complicated for class treatment .... The gestalt
> of much of defendants' argument is an attempt to make
> this case appear overwhelmingly complicated and thereby
> remove the class action tool from plaintiffs' hands ....
> If it is ultimately proven that defendants violated the
> Sherman Act, it seems unfair and ironic that the party
> who caused the complexity on liability and damages should
> benefit from such acts by disarming the plaintiffs and
> the Court of the most efficient and effective tool for
> resolving the issues.

19

<u>Little Caesar Enterprises Inc. v. Smith</u>, 172 F.R.D. 236, 246 (E.D. Mich. 1997).

The Court repeats: it must resist the temptation to decide this lawsuit on the expert affidavits. The opinions of Microsoft's experts have much to commend them. They do not, however, convince the Court that the plaintiffs' expert opinions are to be disregarded. <u>See McDaniel v. CSX Transportation</u>, 955 S.W.2d 257 (Tenn. 1997). Therefore, it is the opinion of the Court that the plaintiffs have made a sufficient showing for this case to go forward as a class action. "The invitation to pre-try the case through the vehicle of this motion [class certification] must be respectfully declined ...." <u>Siegle v. Chicken Delight Inc.</u>, 271 F.Supp. 722, 726 (N.D. Cal. 1967).

The defendant here may well prevail on the merits of this case, whether at trial or on summary judgment, and the plaintiffs may fail to carry their burden on damages. Furthermore, as this case develops, the Court has discretion to decertify the class, if appropriate, or to create subclasses, if necessary.

The Court acknowledges that it is troubled by the daunting administrative task before it, as well as the question of whether the plaintiffs' theories can be transformed to real numbers from which a jury can make a reasonable decision. The Court finds this, however, to be of lesser concern than holding that complexity denies indirect purchasers an opportunity to try and prove that

20

they were damaged by the alleged conduct, which at least one court has found to violate federal antitrust law. See United States v. Microsoft, 253 F.3d 34 (D.C. Cir. 2001). The Court is convinced that it can successfully manage this case to its resolution with the aid of competent and imaginative counsel.

It is therefore ORDERED:

1. This case is certified as a class action. The class defined as:

> All persons or entities in the State of Tennessee who purchased for purposes other than resale or distribution during the last four years, Intel comparable PC operating systems licenced by Microsoft. The class excludes defendants and their coconspirators, their subsidiaries, affiliates, officers and employees, and governmental entities.

The Court reads the class definition to set the time limit as December 21, 1995, which is four (4) years prior to the filing of the complaint.

2. The Court will hold a hearing on the 9th day of January, 2003, at 9:30 a.m. to determine the appropriate notice to the class. The parties shall submit written proposals on the notice issue to be filed seventy two (72) hours before the hearing.

3. The parties shall also address at the hearing ordered above whether the class needs to be modified in any way to avoid conflict with the class in the MDL.

4. At the hearing set in paragraph 2 above, the Court will determine counsel to represent the class. The Court has every

21

intention of appointing local counsel who have already participated in this case, but the Court will limit the number of out-of-state counsel who represent the class.

5.    The previously set scheduling conference will still be held in chambers at 8:30 a.m. on January 9, 2003. Counsel shall please meet prior to the conference and make every effort to agree upon a scheduling order. If no agreement is reached counsel for each side shall file by noon on January 8, 2003 a proposed scheduling order for consideration by the Court.

This the 20 day of Dec, 2002.

WALTER C. KURTZ, JUDGE

xc:  George E. Barrett
     Douglas S. Johnston, Jr.
     Edmund L. Carey, Jr.
     Timothy L. Miles
     Attorneys at Law
     BARRETT, JOHNSTON & PARSLEY
     217 Second Avenue North
     Nashville, TN 37201

     James G. Stranch, III
     C. Dewey Branstetter
     Attorneys at Law
     BRANSTETTER, KILGORE, STRANCH
     & JENNINGS
     227 Second Avenue, North
     Nashville, TN 37201

22

Alice McInerney
Daniel Hume
Attorneys at Law
KIRBY, McINERNEY & SQUIRE, LLP
830 Third Avenue
New York, NY 10022

Leonard B. Simon
Dennis Stewart
Robert J. Gralewski
Attorneys at Law
MILBERG WEISS BERSHAD
HAYNES & LERACH, LLP
600 West Broadway, Suite 1800
San Diego, CA 92101

