COMPENDIUM OF UNREPORTED CASES
CITED IN REPLY MEMORANDUM IN SUPPORT OF
END PAYOR PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TAB N

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

Page 1

▷
Briefs and Other Related Documents

United States District Court, District of Columbia.
In re: VITAMINS ANTITRUST LITIGATION
GREENE
v.
F. HOFFMAN-LAROCHE, LTD., et al.
Nos. MISC NO. 99-197, MDL 1285.

April 11, 2001.

*MEMORANDUM OPINION Re: Greene Motions to Dismiss*
HOGAN, J.
*1 Pending before this Court are various motions to dismiss filed by Defendants in the above captioned action.[FN1] Based upon careful consideration of Plaintiff's Complaint, Defendants' Motions to Dismiss, Plaintiff's opposition thereto, Defendants' Reply, and the entire record herein, the Court will grant Defendants' Motions to Dismiss and accordingly will dismiss Plaintiff's Complaint in its entirety.

FN1. Defendants Hoffmann-LaRoche, Inc. and Roche Vitamins, Inc. have filed a joint reply memorandum "on behalf of all defendants who have moved to dismiss this action," J. Reply Mem. at 1, including BASF Corp.; DuCoa, L.P.; Hoffmann-LaRoche, Inc.; and Roche Vitamins, Inc.

I. BACKGROUND

Plaintiff, Judy Greene, brings the instant action on behalf of herself and other indirect purchasers similarly situated ("Proposed Class" or "Class"), [FN2] pleading six separate causes of action. In her Complaint, Plaintiff alleges: (1) violations of the Tennessee Trade Practices Act ("TTPA"), Ten.Code Ann. § § 47-25-101, *et seq.;* (2) violations of the Tennessee Consumer Protection Act of 1977 ("TCPA"), Ten.Code Ann. § 47-18-101, *et seq.;* (3) common law fraud; [FN3] (4) money had and received; (5) unjust enrichment; and (6) civil conspiracy. Plaintiff purports to bring this action pursuant to the Tennessee Trade Practices Act, Ten.Code Ann. § § 47-25-101, 105, and 106; the Tennessee Consumer Protection Act of 1977, Ten.Code Ann. § 47-18-109; and *Blake v. Abbot Laboratories,* No. 03A01-9509-CV-00307, 1996 WL 134947 (Tenn.Ct.App. March 27, 1996). Compl. ¶ 12 at 8. Plaintiff alleges that Defendants engaged in a conspiracy to fix prices, allocate markets, and "commit other unlawful practices designed to inflate the price of vitamin supplements sold to Plaintiff and other purchasers in Tennessee and the other class jurisdictions," *Id.* ¶ 1 at 2, thereby causing "members of the [ ] Class [to pay] millions of dollars more for vitamins supplements than they would have paid in the absence of the illegal combination and conspiracy." *Id.* ¶ 62 at 25.

FN2. Greene brings this action on behalf of herself and other indirect purchasers of Defendants' vitamin products in Alabama, Arizona, California, the District of Columbia, Florida, Kansas, Maine, Michigan, Minnesota, Mississippi, New Mexico, North Carolina, North Dakota, South Dakota, Tennessee, West Virginia, and Wisconsin.

FN3. Plaintiff has voluntarily withdrawn this claim. *See* Pl.'s Opp. Mem. at 1 n. 4 (explaining that "[b]ecause Defendants' alleged fraudulent conduct may sufficiently be challenged by Plaintiffs under the antitrust and consumer protection laws of the Class Jurisdictions, Plaintiffs have thus voluntarily abandoned their common law fraud claim against all of the Defendants").

This action, originally filed in state court in Tennessee, was removed to federal court and then transferred to this Court. After transfer, nine Defendants separately moved for dismissal. In their Motions to Dismiss, Defendants raise issues pertaining to personal jurisdiction over four of the individual Defendants; the scope of the Tennessee Trade Practices Act and the Tennessee Consumer Protection Act of 1977; whether Plaintiff, as an indirect purchaser, has standing to sue under those statutes; whether Plaintiff may bring claims on behalf of non-Tennessee class members; whether Plaintiff has pleaded various claims with sufficient particularity; whether Plaintiff has failed to state a claim for money had and received, unjust enrichment,

those applied to the [TTPA]. If it is determined that the acts complained of predominately affect interstate commerce, the defendants must prevail. It is a well-settled principle of law that one cannot do indirectly what cannot be done directly." *Id.*

"[T]he current rule is that Tennessee's prohibition on restraints of trade will apply to transactions which are 'predominately' *intrastate* in character. [A] transaction does not have to be exclusively intrastate to fall within the [prohibitions of the TTPA]. Obviously, this is to be read together with the well-established rule that allegations of unlawful restraints of trade in the *interstate* context gives [sic] rise to a claim within the reach of the Sherman Act in which there is exclusive jurisdiction." *Dzik & Dzik, P.C. v. Vision Serv. Plan,* 1989 Tenn.App. LEXIS 25, at *5 (Tenn.Ct.App. Jan. 20, 1989) (emphasis added). This principle evolved from the seminal decision *Standard Oil Co. v. State,* 100 S.W. 705 (Tenn.1906).[FN5]

