IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION | C.A. No. 05-360 (KAJ) (consolidated) |
| THIS DOCUMENT RELATES TO: | |
| PAINTERS' DISTRICT COUNCIL NO. 30 HEALTH AND WELFARE FUND, et al. | C.A. No. 05-360 |
| VISTA HEALTH PLAN, INC., et al. | C.A. No. 05-365 |
| PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND | C.A. No. 05-390 |
| ALLIED SERVICES DIVISION WELFARE FUND, et al. | C.A. No. 05-394 |
| DIANA KIM | C.A. No. 05-426 |
| ELAINE M. PULLMAN, et al. | C.A. No. 05-450 |
| PHILADELPHIA FEDERATION OF TEACHERS HEALTH AND WELFARE FUND | C.A. No. 05-467 |
| CINDY CRONIN | C.A. No. 05 482 |
| CHARLES SHAIN, et al. | C.A. No. 05-475 |
| LOCAL 28 SHEET METAL WORKERS | C.A. No. 05-516 |
| ALBERTO LITTER | C.A. No. 05-695 |

**REPLY MEMORANDUM IN SUPPORT OF END-PAYOR PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION [PUBLIC VERSION]**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    CERTIFICATION PURSUANT TO RULE 23(b)(3) SHOULD BE GRANTED:
      COMMON ISSUES PREDOMINATE AND THE CLASS IS MANAGEABLE. . . . . . . 2

      A.    Common Issues Predominate for Plaintiffs' State Law Antitrust Claims. . . . . . 2

            1.    Impact and Damages Can Be Proven on a Class-Wide Basis. . . . . . . . . . 2

            2.    Appropriate Methodologies Are Available to Calculate
                  Class-Wide Impact and Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                  a.    Plaintiffs Need Not Prove A Parallel Universe. . . . . . . . . . . . . . . 6

                  b.    The "But For" Volume of Unit Sales of Fenofibrate
                        Products, if Relevant, is a Disputed Factual Issue. . . . . . . . . . . 8

                  c.    Common Issues Predominate Even When Class Members Pay
                        Different Prices. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                  d.    Methodologies that Use Averaging Are Economically
                        Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    Common Questions Predominate with Respect to Plaintiffs'
            Unjust Enrichment Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      C.    Common Questions Predominate For Plaintiffs' Consumer Protection
            Claims, And A Trial of Such Claims Is Manageable . . . . . . . . . . . . . . . . . . . . 13

II.   CERTIFICATION PURSUANT TO RULE 23(b)(2) SHOULD BE GRANTED. . . . . . 18

III.  THE NAMED PLAINTIFFS ARE ADEQUATE REPRESENTATIVES
      OF CLASS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   A CLASS ACTION IS THE SUPERIOR MEANS OF ADJUDICATING
      THIS CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Attachments*

Proposed Trial Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attachment A

Indirect Purchaser Cases Cited By Defendants . . . . . . . . . . . . . . . . . . . . . . . . Attachment B

*Microsoft* Indirect Purchaser Class Certification Decisions . . . . . . . . . . . . . . . . Attachment C

## TABLE OF AUTHORITIES

*Decisions*

*In re Antibiotic Antitrust Actions,* 333 F. Supp. 310 (S.D.N.Y. 1971) . . . . . . . . . . . . . . . . . . . . 3

*Baker v. Family Credit Counseling Corp.,* 440 F. Supp. 2d 392 (E.D. Pa. July 28, 2006) . . . . . 13

*Barr Laboratories, Inc. v. Abbott Laboratories,* 978 F.2d 98 (3d Cir. 1992) . . . . . . . . . . . . . . . 8

*Berkey Photo Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . 5

*Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Bradburn Parent/Teacher Stores, Inc. v. 3M,* No. 02-7676, 2004 WL 1842987
(E.D. Pa. Aug. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Califano v. Yamasaki,* 442 U.S. 682 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 326 (E.D. Mich. 2001) . . . . . . . . . . . . . . . 5, 9, 10

*In re Cardizem CD Antitrust Litig.,* MDL 1278, Order No. 70 (E.D. Mich. May 23, 2003) . . . . 12

*Christiana Mortgage Corp., v. Delaware Mortgage Bankers Ass'n,*
136 F.R.D. 372 (D. Del. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Clark v. McDonald's Corp.,* 213 F.R.D. 198 (D.N.J. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Comes v. Microsoft Corp.,* 646 N.W.2d 440 (Iowa 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*D.A. Hill Co. v. CleveTrust Realty Investors,* 524 Pa. 425, 573 A.2d 1005 (1990) . . . . . . . . . . 13

*In re Diet Drugs Products Liability Litig.,* No. 98-20626, 1999 WL 673066
(E.D. Pa. Aug. 26, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171 (3d Cir. 1992) . . . . . . . . . . . . . . . 8

*Freeman Indus., LLC v. Eastman Chem. Co.,* 172 S.W.3d 512 (Tenn. 2005) . . . . . . . . . . . . . . 12

*Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.,* 424 F.3d 363
(3d Cir. 2005), *cert. denied,* 126 S.Ct. 2320 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557 (1981) . . . . . . . . . . . . . . . . . . . . . 10

*In re K-Dur Antitrust Litig.,* 338 F. Supp. 2d 517 (D.N.J. 2004) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kow v. New York City Hous. Auth.*, 92 F.R.D. 73 (S.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . 18

*In re Linerboard Antitrust Litig.*, 305 F.3d 145 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 4, 10

*In re Linerboard Antitrust Litig.*, 203 F.R.D. 197 (E.D. Pa. 2001),
*aff'd*, 305 F.3d 145 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Little Caesar Enterprises Inc. v. Smith*, 172 F.R.D. 236 (E.D. Mich. 1997) . . . . . . . . . . . . . . . 20

*Lumco Indust. v. Jeld-Wen, Inc.*, 171 F.R.D. 168 (E.D. Pa. 1997) . . . . . . . . . . . . . . . . . . . . . 6

*Marbury v. Madison*, 1 Cranch 137 (1803) ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Miller v. French*, 530 U.S. 327 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D. 194 (D. Mass. 1999),
*aff'd on other grounds*, 208 F.3d 288 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996) . . . . . . . . . . . 9

