REPLY MEMORANDUM IN SUPPORT OF END-PAYOR
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# Attachment A

*In re TriCor Indirect Purchaser Antitrust Litigation*

**END-PAYOR PLAINTIFFS' PROPOSED TRIAL PLAN**
**IN SUPPORT OF CLASS CERTIFICATION**

The following Proposed Trial Plan is designed to show that a trial for all claims of a nationwide End-payor Class can easily be managed. It provides a three-stage process, in which evidence as to liability of all claims (antitrust, unjust enrichment, and consumer protection) is first presented to the jury, which answers Special Jury Interrogatories. Alternatively, the three claims can be argued separately to the jury after close of evidence, with the jury returning partial verdicts on each claim separately. In Phase II, the jury considers the evidence and answers Special Interrogatories that show the intended award of aggregate damages on each of the three claims, broken down state-by-state. In Phase III, damages are apportioned to individual Class members.

Since the purpose of this Plan is to show that the End-payor claims are manageable at trial, this Plan assumes a trial only for End-payors. For a consolidated trial with direct purchaser and competitor plaintiffs, *see* Additional Considerations, *infra*.

Plaintiffs reserve the right to alter and amend this Trial Plan in advance of trial in light of the completion of discovery, reports from experts, any changes in the law, and the orders arising from any motions for summary judgment.

This Plan draws on similar such plans submitted in support of classes successfully certified under state laws.[1] The Plan is based on several well recognized principles of federal court procedure as described throughout.

- The trial will be bifurcated between liability and damages. Fed. R. Civ. P. 42(b); *see* Manual for Complex Litigation § 12.453 (4th ed. 2004) ("MCL 4th"); *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 861-62 (3d Cir. 1977); *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001); 3 H. Newberg & A. Conte, Newberg on Class Actions, § 9:53 at 429-30 (4th ed. 2002).

- It is contemplated that the same jury would hear all phases of the trial.[2]

---

[1] *See* Proposed Trial Plan submitted in *In re Pharmaceutical Industry Average Wholesale Price Litig.*, C.A. No. 01-12257(PBS) (D. Mass.) ("*AWP*") (attached to McDonald Reply Declaration as Ex. 67); Proposed Trial Plan submitted in *Schwab v. Philip Morris USA, Inc.*, C.A. No. 04-1945(JBW) (E.D.N.Y.) (McDonald Reply Decl., Ex. 68); Second Declaration of Laurence H. Tribe dated Aug. 19, 2005, submitted in *Schwab* (McDonald Reply Decl., Ex. 69).

[2] However, it is unclear whether the Third Circuit prohibits different juries from hearing the same evidence, so long as they are deciding different issues. *See In re Paoli Railroad Yard*

• Jurors will be allowed to take notes, to help them keep track of the factual details. MCL 4th § 12.421; *see* William W. Schwarzer, Reforming Jury Trials, 132 F.R.D. 575, 580-81 (1991).

• The parties should cooperate in providing the jurors at the start of the trial with a glossary of terms and a cast of characters. MCL 4th § 12.4.

• Jurors will be given a copy of the jury instructions when they retire for deliberations. MCL 4th § 12.434.


**Phase I – Proving Liability With Common Evidence**

Plaintiffs will establish liability for all claims with common evidence applicable to all class members. The same evidence used to prove antitrust liability will also prove liability for unjust enrichment and consumer protection. Specifically, Plaintiffs will prove the following elements in Phase I.

1.    Defendants violated Section 2 of the Sherman Act and comparable state antitrust laws by:

a.    acquiring and exercising monopoly power;

b.    in a relevant market;

c.    by anticompetitive or exclusionary means;

d.    resulting in an antitrust impact or injury.[3]

---

*PCB Litig.*, 113 F.3d 444, 452 n.5 (3d Cir. 1997).

[3] *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 248 n.16 (D. Del. 2002), *aff'd*, 391 F.3d 516, 529 n.11 (3d Cir. 2004); *Christiana Mortgage Corp. v. Delaware Mortgage Bankers Ass'n*, 136 F.R.D. 372, 382-83 (D. Del. 1991).

Defendants fail to show any material difference in the applicable standards of causation, once reliance is stripped away. *See* Def. Mem., Appendix A. Virtually all states require that the harm be "caused by" or "as a result of" the unlawful conduct. Such traditional causation is normally proven by demonstrating that the conduct in question was a substantial factor in bringing about the harm. *See, e.g., Abrams v. Young & Rubicam, Inc.*, 692 A.2d 709, 712 (Conn. 1997). "Where state consumer fraud statutes do not require proof of reliance, as is the case here, plaintiff 'need only establish a causal link between the [deceptive] conduct at issue and his or her

2.    Defendants violated state consumer protection laws by:

    a.    engaging in deceptive acts or misrepresentations; and/or

    b.    engaging in unfair or unconscionable conduct;

    c.    resulting in injury or impact;[4]

3.    Defendants were unjustly enriched in that:

    a.    Plaintiffs conferred a benefit upon Defendants;

    b.    Defendants accepted and retained the benefit;

    c.    retention of the benefit by Defendants under these circumstances would be unjust without payment from Defendants to the Class.[5]

To prove liability as to all claims, Plaintiffs will rely on a common set of evidence, which will include:

    •    internal memoranda, emails, and power point presentations by Defendants showing how they introduced new formulations of TriCor with clinically insignificant changes

---

injury,' and this individual issue of causation does not necessarily defeat predominance of the common issues about defendant's course of conduct." *In re Warfarin*, 212 F.R.D. at 249. *See also AWP*, 230 F.R.D. at 85 ("there is no indication that different definitions of reliance and causation will matter or cannot be resolved as a matter of law prior to trial.").

