# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

ANNE SHEA GAZA

DIRECT DIAL NUMBER
302-651-7539
GAZA@RLF.COM

October 4, 2006

**VIA CM/ECF FILING
& HAND DELIVERY**
The Honorable Kent A. Jordan
United States District Court
844 N. King Street, Room 4209
Wilmington, DE 19801

**REDACTED - PUBLIC VERSION**

Re:  *In re TriCor Antitrust Litigations:* C.A. Nos. 02-1512, 03-120, 05-340 and 05-360

Dear Judge Jordan:

In anticipation of the teleconference on October 6, 2006, I write on behalf of Fournier Industrie et Santé and Laboratoires Fournier, S.A (collectively, "Fournier") to request the Court's intervention on three discovery disputes, and with respect to Points II and III below, am joined by counsel for Abbott Laboratories, Inc ("Abbott").

**POINT I:  Any Further Deposition of Ms. Blouquin Is Duplicative Given Her Prior Testimony.**

Fournier has made available for deposition every current employee Plaintiffs have requested with the exception of Ms. Blouquin. In this proceeding, Ms. Blouquin, a Fournier scientist, has already testified for two days on June 17-18, 2004 with regard to her personal knowledge relating to the company's scientific investigation and patent prosecution.[1] Her testimony is equally applicable to Teva's and Impax's claims of inequitable conduct in the patent litigation and the bases for Plaintiffs' antitrust claim of sham litigation (which is predicated on Defendants bringing the patent suit knowing they had committed inequitable conduct). Plaintiffs discovered Ms. Blouquin's knowledge on these facts well before June 2004 and explored these issues fully at her deposition. For example, the crux of Plaintiffs' allegations of inequitable conduct relevant to Ms. Blouquin relate to a

*See, e.g.,* Teva's Second Amended Counterclaims ¶¶ 118, 123, 159-160, 223. In fact, all of these documents were presented as exhibits at her 2004 deposition and were the subject of significant questioning.

Fournier pointed out the duplicative nature of Plaintiffs' request and asked Teva to identify subjects it intends to explore in another deposition. Teva identified three proposed deposition topics (*See* Exhibit 2.), two of which relate solely to events that pre-date Ms. Blouquin's June 2004 deposition (*See* Exhibit 3.) The third topic (Ms. Blouquin's recollection of Abbott-Fournier meetings that she attended) relates principally to her work on future products (which are outside the scope of discovery) and in any event is duplicative and cumulative of the testimony of the five other Fournier employees already scheduled to testify.

---

[1] During the same deposition, Ms. Bloquin also testified as Fournier's Rule 30(b)(6) designee concerning its acquisition of Pharma Pass technology and its development of the 160 mg tablet.

Because Plaintiffs seek to redepose Ms Blouquin on the same facts that were at issue in the patent phase of this litigation, Plaintiffs identify nothing new on which they legitimately could seek to depose Ms Blouquin again. *See, e.g., Christy v Pennsylvania Turnpike Comm'n*, 160 F R D 51, 53 (E.D Pa 1995) (following the general rule that subsequent depositions, to the extent permitted, should be strictly limited to areas not covered by prior depositions) In sum, Plaintiffs' demand is unreasonably duplicative and unduly burdensome *See* Fed R Civ P 26(b)(2) We respectfully request that the Court enter a protective order prohibiting Plaintiffs from seeking any further deposition of Ms Blouquin

**POINT II:    Documents Concerning Other Lipid Products Are Squarely Relevant to the Market Definition Issues in this Case and Should Be Produced.**

Plaintiffs have brought a monopolization case As an element of that claim, Plaintiffs must establish that Abbott and Fournier have monopoly power in the relevant market, which Plaintiffs contend is limited to fenofibrate Defendants contest Plaintiffs' market definition and are seeking evidence on that issue

In response, Plaintiffs have raised burden objections, including the burden of producing documents in Plaintiffs' custody and control that were prepared by third-parties or documents maintained in archived files Defendants conferred with Plaintiffs in an attempt to alleviate their burden objections, but were unable to reach an agreement (Exhibits 17-19) Defendants have requested documents going back to 1998 – the same period for which Plaintiffs have requested documents from Abbott and Fournier While we are highly conscious of the desirability to reduce burdens on the producing party, we note that most of the Direct Purchaser Plaintiffs have only produced a modest amount of documents[2] Abbott and Fournier have reason to believe Plaintiffs have additional documents that bear on the issue of market definition For example, Walgreen produced one document,
(Exhibit 20) However, Plaintiffs have not produced any other
*See* 7/11/06 Nailor Dep 65:24-66:3, 71:21-74:2 (Exhibit 21).

