# EXHIBIT 1

# EXHIBIT 2

Sep-21-06  02:06pm  From-ADA (GDT PROCTER LLP                    16172278591        T-718  P 01/05  F-510

# GOODWIN | PROCTER

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000

# F A X   T R A N S M I T T A L

If problems with transmittal, call fax department at 617 570 1498

| Date | Total pages | Attorney number | Client/matter number |
|---|---|---|---|
| September 21, 2006 | | | ---- |

| To | Company | Fax number | Telephone |
|---|---|---|---|
| Matthew P. Hendrickson | | 212-504-6666 | |
| Chad J. Peterman | | 212-504-6666 | |
| Bradley J. Demuth | | 212-504-6666 | |
| Josy W. Ingersoll | | 302-576-3301 | |
| Frederick L. Cottrell, III | | 302-651-7701 | |
| Mary B Graham | | 302-658-3989 | |
| Mary Matterer | | 302-571-1750 | |
| Jeffrey S. Goddess | | 302-658-7567 | |
| Pamela S. Tikellis | | 302-656-9053 | |
| Elizabeth M. McGeever | | 302-658-8111 | |
| Steven C. Sunshine | | 202-862-2400 | |
| Timothy Bickham | | 202-429-3902 | |
| Bruce Gagala | | 312-616-5700 | |
| Timothy Bickman | | 202-429-3902 | |
| Asim Bhansali | | 415-397-7188 | |
| Barry S. Taus | | 212-764-6620 | |

The information contained in this communication is intended only for the personal and confidential use of the designated recipients addressed. This message may be an attorney-client communication from an attorney at the law firm of Goodwin Procter LLP and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error please notify us at the telephone number shown above, and return the original message to us by mail. Thank you

Sep-21-06  02:06pm   From-ADA (GDT PROCTER LLP        16172278501        T-718  P 02/05  F-510

| Adam Steinfeld | 212-764-6620 |
| Scott Perwin | 305-372-1861 |
| Joseph T. Lukens | 215-568-0300 |
| David Nalven | 617-482-3003 |
| Christopher McDonald | 212-883-7061 |
| John Turner | 214-754-1933 |
| Bernard Persky | 212-818-0477 |
| Brian Clobes | 215-864-2810 |
| Ted Lieverman | 215-496-6611 |
| Jeff Kodroff | 215-496-6611 |

| From | Fax number | Telephone |
| --- | --- | --- |
| Christopher T. Holding | 617-523-1231 | 617-570-1679 |

LIBA/1682159.1

The information contained in this communication is intended only for the personal and confidential use of the designated recipients addressed. This message may be an attorney-client communication from an attorney at the law firm of Goodwin Procter LLP and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us at the telephone number shown above and return the original message to us by mail. Thank you.

Sep-21-06  02:07pm   From-ADA (GDT PROCTER LLP        16172278591        T-718   P 03/05   F-510

GOODWIN | PROCTER

Christopher T. Holding
617 570 1679
cholding@
goodwinprocter com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston  MA 02109
T  617 570 1000
F  617 523 1231

September 21, 2006

**By Facsimile and First Class Mail**

Matthew P. Hendrickson, Esq
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

Re:   **Abbott Laboratories, et al. v. Teva Pharmaceuticals USA, Inc.**
      **C.A. No. 02-1512 (KAJ) (consolidated)**

Dear Matt :

I write in response to your letter of September 19, 2006 concerning the deposition of Pascale Blouquin. I understand that Ms. Blouquin is still employed by Fournier. As a current-employee, we believe that a further deposition of Ms. Blouquin as part of the anti-trust case is appropriate and that no explanation or description of topics is required. In order to resolve this dispute, however, we are willing to provide the following explanation.

First, let me be clear that it has never been our intention to re-cover ground about which Ms Blouquin has already been questioned.

Second, while there is some overlap between the issues in the patent case and the antitrust issues, there are additional questions now in dispute between the parties. This includes questions that have arisen since the patent case (such as the participation of Ms. Blouquin in the continued prosecution of related patent applications and the submission of materials from the patent litigation to the Patent and Trademark Office); the further identification of Ms. Blouquin on privileged documents; and the involvement of Ms. Blouquin in both meetings between Abbott and Fournier concerning fenofibrate products and the development of the replacement fenofibrate formulation. There are, furthermore, other issues on which Ms. Blouquin was not fully questioned during her initial deposition, given the priorities of the case at that time and limited time for which Ms Blouquin was provided for deposition. These include, among other things, the involvement of Ms Blouquin in the prosecution of any of the patents in suit,

# GOODWIN | PROCTER

Matthew R. Hendrickson, Esq
September 21, 2006
Page 2

including her communications with                                        These topics, which
are only examples, provide ample explanation for the further deposition of Ms. Blouquin

Third, you complain that any further deposition of Ms Blouquin "would be highly disruptive of
her work and is unnecessarily burdensome." In order to minimize any such disruption, we have
agreed to depose Ms. Blouquin in France. I trust that this satisfies your concerns on this issue

I hope that this explanation, along with the agreement to depose Ms Blouqin in France, is
sufficient to resolve this matter. If you still refuse to produce Ms. Blouquin for deposition
despite this explanation and the compromise on the location of the deposition, please let me
know.

