# RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX: (302) 651-7701
WWW.RLF.COM

ANNE SHEA GAZA

DIRECT DIAL NUMBER
302-651-7539
GAZA@RLF.COM

May 8, 2007

**VIA HAND DELIVERY**
Magistrate Judge Mary Pat Thynge
U.S. District Court
District of Delaware
844 North King Street
Wilmington, DE 19801

Re:   *In re TriCor Antitrust Litigations,*
      **C.A. Nos. 02-1512, 03-120, 05-340 and 05-360**

Dear Magistrate Judge Mary Pat Thynge:

I write on behalf of both Abbott and Fournier. The parties met and conferred at 1:30 p.m. today and were unable to resolve the issues.

**Board of Directors Materials**

Impax concedes it first raised the issue of board materials with Abbott and Fournier well *after* the close of discovery and in the context of a meet and confer on Impax's obligations to produce documents as ordered by Judge Jordan.[1] The timing is no trivial matter. The question came nine months after Abbott and Fournier had produced all but a couple hundred pages (from a production of hundreds of thousands of pages). During discovery in 2005 and early 2006, both Abbott and Fournier collected responsive documents broadly, and produced reams of internal and collaborative deliberations, presentations, forecasts, memos, strategic plans, business plans and correspondence regarding plans for TriCor. As a result, any fenofibrate-related materials presented to the Abbott or Fournier boards are highly likely to be duplicative of information already produced. Moreover, the operative body relating to the parties' plans and actions for TriCor was the Abbott-Fournier Joint Development Committee, not a board of directors of either company. Abbott and Fournier produced the minutes of meetings and materials related to the Joint Development Committee, and plaintiffs spent significant time deposing Abbott and Fournier personnel on those materials.

During a meet and confer on May 8, 2007, Abbott's counsel stated that it had investigated whether responsive documents would exist in board of directors materials and determined that there would not be any

---

[1] Impax asserts that it "searched for and produced any Board materials not already produced." Other than five random documents that are not even identifiable as board materials, however, we are unaware that Impax produced any such documents. *See* Exhibit 1, Letter from Asim Bhansali (Jan. 9, 2007). We did ask Impax to check its board materials for the type of periodic report ordered to be produced, presuming the files to be a central location for sales, marketing and financial data. We made the suggestion intending to alleviate the burden of having to search elsewhere. We never requested, nor did we receive, board minutes. Our understanding after repeated requests to Impax was that the board materials did not contain the types of periodic reports required to be produced. We have not pressed the issue further.

Magistrate Judge Mary Pat Thynge
May 8, 2007
Page 2

responsive documents given that operational decisions with respect to TriCor, which are at issue in this litigation, are not made by the board of directors. Moreover, if there were any presentations to the board of directors on TriCor, the information would be cumulative of documents discussing TriCor that have already been produced from the files of those who actually work on the TriCor brand. Despite this representation, Impax insists that Abbott search its files. We respectfully request the Court to deny Impax's request.

Regarding Fournier board materials, in addition to producing Joint Development Committee materials, Fournier searched the files of executives responsible for overseeing the relationship with Abbott and produced all responsive documents from their files. Performing a separate search for board materials at this late date would not be a simple task. The individuals who maintained board materials have left the company, and in fact Fournier has been sold to Solvay, further complicating any attempt to forage for old files in archives that were maintained in France by former employees. Any search for these documents would require someone unfamiliar with the files to wade through them more than a year after Fournier searched for documents completed its document production. Given that Impax's query is out of time and that we produced the materials related to the Joint Development Committee and from the key Fournier executives, we respectfully request the Court to deny Impax's request.

**Requests for Admission**

Impax brings this issue to the Court only on behalf of Impax and Teva, despite the fact that Impax, Teva, Direct Purchasers and Indirect Purchasers all served different RFAs for similar information related to more than 800 documents.[2] We objected to the RFAs on multiple grounds. In each instance, Abbott and Fournier also stated:

> [Abbott and Fournier are] prepared to discuss the terms of the usual bi-lateral stipulation and also work with [the serving party] and the other plaintiffs to resolve issues concerning any particular documents as to which there may be some reason to question their authenticity. Moreover, although each identified intended trial exhibit may have to be examined on a case-by-case basis, there are customary stipulations the parties can discuss that may resolve a variety of possible hearsay objections, without premature resort to this unnecessarily burdensome discovery request.[3]