David S. Stellings
LEIFF, CABRASER, HEIMANN BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017

Robert L. Leiff
Joseph R. Saveri
Michele C. Jackson
David Stellings
LEIFF, CABRASER, HEIMANN BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111

David J. Bershad
Robert A. Wallner
Joseph Opper
Douglas Richards
MILBERG WEISS BERSHAD
HAYNES & LERACH, LLP
One Pennsylvania Place
New York, NY 10119-0165

John W. "Don" Barrett
BARRETT LAW OFFICE
P.O. Box 987
Lexington, MS 39095

Jerry D. Kizer, Jr.
D. Scott Portch, IV
Attorneys at Law
RAINEY, KIZER, BUTLER, REVIERE &
BELL, PLC
105 S. Highland Avenue
Jackson, TN 38301

Mark D. Bogen
Attorney at Law
LAW OFFICES OF MARK D. BOGEN
1761 West Hillsboro Blvd., Suite 328
Deerfield Beach, FL 33442

Sam Rosen
Attorney at Law
WECSHLER, HARWOOD, HALEBRIAN &
FEFFER, LLP
488 Madison Avenue
New York, NY 10022

James A. DeLanis
Attorney at Law
BAKER, DONELSON, BEARMAN &
CALDWELL, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, TN 37201

Leo Bearman, Jr.
Attorney at Law
BAKER, DONELSON, BEARMAN &
CALDWELL, P.C.
165 Madison Avenue, 20th Floor
Memphis, TN 38103

Richard C. Pepperman, II
David B. Tulchin
Attorneys at Law
SULLIVAN & CROMWELL
125 Broad Street
New York, New York 10004

24

Thomas W. Burt
Richard Wallis
Steven J. Aeschbacher
Attorneys at Law
MICROSOFT CORPORATION
One Microsoft Way
Redmond, Washington 98052

Charles B. Casper
Attorney at Law
MONTGOMERY, McCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109

25

COMPENDIUM OF UNREPORTED CASES
CITED IN REPLY MEMORANDUM IN SUPPORT OF
END PAYOR PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TAB M

Westlaw.

Not Reported in A.2d                                                                Page 1
Not Reported in A.2d, 2003 WL 22250424 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

**C**
    Only the Westlaw citation is currently
available.Harry STUTZLE, et. al., Individually and
on behalf of all others Similarly Situated, Plaintiffs,
                            v.
    RHONEPOULENC S.A.(n/k/a/Aventis S.A.), et. al.
**No. 002768OCT.TERM2002, CONTROL 062165.**

                        Sept. 26, 2003.


            ORDER and MEMORANDUM OPINION

COHEN, J.
*1 AND NOW, this 26th day of September, 2003,
upon consideration of Defendants' Preliminary
Objections to Plaintiffs' complaint, all responses in
opposition, all matters of record, and in accordance
with the Memorandum Opinion being filed
contemporaneously with this Order, it is hereby
Ordered and Decreed that Defendants' preliminary
objections are Sustained. Plaintiffs' complaint is
dismissed.


                MEMORANDUM OPINION

Before this Court are defendants' preliminary
objections pursuant to Pa. R. Civ. P. 1028(a)(4) to
plaintiffs' class action complaint. For the reasons set
forth below, this Court sustains defendants'
preliminary objections.


                    DISCUSSION

Defendants attempt to have each of the two claims in
plaintiffs' class action complaint dismissed. These
claims, which the court will address in order, are
unjust enrichment and conspiracy.


                A. Unjust Enrichment

In the complaint, plaintiffs allege that defendants
have engaged in activities that caused the plaintiffs
and the class members to pay more for Methionine
FN1 than they should have absent the illegal conduct.
(Plts. Complaint ¶ 68). Plaintiffs also allege that
defendants received excessive and unreasonable

profits by virtue of the higher prices paid by plaintiffs
and the class members. (Id.). Defendants argue that
equity and good conscious requires that
defendants return these excess profits to the plaintiffs
and the class members. (Id.). Defendants argue that
the claim is legally insufficient because plaintiffs as
indirect purchasers did not confer a benefit upon
defendants.

> FN1. Methionine is sold as an animal feed
> additive, including DL-methionine, calcium
> salt of methionine hydroxy analog and any
> product that contains methionine sold as an
> animal feed additive. (Plts complaint ¶ 2).