FN5. The pertinent facts of *Standard Oil* are as follows:
Standard Oil Company, a Kentucky corporation, was in competition with Evansville Oil Company, an Indiana corporation. *See Standard Oil Co. v. State,* 100 S.W. 705, 707 (Tenn.1906). Standard Oil maintained oil storage tanks in Gallatin, Tennessee, from which it stored and sold oil imported from other states. *See id.* at 708. Standard Oil conducted business through various agents, including C.E. Holt, O'Donnell Rutherford, and their superior J.E. Comer. *See id.* Evansville Oil also sold oil in Tennessee, but prior to the facts giving rise to the dispute, Standard Oil had no competition in the Gallatin market. *See id.* When Rosemon, an agent of Evansville Oil, procured orders from S.W. Love and other Standard Oil customers, Comer directed Holt to procure the countermand of the orders that had been given Evansville Oil. *See id.* In order to induce Love and others to countermand the Evansville Oil orders, Holt arranged to have one hundred gallons of oil delivered from the Standard Oil Gallatin storage tanks to customers who countermanded their orders. *See id.*

*3 In *Standard Oil,* Standard Oil and two of its employees, C.E. Holt and O'Donnell Rutherford, were indicted and charged with unlawfully contracting with S.W. Love "for the purpose and with a view to lessen full and free competition in the sale of coal oil, an article of sale imported into [the state of Tennessee], and carrying out said contract in [Sumner] county" in violation of Tennessee antitrust laws. *Id.* at 706. The antitrust statute provided in relevant part:
Section 1. Be it enacted ... that ... all arrangements, contracts, agreements, trusts, or combinations between persons or corporations made with a view to lessen, or which tend to lessen full and free competition in the importation or sale of articles imported into this State, or in the manufacture or sale of article of domestic growth or of domestic raw material, and all arrangements, contracts, agreements, trusts, or combinations between persons or corporations designed, or which tend to advance, reduce, or control the price or the cost to the producer or the consumer of any such product or article, are hereby declared to be against public policy, unlawful and void.

*Id.* At trial, Standard Oil and Holt were found guilty and Rutherford was acquitted. On appeal, Standard Oil and Holt first urged the court to read the statute as applying to interstate commerce, thus attacking the constitutionality of the statute by asserting that it was preempted, at least in part, by federal antitrust laws. Apparently focusing on the "importation language" of the statute, the parties argued that "the arrangement which the plaintiffs ... are alleged to have made was one relating to property to be thereafter imported into the State." *Id.* at 709. Relying on principles of statutory construction and legislative intent, the court rejected plaintiffs' statutory attack. The court also explained that:We give no force to the work, "importation," appearing in section 1, because we think it was inaccurately used in referring to articles already imported; that is, that the phrase "importation or sale of articles imported into this state" was intended to include and describe, among the article of commerce to be protected, those which had been imported from other states and countries, commingled with the common mass of property in this state, and no longer articles of interstate commerce. It is well settled that commerce in such imported articles may be regulated by state legislation. It is certain that merchandise of this character was intended to be included within the provisions of this act, otherwise commerce, in the vast amount of valuable property of foreign production and manufacture that was then and is now in the state, would be wholly unprotected from the abuses legislated against. [ ... ] The legislature clearly intended to prohibit trusts, combinations, and

Case 1:05-cv-00360-SLR   Document 252-8   Filed 10/04/2006   Page 4 of 11

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

Page 2

and civil conspiracy; whether Plaintiff's claims are barred by the applicable statute of limitations; and whether Plaintiff's action should dismissed, or in the alternative stayed, due to prior cases filed in Tennessee state courts.

II. DISCUSSION

A. Applicable Standard for Evaluating Rule 12(b)(6) Motions to Dismiss

In a motion to dismiss under Rule 12(b)(6), the moving party has the burden of demonstrating that the non-movant can prove no set of facts in support of his claims. Fed. R. Civ. P. 12(b)(6); Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (stating that a complaint may not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [the complaint] which would entitle him to relief"). The Court must presume all factual allegations of the Complaint to be true and draw all reasonable inferences in favor of the nonmoving party. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir.1983). "However, neither legal conclusions nor unwarranted factual inferences constitute material allegations, and the Court is not obliged to accept such statements as true." Sanders v. Prentice-Hall Corp. Svs., 969 F.Supp. 481, 483 (W.D.Tenn.1997) (citing McBride v. Village of Michiana, No. 93-1641, 1994 U.S.App. LEXIS 19679, at *7 (6th Cir. July 28, 1994) (per curiam)). The issue is "not whether Plaintiff will prevail, but whether, on the strength of the Complaint, the claimant is entitled to offer evidence to support his claims." Id. (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

B. Counts I and II-Violations of the TTPA and TCPA

*2 In her first cause of action, Plaintiff alleges that Defendants have pursued a course of conduct "constitut[ing] an unlawful arrangement, contract, trust, or combination in violation of the Tennessee Trade Practices Act [,][w]ith the specific intent to restrain, lessen, or tend to lessen competition from producers of vitamin supplements or components thereof sold to Plaintiff and other indirect purchasers in the Class Jurisdictions." Compl. ¶ ¶ 64, 65 at 26. Plaintiff alleges that members of the Proposed Class have paid more for vitamin products than they otherwise would have were it not for Defendants' alleged wrongful conduct. Id. ¶ 49 at 21. Plaintiff seeks "full consideration paid for the price-fixed products, and all other damages available under the antitrust statutes of the Class Jurisdictions." Id. ¶ A at 38.