*In re New Motor Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532,
2006 WL 623591 (D. Me. Mar. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
235 F.R.D. 127 (D. Me. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
350 F. Supp. 2d 160 (D. Me. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2003 WL 302352
(E.D. Pa. Jan. 29, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*In re Northwest Airlines Corp. Antitrust Litig.*, 208 F.R.D. 174 (E.D. Mich.),
*rev. denied*, 310 F.3d 953 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Northwest Airlines Corp. Antitrust Litig.*, 221 F.R.D. 594 (E.D. Mich. 2004) . . . . . . . . . 20

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
230 F.R.D. 61 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*In re Pharmaceutical Industry Average Wholesale Price Litig.*,
233 F.R.D. 229 (D. Mass. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997),
*aff'd*, 148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Prudential Ins. Co. of Am. Sales Practices*, 148 F.3d 283 (3d Cir. 1998) . . . . . . . . . . . . 14

*In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . 20

*In re Relafen Antitrust Litig.*, 218 F.R.D. 337 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Relafen Antitrust Litig.*, 221 F.R.D. 260 (D. Mass. 2004) . . . . . . . . . . . . . . . . . . . . 13, 19

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sanofi-Syntholabo v. Apotex Inc.*, No. 02-2255, 2006 WL 2516486
(S.D.N.Y. Aug. 31, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re School Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stutzle v. Rhone Poulenc S.A.*, No. 2768, 2003 WL 22250424
(Pa. Comm. Pl. Sept. 26, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Sugar Antitrust Litig.*, 73 F.R.D. 322 (E.D. Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*In re Sumitomo Copper Litig.*, 182 F.R.D. 85 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004) . . . . . . . . . . 8, 9

*In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y. 2000),
*aff'd*, 280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) . . . . . . . . . . . . 7, 10

*In re Vitamins Antitrust Litig.*, MDL 1285, 2001 WL 849928 (D.D.C. April 11, 2001) . . . . . . . 12

*Wachtel v. Guardian Life Ins. Co. of America*, 453 F.3d 179 (3d Cir. 2006) . . . . . . . . . . . . . . . 2

*In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 3

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969) . . . . . . . . . . . . . . . . . . . 10

*Statutes and Court Rules*

Clayton Act
     15 U.S.C. § 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Rules of Civil Procedure
     Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Miscellaneous*

ABA Section of Antitrust Law, *Proving Antitrust Damages:*
*Legal and Economic Issues* (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Blair, Roger D., and Harrison, Jeffrey L., *Reexamining the Role of Illinois Brick*
*in Modern Antitrust Standing Analysis*, 68 Geo. Wash. L. Rev. 1 (1999) . . . . . . . . . . . . . . . . . 5

Karon, Daniel, R., *Undoing the Otherwise Perfect Crime– Applying Unjust Enrichment to*
*Consumer Price-Fixing Claims*, 108 W. Va. L. Rev. 395 (2005) . . . . . . . . . . . . . . . . . . . . . . 12

Indirect Purchaser Plaintiffs ("End-Payor Plaintiffs" or "Plaintiffs") submit this Reply Memorandum in further support of their motion for class certification [D.I. 116].

## SUMMARY OF ARGUMENT

Defendants seek to avoid well-established case law by arguing that federal and state antitrust claims are too diverse to justify class certification, and that the presence of claims subject to the laws of different states renders any class unmanageable. These arguments are simply incorrect.

*First*, Plaintiffs have shown that common issues predominate, notwithstanding Defendants' attempt (buttressed by their experts) to focus on immaterial and illusory issues, such as the hypothetical preferences of Class members for different drugs. Plaintiffs here demonstrate that antitrust injury and impact can be proven on a class-wide basis using standard economic methodologies approved in other cases; in any event, class certification may not be defeated by a "battle of the experts." *See* Part I(A).

*Second*, Plaintiffs have proposed an effective and manageable means of handling the consumer protection and unjust enrichment claims under state law. Contrary to Defendants' argument, all of the supposed differences between the laws are minor, are not issues submitted to the jury, or can be effectively handled using traditional case management techniques. *See* Part I(B) & (C), and Attachment A.

*Third*, the requirements of Rule 23(b)(2) are satisfied for Plaintiffs' claim for injunctive relief. Contrary to Defendants' contention, the Rule does not include a "superiority" or "necessity" requirement. *See* Part II.

*Fourth*, Plaintiffs are adequate Class representatives whose claims are typical of those of all Class members. The named plaintiffs need not include an individual from every state,

although they have, in fact purchased and paid for TriCor in almost every state. *See* Part III.

As further set forth below, Plaintiffs' motion for class certification should be granted.

## ARGUMENT

I.    **CERTIFICATION PURSUANT TO RULE 23(b)(3) SHOULD BE GRANTED: COMMON ISSUES PREDOMINATE AND THE CLASS IS MANAGEABLE.**

A.    **Common Issues Predominate for Plaintiffs' State Law Antitrust Claims.**

Plaintiffs have established that there are no material variations between the relevant state antitrust laws asserted in Count II of the Complaint [D.I. 24]. *See* Pl. Mem. [D.I. 117] at 23-30; McDonald Decl.[1] Ex. 48(A). Defendants do not dispute this. Instead, Defendants assert that no antitrust class is possible – even for a single state – because proof of injury and damages for indirect purchaser claims "requires separate mini-trials of an overwhelming large number of individual claims." Def. Mem. [D.I. 211] at 29. This mischaracterizes Plaintiffs' burden of proof on the merits and ignores the well-accepted class-wide approach by which Plaintiffs intend to prove antitrust impact and damages. As shown below and in the accompanying Trial Plan (Attachment A),[2] a trial of antitrust claims is manageable.

1.    **Impact and Damages Can Be Proven on a Class-Wide Basis.**

Defendants suggest a virtual bright-line rule against certification of indirect purchaser classes because of "pass-on" complications in the chain of distribution. Such a rule does not

---

[1] "McDonald Decl." refers to the Declaration of Christopher J. McDonald dated May 8, 2006 [D.I. 118, 119, 126] and submitted in support of Plaintiffs' motion. "McDonald Reply Decl." refers to the Declaration of Christopher J. McDonald dated October 4, 2006, which is submitted herewith.