Causation is not the same as reliance. The two trial court decisions cited by Defendants concerning New Jersey law, *Fink v. Ricoh Corp.*, 839 A.2d 942 (N.J. Super. Law Div. 2003); and *In re Rezulin Products Liability Litig.*, 210 F.R.D. 61 (S.D.N.Y. 2002), are classic examples of such confusion. Reliance is not an element of a claim under the New Jersey Consumer Fraud Act, *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607-08, 691 A.2d 350 (1997), yet the decision in *Fink* uses them interchangeably. The *Rezulin* case was rejected by the Appellate Division of the Superior Court. *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 894 A.2d 1136, 1152 (App. Div. 2006), *appeal pending*, __ N.J. __ (2006).

    [4] *See* McDonald Decl., Ex. 48(C).

    [5] *See Restatement of Restitution* § 1 (1937); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004); *Singer v. AT&T Corp.*, 185 F.R.D. 681, 692 (S.D. Fla. 1998).

and withdrew the old formulations in order to frustrate generic competition and prevent AB-rated generic versions from competing with TriCor;

•   internal documents and testimony of Defendants showing how their Life Cycle Management program for TriCor was designed to frustrate and prevent generic competition;

•   internal documents, testimony of Defendants, and the records of the U.S. Patent and Trademark Office ("PTO") to show that the underlying patents upon which Defendants sued prospective competitors were invalid and/or unenforceable, and that Defendants knowingly procured their patents by fraud and otherwise engaged in deceptive and misleading conduct toward the PTO;

•   Defendants' internal documents, court filings in the patent infringement litigation, documents from the PTO, and expert testimony to show that Defendants engaged in sham patent infringement litigation that Defendants knew was meritless.  This would show part of their monopolization conduct as well as the deceptions and misrepresentations relevant to consumer protection claims;

•   Documents and filings from the U.S. Food and Drug Administration ("FDA") which help show that Defendants sought a series of minor changes in TriCor that were not based on new clinical data, and that the new formulations had clinically insignificant differences with little or no clinical benefit to the patients;

•   Abbott's marketing material, including direct-to-consumer ads, materials sent to doctors, and detailing records, showing the nature and extent of Defendants' deceptive and misleading conduct about "new" formulations of TriCor;

•   expert testimony on the clinical insignificance of the TriCor formulation changes, and on the minor nature of the changes made;

•   expert testimony on the regulatory process for acquiring a drug patent and the duty of candor toward the PTO;

•   expert testimony and industry documents to show that the relevant market for the purposes of the antitrust claims is the market for fenofibrate products, which consists of TriCor products and generic bioequivalent versions of TriCor products;

•   expert testimony on the FDA regulatory process for pioneer drugs and generic versions thereof, and FDA market exclusivity;

•   expert testimony as to how Defendants' anticompetitive behavior, unfair and deceptive trade practices with respect to TriCor resulted in an impact and/or injury to class members;

• documents and testimony to show that Defendants made uniform representations and omissions as to the attributes of successive formulations of TriCor, such that the jury could infer reliance by all class members.[6]

All evidence will be presented to the jury. To the extent that the claims of any state are triable to the Court instead of a jury, this Court will allow those issues to be considered first by the jury.[7]

The jury will consider only the issue of liability and, through special interrogatories, indicate whether they find for Plaintiffs as to those limited elements that may not be common to

---

[6] Several states require some form of reliance as an element of their consumer protection claims. Many cases point out that in a class action involving an overarching scheme and uniform conduct by the defendant, reliance of individual class members can be proven inferentially. *Amato v. General Motors Corp.*, 463 N.E.2d 625, 628 (Ohio Ct. App. 1982); *Davis v. Southern Bell Tel. & Tel. Co.*, 158 F.R.D. 173, 176-77 (S.D. Fla. 1994); *Murray v. Sevier*, 156 F.R.D. 235 (D. Kan. 1994), *vacated on other grounds sub nom Murray v. Scott*, 253 F.3d 1308 (11th Cir. 2001); *Vasquez v. Superior Court*, 484 P.2d 964, 972 (Cal. 1971); *In re Tyson Foods Inc. Sec. Litig.*, No. 01-425, 2003 WL 22316548 (D. Del. Oct. 6, 2003); *Prudential Sales Practices II*, 148 F.3d at 310 (reliance presumed where fraud-based claims stem from misleading omissions); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W. 2d 2, 14-15 (Minn. 2001); *Schwab v. Philip Morris USA, Inc.*, C.A. 04-1945, 2006 WL 2726102, at *101-114 (E.D.N.Y. Sept. 25, 2006); *Falise v. American Tobacco Co.*, 94 F. Supp. 2d 316, 335 (E.D.N.Y. 2000); *Washington v. Spitzer Management, Inc.*, No. 81612, 2003 WL 1759617 (Oh. Ct. App. Apr. 3, 2003); *Price v. Philip Morris, Inc.*, No. 00-L-112, 2003 WL 22597608 at *6 (Ill. Ct. Cl. March 21, 2003), *rev'd on other grounds*, 848 N.W.2d 1 (Ill. 2006). *See* Issacharoff, Samuel, *The Vexing Problem of Reliance in Consumer Class Action*, 74 Tul. L. Rev. 1633 (2000); Tribe Decl. at ¶¶ 35-43 (attached as Ex. 69 to McDonald Reply Decl.).