Defendants are not raising these issues at the last minute We first raised this issue with Plaintiffs nearly a year ago, conducted a meet and confer, and repeatedly re-requested these documents, including by formal requests and correspondence, and at the Walgreen 30(b)(6) deposition We therefore respectfully request that this Court compel Plaintiffs to produce the documents concerning other lipid regulating products that are responsive to Defendants' requests

**POINT III:    Plaintiff Impax Has Not Satisfied Its Obligations Under the Federal Rules.**

**A.    Impax's Sizeable Production Is Devoid of Substantive Information.**

Defendants seek an order from this Court requiring Plaintiff Impax to identify the bases for its voluminous redactions of materials and to do so in a manner that would allow Defendants a meaningful opportunity to challenge any improper redactions and to prepare for the depositions of Impax witnesses without unfair prejudice from the upcoming discovery cut-off.

In response to Defendants' long-standing document requests, Impax produced more than 650,000 pages of business records – far more than any of the other plaintiffs – but most of them were redacted in large part, some so significantly that little information is left on the face of the document On September 11, 2006, Impax asked Defendants to destroy 200,000 of those pages and replaced them with a set of images that were even further redacted than the original production Impax's production is so extensively redacted that it is difficult to understand the context of most of the records In response to repeated inquiry from Defendants, Impax only yesterday explained in the most general fashion that its redactions are for products other than fenofibrate

---

[2] For example, Eckerd has produced 800 pages; Albertson's, 740 pages; Kroger's, 715 pages; Walgreen, 484 pages; Maxi Drug, 105 pages; and Hy-Vee, 103 pages

-2-

RLF1-3066703-1

Moreover, a product limitation that excludes competing products (such as the statins) is improper. *See* Point II above

However, as the following examples illustrate, Impax appears to have redacted relevant and discoverable information with no legitimate basis for doing so. First, Exhibit 4 (IMPAX 516085) It was produced with most text redacted without explanation. Because Impax produced other iterations of this document with less or no text redacted, we were able to see that Exhibit 4 was redacted of relevant and discoverable information. *See* IMPAX278609 (Exhibit 5) and IMPAX521671 (Exhibit 6) Other examples raise the same concern IMPAX014612-29 (Exhibit 7), has been redacted of almost all substance, including all text from seemingly relevant and responsive pages entitled ' Finally, IMPAX157599-600 (Exhibit 8), has been redacted so extensively that we cannot understand the document. These are only a few examples, but they illustrate the problem As the attached correspondence demonstrates (Exhibits 9-11), Impax has refused to address its production deficiencies, including these redactions.

Four depositions of Impax employees are scheduled beginning October 26 Assuming we are correct that much of the redacted text is relevant and discoverable, Impax must produce unredacted versions of the documents in time to allow Defendants to prepare for the depositions Defendants therefore respectfully request that the Court order Impax to identify the basis for each of its redactions with time sufficient for Defendants to raise with the Court any further challenges to these redactions and their effect on Impax's production overall

### B. Impax's Refusal to Produce Mr. Hsu for Deposition Is Inappropriate.

After careful review of emails and organizational charts produced by Impax, Defendants noticed several Impax employees for deposition who had direct involvement in issues relevant to this case as reflected in certain Impax documents At Impax's request, and in good faith, Defendants agreed not to pursue two of those depositions, including the deposition of Impax's CEO, Mr. Barry Edwards However, in doing so, Defendants need to take the deposition of Mr. Larry Hsu, Impax's President and a direct report to Mr Edwards Now that Mr. Edwards will not be deposed, Mr Hsu is the key Impax decision-maker subject to discovery Despite our repeated requests, Impax refuses to make Mr Hsu available for deposition

Mr Hsu, as shown on Impax's organizational charts (Exhibit 16), directly oversees the company's operations, R&D, production, and regulatory compliance functions Each of these functions plays a role in the story of Impax's attempt to gain FDA approval for, produce, and market a generic form of TriCor Although Impax's heavily redacted production impairs our ability to document Mr Hsu's importance, a few emails provide ample illustration First,

*See, e.g.*, IMPAX276846 (Exhibit 12)

*Id* Other examples include

*See, e.g.*, IMPAX055129 (Exhibit 13), IMPAX007216 (Exhibit 14), and IMPAX016124 (Exhibit 15) Mr Hsu's noticed deposition is proper and necessary For the foregoing reasons, we respectfully request the Court order Impax to produce Mr Hsu for deposition

Respectfully,

*Anne Shea Gaza*

Anne Shea Gaza<br>
(#4093)

cc:  Clerk of Court (by hand)<br>
    (all record counsel)

-3-

RLF1-3066703-1