Very truly yours,

Christopher T. Holding

CTH:sah

cc:  Chad J Peterman
     Bradley J. Demuth
     Josy W. Ingersoll
     Frederick L. Cottrell, III
     Mary B. Graham
     Mary Matterer
     Jeffrey S. Goddess
     Pamela S. Tikellis
     Elizabeth M McGeever
     Steven C Sunshine
     Timothy Bickham
     Bruce Gagala
     Timothy Bickman
     Asim Bhansali
     Barry S. Taus
     Adam Steinfeld
     Scott Perwin
     Joseph T. Lukens
     David Nalven
     Christopher McDonald

Sep-21-06  02:07pm   From-ADA(GDT PROCTER LLP           16172278591        T-718   P 05/05   F-510

GOODWIN | PROCTER

Matthew R. Hendrickson, Esq.
September 21, 2006
Page 3


    John Turner
    Bernard Persky
    Brian Clobes
    Ted Lieverman
    Jeff Kodroff

# EXHIBIT 3

# CADWALADER

Cadwalader Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

October 2, 2006

**VIA FACSIMILE +1 (617) 523-1231**

Christopher T Holding, Esq
Goodwin Procter LLP
Exchange Place
53 State Street
Boston, MA 02109-2881

Re:    *Abbott Laboratories v Teva Pharmaceuticals USA, Inc.* C.A. 02-1512 (KAJ)
       (D. Del.) (consolidated).

Dear Chris:

Thank you for your letter of September 21

While you acknowledge in your letter the impropriety of re-covering prior depositions, your proposed re-deposition topics for the "antitrust phase" of this litigation contemplate yet another examination of Ms Blouquin on what can only be characterized as the same topics for which she was made available for deposition in connection with the patent litigations. As explained below, we simply cannot agree to make Ms Blouquin available for such a duplicative and burdensome deposition

Ms Blouquin is a scientist. She has already testified repeatedly about the areas on which she has any knowledge relating to TriCor, which are limited to the scientific issues in the patent litigations. There is no allegation — nor could there be — that Ms Blouquin had any involvement in any of the marketing or other alleged conduct that are the only new allegations in the "antitrust phase" of this case. The relevance of Ms Blouquin to the antitrust claims arises from her role in the exact issues that were contested and thoroughly explored by Teva and Impax in the "patent phase" of this litigation. The facts she possesses are the same, whether relevant to a patent infringement defense or an alleged antitrust violation.

Teva and the other antitrust Plaintiffs allege that the patent suits were sham litigations that gave rise to antitrust liability because Fournier and Abbott knew the patents-in-suit were invalid and unenforceable. More specifically to Ms Blouquin, Plaintiffs allege that she

CADWALADER

Christopher T Holding, Esq
October 2, 2006

> *See, e g ,* Teva's Second Amended Counterclaims ¶¶ 118, 123, 159-160, 223

Teva and Impax already conducted extensive discovery on these issues, and twice deposed Ms Blouquin in the patent litigations [1] Among other topics, Ms Blouquin testified about the              and the other similar documents, which Teva used as deposition exhibits Plaintiffs' antitrust claims, as they relate to the areas about which Ms Blouquin could testify, simply mirror the issues Teva and Impax have previously raised and explored in the patent litigations

That any further deposition of Ms Blouquin in this case would be unreasonably duplicative and unduly burdensome is confirmed by review of your proposed re-deposition topics.

First, you indicate that you would like to depose Ms Blouquin about her participation in the prosecution of certain patent applications that were filed after the patent cases  All of the patents at issue in this case were issued before Ms Blouquin's last deposition, and Plaintiffs had every opportunity to question her on those patent applications

Second, you propose questioning Ms Blouquin about unidentified "privileged documents" We would not waive any privilege, and thus believe there are better, more cost-efficient means to obtain whatever non-privileged information you may be after other than by further deposing Ms Blouquin  Moreover, to the extent any of these unidentified documents were produced in the patent cases, you have not provided any reason for why Teva and Impax were not able to question her on these documents during her previous depositions.

You also indicate that you want to question Ms Blouquin about her involvement in "meetings between Abbott and Fournier" and the development of the "replacement fenofibrate formulation"  Plaintiffs have already scheduled depositions of the key Abbott and Fournier participants in these meetings, and have not explained how also deposing Ms Blouquin would not be duplicative on the issues  Moreover, given that Ms Blouquin was last deposed in June 2004 and the NFE TriCor formulation was introduced in November 2004, her testimony about fenofibrate research conducted subsequent to her deposition would largely be on the development of products not at issue in this litigation and that are covered by the Court's ruling on future business products

---

[1]   In addition to twice deposing Ms Blouquin in her individual capacity, Teva and Impax also deposed Ms Blouquin in her capacity as Fournier's 30(b)(6) designee concerning Fournier's acquisition of Pharma Pass technology and its development of the 160 mg tablet TriCor formulation

CADWALADER

Christopher T Holding, Esq
October 2, 2006

Lastly, as noted above, you propose questioning Ms Blouquin on issues that could have been, but were not, raised during her prior depositions because you claim that Teva was "not able [to] fully question[]" Ms Blouquin because of the "limited time for which Ms Blouquin was provided for deposition" Your suggestion that her prior depositions were somehow limited and therefore inadequate is at odds with the facts. In addition to the 2001 deposition of Ms. Blouquin by Impax, the 2004 deposition of Ms Blouquin by Teva and Impax in this case spanned two days Neither Teva nor Impax suggested at the time that this deposition of Ms Blouquin was in any way deficient, and these were issues on which Teva was ready for trial

Finally, we do not believe you have given sufficient weight to the burden on the witness In an effort to be accommodating, we agreed to make Ms Blouquin available in Paris on October 13 if we are required to produce her, but she lives in Dijon and would need to travel to Paris for her deposition The stress and burden of a U S -style deposition for a foreign witness not accustomed with the U S system is considerable, even for someone who has already been subject to multiple depositions

In sum, we do not agree that your proposed re-deposition topics and explanation justify the need for a third deposition of Ms Blouquin by the Plaintiffs and we cannot agree to your request