Despite this clear statement of our willingness to address evidentiary concerns in the usual manner in advance of trial, plaintiffs failed to respond. No plaintiff followed up with a request for a meet and confer or an offer of a compromise. We heard nothing until Impax raised the issue in December 2006. On May 2, 2007, we sought a global stipulation to address all RFAs,[4] and responded to Mr. Bhansali's May 4 counter-proposal with revised language.[5] Today at 1:30 p.m. we met and conferred with all parties on this issue and understand that Direct Purchasers and Indirect Purchasers also are seeking responses to their RFAs. We ask that the Court enter our proposed standard stipulation to govern authenticity and business records issues in all matters and order that no plaintiff is entitled to responses to the RFAs or related interrogatories.

The various RFAs are summarized as follows:

---

[2] Impax and Teva's RFAs are attached to the Impax Letter Brief as Exhibits B and D, respectively. We attach as Exhibit 2, Direct Purchaser Plaintiffs' First set of Requests for Admission and Related Interrogatories, and, as Exhibit 3, Indirect Purchaser Plaintiffs' First Requests for Admissions to Defendants.

[3] To minimize paper attached to this letter, we attach only an excerpt of Fournier's objections to Impax's RFAs. *See* Exhibit 4. The language was repeated in both Abbott and Fournier's objections to all plaintiffs' RFAs.

[4] *See* Exhibit 5, Letter to Asim Bhansali (May 3, 2007) (copied to all counsel of record).

[5] *See* Exhibit 6, Letter to Asim Bhansali (May 7, 2007) (copied to all counsel of record).

RLF1-3148423-1

- Impax requests admissions that 130 documents are admissible at trial and qualify as business records under Rule 803(6) of the Federal Rules of Evidence;
- Teva requests admissions that 110 documents are authentic and qualify as business records;
- Direct Purchasers request admissions that 233 documents are authentic and qualify as business records; and
- Indirect Purchasers request admissions that 349 documents are authentic, qualify as business records and are admissible at trial.

Abbott and Fournier should not be required to respond to the RFAs because a stipulation is a far less burdensome means of satisfying plaintiffs' needs at this stage. Abbott and Fournier's revised language proposes that all documents bearing the production Bates ranges of all parties are presumed authentic. Likewise, all documents apparently authored by a party are presumed to satisfy the requirements of Rule 803(6). This language obviates the need to respond to the vast majority of plaintiffs' RFAs.[6] The remaining requests seek admissions that documents are "admissible at trial or other court proceedings" in these matters.[7]

Requests for admission that documents are admissible seek legal conclusions -- a practice not allowed by Rule 36 of the Federal Rules of Civil Procedure.[8] Here, Impax and Indirect Purchasers ask Abbott and Fournier to anticipate all possible objections when the parties are still engaging in expert discovery and no party has designated trial exhibits or witnesses. Impax counsel conceded during today's meet and confer that there is no factual predicate for the need for such RFAs at this time – there is nothing special about these documents that leads to the conclusion that evidentiary issues will arise.

The request that Abbott and Fournier respond to these RFAs now moves up the pre-trial process and adds burden because, as Impax counsel acknowledged during today's meet and confer, it is likely plaintiffs will identify additional documents for trial, and we will be required to go through this process again.

Respectfully,

Anne Shea Gaza
(#4093)

ASG:csi
cc: Clerk of Court (via hand delivery)
(all record counsel via electronic mail)

---

[6] For example, unless a particular document were to appear to be authored by a third party, the stipulation responds to all of Impax's odd-numbered RFAs, all of Teva's RFAs, all of Direct Purchasers' RFAs, and all of Indirect Purchasers' RFAs but 1(h) and 8.

[7] *See* Impax even-numbered RFAs and Indirect Purchaser plaintiffs' RFAs 1(h) and 8.

[8] *See* 7 James Wm. Moore et al. *Moore's Federal Practice* 36.10(8) (3d ed. 2007). *See also, Tulip Computers Int'l v Dell Computer Corp.*, 210 F.R.D. 100, 108-109 (D. Del. 2002) (denying a defendant's request for more adequate responses to requests for admissions relating to the claim construction of a patent)

RLF1-3148423-1