To state a claim for unjust enrichment, the plaintiffs
must allege that they conferred a benefit on the
defendant, that defendant appreciated the benefit
under the circumstances and that the defendant
accepted and retained the benefit without payment for
value. _BurgettstownSmith Twp. Joint Sewage Auth. v._
_Langeloth Townsite Co., 403 Pa.Super. 84, 588 A.2d_
_43, 45 (Pa.Super.1991)._

In the case _sub judice,_ plaintiffs did not confer a
benefit upon defendants. Plaintiffs are indirect
purchasers and had no direct dealings with
defendants. (Plts. Compliant ¶ 1). Perhaps
defendants appreciated the value of the benefits, but
any unjust enrichment claim would belong to the
direct purchasers, not to indirect purchasers such as
plaintiffs. See e. g. _Phillips v. Selig,_ 2001 WL
1807951, *8 (Sept. 19, 2001) (Sheppard).

Notwithstanding the fact that plaintiffs did not confer
a benefit upon defendants, the plaintiffs have also
failed to allege how the enrichment is unjust. The
most significant element of the unjust enrichment
doctrine is whether the enrichment of the defendant is
unjust; the doctrine does not apply simply because
the defendant may have benefited as a result of the
actions of the plaintiff. _Styler v. Hugo,_ 422 Pa.Super.
262, 610 A.2d 347, 350 (Pa.Super.1993). Plaintiffs
allege that defendants were unjustly enriched from
excessive and unreasonable profits which resulted
from defendant's illegal conduct. (Plts. Complaint ¶
68). The "illegal conduct" described in the complaint
is "a horizontal agreement and conspiracy between
defendants and their co-conspirators to fix or
maintain the price of Methionine and/or allocate
markets and customers in connection with the sale of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 22250424 (Pa.Com.Pl.)
**(Cite as: Not Reported in A.2d)**

Methionine." (Plts complaint ¶   1). In essence, plaintiffs allege that defendant's illegal conduct amounts to an antitrust violation. To date, no court in Pennsylvania has held that a private remedy is available for damages under Pennsylvania's common law on antitrust violations. *XF Enterprises, Inc. v. BASF Corp., 47 Pa. D. & C. 4*th 147, 150 (2000) (Levin). Additionally, Pennsylvania has no legislation which provides for these damages. *Id.*
**\*2** "The common law doctrines relating to contracts and combinations in restraint of trade were well understood long before the enactment of the Sherman Law ... Such contracts were deemed illegal and were unenforceable at common law. But the resulting restraints of trade were not penalized and gave rise to no actionable wrong."

*XF Enterprises Inc. v. BASF Corp.,* 47 Pa. D & C. 4th 147, 150 (2000)(quoting *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 497 (1940)). Since the Pennsylvania legislature and the courts have not created a cause of action for damages sustained as a result of the antitrust violations, than plaintiffs failed to allege within their complaint how the benefit to defendants was unjust. Moreover, to allow plaintiffs to use a claim for unjust enrichment as a means for collecting damages which are not allowable by Pennsylvania's antitrust law, is not a proper use of the claim and can only lead to mischief. *XF Enterprises,* supra. 152 (use of a civil conspiracy claim as a means of collecting damages which are not allowable by Pennsylvania's antitrust law is not a proper use of the claim). Accordingly, plaintiff's unjust enrichment claim is dismissed with prejudice.

B. Civil Conspiracy

Defendants also assert preliminary objections to plaintiffs' cause of action for civil conspiracy. Plaintiffs allege that defendants engaged in an unlawful combination and conspiracy to fix, raise, maintain and stabilize at artificial and non competitive levels the price of Methionine and to conceal this unlawful activity. (Plts. Complaint ¶ 69). In their brief, plaintiffs argue that the civil conspiracy claim is legally sufficient because unjust enrichment is the predicate act for the conspiracy. (Plts. memorandum of law pp. 12-13). Since the court sustained defendants' preliminary objection with respect to plaintiffs' cause of action for unjust enrichment, the court also sustains defendants preliminary objections plaintiffs cause of action for civil conspiracy count.

CONCLUSION

For these reasons, this court finds that defendants' preliminary objections are sustained. Plaintiffs' complaint is dismissed.

Pa.Com.Pl.,2003.
Stutzle v. Rhone-Poulenc S.A.
Not Reported in A.2d, 2003 WL 22250424 (Pa.Com.Pl.)

END OF DOCUMENT