With respect to her second cause of action, Plaintiff relies upon the same facts supporting her TTPA claims and asserts that "[t]he conduct ... constitutes unfair or deceptive trade practices predominately and substantially affecting the conduct of trade or commerce in the State of Tennessee in violation of [the TCPA]." Id. ¶ 89 at 32. In relation to this cause of action, Plaintiff seeks actual damages, treble damages, and appropriate restitution. Id. ¶ B. at 38.

Defendants argue that "Plaintiff's Complaint fails to state a claim upon which relief can be granted as the Tennessee Trade Practices Act ... and the Tennessee Consumer Protection Act apply only to transactions which are predominately intrastate and the allegations contained in Plaintiff's Complaint involve interstate transactions." DuCoa Mem. at 3. Defendants place great emphasis on this Court's decisions in FTC v. Mylan Labs., Inc., 62 F.Supp.2d 25 (D.D.C.1999) (Mylan I) and FTC v. Mylan Labs., Inc., 99 F.Supp.2d 1 (D.D.C.1999) (Mylan II), in which this Court dismissed claims for violations of the TTPA and the TCPA because plaintiff in that action "allege[d] a price-fixing conspiracy that operated on a national level and affected at least 32 states [and therefore] concern[ed] conduct that was predominately interstate, and outside the ambit of Tennessee's antitrust laws." Mylan II, 99 F.Supp.2d at 9. Plaintiff in the instant action "respectfully submit[s] that the Court would have benefitted from a more extensive analysis of Tennessee antitrust law than that evidently provided to it in [Mylan ]." Pl's. Opp. Mem. at 4-5. Although this Court twice ruled in the Mylan decisions that the TTPA and the TCPA reach only that conduct which is predominately intrastate in character, the Court will expound upon its rationale for so ruling and further explain why that same rationale mandates dismissal of Plaintiff's TTPA and TCPA claims.[FN4]

FN4. The Court deals simultaneously with Plaintiff's TTPA and TCPA claims, because the same intra/interstate limitations that apply to the TTPA apply with equal force to the TCPA. See Blake v. Abbott Labs., Inc., No. 03A01-9509-CV-00307, 1996 WL 13947, at *7 (Tenn.Ct.App. March 27, 1996). The Blake court noted that "the same limitations must apply to the [TCPA] as

Case 1:05-cv-00360-SLR    Document 252-8    Filed 10/04/2006    Page 5 of 11

Not Reported in F.Supp.2d    Page 4
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

agreements affecting all commerce not covered by the federal statute, and upon which it had a right to legislate. It did not intend to stop short of its power or to exceed it.

*4 *Id.* at 710-11. The court also cautioned against giving broad meaning to the words of the statute and concluded that:It is evident, from what we have already said, that the prevention of unlawful contracts in relation to the importation of articles was not the inducement of the enactment of this statute, but that the primary and chief purpose of the legislature, beyond all question, was to protect commerce within this state. Its provisions upon this subject are to no extent and in no manner dependent upon one protecting the importation of merchandise from other States and countries.

*Id.* at 711. In addition, the court explained that the plaintiffs mischaracterized the charge against them as an indictment for lessening competition of oil to be imported into the state. The court clarified that the plaintiffs were charged with making an unlawful contract to lessen competition "in the sale of coal oil which the Standard Oil Company had imported in this state *and had, at the time of the agreement, stored in its storage tanks at Gallatin,* and there offered for sale." *Id.* at 712 (emphasis added). The court acknowledged that at one time the oil had been an article of interstate commerce, but pointed out that the oil "was not [an article of interstate commerce] when the agreement with S.W. Love was made. It was then at rest in this state, and was subject to its revenue laws and the police power of the state." *Id.* And therein lies the critical distinction upon which *Mylan* and the instant action lie.

In *Mylan I* and *Mylan II,* this Court distinguished the facts in *Mylan* from those in *Standard Oil,* explaining that [t]he challenged conduct ... in Standard Oil was deemed intrastate because it occurred after the product had been imported, not before as in the instant case." *Mylan I, 62 F.Supp.2d at 51*. This Court further explained that "[w]hen the challenged conduct occurs before the products arrive in Tennessee, the conduct is considered interstate in nature and the [T]TPA and TCPA should not apply." *Id.* In deciding *Mylan,* the Court also had occasion to consider *Blake v. Abbott Labs., Inc.,* No. 03A01-9509-CV-00307, 1996 WL 13947 (Tenn.Ct.App. March 27, 1996). In *Blake,* the Tennessee Court of Appeals found that the complaint stated a cause of action under the TTPA because the court could not determine from the record whether the allegedly wrongful acts predominately affected interstate commerce. The court explained that:
We have carefully examined the complaint. Contrary to the defendants' assertions, we fail to find an allegation that the alleged conspiracy took place outside the state or that the transactions complained of occurred outside the state. It is alleged that the principal offices of the defendants are located outside the state ... and that the defendants intended their actions to artificially maintain high wholesale levels of infant formula in the entire United States. From that information, alone, however, we cannot infer that the conspiracy, if any, occurred outside the state or that the transactions occurred outside the state.

*5 *Blake,* 1996 WL 134947, at *4. The instant action is distinguishable from *Blake* insofar as Plaintiff alleges a conspiracy hatched and implemented through meetings that took place in Ludwigshafen, Germany; Germany's Black Forest; Atlanta, Georgia; and various other non-specified locations. Although the alleged conduct may have a demonstrable effect in Tennessee, this effect is clearly incidental in comparison to the interstate character of the alleged conspiracy.