[2] Plaintiffs have appended a Proposed Trial Plan in light of the Third Circuit's opinion in *Wachtel v. Guardian Life Ins. Co. of America*, 453 F.3d 179 (3d Cir. 2006) which was issued after Plaintiffs filed their opening brief. *Wachtel* strongly advised in favor of the submission of such a plan. *Id.* at 186 n.7.

exist. There are no "pass on" obstacles to class certification where the product was not a component of something else or passed through another market. *In re Sugar Antitrust Litig.*, 73 F.R.D. 322, 339 (E.D. Pa. 1976) (and cases cited therein); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 310, 312 (S.D.N.Y. 1971).

The indirect purchaser cases cited by Defendants (Def. Mem. 29-34) are all distinguishable from generic suppression cases in that each involved: (i) multiple products or manufacturers; (ii) claims by entities in the middle of the chain of distribution; or (iii) products that were altered or had value added in the chain).[3] In contrast, this case is especially well-suited to common proof of impact because: (i) it addresses a market for a consumer product that, to date, has been monopolized by a single manufacturer; (ii) the Class does not include middlemen, but only those at the *end* of the chain of distribution who must absorb the financial brunt of Defendants' anticompetitive scheme; and (iii) TriCor is not altered or integrated into other products or otherwise changed in form as it passes through the chain of distribution from Abbott to the consumer.[4] Moreover, as confirmed in the accompanying Reply Declaration of Dr. Charles King III (McDonald Reply Decl., Ex. 49; "King Reply Decl."), methodologies similar to those proposed by Dr. King have been accepted by courts that certified litigation classes and/or exemplar classes. *See* King Reply Decl. ¶ 18 n. 60.

---

[3] *See* Attachment B; *see also* Attachment C (categorizing *Microsoft* state court antitrust decisions to demonstrate that the two cases relied upon by Defendants were aberrations, as courts granted class certification in eleven states).

[4] *Cf., e.g., Comes v. Microsoft Corp.*, 646 N.W.2d 440 (Iowa 2002) (only one manufacturer); *In re Synthroid Marketing Litig.*, 188 F.R.D. 287, 300 (N.D. Ill. 1999) (one manufacturer and one drug); *see also In re Warfarin Sodium Antitrust Litig.*, 214 F.3d 395, 402 (3d Cir. 2000) (class of branded drug purchasers "bear[s] financial brunt of the antitrust violations."). Indeed, antitrust cases involving the unlawful suppression of generic competition for brand name drugs are especially conducive to class treatment. *See* Pl. Mem. at 16 n.30.

2.    **Appropriate Methodologies Are Available to Calculate Class-Wide Impact and Damages.**

Defendants rely on two experts to attack the class-wide methodologies proposed by Plaintiffs' economics expert, Dr. Charles King III. First, Dr. Robert Navarro, without directly challenging the methodologies proposed by Dr. King, submitted a declaration about the pharmaceutical distribution process. Dr. Navarro testified, however, that aggregate methodologies are reliable and commonly utilized in the pharmaceutical industry for a variety of purposes. McDonald Reply Decl Ex. 63 (Navarro Dep. at 7-27 ). Defendants then provided Dr. Navarro's declaration to Mr. Edward Sherry, a doctoral student in economics. McDonald Reply Decl Ex. 64 (Sherry Dep. at 10-13). Sherry received Dr. Navarro's report and the declaration of Abbott employee Michael Jones, both of which he relied upon, only few hours before he signing his own report. He never spoke with either of them. McDonald Reply Decl Ex. 64 (Sherry Dep. at 356-65); *id.,* Ex. 63 (Navarro Dep. at 63, 95-100).

Sherry takes issue with Dr. King's methodologies by conjuring up an incredibly complex parallel universe predominated by speculative individual considerations about different drugs TriCor patients might have purchased in the "but for" world, the healthcare cost impacts that may arise as a result of taking these different drugs, and the competitive impacts that may be suffered by managed care organizations as a result of member dissatisfaction. McDonald Reply Decl Ex. 64 (Sherry Dep. at 626-28). Defendants' approach is without merit, both factually and legally, and is otherwise insufficient to refute the class-wide methodologies proposed by Dr. King.

In assessing antitrust impact, it is appropriate to focus on Defendants' exclusionary conduct and its effect on the prices paid by end-payors. In *In re Linerboard Antitrust Litig.,* 305 F.3d 145 (3d Cir. 2002), the Third Circuit reaffirmed that an antitrust plaintiff could demonstrate

fact of damage, *i.e.*, impact, "simply by proving that the free market prices would be lower than the prices paid and that he made some purchases at the higher price." *Id.* at 153 (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 455 (3d Cir. 1977)); *see also Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc.*, 424 F.3d 363, 374 (3d Cir. 2005), *cert. denied,* 126 S.Ct. 2320 (2006); *Nichols v. SmithKline Beecham Corp.,* No. 00-6222, 2003 WL 302352, at *8 (E.D. Pa. Jan. 29, 2003); ABA Section of Antitrust Law, *Proving Antitrust Damages: Legal and Economic Issues* 184-188 (1996).[5]

Thus, Plaintiffs' burden at trial is to demonstrate what they paid for fenofibrate products and what they would have paid for fenofibrate products in the absence of, or "but for," Defendants' misconduct. "An indirect purchaser must estimate only the 'but for' price that it should have paid, which is a far less exacting exercise than apportioning the overcharge throughout the entire chain of distribution." Roger D. Blair and Jeffrey L. Harrison, *Reexamining the Role of Illinois Brick in Modern Antitrust Standing Analysis*, 68 Geo. Wash. L. Rev. 1, 29 (1999); *see In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 344 (E.D. Mich. 2001) (citing Blair & Harrison with approval). This "bottom across" method of calculating damages "means that the overcharge is determined by examining the price differential between the generic and the brand drug at the retail level only. Thus, there will be no need to review 'pass-through' variations." *Cardizem CD*, 200 F.R.D. at 344; *see also Nichols,* 2003 WL 302352, at *8.

Accordingly, Dr. King proposes "bottom across" overcharge methodologies that focus on

---

[5] While Sherry suggests that "overcharge" damages apply only to price-fixing cases, Sherry Rpt. ¶ 101, overcharges are the proper measure of damages for monopolization cases as well. *See, e.g., Berkey Photo Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 294 (2d Cir. 1979); *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 344 (D. Mass. 2003).

prices at the end-payor level. These methodologies will demonstrate that all (or substantially all) of the members of the Class have been injured by Defendants' conduct.[6] *See* King Decl. ¶ 67; King Reply Decl. ¶¶ 17-23, 33-34.