Some courts have held that individual proof of reliance will not defeat class certification because it is an issue secondary to common questions of establishing the fact of defendants' liability. *Cope v. Metro. Life Ins. Co.*, 696 N.E.2d 1001, 1005 (Ohio 1998); *Prudential Sales Practices*, 962 F. Supp. at 516; *In re Cadillac V8-6-4 Class Action*, 93 N.J. 412, 438 (1983).

If necessary for a manageable trial, Plaintiffs would withdraw their unfair trade practices claims as to those states requiring direct proof of individual reliance; those claims can be addressed separately in the litigation.

[7] *See, e.g., Roebuck v. Drexel University*, 852 F.2d 715 (3d Cir. 1988) (court bound by jury's factual findings common to legal and equitable claims); *Billingham v. Definemann*, 771 N.E.2d 166, 172 (Mass. App. Ct. 2002).

every state.[8] Since state antitrust claims for the 23 states are all harmonized with federal antitrust standards,[9] there should be common instructions and jury findings for the federal and all state antitrust claims.

As to consumer protection and unjust enrichment claims, jury instructions will maintain all actual legal differences as to elements of the different laws. *See* Sample Jury Interrogatories - Phase I. Minor differences in wording without legal significance, however, will be subsumed within common instructions, since the trial court has broad discretion concerning the particular language.[10]

A sample set of Special Jury Interrogatories - Phase I is attached.

**Alternative Procedure for Phase I**

A variation of the above trial plan would use the technique of seriatim partial jury verdicts[11] so that the jury is only required to focus on one set of laws at a time. The Alternative

---

[8] *See* Fed. R. Civ. P. 49; MCL 4th § 11.633 ("Special verdict forms or interrogatories . . . may help the jury focus on the issues, reduce the length and complexity of the instructions, and minimize the need for, or scope of, retrial in the event of reversible error. . . . [They] may also be used in connection with a procedure by which issues are submitted to the jury sequentially.").

[9] "Defendants assert that those [state law antitrust] claims 'generally follow the standards and precedents of the federal antitrust laws. . . .'" *Abbott Laboratories v. Teva Pharmaceuticals USA, Inc.*, 432 F. Supp. 2d 408, 433 (D. Del. 2006); *see also In re Relafen Antitrust Litig.*, 221 F.R.D. 52, 275 (D. Mass. 2005) ("Under both federal and state law, the essential elements of a private antitrust action are the same. . . ."); *In re Cardizen CD Antitrust Litig.*, 332 F.3d 896, 906 (6th Cir. 2003) ("It is undisputed that the state antitrust statutes at issue either follow federal Sherman Act precedent or find federal case law persuasive."); *United States v. Microsoft Corp.*, 87 F. Supp. 2d 30, 54 n.7 (D.D.C. 2000) ("The facts proving . . . monopoly power in violation of § 2 of the Sherman Act are sufficient to meet analogous elements of causes of action arising under the laws of each plaintiff state."), *aff'd in part, rev'd in part on other grounds*, 253 F.3d 43 (D.C. Cir. 2001). *See also* McDonald Decl., Ex. 48(A).

[10] *Tigg Corp. v. Dow Corning Corp.*, 962 F.2d 1119, 1124 (3d Cir. 1992); *United States v. Barber*, 442 F.2d 517, 527-28 (3d Cir. 1971); *see* 9A Wright & Miller, Federal Practice & Procedure §2556 at 439.

[11] "Inconsistent verdicts are a concern even with standard verdict forms, but careful structuring and instructions should minimize the risk of inconsistency. Rule 49 requires the court to instruct the jury on how to complete the verdict form properly, including both the procedure for rendering special verdicts and the specific substantive issues to be decided. Consider having the jury return partial verdicts seriatim, instructing on each issue individually before the jury

Trial Plan would alter Phase I above as follows:

- Plaintiffs present all evidence as to liability for all claims.

- Closing arguments on antitrust claims only, jury is instructed as to antitrust claims, jury deliberates and returns special verdict or special interrogatories only on antitrust claims.

- Additional closing arguments on consumer protection and unjust enrichment claims, jury is instructed as to those claims, jury deliberates and returns special verdict or special interrogatories only on consumer protection and unjust enrichment claims.

Trial as to damages would then proceed as described below.

## Phase II - Determination of Aggregate Damages for the Entire Class

Based on the special interrogatories answered by the jury in Phase I, the Court will determine in which states liability has been established. Plaintiffs will then provide evidence of aggregate damages for the class members of each such state.[12] Plaintiffs will also argue to the jury that the evidence previously submitted in Phase I demonstrates the wanton, willful or reckless conduct necessary to support a finding in certain states of multiple, punitive or increased damages.

Plaintiffs will present common evidence of damages as follows:

- Expert opinion that uses both Defendants' records and industry data to calculate,

---

deliberates on it." MCL 4th § 12.451.

[12] Damages "may be determined on a class-wide, or aggregate, basis . . . where the computerized records of the particular industry, supplemented by claims forms, provide a means to distribute damages to injured class members in the amount of their respective damages." *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 526 (S.D.N.Y. 1996); *accord, In re Prudential Insurance Company of America Sales Practices Litigation*, 962 F. Supp. 450, 517 (D. N.J. 1997), *aff'd*, 148 F.3d 283, 315 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 454-55 (3d Cir. 1977); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 121, 130 (D.D.C. 2001). *Cardizem*, 200 F.R.D. at 350; *International Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 384 N.J. Super. 275, 291, 894 A.2d 1136, 1145 (App. Div. 2006) (affirming certification of nationwide class under N.J. Consumer Fraud Act), *appeal pending*, __ N.J. __ (2006); *In re Sugar Antitrust Litigation*, 73 F.R.D. at 351-55 (E.D. Pa. 1976); 3 H. Newberg & A. Conte, Newberg on Class Actions §§ 10.02-10.05 (4th ed. 2002).