Very truly yours,

Matthew P Hendrickson

cc:    S Jason Baletsa, Esq.
       Anne S Gaza, Esq
       Chad I Peterman, Esq
       Mary B Graham, Esq
       Josy W Ingersoll, Esq
       Mary Matterer, Esq
       Jeffery S Goddess, Esq
       Pamela S Tikellis, Esq
       Elizabeth M McGeever, Esq
       Bruce Gagala, Esq
       Asim Bhansali, Esq

C A D W A L A D E R

Christopher T Holding, Esq.
October 2, 2006

Barry Taus, Esq
Adam Steinfeld, Esq.
Scott E Perwin, Esq
Joseph T Lukens, Esq
David Nalven, Esq
Christopher McDonald, Esq.
John W Turner, Esq
Bernard Persky, Esq
Brian L Clobes, Esq.
Ted Lieverman, Esq
Jeffrey L Kodroft, Esq

# EXHIBITS 4-8
# REDACTED

# EXHIBIT 9

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center, New York NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

September 14, 2006

**VIA E-MAIL**

Asim Bhansali, Esq.
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco, CA 94111-1704

Re:     *Abbott Laboratories v. Impax Laboratories, Inc.*, C.A. No. 03-120 (KAJ) (D.
        Del.) (consolidated)

Dear Asim:

We are in receipt of the documents Impax Laboratories, Inc. ("Impax") produced on CDs
numbered Impax 001 through Impax 009 apparently in response to Defendants' first and
second set of requests for production of documents and things, and have identified several
issues with Impax's document production to date.

Notwithstanding that Impax produced well over 650,000 pages — substantially more than any
other Plaintiff in this litigation, it appears that Impax failed to produce numerous categories of
documents requested. It also appears that many of the produced pages were redacted
substantially, and that Impax otherwise widely redacted responsive, discoverable, non-
privileged information from its production. Given the approaching discovery deadline and
upcoming Impax depositions, we request, by September 21, that Impax respond to this letter
with an explanation and supplemental production that addresses, at the very least, the
following deficiencies in Impax's document production to date:

1.      No documents relating to sale or purchase of Impax Fenofibrate Products with any
        wholesaler or retail pharmacy (*e.g.*, Defendants' RFP No. 3).

2.      No documents relating to examples of marketing and promotional information detailing
        materials for Impax Fenofibrate Products (*e.g.*, Defendants' RFP No. 4).

3.      Deficient and incomplete production of documents pertaining to strategic plans,
        manufacturing plans, business plans, launch plans, and market analyses regarding
        Impax Fenofibrate Products (*e.g.*, Defendants' RFP No. 5).

Bradley J. Demuth  Tel 212 504 6503  Fax 212 504 6666   brad.demuth@cwt.com

# CADWALADER

Asim Bhansali, Esq.
September 14, 2006

4.    No documents relating to guidelines, procedures, strategies and policies related to
      selling prices for Impax Fenofibrate Products (*e.g.*, Defendants' RFP No. 6).

5.    Incomplete production of documents relating to projections, estimates, or assumptions
      underlying projections or estimates of sales volume, sales quantity, revenue and profit
      margins for Impax Fenofibrate Productions (*e.g.*, Defendants' RFP No. 7).

6.    Minimal and incomplete documents relating to size and scope of sales force used or
      intended to be used by Impax or documentation relating to sales force working on
      behalf of Impax to promote, market, or sell Impax Fenofibrate Products (*e.g.*,
      Defendants' RFP No. 9).

7.    No documents relating to Impax's expenditures or anticipated expenditures, on a month
      to month basis for marketing and other promotional efforts relating to Impax
      Fenofibrate Products (*e.g.*, Defendants' RFP No. 10).

8.    No documents relating to statements either oral or written made to Congress or any
      Government Entity concerning the Hatch-Waxman amendments (*e.g.*, Defendants' RFP
      12).

9.    No documents relating to Impax's communication with First Databank or Medispan
      with respect to Tricor®, Lofibra®, or any Fenofibrate Product (*e.g.*, Defendants' RFP
      No. 14).

10.   No documents relating to Impax's production of documents to the U.S. Federal Trade
      Commission in connection with the investigation titled Abbott Laboratories File 005-
      0124 (*e.g.*, Defendants' RFP No. 16).

11.   Minimal and incomplete documents relating to information or data considered or relied
      upon by Impax in determining the relevant product market (*e.g.*, Defendants' RFP No.
      18).

12.   No documents relating to substitutability or non-substitutability of TriCor, Lofibra, any
      Fenofibrate Products, or any Pharmaceutical Products for human treatment (*e.g.*,
      Defendants' RFP No. 19).

13.   Minimal documents relating to reasons or indications for prescribing Fenofibrate
      Products or other Pharmaceutical Products to regulate cholesterol levels in humans
      (*e.g.*, Defendants' RFP No. 20).

# CADWALADER

Asim Bhansali, Esq.
September 14, 2006

14.  Minimal documents relating to information and documents identified in Impax's initial disclosures, pursuant to Fed. R. Civ. P. 26(a)(1), specifically, documents regarding the effects of Abbott and Fournier's allegedly blocking Impax's ability to market Fenofibrate Products (e.g., Impax Initial Disclosures No. 5).

15.  No documents relating to customer, market, and/or physician preferences regarding the taking of Fenofibrate in capsule versus tablet form (e.g., Defendants' RFP No. 28).

16.  No documents relating to advantages or disadvantages of Fenofibrate in tablet form. (e.g., Defendants' RFP No. 29).

17.  No documents relating to customer, market, or physician preferences regarding the taking of medication in lower versus higher dosages of active ingredient (e.g., Defendants' RFP No. 30).

18.  No documents relating to customer, market, or physician preferences regarding medication that need not be taken with food (e.g., Defendants' RFP No. 31).

19.  No documents relating to patient compliance with taking Fenofibrate medication that must be taken with food (e.g., Defendants' RFP No. 32).