Plaintiff alleges that "Defendants' conspiracy has involved an astonishing array of uniform illegal conduct by a cartel that has deliberately targeted, and severely burdened, consumers in Tennessee and the other Class Jurisdictions." Compl. ¶ 2 at 2. While Plaintiff asserts that "[a] substantial part of the trade and commerce, as well as the arrangement, contract, agreement, trust, conspiracy, unfair or deceptive practices, and/or uniform and common course of conduct giving rise to Plaintiff's claims, occurred within and predominantly [a]ffected the state of Tennessee," *Id.* ¶ 9 at 7, the Court does not find that the facts pleaded by Plaintiff support her allegations as to the *predominantly* intrastate effect of the alleged wrongful conduct. Although inferences are to be drawn in Plaintiff's favor, this Court is not in the position of the *Blake* court, which "could not infer that the conspiracy ... occurred outside the State." *Blake,* 1996 WL 134947, at *4. In the instant action, the Court need not draw inferences as to the inter- or intrastate character of the alleged conspiracy, because Plaintiff explicitly alleges meetings that took place in Ludwigshafen, Germany; Germany's Black Forest; Atlanta, Georgia; and various other non-specified locations.

The Court would also direct Plaintiff to *Lynch Display Corp. v. Nat'l Souvenir Center, Inc.,* 640 S.W.2d 837 (Tenn.Ct.App.1982). In *Lynch,* the subject of dispute was "a lease between [Historical

Not Reported in F.Supp.2d	Case 1:05-cv-00360-SLR   Document 252-8   Filed 10/04/2006   Page 6 of 11   Page 5
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

Reviews, Inc. (HRI) ] a Tennessee corporation [operating a wax museum in Gatlinburg] and [Lynch Display Corporation (Lynch),] a Maryland corporation [manufacturing and leasing wax figures for museums] and an associated franchise agreement between [HRI and National Historical Museum, Inc. (NHM),] a District of Columbia corporation." *Id.* at 840. Appellants argued that the lessee wax museum "ha[d] been established in Gatlinburg for 17 years and regularly [sold] tickets to customers in exchange for admission and that this fact establishes significant intrastate commerce." *Id.* at 841. The court rejected this argument and reasoned that "[a]lthough this is unquestionably intrastate commerce, it is of a nature incidental to the predominant agreements in this dispute." *Id.*

Similarly in the instant action, although Plaintiff alleges that BASF executives located in Tennessee implemented the pricing decisions of BASF officials in Germany, Compl. ¶ 7(a) at 6, Plaintiff's allegations do not persuade this Court that this modicum of intrastate activity was more than incidental to the predominant agreement, which was a world-wide price fixing conspiracy. *See, e.g., Dzik,* 1989 Tenn.App. LEXIS 25, at *5-6 (acknowledging the intrastate implications arising from an agreement between a Tennessee corporation and a Georgia corporation, but ultimately reasoning that "the critical point is that to the extent intrastate commerce is affected ... it is of a nature only incidental to the predominant agreement between [the parties]"); *Valley Products Co., Inc. v. Landmark,* 877 F. Supp 1087, 1094-95 (W.D. Tenn 1994) (stating that "[a]lthough the dispute need not be exclusively intrastate to fall within the statute, it must more than incidentally affect intrastate commerce" and dismissing plaintiff's antitrust claim because "HFS franchisees are located in every state in the country and the sale of guest amenities necessarily implicates many different geographic regions"). As stated above, the current Tennessee rule requires Plaintiff to allege transactions that are *predominately* intrastate in character.

*6 In sum, Plaintiff asserts a cause of action based not only on Tennessee law, but also on the law of fifteen other states plus the District of Columbia. While the multi-state nature of this conspiracy is not dispositive as to whether violations could have occurred in Tennessee that might be actionable under Tennessee law, the Court finds that Plaintiff's combined allegations of a conspiracy affecting numerous states and secret meetings held worldwide, and the notable lack of allegations regarding any part of the conspiracy that took place in Tennessee, other than the purchase of vitamin supplements by indirect purchasers and the actions of certain BASF executives located in Tennessee, compel this Court to cast Plaintiff's claims as predominately interstate in character. Plaintiff has not pleaded a cause of action that is sufficiently intrastate in character so as to fall within the ambit of the Tennessee statutes. Accordingly, the Court will grant Defendants' Motions to Dismiss Plaintiff's TTPA and TCPA claims.[FN6]

> FN6. In rendering this decision, the Court acknowledges that at least one other federal district court has disagreed with the rationale underlying the interstate/intrastate distinction as articulated in *Lynch, Blake, Dzik & Dzik,* and *Mylan. See In re Cardizem CD Antitrust Litigation,* 105 F.Supp.2d 618, 667 (E.D.Mich.2000). However, this Court respectfully disagrees with *Cardizem's* predictions regarding the approach that the Tennessee Supreme Court might take with respect to the TTPA and TCPA, as well as with *Cardizem's* interpretation of *Blake.*

C. Count III-Common Law Fraud

As previously noted, Plaintiff has voluntarily withdrawn this claim against all of the Defendants. However, Plaintiff has not formally amended her Complaint to reflect the withdrawal of this claim. Given the procedural oddity created by Plaintiff's failure to formally amend her Complaint to withdraw the allegation of fraud, the Court notes that even if Plaintiff had not voluntarily withdrawn this claim, the fraud count would nonetheless be subject to dismissal.