Although Defendants and Sherry expend much effort in criticizing Dr. King's declaration, those positions are entitled to no weight on a motion for class certification since the ultimate persuasiveness or validity of Dr. King's opinions are not yet at issue. A "battle of experts" on impact and damages methodology cannot defeat class certification. This principle renders most of Sherry's report irrelevant at this stage.[7]

### a.    Plaintiffs Need Not Prove A Parallel Universe.

Plaintiffs advocate standard economic modeling to arrive at a reasonable price differential between branded TriCor and generic fenofibrate for purposes of demonstrating class-wide impact and calculating class-wide damages. *Cf. Nichols*, 2003 WL 302352, *7. Defendants, on the other hand, rely upon Sherry's "different drug effect" theory to combat Plaintiffs' approach. Defendants' theory, which has no legal or economic authority to support it, suggests that Class members must prove not only the exact purchase price that they paid for TriCor, but also the exact purchase price that they would have paid for non-fenofibrate dyslipidemia drugs that they would have purchased if physicians wrote different prescriptions in the "but for" world. To demonstrate injury, according to Defendants, Class members would then need to compare the cost of their actual TriCor purchases with the cost of their hypothetical, non-fenofibrate

---

[6] That a defendant might show lack of impact as to a few individual class members is irrelevant. *See Sugar Antitrust*, 73 F.R.D. at 347; *Nichols*, 2003 WL 302352, at *6.

[7] Pl. Mem. at 27-28; *see also In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 217 (E.D. Pa. 2001), *aff'd*, 305 F.3d 145 (3d Cir. 2002); *Nichols*, 2003 WL 302352, at *4; *Bradburn Parent/Teacher Stores, Inc. v. 3M*, No. 02-7676, 2004 WL 1842987, at *13-18 (E.D. Pa. Aug. 18, 2004); *Lumco Indust. v. Jeld-Wen, Inc.*, 171 F.R.D. 168, 173-74 (E.D. Pa. 1997).

purchases to determine whether their make-believe purchase cost less than TriCor (in which case they were damaged) or more than TriCor (in which case they were not damaged). Def. Mem. at 34-35; *see* Sherry Rpt. ¶¶ 106-164.[8] In other words, according to Defendants, a hypothetical non-injury trumps the actual payment of overcharges.

What Defendants refuse to acknowledge is that the "but for" world that is sometimes described in antitrust cases is not meant to be a parallel universe addressing every conceivable consequence arising from one changed circumstance. It is a convention for approximating damages that, for obvious reasons, cannot be determined with absolute certainty. More importantly, Defendants' proffered approach seeks to remove from the equation the fact that Class members bought ascertainable amounts of TriCor at ascertainable prices that resulted in ascertainable profits to Defendants. Defendants seek to assume away Plaintiffs' damages by speculating on whether they might have bought statin drugs — but they don't assume away their profits. Defendants' arguments, therefore, are unfounded and specious.[9]

Contrary to Defendants' suggestion, the Court need not consider countless scenarios by which Class members might have avoided purchasing TriCor altogether.[10] Defendants'

---

[8] In addition, Mr. Sherry contends that "consumer surplus" must be considered in computing damages, despite admitting that he is not aware of any "generic suppression antitrust case in history" that required such computation. McDonald Reply Decl Ex. 64 (Sherry Dep. at 601-02).

[9] As one court certifying a consumer class has recognized, "[t]he Court will not strain to provide a remedy where none exists in the positive law of the statute and the rules of procedure binding on the Court. However, the Court will examine with care an argument by an alleged wrongdoer that the complexity of the very wrong alleged places it beyond the reach of the law." *In re Mercedes-Benz Antitrust Litig.,* 213 F.R.D. 180, 192 (D.N.J. 2003).

[10] *Cf. In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 134 (2d Cir. 2001) (rejecting as grounds to deny class certification defendants' "but for" world contention that "there would be less usage of Visa Check and MasterMoney if their interchange fees decreased because banks would issue fewer cards and defendants would spend less money advertizing the cards");

contention, at best, merely suggests that they advocate a different relevant product market (*i.e.*, all drugs that treat dyslipidemia). This issue is a question of fact for the jury to resolve that does not bar class certification. *See Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 199 (3d Cir. 1992). To the contrary, "the definition of the relevant market for determining market power is a question common to all members of the class, and is one that will predominate over any individualized inquiries." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 696 (S.D. Fla. 2004).[11]

   **b.    The "But For" Volume of Unit Sales of Fenofibrate Products, if Relevant, is a Disputed Factual Issue.**

   As part of their "parallel universe" approach to economic issues, Defendants maintain that there would have been fewer TriCor prescriptions, hence the "different drug effect." As addressed above, Defendants' suggested approach is both wrong and irrelevant to class certification. Even if relevant, however, there is considerable evidence to the effect that the decrease in the average price of the medicine (*i.e.*, both branded and generic formulations) that accompanies a generic launch causes the number of prescriptions for it to increase, notwithstanding the brand manufacturer's termination of promotional and detailing activities. *See* King Reply Decl. ¶¶ 25-32.

---

*In re Northwest Airlines Corp. Antitrust Litig.*, 208 F.R.D. 174, 223 (E.D. Mich.) (refusing to consider "the near-endless parade of scenarios" potentially faced by consumers in "but for" world as grounds to deny class certification), *rev. denied*, 310 F.3d 953 (6th Cir. 2002).