using accepted methodologies,[13] the amount of aggregate damages for each type of claim, broken down by state;[14]

•    Abbott records as to sales and pricing, including discounts, rebates, chargebacks and any other adjustments;

•    Data from third-party sources such as IMS and certain chain pharmacies as to sales, pricing, discounts and rebates for TriCor and other fenofibrate products;

•    Defendants' records as to income and profits from TriCor (for unjust enrichment claims);

•    Defendants' internal market forecasts and projections, showing how much income and/or profit they made as a result of preventing generic competition of TriCor;

Jurors will be allowed to take the competing summaries on proposed damages for each state fom Plaintiffs' and Defendants' experts into the jury room as an exhibit.[15]

The jury will answer special interrogatories or a special verdict form that provide simple

---

[13] As one court stated:

Most important management decisions in the business world in which these defendants operate are made through the intelligent application of statistical and computer techniques and these class members should be entitled to use the same techniques in proving the elements of their cause of action.  The court is confident that they can be successfully utilized in the courtroom and that their application will allow the consumers to protect their rights while freeing the court and the defendants of the specter of unmanageability.

*In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 289 (S.D.N.Y.1971).  The court in *In re Sugar Antitrust*, 73 F.R.D. at 354, stated:

[I]f defendants are found to have precluded the existence of an actual competitive price in the market, the most elementary conceptions of justice and public policy require that they bear the risk of any uncertainty as to the actual damages that they created by their violations. No wrongdoer should be entitled to complain that damages cannot be measured with the precision that would have been possible had the situation it alone caused been otherwise.

[14] *See* King Reply Declaration ¶ 24.

[15] Fed. R. Evid. 1006; MCL 4th 12.31.

damages for each state in which the jury previously found liability, and whether they have made any finding that would allow for multiple, punitive, or otherwise increased damages as permitted or required under the law of individual states. Jury instructions will carefully explain how the jury can and should avoid awarding duplicate (or triplicate) damages for same injury. A sample set of Special Jury Interrogatories - Phase II is attached.

Sometime before or after jury consideration of aggregate damages, Plaintiffs would move the Court for injunctive relief based on its federal claim under Section 16 of the Clayton Act. Plaintiffs would also move for partial judgment as to liability for claims of unjust enrichment for any states which are to be tried to the Court as opposed to the jury.

## Phase III - Determination of Damages for Individual Class Members

Phase III does not involve any claims or issues relating to Defendants, but provides a means for allocating all damage awards among and between Class members.[16] The Court can appoint a Special Master pursuant to Fed. R. Civ. P. 53, something frequently done for this purpose in class actions.[17] The Special Master would determine individual damages based on proofs of claim and data provided, under oath, by class members after extensive notice of the liability rulings.[18] The Special Master would evaluate each damage claim pursuant to a formula devised by Plaintiffs' experts and issue an itemized report to the Court as to damages. Defendants would have an opportunity to contest the calculations, and individual class members would have the right to object as well. The Court would then review the Special Master's report, make any changes it believes are necessary, and issue final judgment.

---

[16] "Upon the establishment of such aggregate damages as may be assessed against defendants, the problem of allocations among classes and distribution within each class largely becomes a plaintiffs' problem, which should not militate against the certification of these classes." *In re Sugar Antitrust*, 73 F.R.D. at 353; *accord*, *In re Western Liquid Asphalt Cases*, 487 F.2d 191, 201 (9th Cir. 1973); *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 192 (D.N.J.) (an aggregate judgment of liability, "it might be argued, would leave allocation between class members as an internal class issue to which defendants would have no right to insist on a jury."); *Schwab v. Philip Morris USA, Inc.*, C.A. 04-1945, 2006 WL 2726102, at *258 (E.D.N.Y. Sept. 25, 2006).

[17] *See, e.g.*, *In re Visa Check*, 280 F.3d at 141; *Klay v. Humana, Inc.*, 382 F.3d 1241, 1272 (11th Cir. 2004); *In re Sugar Antitrust*, 73 F.R.D. at 355; 3 Newberg at § 9:55 (collecting cases);

[18] *See In re Antibiotic Antitrust*, 333 F. Supp. at 287.

## ADDITIONAL CONSIDERATIONS

One additional possibility is that this Court will order a consolidated trial for the claims of direct purchasers, indirect purchasers, and competitors.  While such a trial would still be quite manageable, it would require some additional structuring to, for example, avoid jury confusion between the nature and amount of direct purchaser federal overcharge damages and indirect purchaser state court damages.

*In re TriCor Indirect Purchaser Antitrust Litigation*

## PLAINTIFFS' SUGGESTED SPECIAL JURY INTERROGATORIES
## PHASE I - LIABILITY

*What follows are sample jury interrogatories that would allow the jury to specify whether certain elements of proof not common to the law of every state have been met. The footnotes are provided as explanation to the Court and would not appear on any form submitted to the jury.*

### I.    Questions as to Defendant Abbott

Please Answer Questions 1 through 12 as they apply to Defendant Abbott *only*:

### A.    Related to the Antitrust claims:[1]

1.      With respect to the drug TriCor, do you find it more likely than not that Abbott acquired or exercised monopoly power in a relevant market by anticompetitive or exclusionary means?