20.  No documents relating to Triglide™'s effect on potential Impax Fenofibrate Product sales (e.g., Defendants' RFP No. 38).

21.  No documents relating to communications regarding Teva's fenofibrate products or any potential Teva Fenofibrate Product, which Teva intended to sell (e.g., Defendant's RFP Nos. 41, 42).

The deficiencies described above are the most significant we have identified so far. We reserve our right to object to any further deficiencies in Impax's document productions. We are happy to discuss these deficiencies within the next week, but, given the impending discovery deadline and Impax depositions, any meet and confer must be followed by prompt action. I am available for a teleconference this week to discuss any issues further.

Sincerely,

Bradley J. Demuth

C A D W A L A D E R

Asim Bhansali, Esq.
September 14, 2006

cc:     Paula L. Blizzard, Esq.
        R. James Slaughter, Esq.
        Anne S. Gaza, Esq.
        Chad J. Peterman, Esq.
        Mary B. Graham, Esq.

# EXHIBIT 10

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188

## FACSIMILE TRANSMISSION COVER SHEET

September 27, 2006

| To | Telephone | Facsimile |
|---|---|---|
| Bradley J. Demuth | (212) 504-6503 | (212) 504-6666 |
| Cadwalader, Wickersham & Taft LLP | | |
| Chad J. Peterman | (212) 336-2877 | (212) 336-7914 |
| Patterson Belknap Webb & Tyler LLP | | |
| Mary B. Graham | (302) 658-9200 | (302) 658-3989 |
| Morris Nichols Arsht & Tunnell | | |
| Anne Shea Gaza | (302) 651-7539 | (302) 498-7539 |
| Richards Layton & Finger, P.A. | | |

| From | Telephone | Code |
|---|---|---|
| R. James Slaughter | (415) 773-6608 | **6171/gap** |

Re   *Abbott Laboratories, et al. v. Impax, Inc.*
    USDC, Dist. of Delaware, Case No. 03-120-KAJ

### Number of Pages (Including Cover): 2

## NO ORIGINAL WILL FOLLOW THIS TRANSMISSION

### COMMENTS

Please see attached.

Operator _____                    Time Sent _____

## IF YOU ENCOUNTER ANY DIFFICULTIES RECEIVING THIS TRANSMISSION, PLEASE CALL (415) 676-2277 OR (415) 391-5400

The information contained in this facsimile transmission is legally privileged and confidential and intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error, please notify us immediately by telephone, and return the original transmission to us at the above address via the U.S. Postal Service. Thank you.

354205.01

LAW OFFICES
# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

R. JAMES SLAUGHTER
RSLAUGHTER@KVN.COM

September 27, 2006

**VIA FACSIMILE**

Bradley J. Demuth
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY 10281

Re:     *Abbott Laboratories v. Impax, Inc.*
        C.A. No. 03-120 KAJ (consolidated)

Dear Brad:

I write in response to your letter of September 14, 2006, regarding Impax's document production.

As you note in your letter, Impax has produced a substantial number of documents—more than 650,000 pages. These documents were not chosen at random, but rather were collected and produced in the course of a careful set of searches for documents in response to your various, broad requests and subject to objections made to those requests. Our searches in response to your first document request were reasonably designed to capture all responsive documents not previously produced. In response to your second request, we attempted to capture any documents that would not have been captured by our first search. (We did not re-run the searches on matters that would have been duplicative of our first collection effort.) We will be making an additional production by the end of this week or early next. Quite simply, Impax has made reasonable, good faith efforts to collect and produce all documents responsive to your requests. The fact that you have not found documents you believe might exist does not mean that we did not search for them. And to the extent that you have a concern regarding the (large) size of our production, that is the result of the broad request you served.

Very truly yours,

R. JAMES SLAUGHTER

RJS/mls

cc:     Anne S. Gaza, Esq. (via facsimile)
        Chad J. Peterman, Esq. (via facsimile)
        Mary B. Graham, Esq. (via facsimile)

381263.01

# EXHIBIT 11

# CADWALADER

Cadwalader, Wickersham & Taft LLP
New York  London  Charlotte  Washington  Beijing

One World Financial Center, New York  NY 10281
Tel 212 504 6000  Fax 212 504 6666
www.cadwalader.com

September 29, 2006

**VIA E-MAIL**

Asim Bhansali, Esq
Keker & Van Nest, L L P
710 Sansome Street
San Francisco, CA 94111-1704

Re:     *Abbott Laboratories v Impax Laboratories Inc*, C A  No  03-120 (KAJ) (D
        Del.) (consolidated)

Dear Asim:

I write in response to your letter of September 11 and to follow up on James Slaughter's letter
of September 27

In your September 11 letter, you indicate that Impax inadvertently produced approximately
194,000 pages of documents without intended redactions, and request that we (i) accept two
replacement CDs, IMPAX 005 and IMPAX 009, containing corrected copies of all these
documents, (ii) return the original CDs, and (iii) destroy all corresponding hard copies of these
documents  The replacement CDs are full of documents that are either significantly or wholly
redacted of substance  Nowhere in your letter do you indicate the basis for these redactions or
even whether any of the replaced documents concern privileged information.  As a result, we
cannot agree to your request

These redactions are indicative of a broader concern about Impax's entire production to date
As noted in my September 14 letter, Impax's production suffers from a number of deficiencies,
including that it is rife with extensive and unexplained redactions  Take for example, IMPAX
516085,                                                         but has been considerably
redacted without explanation  Other iterations of this document (*see* *e g* , IMPAX278609 and
IMPAX521671) demonstrate that Impax redacted plainly relevant, responsive, and
discoverable information  Other examples include: (i) IMPAX014612-29,
                                             , that has been completely redacted of
substance, including from seemingly relevant and responsive pages entitled
                               "[1]; (ii) IMPAX157599-600,
                          " which by its subject line should have been
produced unredacted, and which has been redacted so extensively that understanding the
document is impossible; and (iii) numerous copies and iterations of voluminous spreadsheets
with nearly every page redacted.  Impax's documents are so heavily redacted that we cannot