Plaintiff's fraud count is set out in very general terms, asserting that Defendants' alleged wrongful conduct constitutes "a uniform course of illegal and fraudulent conduct." Compl. ¶ 97 at 34. As Plaintiff does not specify whether her fraud claim is based on silence or concealment of some supposedly material facts, or whether the action lies in some affirmative misrepresentations by the Defendants, Plaintiff's broad allegations leave this Court left to speculate as to the basis for Plaintiff's fraud cause of action. Accordingly, the Court will briefly discuss various theories of fraud and why Plaintiff has failed to state a claim under any of these theories.

As explained by the Tennessee Supreme Court,

Case 1:05-cv-00360-SLR    Document 252-8    Filed 10/04/2006    Page 7 of 11

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

Tennessee recognizes three types of tortious misrepresentations:

The first is set forth in Restatement of Torts 2d, § 402B, and provides that a purchaser may recover damages from a seller or manufacturer of a product for economic loss sustained by the buyer as a result of the misrepresentations. [Section] 402B applies, however, only to persons engaged in the selling or manufacturing of chattels and does not apply to individual or private sales.

Jasper Aviation, Inc. v. McCollum Aviation, Inc., 497 S.W.2d 240, 242 (Tenn.1972). Plaintiff is a private consumer and an indirect purchaser of the Defendants' vitamin products and thus cannot state a claim for fraud under this first theory. However, the Tennessee Supreme Court has articulated two additional theories of suit.

*7 The second theory is found in the Restatement of Torts (Second), § 552. See id. However, this theory is rooted in negligent misrepresentation, and this Court cannot infer an allegation of negligent misrepresentation from any set of facts pleaded by Plaintiff. See, e.g., Bethlehem Steel Corp. v. Ernst & Whinney, 822 S.W.2d 592, 595 (Tenn.1991) (discussing an action for negligent misrepresentation and noting that "Tennessee has adopted the Restatement (Second) of Torts § 552 as the guiding principle in negligent misrepresentation actions against other professionals and business persons"). In addition, § 552 liability arises only in connection with "business or professional persons who negligently supply false information for the guidance of others in their business transactions." Id. As with the previous theory, Plaintiff is precluded from bringing a cause of action based on § 552, because she does not allege that her purchases were business-related transactions.

"The third theory of actionable misrepresentation is a plaintiff's suit for fraud and deceit." Jasper Aviation, 497 S.W.2d at 242. The elements of fraud are "an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made 'knowingly' or 'without belief in its truth' or 'recklessly' without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact." Menuskin v. Williams, 145 F.3d 755, 764 (6th Cir.1998); see also Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn.Ct.App.1991). Stated another way:

When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with the knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury.

Haynes v. Cumberland Builders, Inc., 546 S.W.2d 228, 232 (Tenn.Ct.App.1976) (citations omitted). As noted by Defendants, Plaintiff "has not alleged what representations were made to her by which Defendant, when or where the alleged representations were made, or what representations she relied on which resulted in injury to her." DuCoa Mem. at 11-12.

However, "[i]t is [also] well-settled that fraud can be an intentional misrepresentation of a known, material fact or it can be the concealment or nondisclosure of a known fact when there is a duty to disclose." Justice v. Anderson County, 955 S.W.2d 613, 616 (Tenn.Ct.App.1997). "The tort of fraudulent concealment is committed *when a party who has a duty to disclose* a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury." Chrisman v. Hill Home Dev., Inc., 978 S.W.2d 535, 539 (Tenn.1998) (emphasis added). In the instant action, if Plaintiff's claim lies in Defendants' silence and concealment of their price fixing and other allegedly unlawful activities, then this cause of action fails as well. In order to state a claim for fraud based upon silence or concealment, "one must show that the defendant owed a duty to speak or disclose the information." McConkey v. McGhan Medical Corp., No. 3:98-CV-003, 2000 U.S. Dist. LEXIS 19895, at *15 (E.D.Tenn. July 6, 2000). "Such a duty may be created where there is a fiduciary or contractual relationship between the parties creating a duty of trust and good faith." Id. "All the instances in which the duty to disclose exists and in which a concealment is therefore fraudulent, may be reduced to three distinct classes: (1) where there is a previous definite fiduciary relation between the parties; (2) where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other; (3) where the contract or transaction is intrinsically fiduciary and calls for perfect good faith." Justice, 955 S.W.2d at 616-17. All of these elements speak to either privity or a fiduciary relationship between the parties. Plaintiff does not plead any set of facts to support such a relationship and thus fails to demonstrate why any Defendant

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

Case 1:05-cv-00360-SLR   Document 252-8   Filed 10/04/2006   Page 8 of 11

Page 7

owed a duty of disclosure to Plaintiff.

*8 To summarize, Plaintiff cannot state a claim for fraud under either of the two Restatement theories adopted by Tennessee courts, because those particular sections pertain to business transactions, and Plaintiff does not allege that she was defrauded by Defendants in any such type of transaction. In addition, Plaintiff cannot bring an action for affirmative fraud or deceit because she pleads no set of facts to indicate what type of representations were made by which Defendants, nor does Plaintiff adequately allege any reliance. Moreover, Plaintiff cannot sustain a cause of action for fraudulent concealment because she has not adequately pleaded facts that demonstrate a relationship between herself and Defendants that gives rise to a duty of disclosure. Based on the foregoing reasons, the Court will dismiss Plaintiff's cause of action for fraud.