   [11] Contrary to Sherry's suggestion (Sherry Rpt. ¶ 24, 148), there is no requirement that products be fungible. *See* King Reply Decl. ¶¶ 43-44. "The relevant product market includes those commodities reasonably interchangeable by consumers for the same purposes." *Barr Laboratories, Inc. v. Abbott Laboratories*, 978 F.2d 98, 115 (3d Cir. 1992). Defendants' own expert, Dr. Navarro, has recognized that "mandatory dispensing of generic drugs is perhaps the single-most effective cost containment drug formulary component available." McDonald Reply Decl Ex. 66 (Chapter co-authored by Navarro for American Society of Healthcare Pharmacists identified as Navarro Dep. Ex. 11 at his deposition); *id* Ex. 63 (Navarro Dep. at. 118-120).

c.    **Common Issues Predominate Even When Class Members Pay Different Prices.**

Defendants and Sherry make much of the fact that Class members paid different prices for fenofibrate products. *See* Def. Mem. at 10-12, 31-32, 36; Sherry Rpt. ¶¶ 217-238. "The courts have routinely rejected similar arguments, despite differences in prices paid by class members, where plaintiffs show that the minimum baseline for beginning negotiations, or the range of prices which resulted from negotiations, was artificially raised (or slowed in its descent)" as a result of an antitrust violation. *Cardizem CD*, 200 F.R.D. at 345 (citations and internal quotes omitted).[12] All end-payors—be they cash-paying consumers, consumers with differential insurance co-payments, or third-party payors responsible for paying all or part of their members' prescriptions[13] — paid more for fenofibrate products in the actual world than they would have absent the unlawful conduct. *See* King Decl. ¶¶ 29-51; King Reply Decl. ¶¶ 6-19, 33-34.[14] The fact that some TPPs may have had influence over which drug a patient was

_____

[12] *Accord In re New Motor Vehicles Canadian Export Antitrust Litig.*, 235 F.R.D. 127, 137-39 (D. Me. 2006) (citing *Bogosian*); *Terazosin*, 220 F.R.D. at 694-700; *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 523 (S.D.N.Y. 1996).

[13] Dr. Navarro testified that there is a third-party payment source for approximately 80% of prescriptions dispensed through pharmacies. McDonald Reply Decl Ex. 63 (Navarro Dep. at 62). "Co-payment tier 1 generically contains generic drugs and due to the lower generic cost, the member co-payment is lower to encourage the use of generics." McDonald Reply Decl Ex. 66 (Chapter co-authored by Navarro for American Society of Healthcare Pharmacists and marked as Ex. 11 at Navarro deposition); *id.* Ex. 63 (Navarro Dep. at 118-120). "Managed care generally supports the use of generic drugs and anxiously awaits the patent expiration of expensive brand medications that are highly used." McDonald Reply Decl Ex. 65 ("Essentials of Managed Healthcare" marked as Ex. 10 at Navarro deposition); *id.* Ex. 63 ( Navarro Dep. at 139-141).

[14] Sherry also asserts that the Class is not cohesive because prices paid by "brand loyalists" in the "but for" world would have increased (*i.e.*, that such purchasers benefitted by generic foreclosure). Sherry Rpt. ¶¶ 183-205.

**REDACTED**    *See* King Reply Decl. ¶ 7. The same net price decrease was recently shown for the drug Plavix, sold by a different drug company. *See id.* ¶ 10;

prescribed (Def. Mem. at 12-13) does not detract from the fact that, as a result of the complete

suppression of generic competition, they made purchases at the higher price. *Linerboard*, 305

F.3d at 153.[15]  *See* King Reply Decl. ¶ 21 & Attachment D thereto.

      **d.**    **Methodologies that Use Averaging Are Economically Appropriate.**

      Finally, Defendants contend that methodologies proposed by Dr. King are inappropriate

because they make some use of average prices.  Def. Mem. at 31.  This criticism is baseless.

"The fact that the methodologies contain some form of averaging does not automatically render

them methods of fluid recovery." *Cardizem CD*, 200 F.R.D. at 350 (citation omitted).  Antitrust

damage calculations are not required to be exact, particularly where it is the Defendants'

misconduct that has made estimation necessary.[16]  Dr. King has concluded, based on literature

and past practice, that methodologies (such as yardstick models) are available to reasonably

calculate aggregate damages, which can be distributed to Class members based upon their actual

---

*Sanofi-Syntholabo v. Apotex Inc.*, C.A. No. 02-2255, 2006 WL 2516486, at *22-23 (S.D.N.Y. Aug. 31, 2006).

    [15]  To the extent that Defendants may be suggesting an individualized mitigation of damages *defense*, on which they would have the burden of proof, common issues remain predominant.  *See Visa*, 280 F.3d at 140.  Such a defense will be difficult to maintain in light of evidence of class-wide efforts to prevent competition.  *See also, e.g.,* McDonald Decl. Ex. 35 at 752 (

**REDACTED**

    ).

    [16]  The Supreme Court has repeatedly observed that damages in antitrust cases are "rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 561-68 (1981) ("in order to recover damages [plaintiffs] must establish ... some approximation of damages;" the "traditional rule excus[es] antitrust plaintiffs from an unduly rigorous standard of proving antitrust injury"); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 93 (S.D.N.Y. 1998) ("[I]t is hornbook law that doubts as to the certainty of damages will be resolved against the wrongdoer, as the wrongdoer must bear the uncertainty which his conduct has created.") (citation and internal quotation marks omitted).

expenditures for TriCor.  *See* King Decl. ¶ 52; King Reply Decl. ¶¶ 20-24; Attachment A at 7-9.

The econometric models proposed by Dr. King will demonstrate that the "but for" price of fenofibrate products would have been less than what all Class members actually paid, which is a "complete answer" to Defendants' assertion that purported class members were not harmed for various speculative reasons.[17]  "The data for the methodologies by which these impacts are measured are by nature class-wide, rather than individual."  King Decl. ¶ 38; *see New Motor Vehicles,* 235 F.R.D. at 142 ("It is not enough to say that additional proof of impact would have to be individualized, because the plaintiffs do not choose to rely upon individualized proof of impact.").  Defendants remain free to maintain at trial that Plaintiffs' proof is insufficient to establish class-wide impact or aggregate damages.  *Id.*  However, the fact that Sherry disagrees with Dr. King's approach (and vice versa) is not grounds to deny class certification.

**B.     Common Questions Predominate with Respect to Plaintiffs' Unjust Enrichment Claims.**

Despite Defendants' arguments to the contrary, the mere existence of differences between and among different states' unjust enrichment standards does not defeat certification.  The question before the Court is whether there are *meaningful* differences that preclude the class action mechanism from being available to prosecute the claims.  Plaintiffs established that there are no differences sufficient to defeat their unjust enrichment claims at this stage of the litigation.  *See* Pl. Mem. at 30.  Defendants have failed to undermine that conclusion.