Yes _____        No _____

2.      Did Abbott's conduct result in an antitrust impact or injury to the class of indirect purchasers?

Yes _____        No _____

### B.    Related to the Unfair Trade Practices Claims:[2]

_____

[1] A "yes" answer to Questions 1 and 2 will support a finding of antitrust liability under Section 2 of the Sherman Act and Section 16 of the Clayton Act, as well as the laws of Arizona, California, District of Columbia, Florida, Iowa, Kansas, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and Wisconsin. *See* McDonald Decl., Ex. 48(A).

[2] A "yes" answer to Questions 3 and 10 will support a finding of liability under the unfair trade practices acts of states which make unlawful unfair or unconscionable trade practices, *see* McDonald Decl. Ex. 48(C), unless otherwise listed below.

A "yes" answer to Questions 4 and 11 will support a finding of liability under the unfair trade practices acts of states which make unlawful conduct which is deceptive or deceitful, *see*

-1-

      3.      Did Abbott engage in unfair and/or unconscionable conduct in the marketing and/or sale of TriCor?

Yes _____      No _____

      4.      Did Abbott engage in deceptive conduct or make misrepresentations in the marketing and/or sale of TriCor?

Yes _____      No _____

      5.      Was Abbott's deceptive conduct or misrepresentations in the marketing and/or sale of TriCor likely to mislead or deceive consumers?[3]

Yes _____      No _____

      6.      Did Abbott's deceptive conduct or misrepresentations in the marketing and/or sale

---

McDonald Decl. Ex. 48(C), unless otherwise listed below.

      A "yes" answer to Questions 4, 5 and 11 will support a finding of liability under the unfair trade practices acts of California, Florida, Idaho and Minnesota.

      A "yes" answer to Questions 4, 6 and 11 will support a finding of liability under the unfair trade practices acts of Oklahoma, Alabama, Delaware, Maine and Washington.

      A "yes" answer to Questions 4, 7 and 11 will support a finding of liability under the unfair trade practices acts of Arizona, Arkansas, Michigan, Minnesota, and North Dakota.

      A "yes" answer to Questions 4, 8 and 11 will support a finding of liability under the unfair trade practices acts of Arkansas, Nevada, New Mexico, Oklahoma, Oregon, South Dakota, Utah, Vermont and Wyoming.

      A "yes" answer to Questions 4, 8, 9 and 11 will support a finding of liability under the unfair trade practices acts of Michigan.

    [3] California - *Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983); Florida - *Davis v. Powertel*, 776 So.2d 971, 974 (Fla. Dist. Ct. App. 2000); Idaho - *State ex rel Kidwell v. Master Distribs., Inc.*, 615 P.2d 116, 122-23 (Idaho 1980); Minnesota - Minn. Stat. § 325D.45.

of TriCor have the capacity to mislead consumers?[4]

Yes _____        No _____


7.    Did Abbott intend that others rely on its deceptive conduct or misrepresentations in the marketing and/or sale of TriCor?[5]

Yes _____        No _____


8.    Was Abbott's deceptive conduct or misrepresentations in the marketing and/or sale of TriCor done knowingly or intentionally?[6]

Yes _____        No _____


9.    Would a reasonable person have relied on the deceptive conduct or misrepresentations of Abbott?[7]

Yes _____        No _____


10.    Did End-payors suffer an impact or injury as a result of Abbott's unfair and/or unconscionable conduct?

_____

[4] Oklahoma - *Patterson v. Beall*, 19 P.3d 839, 847 (Okla. 2000); Washington - *Haner v. Quincy Farm Chem., Inc.*, 649 P.2d 828, 831 (Wash. 1982).

[5] Arizona - Ariz. Rev. Stat. §§ 44-1522(a); Ark. Code Ann. §§ 4-88-108; Michigan - *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987); Minnesota - *LeSage v. Norwest Bank Calhoun-Isles, N.A.*, 670 N.W.2d 449 (Minn. Ct. App. 1987); *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 12 (Minn. 2001); North Dakota - N.D. Stat. § 51-15-02;

[6] Arkansas - Ark. Code Ann. § 4-88-107(a)(1); Nevada - Nev. Rev. Stat. §§ 598.0915, 598.0923(2); New Mexico - N.M. Stat. § 57-12-2D; Oklahoma - 15 Okla. Stat. § 753; Oregon - Or. Rev. Stat. § 646.638(1); *Rathgeber v. Hemenway*, 69 P.3d 710, 715 (Or. 2003); South Dakota - S.D. Cod. Laws § 37-24-6(1); Utah - Utah Code Ann. § 13-11-4(2); Wyoming - Wyo. Stat. Ann. § 40-12-105(a).

[7] Michigan - *Dix v. American Bankers Life Assur. Co. of Fla.*, 415 N.W.2d 206, 209 (Mich. 1987).

Yes _____          No _____

    11.     Did End-payors suffer an impact or injury as a result of Abbott's deceptive conduct or misrepresentations?

Yes _____          No _____

## C.     Related to the Unjust Enrichment Claims[8]

    12.     Did the End-payors confer a benefit on Defendant Abbott, which Abbott kept, under circumstances where it would be unjust for Abbott to retain that benefit without payment?

Yes _____          No _____

## II.     Questions as to Defendant Fournier

Please Answer Questions 13 through 24 as they apply to Defendant Fournier *only*:

[same questions as Abbott]

---

[8] A "yes" answer will support a finding of liability in every state where a claim of unjust enrichment exists and where the Court allows such claim to be submitted to the jury.