---

[1]   In addition, the unredacted information in this document is completely illegible

Bradley J Demuth   Tel 212 504 6503   Fax 212 504 6666   brad demuth@cwt com

# C A D W A L A D E R

Asim Bhansali, Esq
September 29, 2006

discern the context of the remaining text or even to which of our document requests they respond

James Slaughter's letter of September 27 states that Impax's production of more than 650,000 pages "is the result of the broad request [Defendants] served." Mr Slaughter also suggests that the volume of the production alone relieves Impax from having to produce any more documents or reveal text redacted from the production made to date. The law makes clear that volume alone does not satisfy a party's discovery obligations under the Federal Rules. As discussed above, Impax's redactions are so extensive, it is as if Impax made no production at all.

I understand that Impax intends to provide a supplemental production shortly. Please confirm by close of business today whether this supplemental production redresses the production deficiencies noted in my letter of September 14, and otherwise consists of unredacted copies of previously produced documents that were — as illustrated by the examples above — redacted without any legitimate basis. It is crucial for Impax to cure its deficiencies sufficiently in advance of the Impax depositions to allow time for a meaning preparation. If we do not hear from you, we will add this issue to the agenda for the October 6 conference if the Court is amenable

Sincerely

Bradley J Demuth

cc:    R James Slaughter, Esq
       Anne S Gaza, Esq
       Chad J Peterman, Esq.
       Mary B Graham, Esq

# EXHIBITS 12-16
# REDACTED

# EXHIBIT 17



One Logan Square, 27th Floor
Philadelphia, PA 19103–6933
215-568-0300 /facsimile

30 North Third Street, Suite 700
Harrisburg, PA 17101–1701
717-364-1020 /facsimile

20 Brace Road, Suite 201
Cherry Hill, NJ 08034–2634
856-616-2170 /facsimile

www.hangley.com

Joseph T. Lukens
Direct Dial:  215-496-7032
E-mail:  jlukens@hangley.com

September 22, 2006

<u>Via E-Mail and First Class Mail</u>

Bradley DeMuth, Esq.
Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, NY  10281

Chad J. Peterman, Esq.
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036-6710

**Re:**  *CVS and Rite Aid v. Abbott Laboratories et al.,* C.A. 05-605-KAJ;
*Walgreen's v. Abbott Laboratories et al.,* C.A. 05-404-KAJ

Dear Brad and Chad:

I write on behalf of both the CVS and Rite Aid Plaintiffs and the Walgreen Plaintiffs in response to Brad's September 19, 2006 letter concerning Defendants' intention to move to compel with respect to Defendants' Third Set of Requests for Production of Documents and Things.  While there has been some minimal correspondence on these issues, Defendants have determined that the parties are at an impasse primarily on the basis that Plaintiffs have objected to the discovery requests.

Defendants' Third Set of Requests seeks documents concerning comparisons, competition or relative market shares among TriCor and "any other lipid regulating drug product," and how the pricing of any other lipid product is or is not affected by the pricing of any other lipid product.  As defined in Defendants' requests, "Other Lipid Product" includes 47 different drugs other than TriCor.  This request is extremely broad, and given that Plaintiffs believe there is no relevance to the request, the burden of having to conduct such a broad ranging search grossly outweighs any value to undertaking such a search.

Bradley DeMuth, Esq.
Chad J. Peterman, Esq.
September 22, 2006
Page 2

Nonetheless, in an effort to avoid burdening the Court and the parties with another discovery motion, Plaintiffs are willing to conduct a search for any analysis undertaken by our own employees or consultants that may be responsive to the requests. Plaintiffs believe that the burden of searching at least 47 different vendor files to examine every document prepared by a drug manufacturer that may mention TriCor would be an unduly burdensome task. While Plaintiffs believe that any comparative documents responsive to the requests are not relevant, if any such documents are relevant, they would be analyses prepared by Plaintiffs' own employees or consultants, not materials received from other drug manufacturers that may be located in Plaintiffs' files simply because another drug manufacturer sent them to Plaintiffs.

Please let me know as soon as possible whether Defendants will accept the above as responsive to Defendants' Third Set of Requests for Production of Documents.

Sincerely,

Joseph T. Lukens

cc:    All Counsel via email

# EXHIBIT 18

# CADWALADER

Cadwalader Wickersham & Taft LLP
New York London Charlotte Washington Beijing

One World Financial Center New York, NY 10281
Tel 212 504 6000 Fax 212 504 6666
www.cadwalader.com

September 29, 2006

**VIA E-MAIL**

Joseph T. Lukens, Esq
Hangley Aronchick Segal & Pudlin
27th Floor
One Logan Square
Philadelphia, PA 19103

Dear Joe:

I write in response to your letter of September 22, and to follow-up our September 27 telephone conversation.

Our document requests call for Direct Purchaser Plaintiffs to produce all documents in their control, whether drafted by them or not. We understand that you are proposing to create different standards for producing: (1) documents that were created by or at the direction of a Direct Purchaser Plaintiff; and (2) documents that were created by a lipid product manufacturer that are maintained in the files of a Direct Purchaser Plaintiff. In our view, both types of documents are directly relevant to the market definition issues in this case and ought to be produced.[1] That said, we believe a reasonable compromise can be achieved that would address your burden concerns and avoid the need for further involvement of the Court on this issue.