### D. Counts IV and V-Money Had and Received / Unjust Enrichment

In support of her claim for money had and received, Plaintiff asserts that Defendants' "fraudulent, illegal, unfair or deceptive conduct ... and the resulting overpayments made by Plaintiff and the Proposed Class," Compl. ¶ 100 at 35, entitles the Plaintiff and the Proposed Class to "compensatory damages to the extent of the money had and received by the Defendants." *Id.* ¶ D at 39. Defendants argue that Plaintiff, as an indirect purchaser, cannot maintain this cause of action because there are no direct dealings between Plaintiff and Defendants. DuCoa Mem. at 10-11; J. Reply Mem. at 9-10.

In support of her action for unjust enrichment, Plaintiff alleges that "Defendants have benefitted from their illegal restraints of trade and acts which lessen or tend to lessen competition through the overpayment by Plaintiff and the Proposed Class for vitamin supplements [and][i]t would be inequitable for the Defendants to ... retain any ... overpayment ... derived from their unfair or deceptive trade practices." *Id.* ¶ ¶ 102, 103 at 35. Plaintiff seeks "disgorgement [of] all such monies acquired through defendants' illegal and inequitable conduct," *Id.* ¶ 104 at 35, plus interest and costs. *Id.* ¶ E. at 39. Defendants respond by once again arguing that there were no direct dealings between Plaintiff and thus assert that Plaintiff cannot maintain an action for unjust enrichment. Plaintiff counters that Tennessee law has not directly addressed the issue as to whether a plaintiff must directly confer a benefit on a defendant in order to maintain an action for unjust enrichment. Pl.'s Opp. Mem. at 52.

As stated by the Supreme Court of Alabama, "the essence of ... unjust enrichment or money had and received is that facts can be proved which show that defendant holds money which in equity and good conscience belongs to plaintiff or was improperly paid to the defendant because of mistake or fraud." *Foshee v. General Telephone Co. of the Southeast,* 322 So.2d 715, 717 (Ala.1975). Under Tennessee law, both unjust enrichment and money had and received are equated with quasi-contract actions. *See, e.g., Blake Corp. v. Diversified Sys., Inc.,* 2000 U.S.App. LEXIS 22291, at *25 (stating that "[u]nder Tennessee law, 'actions brought upon theories of unjust enrichment, quasi-contract, contracts implied in law, and quantum meruit are essentially the same' ") (quoting *Paschall's, Inc. v. Dozier,* 407 S.W.2d 150, 154 (Tenn.1966)); *Bonham Group, Inc. v. Memphis,* No. 02A01-9709-CH-00238, 1999 Tenn.App. LEXIS 237, at *18 (Tenn.Ct.App. April, 16, 1999) (stating that "unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation where one does not exist"); *Steelman v. Ford Motor Credit Co.,* 911 S.W.2d 720, 723 (Tenn.Ct.App.1995) (stating that "[a]n action for money had and received is based upon an implied assumpsit"). As noted in *Luithly v. Cavalier Corp.:*

*9 Actions brought under these common law doctrines are essentially the same and the names are used interchangeably in the case law. In the past, such actions were also known as actions in assumption for money had and received, an 'equitable action to recover ... money which the defendant in justice ought not retain ... where defendant has moneys of the plaintiff which, ex equo et bono, he ought to refund."

No. 98-5507, 1999 U.S.App. LEXIS 10653, at *11 n. 2 (6th Cir. May 20, 1999) (quoting *Nash v. Towne,* 72 U.S. 689 (1866)).

Privity is not required to maintain such actions. *See Paschall's,* 407 S.W.2d at 154 (stating that "[i]t is well established that want of privity between parties is no obstacle to recovery under quasi contract"). However, Tennessee courts have articulated a general standard that a plaintiff must meet in order to bring such a claim. As stated in *Haynes v. Dalton:*

"Each case must be decided according to the essential elements of quasi-contract to wit: A benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance of such

Case 1:05-cv-00360-SLR   Document 252-8   Filed 10/04/2006   Page 9 of 11

Not Reported in F.Supp.2d                                                                                        Page 8
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement for a recovery on a quasi-contract is that the enrichment to the defendant be unjust."