For instance, Defendants' rely on *In re New Motor Vehicles Canadian Export Antitrust*

---

[17]  *See In re Visa Check/Mastermoney Antitrust Litig.,* 192 F.R.D. 68, 82 (E.D.N.Y. 2000) (certifying a nationwide class of retailers: plaintiffs' expert's scenario "is a complete answer to the defendants' attack on the theory of the complaint; it posits class-wide injury resulting from every single class member's overpaying for off-line debit cards as a direct result of the tie."), *aff'd,* 280 F.3d 124 (2d Cir. 2001).

*Litig.,* 350 F. Supp. 2d 160, 212 (D. Me. 2004), to argue that unjust enrichment claims are

available to an indirect purchaser only if the state's adherence to *Illinois Brick* has been

"repealed" by legislation or judicial determinations. *See* Def. Mem. at 24-25. That approach is

certainly not binding on this Court. More importantly, it fails to give adequate consideration to

unjust enrichment as an independent cause of action. Unjust enrichment is wholly separate from

antitrust claims, and this claim is available even in those states that have not adopted *Illinois*

*Brick* repealer causes of action. A federal statute should not be construed to displace a court's

traditional equitable jurisdiction absent the "clearest command" or an "inescapable inference" to

the contrary. *Miller v. French*, 530 U.S. 327, 340 (2001) (citations omitted). Inaction on the part

of the various states' legislatures in not "repealing" *Illinois Brick* cannot, as a matter of law,

amount to the "clearest command" to abrogate equitable jurisdiction. *See* Daniel R. Karon,

*Undoing the Otherwise Perfect Crime– Applying Unjust Enrichment to Consumer Price-Fixing*

*Claims,* 108 W. Va. L. Rev. 395, 405 (2005) ("Karon"). As Judge Edmunds has stated, "The

Court is not convinced by Defendants' argument that federal and state antitrust law lay waste to

common-law claims of unjust enrichment." *In re Cardizem CD Antitrust Litig.*, MDL 1278,

Order No. 70 at 28 (E.D. Mich. May 23, 2003).

 In addition, the purported differences in state unjust enrichment standards asserted by

Defendants, Def. Mem. at 25-27, do not preclude a finding of predominance.

- Privity is generally not an element of an unjust enrichment claim.[18]

---

[18] *See* Karon, 108 W. Va. L. Rev. at 418-422; *cf. In re K-Dur Antitrust Litig.*, 338 F.
Supp. 2d 517, 544-45 (D.N.J. 2004). The conclusion concerning privity in *In re Vitamins*
*Antitrust Litig.*, MDL 1285, 2001 WL 849928 (D.D.C. April 11, 2001), relied upon by
Defendants, is erroneous, as set forth in *Freeman Indus., LLC v. Eastman Chem. Co.*, 172
S.W.3d 512, 525 (Tenn. 2005) ("A plaintiff *need not* be in privity with a defendant to recover
under a claim of unjust enrichment.") (emphasis added). Also, the discussion regarding privity in
*Stutzle v. Rhone Poulenc S.A.*, 2003 WL 22250424 (Pa. Comm. Pl. Sept. 26, 2003) is contracted

• Given the facts of this case as pleaded — involving Defendants' intentional unlawful conduct — individual issues (*e.g.*, a requirement that Defendants "appreciate" the benefit, a clean hands defense) are not an impediment to certification here. *Cf. In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 279 n.17 (D. Mass. 2004) ("[A]lthough states may vary significantly in the requirements necessary to establish the defense [of clean hands], there is no suggestion here that [defendant brand manufacturer] could establish any set of relevant requirements.") (citation and quotation marks omitted); *see* D.I. 188 & 190.

• As to statute of limitations, any limitation on damages should be decided by the Court on summary judgment, not by the jury. Plaintiffs' damages expert need only exclude transactions that are beyond the limitation period in any particular state in calculating damages. *See* King Reply Decl. ¶ 24.[19]

### C.    Common Questions Predominate For Plaintiffs' Consumer Protection Claims, And A Trial of Such Claims Is Manageable.

Defendants' argument against certification of a multistate class for unfair trade practices claims is inherently defective because it ignores binding precedent in the Third Circuit. While some state and federal courts have reached contrary conclusions, our Court of Appeals has expressed a firm willingness to certify national or multistate classes for economic harm, even when applying the laws of the individual states, so long as "relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a

---

by *D.A. Hill Co. v. CleveTrust Realty Investors*, 524 Pa. 425, 573 A.2d 1005, 1009 (1990). *See Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. July 28, 2006).

[19] Another of Defendants' arguments, whether or not the state antitrust claims ultimately constitute an adequate remedy at law, *see* Def. Mem. at 23, is immaterial at this stage of the case. Under Fed. R. Civ. P. 8(e)(2), a plaintiff may plead two or more statements of a claim regardless of consistency.

unit." *In re Prudential Ins. Co. of Am. Sales Practices*, 148 F.3d 283, 315 (3d Cir. 1998)

("*Prudential Sales Practices II*");[20] *In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3d Cir.

1986).  Nor does the use of consumer protection laws from all states defeat commonality or

predominance.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004).[21]  Any

assumption that a trial involving multiple states' laws is unmanageable is inconsistent with the

clear governing precedent of this Circuit, and is contrary to the clearly stated preference for class

adjudication in such situations.

　　　As shown in Plaintiffs' opening brief and further below, this case is manageable at trial.

The attached Proposed Trial Plan describes in detail how the same evidence will be used to prove

the facts relevant to all of Plaintiffs' claims.  It further shows how the few differences between

the unfair trade practices laws can be managed through careful use of special interrogatories that

allow the jury to express its judgment as to elements that may be unique to one or a few state

laws.  *See* Attachment A.  Bifurcating the trial as to liability and damages allows the jury to focus

on one set of issues at a time to avoid confusion.  The jury's answers to interrogatories may

simplify the damages phase by dismissing certain claims.

---

[20] In *Prudential Sales Practices II*, the district court and the Third Circuit approved a
nationwide class of defrauded policy holders under the laws of every state to combat insurance
sales fraud. The settlement was valued as high as $2.1 billion on behalf of approximately
8,000,000 purchasers.  Due to the presence of objectors to the settlement, all of the class
certification issues were vigorously litigated, resulting in lengthy, detailed opinions from both the
trial and appellate courts.  Although the case involved a settlement, the trial court did *not* ignore
manageability, but evaluated and approved the proposed settlement class "as if the class were to
go to trial." *In re Prudential Ins. Co. of America Sales Practices Litig.*, 962 F. Supp. 450, 508
(D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

[21] Defendants note criticisms by some commentators of the holding of *In re School
Asbestos* as to this point, without recognizing that the Third Circuit has expressly reaffirmed that
very holding in *Prudential Sales Practices II*, 148 F.3d at 315.  Accordingly, the contrary
decisions of two district courts in New Jersey issued prior to the *Prudential* decision, *see* Def.
Mem. at 38, conflict with controlling precedent.