*In re TriCor Indirect Purchaser Antitrust Litigation*

**PLAINTIFFS' SUGGESTED SPECIAL JURY INTERROGATORIES**
**PHASE II - DAMAGES**

*What follows are sample jury interrogatories that would allow the jury to specify the amount of damages to be awarded state by state for each claim available in that state. The additional questions are for those states which require a special showing in order to recover multiple, punitive, or additional damages. Footnotes are provided as explanation to the Court and would not appear on any form submitted to the jury.*

*Questions as to a specific state and specific claims within a state will only be listed where the jury has found liability in Phase I.*

*This form is meant to be illustrative only, and not comprehensive. The absence of any state claims herein is not intended to constitute a waiver of any claims maintained in the Consolidated Complaint.*

Please answer the following questions.

1.    **Arizona**

      a.    For violation of state antitrust laws, the Jury finds actual damages for Class members in Arizona in the amount of _____ against Abbott and _____ against Fournier.

      b.    For violation of state consumer protection laws, the Jury finds actual damages for Class members in Arizona in the amount of _____ against Abbott and _____ against Fournier.

      c.    For violation of state laws against unjust enrichment, the Jury finds actual damages for Class members in Arizona in the amount of _____ against Abbott and _____ against Fournier.

-1-

       d.     Do you find that Abbott's conduct was flagrant,[1] wanton, reckless, or involved spite or ill will?[2]

Yes _____      No _____

       e.     If you answered the last question YES, then how much, if any, do you award as punitive damages from Abbott for Class members in Arizona?

_____

       f.     Do you find that Fournier's conduct was wanton, reckless, or involved spite or ill will?[3]

Yes _____      No _____

       g.     If you answered the last question YES, then how much, if any, do you award as punitive damages from Fournier for Class members in Arizona?

_____

    2.    **California**

       a.     For violation of state antitrust laws, the Jury finds actual damages for Class members in California in the amount of _____ against Abbott and _____ against Fournier.

       b.     For violation of state consumer protection laws, the Jury finds actual

---

[1] Allows treble damages under antitrust law if violation was flagrant. Ariz. Rev. Stat. § 44-1408B.

[2] Allows punitive damages if violation of consumer protection act is wanton, reckless, or involves "spite or ill will." *Holeman v. Neils*, 803 F. Supp. 237, 242-43 (D. Ariz. 1992).

[3] Allows punitive damages if violation of consumer protection act is wanton, reckless, or involves "spite or ill will." *Holeman v. Neils*, 803 F. Supp. 237, 242-43 (D. Ariz. 1992).

damages for Class members in [state] in the amount of _____ against Abbott and

_____ against Fournier.

        c.      For violation of state laws against unjust enrichment, the Jury finds actual

damages for Class members in [state] in the amount of _____ against Abbott and

_____ against Fournier.

     3.      **Connecticut**

        a.      For violation of state consumer protection laws, the Jury finds actual

damages for Class members in Connecticut in the amount of _____ against Abbott and

_____ against Fournier.

        b.      For violation of state laws against unjust enrichment, the Jury finds actual

damages for Class members in Connecticut in the amount of _____ against Abbott and

_____ against Fournier.

        c.      Do you find that Abbott acted with reckless indifference to the rights of

Class members, or wantonly or intentionally violated such rights?[4]

Yes _____      No _____

        d.      If you answered the last question YES, then how much, if any, do you

award as punitive damages from Abbott for Class members in Connecticut?

_____

        e.      Do you find that Fournier acted with reckless indifference to the rights of

---

[4] Punitive damages can be awarded in the court's discretion for violations of consumer protection act where defendant showed reckless indifference to the rights of plaintiff, or wantonly or intentionally violated such rights. *Votto v. American Car Rental, Inc.*, 871 A.2d 981, 985-86 (Conn. 2005).

Class members, or wantonly or intentionally violated such rights?[5]

Yes _____        No _____

        f.     If you answered the last question YES, then how much, if any, do you

award as punitive damages from Fournier for Class members in Connecticut?

_____

     4.     **Delaware**

        a.     For violation of state consumer protection laws, the Jury finds actual

damages for Class members in Delaware in the amount of _____ against Abbott and

_____ against Fournier.

        b.     For violation of state laws against unjust enrichment, the Jury finds actual

damages for Class members in Delaware in the amount of _____ against Abbott and

_____ against Fournier.

        c.     Do you find that Abbott engaged in fraud which was gross, oppressive or

aggravated?[6]

Yes _____        No _____

        d.     If you answered the last question YES, then how much, if any, do you

award as punitive damages from Abbott for Class members in Delaware?

_____

---

   [5] Punitive damages can be awarded in the court's discretion for violations of consumer protection act where defendant showed reckless indifference to the rights of plaintiff, or wantonly or intentionally violated such rights. *Votto v. American Car Rental, Inc.*, 871 A.2d 981, 985-86 (Conn. 2005).

   [6] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983).

e.    Do you find that Fournier engaged in fraud which was gross, oppressive or aggravated?[7]

Yes _____    No _____

f.    If you answered the last question YES, then how much, if any, do you award as punitive damages from Fournier for Class members in Delaware?

_____

5.    **District of Columbia**

a.    For violation of state antitrust laws, the Jury finds actual damages for Class members in the District of Columbia in the amount of _____ against Abbott and _____ against Fournier.

b.    For violation of state consumer protection laws, the Jury finds actual damages for Class members in the District of Columbia in the amount of _____ against Abbott and _____ against Fournier.

c.    For violation of state laws against unjust enrichment, the Jury finds actual damages for Class members in the District of Columbia in the amount of _____ against Abbott and _____ against Fournier.