1    Direct Purchaser-Created Documents

We appreciate Direct Purchaser Plaintiffs' offer to search for and produce any documents created by an employee or consultant that may be responsive to Defendants' requests for

---

[1]    Contrary to your letter, the history of our requests, correspondence, and meet and confers indicates that the issue is ripe for resolution by the Court. Defendants first requested production of these documents nearly a year ago, re-requested these documents in subsequent document requests, raised this issue in a meet and confer teleconference, and in repeated correspondence. In response, Direct Purchaser Plaintiffs have repeatedly taken the position that all documents relating to products other than fenofibrate were not relevant and therefore would not be produced, even including when, most recently, we provided direct evidence from the files of Direct Purchaser Plaintiff Walgreen that the relevant market at issue in this case includes non-fenofibrate products. Notwithstanding Plaintiffs' repeated contention that the relevant market is strictly limited to fenofibrate products, Defendants are entitled to full discovery on this disputed issue.

Bradley J Demuth   Tel 212 504 6503   Fax 212 504 6666   brad.demuth@cwt.com

CADWALADER

Joseph T Lukens. Esq
September 29, 2006

documents relating to other lipid products As we discussed, such documents would include those that compare, discuss, and/or mention fenofibrate (TriCor or any other fenofibrate product) in relation to, or in connection with, any non-fenofibrate lipid regulating product [2]

II    Manufacturer-Created Documents

In your letter and during our call you took the position that our document requests posed an undue burden because of the vast number of other lipid regulating products that compete with TriCor, including the 47 we identified in our document requests  You also told me that the Direct Purchasers maintain files of manufacturer-created documents by manufacturer name, and that these files were typically organized into two types of folders:  (1) a general folder for documents that were not product-specific, and (2) product-specific folders identified by each product distributed by that manufacturer  You said that searching for relevant documents in each type of folder for each of the 47 products was too burdensome  You indicated that you would instead consider searching for responsive documents within the product-specific folders for a limited number of lipid products we identify

Toward that end, please confirm that, in addition to searching for and producing the documents discussed under Section 1 above, each Direct Purchaser Plaintiff will search for and produce responsive documents in the following product-specific lipid product files: (1) Lipitor, (2) Vytorin, (3) Crestor, (4) Zetia, (5) Pravachol, (6) Mevacor, (7) Zocor, (8) Lopid, and (9) Niaspan  Considering that each of the Direct Purchaser Plaintiffs has produced so comparatively few documents to date[3], we believe that the limited number of additional files we ask to be searched for responsive documents is reasonable

---

[2]    In connection with this offer, I understood from our call that Direct Purchaser Plaintiff Walgreen would at least produce all responsive                              , including those identified by its 30(b)(6) designee, Jill Nailor, and that all other Direct Purchaser Plaintiffs would produce any such similar documents to the extent they exist

[3]    For example, apart from any electronic purchasing and sales data Direct Purchaser Plaintiffs may have produced, Rite-Aid has produced a total of 1,974 pages to date; Walgreen, only 410 pages; CVS 316 pages; Albertson's, 207 pages; Maxi Drug, 105 pages; Hy-Vec, 103 pages; and Safeway 43 pages By contrast, Defendants have produced hundreds of thousands of pages

C A D W A L A D E R

Joseph T. Lukens, Esq
September 29, 2006

Given the Court conference scheduled for next week, a prompt reply is respectfully requested

Very truly yours,

Bradley J. Demuth

cc:     All counsel via email

# EXHIBIT 19

## Demuth, Brad

From:    Demuth, Brad
Sent:    Tuesday, October 03, 2006 7:14 PM
To:      'Lukens, Joseph T'
Cc:      'sperwin@kennynachwalter com'; 'lravkind@kennynachwalter com'; Hendrickson, Matthew;
         'Bickham, Timothy'; 'Peterman, Chad J  (x2877)'; Reinhart, Tara

Subject: RE: Tricor Letter

Joe:

We cannot agree to your proposal  The distinction you appear to be drawing between "active" and "archived"
files is unreasonable (and raised for the first time only just now)  The allegations in the complaint span several
years  including years for which Direct Purchaser Plaintiffs apparently maintain only archive files  Direct
Purchaser Plaintiffs have requested from Defendants documents going as far back in time, and we have
produced documents in response to those requests  While we are sensitive to burden concerns, Direct Purchaser
Plaintiffs are obligated to produce the documents we requested, even if some of these documents are maintained
in archived files  If you cannot agree to produce these documents, than I believe, unfortunately, we are at an
impasse and will need to proceed with the conference we have scheduled for Friday

Kind regards,
Brad


From: Lukens, Joseph T  [mailto:jtl@hangley com]
Sent: Tuesday, October 03, 2006 5:41 PM
To: Demuth, Brad
Cc: sperwin@kennynachwalter com; lravkind@kennynachwalter com; Hendrickson, Matthew; Bickham, Timothy;
Peterman, Chad J. (x2877); Reinhart, Tara
Subject: RE: Tricor Letter

Brad,

The context of our discussion about documents created by direct purchasers. as is clear from my letter, and my
recollection of our conversation  was in the context of documents comparing other products with TriCor or
fenofibrate   Obviously, you have a different recollection, though I believe it is different than what you recount
in your first paragraph  which, as I stated below. was limited to comparative documents referring to a fenofibrate
and any other listed product

Nonetheless, plaintiffs are willing to look in active files. not archived files (which would grossly increase the
burden, particularly for products in that class that were launched many years ago)  With respect to Walgreen's  I
understand that these forms. to the extent they are generated, are generated upon product launches, and
therefore for some of the products listed  to the extent such a form was created. it may be in archived storage and
burdensome to retrieve

If defendants are willing to accept a compromise reaching the active files for the defined products, we will further
compromise and produce the product analyses that are responsive

joe


Joseph T  Lukens


10/3/2006

Message                                                                    Page 2 of 6

Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA  19103
215-496-7032
215-568-0300 fax
jlukens@hangley com
www hangley com

    -----Original Message-----
**From:** Demuth, Brad [mailto:Brad Demuth@cwt.com]
**Sent:** Tuesday, October 03, 2006 5:01 PM
**To:** Lukens, Joseph T
**Cc:** sperwin@kennynachwalter.com; lravkind@kennynachwalter com; Hendrickson, Matthew; Bickham, Timothy; Peterman, Chad J  (x2877); Reinhart, Tara
**Subject:** RE: Tricor Letter

Joe:  We spoke about different standards for (i) documents created by or on behalf of the Direct Purchasers; and (ii) other documents in the possession. custody or control of the Direct Purchasers, but not created by them or on their behalf

**Category 1**  With respect to the first category of documents, it is my understanding that you agreed to produce any responsive documents created by or on behalf of the Direct Purchasers

**Category 2**  You stated that producing all responsive documents that were not created by or on behalf of the Direct Purchasers would be unduly burdensome  To address your concern of burden for these documents. as part of an overall agreement on what you would produce, we agreed that for the second category of documents, you will produce documents concerning fenofibrate and any one of the 9 products we identified  I understand that we are in agreement on this point. subject to reaching an overall agreement

The reference to                    in my letter and email was not a limitation on the agreement that you would produce all responsive documents in Category 1  It was simply meant to make absolutely clear that we expect to receive all of the                    produced by or on behalf of the Direct Purchasers  For example. we know from our deposition of Walgreen that these documents were                    and we want to be certain that we will receive these documents  whether or not they refer to fenofibrate

Please note that our agreement on limiting Category 2 was done in consideration of all of the Direct Purchasers agreeing to provide all responsive documents in Category 1  If you have a different position on Category 1, we cannot agree to any other limitation at this time but are happy to discuss further

Kind regards,
Brad

**From:** Lukens, Joseph T  [mailto:jtl@hangley com]
**Sent:** Tuesday, October 03, 2006 3:15 PM
**To:** Demuth, Brad
**Cc:** sperwin@kennynachwalter com; lravkind@kennynachwalter com; Hendrickson, Matthew; Bickham, Timothy; Peterman, Chad J  (x2877); Reinhart, Tara
**Subject:** RE: Tricor Letter

Brad,

With respect to number 1. and particularly to the                    , your September 29th letter specifically discussed this request as a footnote to our agreement that "such documents would include those that compare. discuss  and/or mention fenofibrate (TriCor or any other

fenofibrate product) in relation to, or in connection with, any non-fenofibrate lipid regulating product." Our compromise offer was in that context and was to produce all forms, or similar documents, that refer to fenofibrate

As worded in your email of October 3, the proposed compromise on the request is not limited to analyses that refer to fenofibrate products and any other product, but reaches analyses that do not mention fenofibrate products. I believe that is beyond the scope of what we discussed and what we were willing to agree to

As we had discussed, the definition of "lipid" products includes at least 47 different products Note also that your letter of September 29 suggests that I indicated that this posed "an undue burden because of the vast number of other lipid regulating products that compete with TriCor." As I believe you will agree, I never agreed these products compete with TriCor, but discussed this issue in the context of Defendants' chosen definition of lipid regulating products. As we discussed, these 47 products also include generic versions of the listed products, which potentially implicates a much larger set of products – since, each generic typically could be offered by multiple companies. As such, the request is still very broad

As stated above, Plaintiffs are willing to search for any                    ' forms (or similar documents) that mention any fenofibrate products and any of the defined lipid regulating products

As an alternative with respect to the                              forms, Plaintiffs will search for any forms (or similar documents) for the fenofibrate products and for the 9 lipid regulating products referenced in your September 29 letter (regardless of whether those documents mention fenofibrate)

Please let me know if either the original compromise offer or this alternative compromise is acceptable

With respect to number 2, I believe we are in agreement

joe

Joseph T Lukens
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA  19103
215-496-7032
215-568-0300 fax
jlukens@hangley com
www hangley com

      -----Original Message-----
      **From:** Demuth, Brad [mailto:Brad Demuth@cwt com]
      **Sent:** Tuesday, October 03, 2006 12:21 PM
      **To:** Lukens, Joseph T
      **Cc:** sperwin@kennynachwalter com; Iravkind@kennynachwalter com; Hendrickson, Matthew;
      Bickham, Timothy; Peterman, Chad J (k2877); Reinhart, Tara
      **Subject:** RE: Tricor Letter

      Joe:  I believe we may have reached an agreement that resolves our dispute, but to be clear

(1)   Each Direct Purchaser Plaintiff is agreeing to produce any analyses conducted by or on the behalf of a Direct Purchaser Plaintiff that are responsive to Defendants' requests. To avoid all doubt, this would include -- but is not limited to -- production of all the                    for Vytorin, Crestor, Zetia, and other lipid products regardless of whether these documents mention or refer to TriCor (or any other fenofibrate product, or fenofibrate generally)

(2)   Each Direct Purchaser Plaintiff is agreeing to produce documents in its custody or control which were prepared by someone other than its agents or employees that compare, discuss and/or mention TriCor (or any other fenofibrate product, or fenofibrate generally) in connection with or in relation to any of the 9 products I identified in my September 29 letter

The above constitutes the compromise I described in my September 29 letter. I understand from your email below that each Direct Purchaser Plaintiff has agreed to the terms of that compromise. Please confirm that my understanding is accurate, so that I can communicate to the Court that we have resolved our dispute

Kind regards
Brad

**From:** Lukens, Joseph T [mailto:jtl@hangley.com]
**Sent:** Monday, October 02, 2006 3:30 PM
**To:** Demuth, Brad
**Cc:** sperwin@kennynachwalter.com; lravkind@kennynachwalter.com
**Subject:** Re: Tricor Letter