848 S.W.2d 664, 665-66 (Tenn.Ct.App.1992) (quoting *Paschall's,* 407 S.W.2d at 155).

Because Plaintiff is an indirect purchaser and had no direct dealings with Defendants, the Court is left to query whether Plaintiff satisfies the first prong of the standard, *i.e.,* a benefit conferred on Defendants by Plaintiff. In speaking to whether a plaintiff must directly confer a benefit upon a defendant, the court in *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis* held that plaintiff did not state a claim for unjust enrichment because there was no direct transaction between plaintiff and defendant. 21 F.Supp.2d 785, 806 (W.D.Tenn.1998) (relying on the principle articulated in *Boyd v. Black,* 248 F.2d 156 (6th Cir.1957)). In addressing the plaintiff's claim for money had and received, the *Lawyers Title* court did not inquire into whether plaintiff conferred a direct benefit on the defendant but rather stated that "[u]nder Tennessee law, an action for money had and received 'is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not retain it and ex aequo bono it belongs to another." ' 21 F.Supp.2d at 807 (*quoting Interstate Life & Accident Co. v. Cook,* 86 S.W.2d 887, 891 (Tenn.Ct.App.1935)). This analysis seems merely to restate the general principle underlying all implied contract actions, without stating a separate test for an action for money had and received. However, the Court does note that *Interstate Life,* upon which the *Lawyers Title* court relies, explicitly states that an action for money had and received is based upon implied assumpsit. See *Interstate Life,* 86 S.W.2d at 891. Moreover, as discussed previously, *Haynes v. Dalton* and *Paschell's* require consideration of the three factors pertaining to the benefit conferred by plaintiff and received by defendant for all types of quasi/implied contract actions.[FN7] Therefore, based upon the lack of facts supporting a finding of a direct benefit conferred upon Defendants by Plaintiff, the Court will dismiss Plaintiff's claims for unjust enrichment and money had and received.

FN7. As yet another factor warranting dismissal, the court in *Bonham* states that "before recovery can be had against the defendant on the theory of unjust enrichment, the provider of the benefit must have exhausted his remedies against the person with whom he had contracted." 1999 Tenn.App. LEXIS 237, at *20. The record is devoid of any evidence suggesting that Plaintiff first pursued claims against the retailers or other persons from whom she directly purchased vitamin supplements. This is yet another factor that weighs against Plaintiff's recovery under the unjust enrichment theory.

E. Count VI-Civil Conspiracy

*10 Plaintiff alleges that Defendants engaged in a conspiracy to fix prices, allocate markets, and "commit other unlawful practices designed to inflate the price of vitamin supplements sold to Plaintiff and other purchasers in Tennessee and the other class jurisdictions." Compl. ¶ 1 at 2. Plaintiff asserts that "[t]he intended common purpose of this conspiracy was to deceive Proposed Class members and the public as to the true cost of vitamin supplements," *Id.* ¶ 110 at 36, and that "[t]he further effect of this conspiracy was to violate state law." *Id.* ¶ 111 at 36. Plaintiff also alleges that "Defendants have conspired to purposely conceal the practice by which they artificially inflated the price of vitamin supplements." *Id.* ¶ 108 at 36.

"In Tennessee, a civil conspiracy is defined as a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means. Necessary elements for such a claim include common design, concert of action, and an overt act." *McConkey,* 2000 U.S. Dist. LEXIS 19895, at *14 (citations omitted); *see also Tennessee Publ'g Co. v. Fitzhugh,* 52 S.W.2d 157 (Tenn.1931); *Braswell v. Carothers,* 863 S.W.2d 722, 727 (Tenn.Ct.App.1993).

Tennessee courts considering the issue are nearly uniform in holding that conspiracy in and of itself is not a free-standing cause of action and that there must exist an underlying colorable claim. *See, e.g., Blake Corp. v. Diversified Sys., Inc.,* No. 98-5396, 2000 U.S.App. LEXIS 22291, at *18 (6th Cir. Aug. 24, 2000) (holding that when the determinative legal theory fails, "then the claim for conspiracy must also fail, for it cannot be that a conspiracy to do a thing is actionable where the thing itself would not be") (internal citation and quotation omitted); *Jackson v. Bohan,* 861 S.W.2d 241, 247-48 (Tenn.Ct.App.1993)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00360-SLR    Document 252-8    Filed 10/04/2006    Page 10 of 11

Not Reported in F.Supp.2d    Page 9
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
(Cite as: Not Reported in F.Supp.2d)

(citing *Kirskey v. Overton Pub, Inc.*, 739 S.W.2d 230 (Tenn.Ct.App.1987)); *Pusser v. Gordon*, 684 S.W.2d 639, 642 (Tenn.Ct.App.1984) (holding that plaintiff could not recover for conspiracy to defraud because fraud could not be established, and stating that "[a] mere conspiracy to commit a fraud is never of itself a cause of action; it must be proved that there was a conspiracy to defraud and a participation in the fraudulent purpose, ... which worked injury as a proximate consequence"). Moreover, "the primary purpose of the agreement must be to cause injury to another; incidental injuries resulting from a pursuit of the parties' own fair interest are not actionable." *Nat'l Med. Care, Inc. v. Gardiner*, No. 85-154-II, 1986 WL 3157, at *3 (Tenn.Ct.App. March 12, 1986).

In *Fitzhugh*, the court explained that actionable damage must be alleged, and that "[t]he damage being the gist of the action, and the 'gist' being 'the cause for which an action will lie-the ground or foundation of a suit, without which it would not be maintainable,' actionable damages must be alleged, and must be shown at the time of the bringing of the action." *Fitzhugh*, 52 S.W.2d at 157 (citation omitted). The court further stated that:

*11 It is a general rule, that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action. The damage done is the gist of the action, not the conspiracy. When the mischief contemplated is accomplished, the conspiracy becomes important, as it may affect the means and measure of redress. [B]ut the simple act of conspiracy does not furnish a substantive ground of action.

*Id.* at 158.

As discussed above, Plaintiff cannot sustain a claim for violations of either the TTPA nor the TCPA. Nor does Plaintiff state a claim for fraud. The dismissal of these counts eliminates any probable underlying cause of action on which to base a claim for civil conspiracy.[FN8] Because Plaintiff fails to state a claim for violations of either the TTPA or TCPA and further fails to state a claim for any other alleged unlawful conduct at common law, this Court will grant Defendants' Motions to Dismiss Plaintiff's claim for civil conspiracy.