Defendants not only exaggerate the differences between the consumer protection laws of different states, but they confuse issues to be decided by the court on motion with issues that go to the jury. *See In re Pharmaceutical Industry Average Wholesale Price Litig.*, 230 F.R.D. 61, 85 (D. Mass. 2005) (*"AWP"*) (no indication that different definitions of reliance and causation will matter or cannot be resolved as a matter of law prior to trial). As shown below, most of the alleged differences between state laws cited by Defendants will not affect the ability of the Court and jury to effectively manage and decide liability in this case. Any actual differences in the laws are accounted for in the attached Trial Plan.

- **Causation** (Def. Mem. at 18) - Defendants confuse causation with reliance.[22] Virtually every state requires plaintiffs to show a causal nexus between the unlawful conduct and the injury or impact, but reliance is a separate element discussed below. Defendants have not identified any material difference in the causation requirements of the different states, and a standard causation instruction will suffice. *See* Attachment A.

- **Who is a consumer** (Def. Mem. at 19) - Although some states arguably require plaintiffs to be individual consumers as opposed to purchasing entities, this is a question of law that should be decided on a motion for partial summary judgment, not an issue to be tried to the jury. Indeed, it is a matter that must be determined prior to trial, so that experts for plaintiffs and defendants can have a basis upon which to give testimony as to the amount of damages. Thus, this does not raise an issue of manageability at trial.

- **Scienter and level of intent** (Def. Mem. at 20) - There are only four different standards among the states as to the level and nature of deception or misrepresentation required to show a

---

[22] The New Jersey cases cited by Defendants, *see* Def. Mem. at 18, are classic examples of such confusion, and have not been adopted by the New Jersey appellate courts. *See* Attachment A at 2.

violation (conduct "likely to mislead," "capacity to mislead," "intent that others rely," "knowingly or intentionally"). These minor differences can be easily addressed with specific interrogatories to be answered by the jury in a special verdict form. *See* Attachment A, Plaintiffs' Proposed Trial Plan and Sample Jury Interrogatories.

- **Privity** (Def. Mem. at 21) - By definition, the Indirect Purchasers did not purchase any of the drugs from the Defendants, and are not in privity with them. To the extent any state consumer act requires privity, those state claims should be addressed on a motion for summary judgment, but in no event would affect the manageability of trial.

- **Pre-suit demand** (Def. Mem. at 21) - Again, if Plaintiffs did not comply with the procedural requirements of any individual state, those claims can be stricken upon defendants' motion for summary judgment prior to trial. *See AWP,* 230 F.R.D. at 84. However, this is primarily a legal issue that does not go to the jury.

- **Damages** (Def. Mem. at 22) - As addressed above, individualized issues as to damages cannot defeat class certification. The way to address manageability issues is to bifurcate the trial and have damages decided in Phases II and III of the trial. *See* Attachment A.

- **Fraud and deceit** (Def. Mem. at 22-23) - Plaintiffs have not brought any claims under the common law of fraud for any state. As described in the McDonald Declaration, Ex. 48(C), state consumer protection laws provide a lower and easier to meet standard than the common law (indeed, this is the whole purpose for which such laws were enacted). Plaintiffs have carefully stated claims under laws which are amenable to class treatment. Defendants' argument on this issue is simply a red herring.

- **Reliance** (Def. Mem. at 17-18) - As noted in the McDonald Declaration, Ex. 48(C), a small number of states require proof of reliance. There are at least three ways to address this

issue, described in greater detail in the Proposed Trial Plan.

*First,* many cases point out that in a class action involving an overarching scheme or uniform conduct by the defendant, reliance of individual class members can be proven inferentially. The case law interpreting two state consumer protection statutes have agreed. *See* Proposed Trial Plan, Attachment A, at 2-3

*Second,* even if reliance has to be proven individually, common issues may predominate and justify a class even if their resolution does not alone establish liability. *Christiana Mortgage Corp., v. Delaware Mortgage Bankers Ass'n,* 136 F.R.D. 372, 382 (D. Del. 1991). A number of courts have held that individual proof of reliance will not defeat class certification because it is an issue secondary to common questions of establishing the fact of defendants' liability. *See* Attachment A at 5.

*Third,* to the extent the Court concludes that reliance must be proven with class-wide evidence as a condition of class certification, Plaintiffs would withdraw their unfair trade practices claims from class certification as to those states requiring direct proof of individual reliance; those claims can be addressed later in the litigation. However, in no event should the element of reliance be a bar to certification of a national or multistate class.

In summary, the number of differences between the consumer protection laws that actually go to the jury are very few, and can be handled by presenting the two or three alternatives to the jury using such techniques as jury interrogatories and, if necessary, seriatim partial verdicts. A trial of state law claims is manageable and fully approved by the Third Circuit.

## II.     CERTIFICATION PURSUANT TO RULE 23(b)(2) SHOULD BE GRANTED.

Defendants oppose certification of Plaintiffs' injunctive claims under the Clayton Act,

asserting that "a class action is not superior to other methods of adjudication" because a

judgment in favor of a single plaintiff would inure to the benefit of all indirect purchasers.  Def.

Mem. at 39-40.  This argument incorrectly conflates the requirements of Rule 23(b)(2) and

(b)(3):  "[T]he availability of other methods of resolution which might be superior to a class

action are not criteria of a subdivision (b)(2) class, but ... of a (b)(3) class [.]"  *In re New Motor*

*Vehicles Canadian Export Antitrust Litig.*, MDL No. 1532, 2006 WL 623591, at *8 (D. Me. Mar.