6.    **Florida**

a.    For violation of state antitrust laws, the Jury finds actual damages for Class members in Florida in the amount of _____ against Abbott and _____ against Fournier.

b.    For violation of state consumer protection laws, the Jury finds actual

_____

[7] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1076-77 (Del. 1983).

damages for Class members in Florida in the amount of _____ against Abbott and _____ against Fournier.

    c.    For violation of state laws against unjust enrichment, the Jury finds actual damages for Class members in Florida in the amount of _____ against Abbott and _____ against Fournier.

    7.    **Iowa**

    a.    For violation of state antitrust laws, the Jury finds actual damages for Class members in Iowa in the amount of _____ against Abbott and _____ against Fournier.

    b.    For violation of state consumer protection laws, the Jury finds actual damages for Class members in Iowa in the amount of _____ against Abbott and _____ against Fournier.

    c.    For violation of state laws against unjust enrichment, the Jury finds actual damages for Class members in Iowa in the amount of _____ against Abbott and _____ against Fournier.

    d.    Do you find that Abbott engaged in willful and flagrant conduct with respect to the rights of Class members?[8]

Yes _____    No _____

    e.    If you answered the last question YES, then how much, if any, do you award as punitive damages from Abbott for Class members in Iowa (not to exceed two times the

---

[8] Exemplary damages may be awarded for a willful and flagrant violation, not to exceed two times the amount of actual damages. Iowa Code § 553.12.

-6-

amount of actual damages)?

_____

        f.     Do you find that Fournier engaged in engaged in willful and flagrant conduct with respect to the rights of Class members?[9]

Yes _____      No _____

        g.     If you answered the last question YES, then how much, if any, do you award as punitive damages from Fournier for Class members in Iowa (not to exceed two times the amount of actual damages)?

_____

---

[9] Exemplary damages may be awarded for a willful and flagrant violation, not to exceed two times the amount of actual damages.  Iowa Code § 553.12.

REPLY MEMORANDUM IN SUPPORT OF END-PAYOR
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# Attachment B

Attachment B
Indirect Purchaser Cases Cited By Defendants (Def. Mem. 29-34)

**Multiple Products Manufacturers:**

*Wood v. Abbott Labs.*, No. 96-512561-CZ, 1997 WL 824019 (Mich. Cir. Ct. Sept. 11, 1997) (class denied applying Michigan antitrust statute to alleged conspiracy among more than two dozen drug manufacturers covering more than 800 different drugs.)*

*Kerr v. Abbott Labs.*, No. 96-002837, 1997 WL 314410 (Minn. Dist. Ct. 1997) (same, applying Minnesota antitrust statute)*

*In re Brand Name Prescription Drugs Antitrust Litig.*, Nos. 94 C 897, MDL 997, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994) (same, applying Alabama antitrust statute to a smaller subset of drug manufacturers)*

*Ren v. Philip Morris Inc.*, No. 00-004035-CZ, 2002 WL 1839983, * 15 (Mich Cir. Ct. June 11, 2002) (class certification denied for a case involving "a dizzying number of [cigarette] products, retail prices, and individual transactions and purchasers over a multi-year period.")**

*McCarter v. Abbott Labs.*, No. CV 91-050, 1993 WL 13011463 (Ala. Cir. Ct. Apr. 14, 1993) (class certification denied for price fixing conspiracy involving multiple manufacturers and 69 different infant formula products)***

**Middle of the Chain:**

*Keating v. Philip Morris, Inc.*, 417 N.W.2d 132 (Minn. App. 1987) (class certification denied for putative class of retailers (not consumers) of cigarettes)****

*Peridot, Inc. v. Kimberly-Clark Corp.*, No. MC 98-012686, 2000 WL 673933 (Minn. Dist. Ct. Feb. 7, 2000) (certification denied for a putative class of "first-tier business entities" that purchased commercial tissue from forty Minnesota distributors who purchased both directly and indirectly from defendant manufacturers)

**Altered Form/Value Added:**

*City of St. Paul v. FMC Corp.*, No. 3-89-0466, 1990 WL 259683, *2 (D. Minn. Nov. 14, 1990) (court rejected certification of a class of indirect purchasers of chlorine, stating that "[b]ecause substantial value has been added to the chlorine at various points in the chain of distribution, the court would have to examine the circumstances of each class member individually to determine whether that member has suffered an overcharge.")

*Derzon v. Appleton Papers, Inc.*, No. 96-CV-3678, 1998 WL 1031504 (Wis. Cir. Ct. July 7, 1998) (consumer class denied for alleged conspiracy to fix the price of jumbo roll thermal fax paper sold to wholesalers, which allegedly caused consumers to pay more for repackaged, retail quantities of fax paper)

*Execu-Tech Bus. Systems, Inc. v. Appleton Papers, Inc.*, 743 So.2d 19 (Fla. Dist. Ct. App. 1999) (same)

End Notes:

*Despite the factual complexity, two courts granted class certification for state claims arising out of identical allegations, *i.e.*, *Goda v. Abbott Labs., et al.*, No. CIV. A. 01445-96, 1997 WL 156541, 1997-1 Trade Cas. (CCH) ¶ 71,730 (Superior Ct. D.C., Feb 3, 1997) (McDonald Decl. Ex. 48, Tab D, # 7) (certifying District of Columbia class); *Preciado v. Abbott Labs.*, No. 962294 (Cal. Sp. Ct. Aug. 16, 1995) (McDonald Decl. Ex. 48, Tab D, # 13) (certifying California consumer class).

**The *Ren* court distinguished the facts before it from "the prescription drug purchasers in *Cardizem CD Antitrust Litigation*" where "the number of purchasers of the product are readily identifiable and reliable records for individual purchases exist." 2002 WL 1839983, *15 (citing *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 350 (E.D. Mich. 2001) as "certifying class comprised of purchasers of a prescription drug where there existed computerized records of individual transactions and claim forms that would establish the amounts paid for the drugs").