Brad  I am out of town today  so pardon the email response

While there are some things in your letter that are not consistent with our conversation (mostly  when speaking about how files are maintained. I was only speaking generally about CVS – I have no idea about how the walgreen plaintiffs keep their files)  we agree to search for the materials that compare, discuss, and/or mention fenofibrate in connection with the 9 listed products requested in the third set of requests in the product files and any analyses our employees or their consultants did

This will be labor intensive  but  if we reach agreement  we will get the request to the clients as soon as possible

Let me know if this will resolve our dispute

Joe

----- Original Message -----
From: Demuth  Brad <Brad Demuth@ewt com>
To: Lukens  Joseph T ; Chad Peterman <cjpeterman@pbwt com>; Hendrickson  Matthew  Matthew Hendrickson@ewt com >
Cc: McGeever  Elizabeth M  <EMMcgeever@Prickett com>; William F  Cavanaugh  <wfcavanaugh@pbwt com> ; Abbott  Graham <tricor@mnat com>; Adam M  Steinfeld  asteinfeld@garwingerstein com>; Asim Bhansali <abhansali@kvn com>; Bruce E  Gerstein  bgerstein@garwingerstein com>; Daniel Berger <danberger@bm net>; David P  Germaine  dgermaine@daarvanek com>; Direct Plaintiffs/Goddess <jgoddess@rmgglaw com>; McGeever  Elizabeth M   EMMcgeever@Prickett com>; Eric F  Cramer <ecramer@bm net>; Fournier/Gaza <tricor@srl com>; Impax/Matterer <mmatterer@morrisjames com>; Indirect Plaintiffs/Tikellis <tricor@chimicles com>; Jeffrey  Swann <js5@rawlingsandassociates com>; John C  Vetter <jvetter@kenyon com>; Joseph Vanek  jvanek@daarvanek com >; Ken Zylstra <kzylstra@sbclasslaw com>; Lauren C  Ravkind  lravkind@kennynachwalter com >; Linda P  Nussbaum <lnussbaum@cmht com>; Mark Sandman  mmsa@rawlingsandassociates com>; Michael J  Silverman <mike@silverman-mcdonald psemail com>; Pacificare/Parshall <jonp@mslaw com>; Patrick Francis Morris <pmorris@morrisandmorrislaw com>; Peter  Kohn <pkohn@bm net>; Steig D  Olson  solson@cmht com>; Teva Pharm/Ingersoll <tricor@yest com>;

Walgreen/Perwin <sperwin@kennynachwalter com>; William Christopher Carmody
<bcarmody@susmangodfrey com>; Connelly, Stacy M <AMConnelly@Prickett com>; Baletsa S Jason P
< JBaletsa@goodwinprocter com>; Shadowen, Steve; Iravkind@kennynachwalter com
Iravkind@kennynachwalter com>
Sent: Fri Sep 29 15:28:22 2006
Subject: RF: Tricor Letter

Counsel: Attached please find a letter addressed to Mr Lukens

Enjoy your weekend

Kind regards
Brad


From: Lukens, Joseph E [mailto:jl@hangley com]
Sent: Friday September 22 2006 4:15 PM
To: Demuth, Brad; Chad Peterman; Hendrickson, Matthew
Cc: McGeever Elizabeth M ; William F Cavanaugh; Abbott/Graham; Adam M Steinfeld; Asim Bhansali;
Bruce F Gerstein; Daniel Berger; David P Germaine; Direct Plaintiffs/Goddess; McGeever, Elizabeth M ;
Eric E Cramer; Fournier/Gaza; Impax/Maderer; Indirect Plaintiffs/Tikellis; Jeffrey Swann; John C Vetter;
Joseph Vanek; Ken Zylstra; Lauren C Ravkind; Linda P Nussbaum; Mark Sandman; Michael I Silverman;
Pacificare Parshall; Patrick Francis Morris; Peter Kohn; Steig D Olson; Teva Pharm/Ingersoll;
Walgreen/Perwin; William Christopher Carmody; Connelly, Stacy M ; Baletsa S Jason P; Shadowen, Steve;
Iravkind@kennynachwalter com
Subject: Tricor Letter


Counsel:

Attached is a letter to Messrs DeMuth and Peterman  And, with regard to the prospective hearing date of Oct
6 referenced in Anne Gaza's email of last night that date is fine with CVS and Rite Aid

Have a nice weekend

joe


Joseph E Lukens
Hangley Aronchick Segal & Pudlin
One Logan Square 27th Floor
Philadelphia PA 19103
215-496-7032
215-568-0300 fax
jlukens@hangley com
www hangley com <http: www hangley com >


--------- -- -------------------- IRS Circular 230 Legend: Any advice contained herein was not intended or written
to be used and cannot be used for the purpose of avoiding U S federal, state or local tax penalties  Unless
otherwise specifically indicated above you should assume that any statement in this email relating to any U S
federal, state or local tax matter was written in connection with the promotion or marketing by other parties of
the transaction(s) or matter(s) addressed in this email  Each taxpayer should seek advice based on the
taxpayer's particular circumstances from an independent tax advisor -- -------- -- --- ------ NOTE: The
information in this email is confidential and may be legally privileged  If you are not the intended recipient,
you must not read use or disseminate the information; please advise the sender immediately by reply email
and delete this message and any attachments without retaining a copy  Although this email and any
attachments are believed to be free of any virus or other defect that may affect any computer system into

which it is received and opened it is the responsibility of the recipient to ensure that it is virus free and no
responsibility is accepted by Cadwalader Wickersham & Taft LLP for any loss or damage arising in any way
from its use

# EXHIBITS 20-21
# REDACTED