FN8. Plaintiff directs the Court's attention to *Prism Partners v. Figlio*, No. 01A01-9703-CV-00103, 1997 Tenn.App. LEXIS 777 (Tenn.Ct.App. Nov. 7, 1997), to support her suggestion that "a conspiracy claim may survive dismissal even when the remaining causes of action have been dismissed." Pl's. Opp. Mem. at 54 n. 54. In *Prism Partners*, the court stated that dismissal of the underlying fraud claim did not automatically dispose of the conspiracy charge. The court made this determination based on the fact that the plaintiff had pleaded two separate torts, fraud and conspiracy. Therefore, this Court interprets *Prism Partners* to hold that the conspiracy charge could survive in that case based on one of the tort claims. However, to the extent that *Prism Partners* results in a holding that states, implicitly or otherwise, that conspiracy can be maintained as a separate cause of action, it is clearly contrary to existing precedent.

F. Alternative Grounds for Dismissal

Because the Court has found grounds to dismiss all six counts of Plaintiffs Complaint, the Court will dismiss the Complaint in its entirety. Accordingly, the Court need not address Defendants' alternative grounds for dismissal, including personal jurisdiction, the applicable statutes of limitations, and the existence of prior pending state actions. Nor need the Court decide whether or not to allow this action to proceed as a class action, because there are no viable causes of action left to pursue.

III. CONCLUSION

Plaintiff has failed to state a claim for violations of the TTPA and the TCPA, because she has not alleged a cause of action that predominately affects intrastate commerce. In addition, Plaintiff purports to voluntarily withdraw her action for fraud, but has failed to so amend her Complaint. The Court nonetheless finds that Plaintiff has failed to state a cause of action for either affirmative fraud or fraudulent concealment. Moreover, Plaintiff has also failed to state a claim for both unjust enrichment and money had and received because she has not pleaded facts that demonstrate that she directly conferred a benefit on any of the Defendants, as required by Tennessee law. And because all other causes of action are subject to dismissal, Plaintiff cannot bring an action for civil conspiracy, because Tennessee law does not recognize civil conspiracy as a free-standing cause of action. For the foregoing reasons, Defendants' Motions to Dismiss the Complaint in its entirety will be granted. An Order will accompany this Opinion.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00360-SLR   Document 252-8   Filed 10/04/2006   Page 11 of 11

Not Reported in F.Supp.2d                                                                                                   Page 10
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280
**(Cite as: Not Reported in F.Supp.2d)**

D.D.C.,2001.
In re Vitamins Antitrust Litigation
Not Reported in F.Supp.2d, 2001 WL 849928 (D.D.C.), 2001-1 Trade Cases P 73,280

Briefs and Other Related Documents (Back to top)

• 2004 WL 3682686 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Certain Defendants' Motions to Dismiss or for Judgment on the Pleadings (Aug. 25, 2004) Original Image of this Document (PDF)
• 2004 WL 3682685 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Certain Defendants' Motions to Dismiss or for Judgment on the Pleadings (Jul. 6, 2004) Original Image of this Document (PDF)
• 2004 WL 3682684 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Memorandum in Support of Motion for Final Approval of Settlements with the Sumitomo, Tanabe, Lonza, Degussa, Nepera, and Reilly Defendants and for Entry of Final Judgment (Jan. 16, 2004) Original Image of this Document (PDF)
• 2003 WL 24251856 (Trial Motion, Memorandum and Affidavit) Reply of Cargill and Tyson Plaintiffs in Support of Their Motion to Intervene (Dec. 11, 2003) Original Image of this Document (PDF)
• 2003 WL 24251853 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement and form and Manner of Notice to the Classes (Dec. 4, 2003) Original Image of this Document (PDF)
• 2003 WL 24251854 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Opposition to Cargill and Tyson Plaintiffs' Motion to Intervene (Dec. 4, 2003) Original Image of this Document (PDF)
• 2003 WL 24251855 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Class Plaintiffs' Motion for Preliminary Approval of Settlement and form and Manner of Notice to the Classes (Dec. 4, 2003) Original Image of this Document (PDF)
• 2003 WL 24251871 (Trial Pleading) Answer of Defendant Mitsui & CO., Ltd. to Plaintiffs' Fourth Amended Complaint (Nov. 25, 2003) Original Image of this Document (PDF)
• 2003 WL 24251872 (Trial Pleading) Answer of Defendant Mitsui & Co. (U.S.A.), Inc. to Plaintiffs' Fourth Amended Complaint (Nov. 25, 2003) Original Image of this Document (PDF)
• 2003 WL 24251852 (Trial Motion, Memorandum and Affidavit) Motion of Cargill and Tyson Plaintiffs to Intervene (Nov. 21, 2003) Original Image of this Document (PDF)
• 1:99mc00197 (Docket) (May 27, 1999)
• 1999 WL 33988058 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Opposition to Certain Defendants' Motions to Dismiss or for Judgment on the Pleadings (1999) Original Image of this Document (PDF)
• 1998 WL 34368140 (Trial Pleading) Class Action Antitrust Complaint (Sep. 30, 1998) Original Image of this Document (PDF)

END OF DOCUMENT