10, 2006) (citation omitted); *accord In re Diet Drugs Products Liability Litig.*, No. 98-20626,

1999 WL 673066, at *9 (E.D. Pa. Aug. 26, 1999).

Defendants also assert that an injunctive class is unnecessary.  However, "[c]ontrary to

the defendants' argument, the Supreme Court has held that a Rule 23(b)(2) class may be certified

even if there is no absolute need for a class action."  *New Motor Vehicles*, 2006 WL 623591, at

*8 (citing *Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979)).  Indeed, antitrust courts often

certify classes under Rule 23(b)(2) to restrain a continuing antitrust violation.  *Id.*; *Visa*, 192

F.R.D. at 88-89.[23]  Accordingly, because Defendants are acting or refusing to act "on grounds

generally applicable to the class," certification under Rule 23(b)(2) is appropriate.

## III.     THE NAMED PLAINTIFFS ARE ADEQUATE REPRESENTATIVES OF CLASS.

Defendants erroneously maintain that the named Plaintiffs cannot adequately represent

the Class's state-law claims because they are "from" only nine states.  Def. Mem. at 27-28.  In

---

[23]  Defendants cite no cases denying certification as unnecessary for injunctive claims
under the Clayton Act.  Denying certification based on a lack of "necessity" ordinarily involves
actions against government officials, where the court expects the judgment to apply generally.
*See, e.g., Kow v. New York City Hous. Auth.*, 92 F.R.D. 73, 74 (S.D.N.Y. 1981).

fact, one of the named plaintiff third-party payors, Pennsylvania Employees Benefit Trust Fund, paid for TriCor in at least 40 states. McDonald Reply Decl. Ex. 70, *see also id.* Ex. 71. Moreover, there is not a fixed rule that requires plaintiffs in a class action to have a representative from every state. In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), the Supreme Court noted an exception to ordinary jurisdictional principles for circumstances in which class certification is "logically antecedent to Article III concerns" and therefore "should be treated first." 527 U.S. at 831 (citation omitted). "This is an exception to the usual rule that standing is a threshold question that must be decided prior to class certification issues." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 204 (D.N.J. 2003).

"Accordingly, Rule 23 certification should be addressed first in those cases where it is the possibility of class certification that gives rise to the jurisdictional issue of standing." *Id. See Relafen*, 221 F.R.D. at 269 ("The focus of the standing inquiry is therefore appropriately directed toward the class rather than its representative."). Requiring class counsel "to identify representatives from each state involved in a multistate class action, would render class actions considerably more cumbersome to initiate, and in turn, less effective in overcoming a lack of incentives to prosecute individual rights and in 'achiev[ing] economies of time, effort, and expense.'" *Id.* (citations omitted).[24]

Finally, other courts have refused to require a class representative from every state.[25] If

---

[24] Defendants cite a different decision from the *Relafen* case, Def. Mem. at 28 n.25, but ignore that fact that Judge Young was ultimately satisfied with the treatment of state law claims and certified a nationwide settlement class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 74-76 (D. Mass. 2005).

[25] *See In re Pharmaceutical Industry Average Wholesale Price Litig.*, 233 F.R.D. 229, 230-31 (D. Mass. 2006) (seven plaintiffs certified as representatives of four subclass encompassing 42 states each); *Relafen*, 221 F.R.D. at 268 (3 consumer purchasers certified to represent 5 state exemplar classes); *Mowbray v. Waste Management Holdings, Inc.*, 189 F.R.D.

the Court determines that a representative for each state is required, Plaintiffs should be given an opportunity to join additional representatives.[26]

## IV.   A CLASS ACTION IS THE SUPERIOR MEANS OF ADJUDICATING THIS CASE.

Defendants point to all of the supposed problems of managing a trial in this case but never comment on the central point - that without class certification, the overwhelming number of class members will have no opportunity for relief. "[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law. . . ." *Marbury v. Madison*, 1 Cranch 137, 163 (1803) (quoting 3 Blackstone's Commentaries 23, 109). As the cases previously cited to the Court, Pl. Mem. at 36-38, all demonstrate, a complex case is not an unmanageable one. "[T]o deny a class action simply because all of the allegations of the class do not fit together likes pieces in a jigsaw puzzle would destroy much of the utility of Rule 23." *In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 89-90 (S.D.N.Y. 2004). The claims here are the kind that have been successfully handled by many courts before, and the Third Circuit has held that the use of state laws does not in itself change that conclusion. Plaintiffs have presented here a viable plan for trying this case. In the absence of an alternative means of providing relief for Class members, the class should be certified.

## CONCLUSION

Plaintiffs' motion for class certification should be granted.

---

194, 195 (D. Mass. 1999) (single plaintiff named to represent nine state class), *aff'd on other grounds*, 208 F.3d 288, 299 (1st Cir. 2000).

[26]  *See Little Caesar Enterprises Inc. v. Smith*, 172 F.R.D. 236, 244 n.3 (E.D. Mich. 1997); *In re Northwest Airlines Corp. Antitrust Litig.*, 221 F.R.D. 594 (E.D. Mich. 2004).

Dated: October 4, 2006

**CHIMICLES & TIKELLIS LLP**

Pamela S. Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
Daniel J. Brown (#4688)
P.O. Box 1035
One Rodney Square
Wilmington, DE 19899
Tel: 302-656-2500
Fax: 302-656-9053
*Liaison Counsel for End-Payor Plaintiffs*

**LABATON SUCHAROW**
**& RUDOFF LLP**
Bernard Persky
Christopher J. McDonald
Kellie C. Safar
100 Park Avenue
New York, NY 10017

**MILLER FAUCHER**
**and CAFFERTY LLP**
Bryan L. Clobes
William R. Kane
One Logan Square
18th & Cherry Streets, Suite 1700
Philadelphia, PA 19103
   -and-
Patrick E. Cafferty
101 N. Main Street, Suite 450
Ann Arbor, MI 48101
   -and-
Marvin A. Miller
Jennifer W. Sprengel
30 N. LaSalle St. Suite 3200
Chicago, IL 60602

**SPECTOR, ROSEMAN**
**& KODROFF, P.C.**
Jeffrey L. Kodroff
Theodore M. Lieverman
Simon B. Paris
1818 Market Street, Suite 2500
Philadelphia, PA 19103

**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**
Thomas M. Sobol
David S. Nalven
Greg Matthews
One Main Street, 4th Floor
Cambridge, MA 02142
   -and-
Steve W. Berman
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

*Interim Co-Lead Counsel for End-Payor Plaintiffs*

-21-