***Again, at least three courts granted class certification for state claims arising out of identical allegations. I.e., *Donelan v. Abbott Labs., Inc.*, No. 94C709 (Kan. Dist. Ct. May 3, 1995) (McDonald Decl. Ex. 48, Tab D, # 5) (certifying Kansas class of indirect purchasers of infant formula); *Hagemann v. Abbott Labs., Inc.*, No. 94-221 (N.D. Dist. Ct. Nov. 21, 1995) (McDonald Decl. Ex. 48, Tab D, # 9) (certifying North Dakota class of indirect purchasers of infant formula); *Carlson v. Abbott Labs.*, No. 94-CV-002608 (Cir. Ct. Milwaukee County Mar. 23, 1995) (McDonald Decl. Ex. 48, Tab D, # 3) (certifying Wisconsin class of indirect purchasers of infant formula).

****The *City of St. Paul* court distinguished *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341 (Cal. Ct. App. 1987) because, "unlike this case, the *B.W.I.* case involved an alleged conspiracy to fix the prices of glass bottles which did not change significantly in form or value by the time they reached the ultimate consumer." *Id.* at * 3. In *In re Methionine Antitrust Litig.*, No. 00-1311, 2003 WL 22048232 (N.D. Cal. Aug. 26, 2003), also relied upon by Defendants, the court decertified an indirect purchaser class, which was properly certified, because the expert subsequently altered his methodology to one that was "so insubstantial as to amount to no method at all."

ii

REPLY MEMORANDUM IN SUPPORT OF END-PAYOR
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# Attachment C

Attachment C
*Microsoft* Indirect Purchaser Class Certification Decisions

| State | Case | Class Certification Granted | Class Certification Denied |
|---|---|---|---|
| Arizona | *Friedman v. Microsoft Corp.*, No. 2000-000722, slip op. (Az. Super. Ct., Maricopa Cty. Nov. 14, 2000) | ✓ | |
| California | *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, Order re Class Certification, slip op. (Cal. Super. Ct. Aug. 29, 2000) (McDonald Decl. Ex. 48, Tab D, # 4) | ✓ | |
| Florida | *In re Florida Microsoft Antitrust Litig.*, No. 99-27340 CA 11, 2002 WL 31423620 (Fla. Cir. Ct. Miami-Dade Co. Aug. 26, 2002) | ✓ | |
| Iowa | *Comes v. Microsoft Corp.*, 696 N.W.2d 318 (Iowa 2005) | ✓ | |
| Kansas | *Bellinder v. Microsoft Corp.*, No. 99-CV-17089, slip op. (Kan. Dist. Ct., Johnson Cty. Sept. 7, 2001) (McDonald Decl. Ex. 48, Tab D, # 1) | ✓ | |
| Michigan | *A&M Supply Co. v. Microsoft Corp.*, 252 Mich. App. 580 (2002) | | ✓ |
| Maine | *Melnick v. Microsoft Corp.*, Nos. CV-99-709, CV-99075, 2001 WL 1012261 (Me. Super. Ct. Aug. 24, 2001) | | ✓ |
| Minnesota | *Gordon v. Microsoft Corp.*, 2001-1 Trade Cas. (CCH) ¶73,254, 2001 WL 366432 (Minn. Dist. Ct. Mar. 30, 2001), *denial of interlocutory appeal aff'd*, 645 N.W.2d 393 (Minn. 2002); *Gordon v. Microsoft Corp.*, No. MC 00-5994, 2003 WL 23105552 (Minn. Dist. Ct. Mar. 14, 2003) | ✓ | |
| New Mexico | *In re: New Mexico Indirect Purchasers Microsoft Corporation Antitrust Litig.*, No. 0101-CV-2000-1697, *Decision and Order on Motion for Class Certification* (1st Jud. Dist., County of Santa Fe, NM, Oct. 2, 2002) (McDonald Decl. Ex. 48, Tab D, # 11) | ✓ | |
| North Dakota | *Howe v. Microsoft Corp*, 656 N.W.2d 285 (N.D. 2003)* | ✓ | |
| South Dakota | *In re South Dakota Microsoft Antitrust Litig.*, 657 N.W.2d 668 (S.D. 2003)** | ✓ | |
| Tennessee | *Sherwood v. Microsoft Corp.*, No. 99C-3562 (Tenn. Cir. Ct. Davidson Co. Dec. 20, 2002) | ✓ | |
| Wisconsin | *Capp v. Microsoft Corp.*, No. 00-CV-0637 (Wis. Cir. Ct. Dane Co. Sept. 12, 2001) | ✓ | |

End Notes:

*Howe v. Microsoft Corp, 656 N.W.2d 285 (N.D. 2003) ("The Michigan court's analysis [in A&M] directly conflicts with the language of N.D.R.Civ.P. 23(b)(1), which provides that the decision whether to certify a class shall be made 'as soon as practicable after the commencement of [the] action.'") (citing Eisen, 417 U.S. at 177-78 and its interpretation of Fed. R. Civ. P. 23(c)(1)).

**In re South Dakota Microsoft Antitrust Litig., 657 N.W.2d 668, 678 (S.D. 2003) (In reversing the trial court's grant of class certification, the A&M court "entered into an examination of the case on the evidentiary merits rather than the threshold issue of class certification. There appears to be little left to ultimately try in front of a jury after it settled the 'Battle of the Experts' at the certification stage.").

ii